Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net
and
Cecilia Fex, *pro hac vice* (DC Bar No. 435061)
ACKERSON KAUFFMAN FEX, PC
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831
Email: fex@ackersonlaw.com

Counsel for Plaintiffs' Class

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Case No. CV99-324S-MHW<br><br>Honorable Mikel H. Williams |

**CLASS REPRESENTATIVES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE CATEGORY 1 LANDS**

Class Representatives ("Plaintiffs"), through counsel, hereby respond in opposition to Defendant's Motion for Summary Judgment as to the Category 1 Lands and state as follows:

The United States Court of Appeals for the Federal Circuit when remanding the matter of Category 1 parcels back to this Court, instructed this Court as follows: "[o]n the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the *Preseault* cases." *Hash v. United States*, 408 F.3d 1308, 1318 (Fed. Cir. 2005). Under the mandate, liability is established and the proceedings under Category 1 shall proceed to assessment of damages: "On remand the district court shall determine just compensation on the conditions that apply to these [Category 1] landowners." *Id*. As such, Plaintiffs respectfully submit that this Court has no jurisdiction to reconsider the issue of whether under the allegedly broad scope of the 1875 Act easement, the government retains rights to use the easement upon the discontinuance of the use of the right of way by the railroad. Accordingly, granting the Defendant's motion for summary judgment would run directly counter to the Federal Circuit's holding and mandate.

In the alternative, Plaintiffs respectfully submit that the Court should grant their cross-motion for summary judgment and find that the United States is liable for a taking as to Category 1 easements for the reasons set forth in their cross-motion for summary judgment.

For these reasons and as set forth in more detail in their memorandum in support of their cross-motion for summary judgment and response in opposition to Defendant's motion for summary judgment (Doc. No. 155.) as to the Category 1 Lands ("Memorandum"), Plaintiffs respectfully submit (1) the Federal Circuit has issued a mandate as to Category 1 which has removed from this Court's jurisdiction the question of liability and requires this Court to proceed to determinations concerning compensation due to Class Members who are eligible to receive damages; or in the alternative, (2) the Court should deny Defendant's motion for summary

judgment and grant Plaintiffs motion for summary judgment and find the Defendant liable for the taking of property burdened by 1875 Act railway easements.

Dated: July 12, 2006

Respectfully submitted,

**ACKERSON KAUFFMAN FEX, PC**

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
CECILIA FEX, *pro hac vice* (DC Bar No. 435061)
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831

Of Counsel:
Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net

*Counsel for Plaintiffs' Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 12th day of July, 2006, I electronically filed Class Representatives' Response in Opposition to Defendant's Motion for Summary Judgment as to the Category 1 Lands, through the CM/ECF system, which caused the following parties or counsel to be served with this document by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
kristine.tardiff@usdoj.gov

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
Counsel for Plaintiffs' Class

Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net
and
Cecilia Fex, *pro hac vice* (DC Bar No. 435061)
ACKERSON KAUFFMAN FEX, PC
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831
Email: fex@ackersonlaw.com

Counsel for Plaintiffs' Class

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Case No. CV99-324S-MHW<br><br>Honorable Mikel H. Williams |

**CLASS REPRESENTATIVES' RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO THE CATEGORY 1 LANDS**

Pursuant to L.R. 7.1(c)(2), Class Representatives ("Plaintiffs"), though counsel, submit their response to the Defendant's Proposed Findings of Uncontroverted Fact in Support of its Motion for Summary Judgment as to the Category 1 lands which the Defendant contends

are not in dispute.

(a) Defendant's Proposed Fact 1: Plaintiffs accept;

(b) Defendant's Proposed Fact 2: Plaintiffs accept with comment. The fact is accurate but taken out of context. Defendant states, "[i]n the early days of Idaho settlement, prior to the arrival of the Railroad, 'a trail up the Weiser River through the Council Valley became the primary avenue of travel for pack trains carrying supplies from Boise to the gold camps at Warren and Florence.'" To the extent that the Defendant's fact suggest that "the arrival of the railroad" was imprinted on the "trail up the Weiser River", however is inaccurate and not a fact. There is nothing in the record and no evidence, to the best of our knowledge and belief, that suggests the railroad right of way was placed on or along the same path as this early trail.

(c) Defendant's Proposed Fact 3: Plaintiffs accept with comment. The railroad did arrive in Weiser, ID in the early 1880's, however this railroad corridor was constructed and controlled by the Oregon Short Line Railroad Company and, to the best of our knowledge and belief, is not part of the railroad right of way subject to this litigation. DALE FISK AND DON DOPF, *The Story of the Pacific & Idaho Northern Railroad* 8 (Don Dopf, ed., 2001).

(d) Defendant's Proposed Fact 4: Plaintiffs accept with comment. It was not the Pacific and Idaho Northern Railway that submitted the 1894 map. It was the Weiser and Idaho Northern Railway Company, Limited, who submitted the 1894 map and they never began construction of the corridor. (Pls. Class Cert. Brief at 3; and, FISK AND DOPF, *supra*, at 14.)

(e) Defendant's Proposed Fact 5: Plaintiffs accept with comment. The fact is incomplete. The maps were approved by the Secretary of the Department of Interior on April 19, 1900. (Pls. Class Cert. Brief at 4.)

(f) Defendant's Proposed Fact 6: Plaintiffs accept.

(g) Defendant's Proposed Fact 7: Plaintiffs accept.

(h) Defendant's Proposed Fact 8: Plaintiffs accept.

(i) Defendant's Proposed Fact 9: Plaintiffs accept with comment. This proposed fact is incomplete. Please refer to Class Representatives' Proposed Findings of Uncontroverted Fact in Support of their Cross-Motion for Summary Judgment as to the Category 1 Lands, ¶¶ 9-13, for supplemental/additional facts.

(j) Defendant's Proposed Fact 10: Plaintiffs accept.

(k) Defendant's Proposed Fact 11: Plaintiffs accept.

(l) Defendant's Proposed Fact 12: Plaintiffs accept with comment. This proposed fact is incomplete. Please refer to Class Representatives' Proposed Findings of Uncontroverted Fact in Support of their Cross-Motion for Summary Judgment as to the Category 1 Lands, ¶16, for supplemental/additional facts.

(m) Defendant's Proposed Fact 13: Plaintiffs accept with comment. This proposed fact is incomplete. Please refer to Class Representatives' Proposed Findings of Uncontroverted Fact in Support of their Cross-Motion for Summary Judgment as to the Category 1 Lands, ¶17, for supplemental/additional facts.

Dated: July 12, 2006

Respectfully submitted,
**ACKERSON KAUFFMAN FEX, PC**

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
CECILIA FEX, *pro hac vice* (DC Bar No. 435061)
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831

Of Counsel:
Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net

*Counsel for Plaintiffs' Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 12th day of July, 2006, I electronically filed Class Representatives' Response to Defendant's Proposed Findings of Uncontroverted Fact in Support of its Motion for Summary Judgment as to the Category 1 Lands, through the CM/ECF system, which caused the following parties or counsel to be served with this document by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
kristine.tardiff@usdoj.gov

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
Counsel for Plaintiffs' Class

Kristine S. Tardiff
NH Bar No. 10058
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
EMAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. CV99-324S-MHW |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO THE CATEGORY 1 (1875 ACT) LANDS**

Dated: July 28, 2006

## TABLE OF CONTENTS

I. The Federal Circuit's Mandate Does Not Preclude Further Proceedings on Issues Not Previously Addressed by This Court . . . . . 1

II. The Current Use of the 1875 Act Easements Does Not Exceed the Scope of Those Easements . . . . . 3

A. The Scope of the 1875 Act Easements . . . . . 4

B. Railbanking Does Not Exceed the Scope of the 1875 Act Easements . . . . . 9

C. Interim Trail Use Does Not Exceed the Scope of the 1875 Act Easements . . . . . 13

III. Conclusion . . . . . 15

## TABLE OF AUTHORITIES

### CASES

Abbott v. Nampa Sch. Dist. No. 131,
808 P.2d 1289 (Idaho (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Barnard v. Wabash R. Co.,
208 F.2d 489 (8th Cir. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Barney v. Burlington N. R.R. Co., Inc.,
490 N.W.2d 726 (S.D. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Chevy Chase Land Co. v. United States,
733 A.2d 1055 (Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8, 13, 14

Coulsen v. Aberdeen-Springfield Canal Co.,
277 P. 542 (Idaho 1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Exxon Chem. Patents, Inc. v. Lubrizol Corp.,
137 F.3d 1475 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Great Northern Ry. Co. v. United States,
315 U.S. 262 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Hash v. United States,
403 F.3d 1308 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Laitram Corp. v. NEC Corp.,
115 F.3d 947 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Preseault v. ICC,
494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Preseault v. United States,
100 F.3d 1525 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9, 10, 11, 14

Rieger v. Penn Cent. Corp.,
No. 85-CA-11, 1985 WL 7919 (Ct. App. Greene County, Ohio, May 21, 1985) . . . . . . 14

Russello v. United States,
464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Singleton v. Wulff,
428 U.S. 106 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Smith v. Townsend,
148 U.S. 490 (1893) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Toews v. United States,
376 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 11, 12

Washington Wildlife Pres., Inc. v. State of Minnesota,
329 N.W.2d 543 (Minn. 1983), cert. denied, 463 U.S. 1209 (1983) . . . . . . . . . . . . . . . . 14

**OTHER**

74 C.J.S. Railroads §100 (1956 ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Norman J. Singer, 2A Sutherland Statutory Construction,
§ 51.02 (6th ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. The Federal Circuit's Mandate Does Not Preclude Further Proceedings on Issues Not Previously Addressed by This Court

In response to Defendant's motion for summary judgment on the Category 1 (1875 Act) lands, Plaintiffs first assert that the Court is precluded from addressing liability issues because liability already has been determined. Pls.' Mem. at 6-9. Plaintiffs are incorrect.

The issues previously presented to and decided by this Court were limited to title issues: whether the Railroad acquired fee simple title to the lands comprising the subject right-of-way or only an easement and, with respect to the Category 1 lands, whether the United States retained a reversionary interest in those lands. As stated in Defendant's brief on the title questions:

> [A] determination by the Court that the Railroad acquired an easement . . . would not end the liability inquiry in this case. If the Railroad is found to have acquired only an easement, additional questions that would need to be resolved include: . . . *(2) whether the railbanking and interim trail use of the right-of-way is within the scope of the easement so that the easement "do[es] not even as a matter of state law revert upon interim use as nature trails[,]" . . . . These and other ownership and liability-related questions have been reserved for a subsequent briefing in this case.*

Def.'s Brief at 3 n.5 (May 31, 2001) (citations omitted and emphasis added) (Doc. 81). As a result of this Court's decision of November 27, 2001 (Doc. 88), the entry of partial final judgment under Fed. R. Civ. P. 54(b) (Docs. 107–108), and Plaintiffs' appeal of the title-related questions, this Court never reached the question of liability with respect to Category 1.

Despite the clear procedural history of this case, Plaintiffs contend that the Federal Circuit went beyond the questions actually decided by this Court and found Defendant liable for a taking of the Category 1 lands. This contention is contrary to the general rule "that a federal appellate court does not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120 (1976); see also Laitram Corp. v. NEC Corp., 115 F.3d 947, 952 (Fed. Cir. 1997) ("The scope of our review, and our power to review, was limited to the sole order that was appealed.");

Exxon Chem. Patents, Inc. v. Lubrizol Corp., 137 F.3d 1475, 1478 (Fed. Cir. 1998) ("it would be incorrect to conclude that the court's mandate encompassed an issue that was not presented to the court").

In addition, Plaintiffs' contention is based on an overly narrow reading of the Federal Circuit's decision. The Federal Circuit concluded "that the land of Category 1 is owned in fee by the landowners, subject to the railway easement" and reversed this Court's contrary conclusion. Hash v. United States, 403 F.3d 1308, 1318 (Fed. Cir. 2005). Plaintiffs' argument that the Federal Circuit reached and resolved the question of liability relies on the court's statement that "[o]n remand the district court shall determine just compensation on the conditions that apply to these landowners." Id. However, the Federal Circuit also directed that further proceedings be "in accordance with the principles set forth in the Preseault cases." Id. This additional instruction is important because in Preseault the Supreme Court expressly recognized that "under any view of takings law, only some rail-to-trail conversions will amount to takings[,]" noting that some rights-of-way "are held as easements that do not even as a matter of state law revert upon interim use as nature trails."[1] Preseault v. ICC, 494 U.S. 1, 16 (1990); accord Preseault v. United States, 100 F.3d 1525, 1532 (Fed. Cir. 1996). Thus, in order for further proceedings to be in accordance with the Preseault decisions, this Court must address and resolve the question of whether the current uses of the 1875 Act easements for railbanking and interim trail use purposes falls within the scope of those easements, in which case there would be no taking and no compensation due "on the conditions that apply to these landowners." Hash, 403 F.3d at 1318.[2]

---

[1]This same principle applies to easements created under federal law.

[2]Plaintiffs also support their argument that liability has already been established by pointing to a perceived overlap in Defendant's arguments on the title issues and its current

Plaintiffs' attempt to bypass the merits of this liability inquiry, which was never presented to or resolved by this Court or by the Federal Circuit, should be rejected.

II. The Current Use of the 1875 Act Easements Does Not Exceed the Scope of Those Easements

There is no dispute in this case that the Railroad acquired an easement under the 1875 Act directly from the United States. However, as noted above, the fact that the railroad only acquired an easement is not outcome determinative with respect to Plaintiffs' takings claims. See Preseault, 494 U.S. at 16 n.9 (citing cases in which "state courts have held that trail use does not constitute abandonment of a right-of-way for public travel so as to trigger reversionary rights"); Preseault, 100 F.3d at 1552 (if the terms of the railroad's easement are broad enough to encompass trail use, then "the servient estate holder would not be in a position to complain about the use of the easement for a permitted purpose"). Instead, the disputed question of liability in this case turns on the determination of the scope of the easements created under the 1875 Act. The resolution of this question requires the Court to determine whether the uses of the subject right-of-way authorized by the Trails Act – the preservation of the corridor for future active rail use (railbanking) and interim trail use – are permissible uses of the right-of-way and thus do not result in a taking of the Plaintiffs' alleged right to regain unencumbered fee title and possession of the right-of-way lands.

---

arguments in support of its position that railbanking and interim trail use do not exceed the scope of the easement created under the 1875 Act. Regardless, any such overlap is irrelevant because the two legal questions are distinct. The issue previously before this Court and before the Federal Circuit was a title issue, focusing on whether the United States had retained any ownership interest in the 1875 Act easements. That issue was resolved by the Federal Circuit. The issue now before the Court is whether the current uses of these easement – i.e., railbanking and/or interim trail use – fall within the scope of the 1875 Act easements.

A. The Scope of the 1875 Act Easements

Plaintiffs contend that the easements created under the 1875 Act were limited to railroad purposes, and that the present uses of the subject easements are not railroad purposes. They are incorrect on both points.

To determine the scope of the easements created under the 1875 Act, we begin with the language of the Act, which "is to be liberally construed to carry out its purposes." Great N. Ry. Co. v. United States, 315 U.S. 262, 272 (1942). The only language that Plaintiffs cite to support their assertion that the easement created under the 1875 Act is limited to "railroad purposes" is Section 4 of the Act. Pls.' Mem. at 13-14. However, even a cursory review of Section 4 reveals that it includes no such restrictive language. To the contrary, the 1875 Act employs broad, non-restrictive language to grant "the right of way through the public lands of the United States" to any railroad that complies with the conditions set forth in the Act. 1875 Act, Sec. 1. There is no language in the Act that limits the use of the right of way to "railroad purposes." Moreover, the language relied on by Plaintiffs from Section 4 of the Act simply provides that, after the creation of such a right of way, all "lands over which such right of way shall pass shall be disposed of subject to such right of way[.]" 1875 Act, Sec. 4. This provision does not further define or limit the scope of the right of way created under the Act.

In addition, a review of similar statutes reveals that if Congress wanted to restrict the use of the rights of way created under the 1875 Act to "railroad purposes" or any other specific uses, it knew how to do so. For example, in 1884 Congress granted a right of way to the Southern Kansas Railway. Act of July 4, 1884, 23 Stat. L. 73. Section 2 of the 1884 statute "granted a right of way, and also provided that the land taken therefor should be used only for the construction and operation of railroad, telegraph, and telephone lines; and that whenever any

portion thereof ceased to be so used it should revert to the nation or tribe of Indians from which it was taken." Smith v. Townsend, 148 U.S. 490, 498 (1893). In contrast, the 1875 Act simply grants "the right of way through the public lands of the United States," without any of the use limitations found in statutes such as the 1884 Act. Plaintiffs' attempt to read such limitations into the 1875 Act when Congress chose not to include such limitations must be rejected. See Norman J. Singer, 2A Sutherland Statutory Construction § 51.02 at 199 (6th ed. 2000) ("if words used in a prior statute to express certain meaning are omitted, it will be presumed that a change of meaning was intended"); accord Russello v. United States, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (citation omitted).

The difference between the broad, general language of the grant in the 1875 Act and the more specific, limiting language of the grant in the 1884 Act is also evident from a comparison of the railroad deeds at issue in the cases relied upon by the parties. For example, Plaintiffs rely heavily on Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004). Applying California state law, the Toews court held that trail use exceeded the scope of the easement granted by the deed at issue in that case, which had conveyed a right of way for a proposed railroad and provided that the land would revert to the grantor if the railroad "permanently discontinue[s] the use of said railroad[.]" Id. at 1373. Notably, in reaching its decision, the Toews court contrasted the deed before it with the "broad language, non-specific in the nature or scope of the use" found in the deed at issue in Chevy Chase Land Co. v. United States, which granted the railroad "a free and perpetual right of way." Id. at 1380. Applying Maryland law to interpret this particular deed, the Maryland Court of Appeals first noted that "[n]o language in the deed in the instant case suggests

that the right-of-way was limited to railroad purposes only (and much less so to freight railroad purposes, as the land company contends)." Chevy Chase Land Co. v. United States, 733 A.2d 1055, 1073 (Md. 1999); id. ("nowhere does language 'for railroad purposes' appear, and there are no other express limitations on the use of the right-of-way"). The Chevy Chase court also noted that the broad language employed in the deed "suggests that the use of the easement was to be dynamic, i.e., adaptable to the evolving circumstances and transit needs of those intended to benefit from the right-of-way – in particular the general public whom the land company was attempting to attract to the areas served by the railroad." Id. Based on the broad language employed and the absence of any restrictive "railroad purposes" language, the court held that the scope of the easement conveyed by this deed allowed for trail use. Id. at 1076.

The language of the 1875 Act, like the language in the Chevy Chase deed, is broad, non-specific language that provides for the grant of a right-of-way, without any of the use limitations found in contemporaneous statutes such as the 1884 Act or in railroad deeds such as the one interpreted in Toews.[3] This provides yet another reason to reject Plaintiffs' attempt to read

---

[3]Plaintiffs' comparison of the 1875 Act with the Alaska Act of 1898 (Pls.' Mem. at 16) is misplaced. The purpose of the Alaska Act was to open up Alaska to settlement under the Homestead Act. Act of May 14, 1898, ch. 299, 30 Stat. 409 (codified as 43 U.S.C. §§ 942-1 to 942-9). To facilitate the settlement of this new and vast area, the Act granted rights-of-way to railway companies and rights-of-way for wagon road development on the conditions specified in the Act. The Alaska Act also expressly protects public access to Alaska's navigable waters and shore line by limiting both homestead entries and railroad rights-of-way along navigable waters (Sections 1 & 2), and by reserving a strip of land between tracts entered under the Act that abut navigable waters and another strip of land parallel to the shore line of all navigable waters "for the use of the public as a highway" (Sec. 10). The reservation of such strips from homestead entry and from any grant to a railroad is irrelevant to the interpretation of the 1875 Act because the question presented in this case is no longer whether the United States retained or reserved a strip of land for public highway purposes, but whether the scope of the right-of-way created under the 1875 Act is so restrictive as to preclude its use for any public transportation use other than the running of trains.

Plaintiffs' comparison of the 1875 Act with the 1862 Union Pacific Land Grant Act (Pls.'

restrictive language into the 1875 Act that Congress did not put there.

Plaintiffs next attempt to support their assertion that the 1875 Act easements are limited to "railroad purposes" by a series of block quotations from some regulations governing federally created rights-of-way. Pls.' Mem. at 15. However, these block quotes simply mirror the Federal Circuit's conclusion in this case that the railroad acquired an easement under the 1875 Act and that the subsequent patentees acquired fee title to the land "subject to" this easement. The regulations quoted by Plaintiffs do not address the question of what uses of the right-of-way are permissible, and thus do not answer or provide any guidance on the question presented in this case. The case law Plaintiffs rely on (Pls.' Mem. at 13-14) suffers from this same defect.[4]

In sum, there is no basis for concluding that the easements created under the 1875 Act were strictly limited, as Plaintiffs contend, to "railroad purposes only." Pls.' Cross-Mot. at 2. To the contrary, the easements created under the 1875 Act are broad, general easements that lack any

---

Mem. at 16 n.6) is equally misplaced. Indeed, the fact that the 1862 Act contains express conditions and limitations on the grant to the railroad provided therein further illustrates the point made above that, in the absence of such express limitations or conditions, a grant will be construed broadly and in a manner that furthers the intended purpose of the Act. See, e.g., Chevy Chase, 733 A.2d at 1074 ("The language of the easement can grant to the easement holder a good deal of discretion in the use of the easement or limit the use very narrowly; if the grant is not clear, the court will interpret the scope of the easement in favor of 'free and untrammeled use of the land.'" (quoting 7 Thompson on Real Property § 60.04(a), at 451 (Thomas ed. 1994))). Moreover, the 1862 Act is one of the railroad land grant acts that fell into disfavor and led to what Plaintiffs' acknowledge was a "sharp change in Congressional policy" leading up to the enactment of the 1875 Act. Pls.' Mem. at 3-4.

[4]The decision in Great Northern, 315 U.S. at 276, does quote from a House committee report on a subsequent bill as stating that the right originally conferred by the 1875 Act was "an easement or use for railroad purposes." However, the Great Northern court quotes this language simply to support its holding that the railroad acquires only an easement under the 1875 Act. The court did not address the scope of the easement created under the 1875 Act beyond finding that Congress did not grant the railroads the right to remove minerals from the servient estate that is subject to the 1875 Act easement.

restrictive use language. Like easement granted by the deed in Chevy Chase, such language "suggests that the use of the easement was to be dynamic, i.e., adaptable to the evolving circumstances and transit needs of those intended to benefit from the right-of-way – in particular the general public whom the land company was attempting to attract to the areas served by the railroad." Chevy Chase, 733 A.2d at 1073. Idaho applies these same common law principles in the interpretation of easements.[5] As explained by the Supreme Court of Idaho,

> an easement granted or reserved in general terms, without any limitations as to its use, is one of unlimited reasonable use. It is not restricted to use merely for such purposes of the dominant estate as are reasonably required at the time of the grant or reservation, but the right may be exercised by the dominant owner for those purposes to which that estate may be subsequently devoted. Thus, there may be an increase in the volume and kind of use of such an easement during the course of its enjoyment. 25 Am. Jur. 2d Easements and Licenses § 74, pp. 479-80 (1966). The degree of change that will be allowed in the use of an easement differs with the manner in which the easement was conveyed, the language of conveyance, and the use of the servient estate before and after the conveyance. See 5 Restatement of Property § 483, p. 3010 (1944).

Abbott v. Nampa Sch. Dist. No. 131, 808 P.2d 1289, 1293 (Idaho 1991). As set forth in

---

[5]Although common law may aid in the interpretation of the 1875 Act and the easement created thereunder, Plaintiffs incorrectly assert, without any legal support, that the Railroad received nothing more than a "common law easement" under the 1875 Act. Pls.' Mem. at 18. To the contrary, unlike common law easements, it is well established that railroad easements are perpetual and exclusive use easements. E.g., Barnard v. Wabash R. Co., 208 F.2d 489, 494 (8th Cir. 1953) ("A railroad right of way has the attributes of a fee, including perpetuity and exclusive use and possession."); Coulsen v. Aberdeen-Springfield Canal Co., 277 P. 542, 544-45 (Idaho 1929) (distinguishing grants of railroad rights-of-ways from other similar grants due to the attributes of such rights-of-way, including perpetual and continuous use and exclusive possession); see also 74 C.J.S. Railroads § 100 (1956 ed.) (noting the "general rule" that a railroad has the right to "the uninterrupted and exclusive possession, use, and control of the surface of the land constituting its right of way" and that a railroad may occupy and use its right of way "at any time against all persons, even the owner of the fee"). The owner of the servient estate thus has no right to possess or use the lands burdened by a railroad easement. Accordingly, a shift in use to railbanking and interim trail use does not further burden the servient estate.

Defendant's opening brief and in Sections II.B. and II.C. below, railbanking and interim trail use are both permissible uses of a dynamic and adaptable general easement such as the one created under the 1875 Act.

Alternatively, even if the Court were to find that Congress intended to limit the easements created under the 1875 Act to "railroad purposes," the Court would still need to determine whether railbanking and interim trail use fall within the scope of that restrictive use easement. As set forth below, railbanking is a railroad purpose and interim trail use is consistent with and furthers railroad purposes by aiding and facilitating the preservation of railroad corridors for future railroad uses and needs. Accordingly, even under Plaintiffs' restrictive interpretation of the 1875 Act, the present uses of the 1875 Act easements are permissible and thus do not constitute a taking of the Plaintiffs' interest in the servient estate.

B. Railbanking Does Not Exceed the Scope of the 1875 Act Easements

As set forth in Defendant's opening memorandum, the Trails Act authorizes two distinct present uses of the 1875 Act right-of-way at issue in this case: (1) the preservation of a railroad corridor or right-of-way for future rail use (i.e., railbanking), and (2) interim trail use. Def.'s Mem. at 21-23. The resolution of Defendant's motion for summary judgment requires the Court to determine whether each of these present uses falls within the scope of the 1875 Act easements.

Plaintiffs attempt to divert the Court's attention away from considering the importance of railbanking as an independent and legitimate present use of the subject right-of-way by focusing almost exclusively on interim trail use and dismissing railbanking as "irrelevant" to the question of whether a taking occurred. Pls.' Mem. at 26-28. To support this argument, Plaintiffs rely on Preseault v. United States, supra, and Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004). Both decisions are distinguishable and neither decision controls the analysis in the present case.

Preseault involved a railroad easement created under and governed by Vermont state law. The Federal Circuit determined that this easement was abandoned and extinguished as a matter of Vermont law in 1975 and, therefore, that no railroad easement existed when, some 10 years later, a Notice of Interim Trail Use or "NITU" was issued pursuant to the Trails Act, and a public trail was established where the original railroad easement had been located. 100 F.3d at 1545-51. Based on these determinations, the Federal Circuit held that the establishment of a public trail in 1986 constituted the taking of a new easement that deprived the plaintiffs of their right to exclusive possession of their then-unencumbered fee title. Id. at 1550-51. Alternatively, the Federal Circuit held that even if the railroad easement had not been abandoned and extinguished under state law in 1975, the establishment of a public trail in 1986 still constituted a taking because that use "could not be justified under the terms and within the scope of the existing easements for railroad purposes."[6] Id. at 1550.

Significantly, however, the Federal Circuit emphasized in Preseault that "[w]e do not hold that every exercise of authority by the Government under the Rails-to-Trails Act necessarily will result in a compensable taking." Id. at 1552. In particular, the Preseault court expressly acknowledged that even when a railroad acquires only an easement, "if the terms of the easement when first granted are broad enough under then-existing state law to encompass trail use, the servient estate holder would not be in a position to complain about the use of the easement for a permitted purpose." Id. The Federal Circuit then explained that,

---

[6]This alternative ruling, which is based on an assumption contrary to the holding of the case (that the easement in question had not been abandoned and extinguished) is, of course, *dictum*. See Preseault, 100 F.3d at 1541 ("The argument on this issue [i.e., scope of the easements] *assumes* that the easements were still in existence in 1986, and for purposes of this part of the discussion we *assume* they were.") (emphasis added)).

> Whether, at the time a railroad applies to abandon its use of an easement limited to railroad purposes, a taking occurs under an ICC order to "railbank" the easement for possible further railroad use, and allowing in the interim for use of the easement for trail purposes, *is a question not now before us. We offer no opinion at this time on that question*.

Id. (emphasis added) (footnote omitted). These limitations are significant because the question that was "not now before" the Federal Circuit in Preseault is the very question that is now before this Court: whether a taking occurred as a result of the issuance of the NITU, which authorized the railbanking of the subject right-of-way and allowed, in the interim, for the 1875 Act easements to be used for trail purposes. Because the Federal Circuit "offer[ed] no opinion" on this question in Preseault, its decision in that case is not controlling here.

Finally, Plaintiffs rely on the statement in the concurring opinion in Preseault that "[t]he vague notion that the State [of Vermont] may at some time in the future return the property to the use for which it was originally granted, does not override its present use of that property inconsistent with the easement. That conversion demands compensation." Preseault, 100 F.3d at 1554 (Rader, J., concurring). However, this limited statement is not a determination that railbanking exceeded the scope of the subject easement. To the contrary, the concurring judge simply pointed out that the present use of the easement as a trail was inconsistent with the easement and "[t]hat conversion" – i.e., the imposition of trail use – requires compensation. Id. Accordingly, the concurring opinion simply reveals that, depending on the applicable law, even where railbanking is found to be a permissible use of an existing easement, allowing interim trail use on that easement may exceed the scope of the existing easement and require compensation.

In Toews, the right-of-way in question was created by a written "Agreement for Right of Way" between a private landowner and the railroad, which provided that "if said Railroad Company shall permanently discontinue the use of said railroad the land and Rights of Way shall

at once revert to the [grantor]." Toews, 376 F.3d at 1373. Applying California law, the Toews court held that this agreement conveyed an easement limited to railroad use. Id. at 1381. The court concluded that scope of this easement did not "encompass the new use as a recreational trail," id., and that the doctrine of shifting public uses under California law did not allow a change in use from railroad use to trail use. Id. at 1375-81. Having concluded that a new easement for a recreational trail had been taken, and with the parties having stipulated to the just compensation due for such taking (id. at 1375), the Toews court did not need to analyze whether railbanking, as a separate and distinct use of the subject right-of-way, also exceeded the scope of the easement in question under California law. See id. at 1381 (finding that "speculation" over the possibility that the right-of-way might be used for light rail or other railroad service in the future does not justify denying compensation for the current use as a trail, which was found to exceed the scope of the easement).

In sum, the issues presented in Preseault and Toews turned on state law. Although the analytical framework in this case is the same, the determination of whether railbanking and interim trail use fall within the scope of the 1875 Act easements turns on federal law, not state law. For this reason alone, the Federal Circuit's decisions in Preseault and Toews are not controlling and Plaintiffs' reliance on those decisions is misplaced. Moreover, a review of the Preseault and Toews decision reveals that the Federal Circuit did not reach the merits of the precise question presented here: is the preservation of the subject right-of-way for future rail use a permitted use of the 1875 Act easement? Indeed, this appears to be a question of first impression that is now squarely before the Court in this case.

As detailed in Defendant's opening memorandum, the preservation of the 1875 Act easements for future rail use is itself a present use of those easements. Def.'s Mem. at 21-23.

Regardless of whether the Court finds that the right-of-way easements created under 1875 Act were for public transportation purposes, or whether those easements were limited to "railroad purposes," railbanking falls within the scope of those easements. Accordingly, railbanking the subject easements does not further burden the interests of the servient estate holders and does not constitute a taking in this case.

C. Interim Trail Use Does Not Exceed the Scope of the 1875 Act Easements

In addition to erroneously portraying railbanking as "irrelevant," Plaintiffs also attempt to redefine the use of the subject easements authorizes by the Trails Act from by disposing of the term employed by Congress – interim trail use – and substituting its own term – "linear park" use. Pls. Mem. at 1, 2, 9–11, 13, 17, 23–25, 29. The new label created by Plaintiffs does not alter the fact that the Trails Act authorizes interim trail use of the subject right-of-way and, under federal law, this use has a transportation purpose and furthers railroad purposes by facilitating the preservation of the right-of-way for future rail use.

Plaintiffs contend that "[u]nder any measure, . . . a right of way for railroad purposes, including for transportation purposes, is completely different from a recreational trail or linear park[.]" Pls.' Mem. at 23. It is true that the Federal Circuit, applying California law in Toews and Vermont law in Preseault, concluded that interim trail use exceeded the scope of the easements at issue in those cases. However, it is equally true that courts applying the law of other states have reached the opposite conclusion. For example, in Chevy Chase, the Court of Appeals of Maryland, answering questions certified to it by the Federal Circuit, held:

> We believe it indisputable that use of the right-of-way as a trail is consistent with its essential nature relating to the "pass[ing] over land of another" and is a reasonable use of a general right of way. Accordingly, the scope of the right-of-way in the instant case encompasses use as a hiker/biker trail.

> * * *
> The fact that the right-of-way may be used for recreational as well as transportation purposes has no bearing on our analysis, since the "recreation" involved – biking and hiking – consists of the enjoyment one may have in transporting oneself. . . . Indeed, that hiking and biking may be recreational in addition to fulfilling transportation needs is not all that different from the enjoyment that some derive from driving a car or even riding a train; the enjoyment that some derive from these activities does not detract from their essential character as transportation-related.

Chevy Chase, 733 A.2d at 1076-1079. Applying this ruling, the Federal Circuit affirmed the trial court's holding that the railbanking and interim trail use of the railroad easement at issue in Chevy Chase did not constitute a taking of the servient estate holder's property interests. Chevy Chase, Nos. 97-5079, 97-5083, 1999 WL 1289099 (Fed. Cir. Dec. 17, 1999). Courts applying the law of other states have reached the same conclusion. See Washington Wildlife Pres., Inc. v. State of Minnesota, 329 N.W.2d 543, 547 (Minn. 1983) ("Recreational trail use of the land is compatible and consistent with its prior use as a rail line, and imposes no greater burden on the servient estates."), cert. denied, 463 U.S. 1209 (1983); Barney v. Burlington N. R.R. Co., Inc., 490 N.W. 2d 726, 733 (S.D. 1992) (holding that use of a railroad right-of-way for hikers, bikers, skiers and snowmobilers are "public highway" uses that are "compatible and consistent with its prior use as a public railway. No greater burden has been imposed upon the servient estate."), cert. denied, 507 U.S. 914 (1993); Rieger v. Penn Cent. Corp., No. 85-CA-11, 1985 WL 7919 (Ct. App. Greene County, Ohio, May 21, 1985) (finding that a railroad easement had not been extinguished and could be transferred to the state for trail use "because the proposed use is similar to that originally contemplated and 'because the general purpose to which the easement was and is applied are the same; to wit, a public way to facilitate the transportation of persons and property. Means and appliances are different, but the objects are similar . . . .'").

This case, however, is not controlled by the law of states such as California or Vermont

(applied respectively in Toews and Preseault), or the law of states such as Maryland, Minnesota, and South Dakota (applied respectively in Chevy Chase, Washington Wildlife and Barney). Instead, the scope of the easement created under the 1875 Act is a question of federal law. See Def.'s Mem. at 11-12 (citing cases). As set forth in Defendant's opening brief, federal law supports the conclusion that railbanking and interim trail use are both permissible uses of the easements created under the 1875 Act. Such uses therefore do not result in a taking of the Plaintiffs' interest in the servient estate.

Finally, although Plaintiffs oppose the application of the so-called doctrine of shifting public uses in this case, they do not cite any cases addressing the application of this common law doctrine to a federally-created right-of-way, much less any cases stating that this doctrine does not apply here. The absence of federal case law indicates that this may be a question of first impression; it does not indicate that this well-established doctrine should not be applied here.

## III. CONCLUSION

For the reasons stated above and in Defendant's opening memorandum, Defendant respectfully requests that summary judgment be entered for Defendant as to Category 1.

Dated: July 28, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

/s/ Kristine S. Tardiff
E-Mail: kristine.tardiff@usdoj.gov
KRISTINE S. TARDIFF (NH Bar No. 10058)
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577

OF COUNSEL:
HELENANNE LISTERMAN
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Division
Washington, DC 20044-0663

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of July, 2006, I electronically filed the foregoing **Defendant's Reply Brief in Support of Its Motion for Summary Judgment With Respect to Category 1** through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Cecilia Fex, Attorney for Plaintiffs
fex@ackersonlaw.com

Nels J. Ackerson, Attorney for Plaintiffs
nels@ackersonlaw.com

Lary C. Walker
walkerlaw_bk@ruralnetwork.net

/s/ Kristine S. Tardiff
E-mail: kristine.tardiff@usdoj.gov

Kristine S. Tardiff
NH Bar No. 10058
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
EMAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*, Plaintiffs, | Case No. CV99-324S-MHW |
| v. | |
| UNITED STATES OF AMERICA, Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF FACT**

Pursuant to Fed. R. Civ. P. 56 and L.R. 7.1, Defendant submits these responses to Plaintiffs' Proposed Findings of Uncontroverted Fact (Doc. 164).

Plaintiffs' Proposed Fact No. 1: Defendant admits that the right-of-way at issue was formerly operated by the Pacific and Idaho Northern Railroad Company, but denies that the subject right-of-way "is" the former Pacific and Idaho Northern Railroad Company. It is Defendant's position that, as a matter of law, the subject right-of-way still exists. Defendant does not dispute the facts in the second sentence of Plaintiffs' proposed fact.

Plaintiffs' Proposed Fact No. 2: Defendant does not dispute this proposed fact.

Plaintiffs' Proposed Fact No. 3: Defendant does not dispute the facts proposed in the first sentence of this proposed fact. Defendant admits that the Weiser and Idaho Northern Railway Company did not construct the line extending in a northerly direction from Weiser along the Weiser River, but notes that construction along the route originally located by the Weiser and Idaho Northern Railway Company was commenced by that company's successor in interest. See Pls.' Proposed Fact No. 4-5; Def.'s Proposed Fact Nos. 4-6.

Plaintiffs' Proposed Fact No. 4: Defendant does not dispute these proposed facts, many of which are also stated in Defendant's Proposed Fact Nos. 4-5.

Plaintiffs' Proposed Fact No. 5: Defendant does not dispute these proposed facts, which are the same as Defendant's Proposed Fact No. 6.

Plaintiffs' Proposed Fact No. 6: Defendant does not dispute these proposed facts, which are the same as Defendant's Proposed Fact No. 7.

Plaintiffs' Proposed Fact No. 7: Defendant does not dispute this proposed fact.

Plaintiffs' Proposed Fact No. 8: Defendant does not dispute this proposed fact.

Plaintiffs' Proposed Fact No. 9: Defendant does not dispute this proposed fact, which are also stated in Defendant's Proposed Fact No. 9.

Plaintiffs' Proposed Fact No. 10: Defendant does not dispute that this proposed fact accurately quotes a portion of IN&P's petition to the ICC of March 17, 1995, an excerpt of which is included in the record as Defendant's Exhibit 8.

Plaintiffs' Proposed Fact No. 11: Defendant does not dispute that this proposed fact accurately quotes, with some omissions, a portion of IN&P's petition to the ICC of March 17,

1995, an excerpt of which is included in the record as Defendant's Exhibit 8.

Plaintiffs' Proposed Fact No. 12: Defendant does not dispute that this proposed fact accurately quotes a portion of IN&P's petition to the ICC of March 17, 1995, an excerpt of which is included in the record as Defendant's Exhibit 8, with one correction: the first sentence of the quoted excerpt should read "The Line is currently operated as FRA class II track . . . ."

Plaintiffs' Proposed Fact No. 13: Defendant does not dispute this proposed fact, but notes that it is not relied on by Plaintiffs' in their cross-motion or their opposition to Defendant's motion and does not appear to be relevant or material to the issues before the Court.

Plaintiffs' Proposed Fact No. 14: Defendant does not dispute this proposed fact, which is the same as Defendant's Proposed Fact No. 10.

Plaintiffs' Proposed Fact No. 15: Defendant does not dispute this proposed fact, which is the same as Defendant's Proposed Fact No. 11.

Plaintiffs' Proposed Fact No. 16: To the extent that these proposed facts are consistent with the terms of the NITU, which is included in the record as Defendant's Exhibit 9, pp. 6-7, Defendant does not dispute these proposed facts. See also Def.'s Proposed Fact No. 16.

Plaintiffs' Proposed Fact No. 17: Defendant admits that the Railroad and the Friends of the Weiser River Trail ("FWRT") reached an agreement under the Trails Act and that the Railroad quitclaimed its interest in the subject right-of-way to FWRT. See Def.'s Proposed Fact No. 13. Defendant disputes that the Railroad "divested all its interest" in the subject right-of-way. To the contrary, pursuant to the terms of the Trails Act, the NITU (Def. Ex. 9, pp. 6-7) and the Donative Quitclaim Deed from the Railroad to FWRT (Exh. 10 to Pls.' Class Certification Brief), interim trail use and railbanking of the subject right-of-way "is subject to the future

restoration of rail service." NITU at 2 (Def. Ex. 9 at 7). Accordingly, the Railroad and its successors in interest retain a right of re-entry that allow them to restore rail service on the subject right-of-way.

Defendant does not dispute that the current trail manager, FWRT, controls and manages the right-of-way pursuant to the foregoing laws and documents.

Plaintiffs' Proposed Fact No. 18: Defendant disputes the fact in the first sentence. It is Defendant's position, as detailed in its briefs, that the subject right-of-way continues to be used for railroad purposes. Accordingly, contrary to Plaintiffs' proposed fact, the use of the right-of-way for railroad purposes did not cease when the right-of-way was railbanked and interim trail use of the right-of-way began.

Defendant generally does not dispute the facts proposed in the second sentence of Plaintiffs' Proposed Fact No. 18, with the following clarifications. Defendant does not dispute that the primary shipper on the subject right-of-way in the years immediately preceding the issuance of the NITU was a timber company. However, the historical records cited by the parties reveal that timber shipments were not always the primary use of the subject right-of-way. Historic uses of this right-of-way include passenger transportation, shipments from local mining operations, shipments of livestock, and shipments of agricultural products, particularly apples and other fruits. DALE FISK AND DON DOPF, *The Story of the Pacific & Idaho Northern Railroad* 33-35 (Don Dopf ed. 2001).

Plaintiffs' Proposed Fact No. 19: This fact is duplicative of Plaintiffs' Proposed Fact No. 10. Accordingly, Defendant incorporates its response to Proposed Fact No. 10 by reference.

Plaintiffs' Proposed Fact No. 20: Defendant does not dispute that one of the present uses of the subject right-of-way is interim trail use and that the Weiser River Trail includes the recreational features and conveniences listed by Plaintiffs, although Defendant notes that, according to the sources cited in Plaintiffs' Proposed Fact, many of these so-called conveniences are not actually located within the right-of-way. Defendant also disputes that these proposed facts are relevant or material to the questions before the Court. As explained in Defendant's briefs, there is no dispute that one of the present uses of the subject right-of-way is interim trail use. This use is a permissible use of the 1875 Act easements and does not exceed the scope of those easements. The fact that there is recreational value to this particular use does not detract from what is otherwise a transportation use of the right-of-way under federal law. As the Maryland Court of Appeals explained in a decision answering questions certified to it by the Federal Circuit in another rails to trails takings case:

> We believe it indisputable that use of the right-of-way as a trail is consistent with its essential nature relating to the "pass[ing] over land of another" and is a reasonable use of a general right of way. Accordingly, the scope of the right-of-way in the instant case encompasses use as a hiker/biker trail.
>
> * * *
>
> The fact that the right-of-way may be used for recreational as well as transportation purposes has no bearing on our analysis, since the "recreation" involved – biking and hiking – consists of the enjoyment one may have in transporting oneself. . . . Indeed, that hiking and biking may be recreational in addition to fulfilling transportation needs is not all that different from the enjoyment that some derive from driving a car or even riding a train; the enjoyment that some derive from these activities does not detract from their essential character as transportation-related.

Chevy Chase Land Co. v. United States, 733 A.2d 1055, 1076-1079 (Md. 1999). Applying this ruling, the Federal Circuit affirmed the trial court's holding that the railbanking and interim trail

use of the railroad easement at issue in Chevy Chase did not constitute a taking of the servient estate holder's property interests. Chevy Chase, Nos. 97-5079, 97-5083, 1999 WL 1289099 (Fed. Cir. Dec. 17, 1999); see Def.'s SJ Brief at 23-28; Def.'s SJ Reply Brief at 13-15.

Plaintiffs' Proposed Fact No. 21: Defendant does not dispute the general observations of the declarants with respect to the frequency of trains on the subject right-of-way or the speed at which those trains traveled, particularly since these observations do not appear to be relevant or material to any of the issues presented to the Court in the parties' present cross-motions for summary judgment. However, Defendant notes that these observations are not entirely consistent with the other historic information relied upon by Plaintiffs. For example, in *The Pacific & Idaho Northern Railway* by Dale Fisk and Don Dopf, *supra*, the authors document daily train use of the subject right-of-way "throughout the 80s and into the early 1990s[,]" with trains running north on the right-of-way on Mondays, Wednesdays and Fridays, and making return trips on Tuesdays, Thursdays and Saturdays. Id. at 38. The same book documents daily passenger train service on the subject right-of-way through July 1950, with freight service continuing thereafter. Id. at 36. During the time period preceding the years covered by the declarants' personal observations "as many as five trains operat[ed] daily" on the subject right-of-way. Id. (noting the observation of a crewman who began working on the line in 1947). The same book refers to state public utility commission (PUC) figures indicating that, in 1994, the Railroad "moved a total of 1,884 car loads of wood chips, green lumber, saw logs, and propane on the line[,]" which was observed to be "considerably less than the volume produced in previous years, but still enough to keep the line open." Id. at 40. The pages from *The Pacific & Idaho Northern Railway* cited by the parties are attached hereto as Defendant's Exhibit 11.

Plaintiffs' Proposed Fact No. 22: Defendant disputes the fact proposed in the first sentence because the subject right-of-way is still being used for railroad purposes. Defendant does not generally dispute the remaining proposed facts, which are based on three declarations submitted in Plaintiffs' Appendix, subject to the following clarification and comments. First, two of the declarants are not plaintiffs/class members in this action. See Decl. of Robert M. Jepsen at 1 ("I am not a class member, as I have filed a separate action in the Court of Federal Claims alleging a taking of more than $10,000.") (Pls.' Ex. 8); Decl. of Doug Dickerson at 1 ("Although I am not a class member to this class action, my property is bifurcated by the former railroad right-of-way that is the subject of this class action.") (Pls.' Ex. 9). To the extent that these proposed facts and the supporting declaration are intended to show that the present use of the subject right-of-way affected the declarants' use of their abutting property, these facts are irrelevant and immaterial to this case since these two declarants are not named plaintiffs or class members. Declarant William Don Lakey states that he is a class representative. Decl. of William Don Lakey at 1 (Pls.' Ex. 10). While it is true that Mr. Lakey is still listed as a class representative in this case, the parties have stipulated that Mr. Lakey and his wife did not own property adjoining the subject right-of-way on the alleged date of taking (December 28, 1995). Accordingly, the parties have "stipulate[d] to the dismissal with prejudice of the claims of the Lakeys in this action." Joint Status Report, Stipulations, and Proposed Schedule for Further Proceedings at 4 (Joint Stipulation No. 12) (Nov. 8, 2002) (Doc. 101). Accordingly, Mr. Lakey's statements regarding any use he made of the right-of-way while the Railroad was still running its trains, is not relevant or material to the issues before this Court.

Moreover, Defendant notes that although these declarants all provide testimony regarding

their use of the subject right-of-way while the Railroad was still running its trains, the declaration testimony only indicates that the Railroad either permitted these uses or at least did not object to those uses as long as they didn't interfere with the Railroad's operations. The declarants do not state that they had a legal right to use or occupy the subject right-of-way, nor do they present any documents evidencing such a right. As explained in Defendant's summary judgment briefs, railroad easements (unlike typical common law easements) are perpetual, exclusive use easements. Accordingly, abutting landowners and the owners of the servient estate burdened by such an easement do not have a right to occupy and use the right-of-way absent permission from the holder of the easement.

Plaintiffs' Proposed Fact No. 23: Defendant disputes the relevance and materiality of these proposed facts for the same reasons articulated above in its response to Plaintiffs' Proposed Fact No. 22. In addition, to the extent that these proposed facts and the supporting declarations are intended to show a change in the burden on the servient estate due to the change from the Railroad's use of the subject right-of-way prior to 1997 (for the running of trains) to the present use of the subject right-of-way (for railbanking and interim trail use), the suggestion that the burden on the servient estate has increased is incorrect. As explained in Defendant's summary judgment briefs, a railroad easement is a perpetual and exclusive use easement. Accordingly, the owner of the servient estate has no right of use or possession. The change in present use therefore does not place further restrictions on the servient estate owner's use of the right-of-way.

Defendant also notes that the "right" of the abutting landowners or servient estate owners to use the subject right-of-way has been the subject of separate litigation between several abutting landowners, including declarant Robert M. Jepsen, and the current trail manager,

FWRT. In the lawsuit involving Mr. Jepsen, the court held that Jepsen had not acquired a prescriptive easement to use the existing 1875 Act easement by virtue of any use he made of the subject right-of-way with the Railroad's consent or permission. See FWRT v. Jepsen, CV01-181-S-ESL, slip op. at 8-11 (D. Idaho Sept. 30, 2002) (attached hereto as Defendant's Exhibit 12). The district court also issued a permanent injunction that, inter alia, precludes Mr. Jepsen from using the subject right-of-way "in a manner which is not permitted or authorized by the National Trails System Act, 16 U.S.C. § 1247(d)." FWRT v. Jepsen, CV01-181-S-ESL, Permanent Injunction at 2 (D. Idaho Nov. 18, 2002) (attached hereto as Defendant's Exhibit 13). This litigation illustrates an important point in the present case – that the change in use does not interfere with the servient estate owners' rights to use or possess the subject right-of-way because those rights are, as a matter of law, extremely limited to begin with.

Plaintiffs' Proposed Fact No. 24: Defendant disputes the relevancy and materiality of these proposed facts, which are not specifically discussed in Plaintiffs' brief (see Pls.' Mem. at 25), for the reasons stated above in response to Plaintiffs' Proposed Fact Nos. 22 and 23. Defendant also disputes the proposed fact that all cattle guards have been removed. As stated in Plaintiffs' Exhibit 2 at page 3, which is a print-out of information on the FWRT's website as of July 3, 2006, there are "a few gates, with locked access at critical road crossings. These gates have livestock proof/motorized vehicle proof side gates which will easily permit hikers, equestrians, and bikers. There are a few livestock control gates at intervals along the trail. Please respect them and leave them as you find them."

Plaintiffs' Proposed Fact No. 25: Defendant disputes the relevancy and materiality of these proposed facts, which are not specifically discussed in Plaintiffs' brief (see Pls.' Mem. at

25), for the reasons stated above in response to Plaintiffs' Proposed Fact Nos. 22 and 23. Moreover, Defendant again points out that an abutting landowners' permissive use of the subject right-of-way by the Railroad does not create a prescriptive right in the right-of-way under Idaho law. See FRWT v. Jepsen, *supra* (Def.'s Ex. 12).

Plaintiffs' Proposed Fact No. 26: Defendant disputes the relevancy and materiality of these proposed facts, which are not specifically discussed in Plaintiffs' brief (see Pls.' Mem. at 25), for the reasons stated above in response to Plaintiffs' Proposed Fact Nos. 22 through 25.

Plaintiffs' Proposed Fact No. 27: Defendant disputes the relevancy and materiality of these proposed facts, which are addressed to complaints of the abutting landowners (who are not proper plaintiffs or class members in this case) of occasional trespasses of their property by third parties (users of the trail). Trespass by third parties is not a permitted use of the subject right-of-way under federal or state law, and is not relevant or material to questions before this Court.

Dated: July 28, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

/s/ Kristine S. Tardiff
E-Mail: kristine.tardiff@usdoj.gov
KRISTINE S. TARDIFF (NH Bar No. 10058)
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577

OF COUNSEL:
HELENANNE LISTERMAN
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Division
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663
TEL: (202) 305-0239
FAX: (202) 305-0506

ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Washington, D.C. 20423

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of July, 2006, I electronically filed the foregoing **Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact** through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Cecilia Fex, Attorney for Plaintiffs
fex@ackersonlaw.com

Nels J. Ackerson, Attorney for Plaintiffs
nels@ackersonlaw.com

Lary C. Walker
walkerlaw_bk@ruralnetwork.net

/s/ Kristine S. Tardiff
E-mail: kristine.tardiff@usdoj.gov

Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net
and
Cecilia Fex, *pro hac vice* (DC Bar No. 435061)
ACKERSON KAUFFMAN FEX, PC
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831
Email: fex@ackersonlaw.com

Counsel for Plaintiffs' Class

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Case No. CV99-0324-MHW<br><br>Honorable Mikel H. Williams |

**CLASS REPRESENTATIVES' REPLY BRIEF IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AS TO THE CATEGORY 1 LANDS**

Dated: September 1, 2006

# TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. The Federal Circuit held that Defendant has taken the Category 1 properties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Linear park use does not fall within the scope of the 1875 Act easement and therefore constitutes a taking of a new easement for recreational trail use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. The 1875 Act grants were limited to railroad purposes. . . . . . . . . . . . . . . . 3

B. Under federal takings jurisprudence, railbanking is irrelevant to the issue of whether Defendant has taken the Category 1 lands. . . . . . . 8

C. Recreational trail use falls outside the scope of the 1875 Act easement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### CASES

*Hash v. United States*,
403 F.3d 1308 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Beres v. United States*,
64 Fed. Cl. 403 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Caldwell v. United States,*
57 Fed. Cl. 193 (2003), *aff'd*, 391 F.3d 1226 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . 10

*Consolidated Rail Corp., Inc. v. Lewellen*,
666 N.E.2d 958 (Ind. App. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Great Northern R. Co. v. United States*,
315 U.S. 262 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-7

*Leo Sheep Co. v. United States*,
440 U.S. 668 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Preseault v. United States*,
100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*") . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8-11

*Russello v. United States*,
464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Toews v. United States*,
376 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11-12

*Toews v. United States*,
53 Fed. Cl. 58 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Union Pacific R.R. Co.*,
353 U.S. 112 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

### FEDERAL REGULATIONS

43 C.F.R. § 243.2 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

43 U.S.C. § 937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

43 U.S.C. § 940 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

General Railroad Right-of-Way Act of March 3, 1875,
ch. 152, 18 Stat. 482 (codified at 43 U.S.C. §§ 934-939 (1982))
("1875 Act") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

The National Trails System Act,
16 U.S.C. §§ 1241-1251 ("Trails Act") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**

*Proposed Installation of MCI Fiber Optic Communications Line Within Southern Pacific Transportation Co.'s Railroad Right-of-Way*,
96 Interior Dec. 439, 1989 WL 434834 (Jan. 5, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INTRODUCTION

Defendant has moved for summary judgment as to the Category 1 lands, contending that the nature of the 1875 Act grant is a public transportation easement, the scope of which is broad enough to include railbanking and interim trail use under the National Trails System Act, 16 U.S.C. §§ 1241-1251 ("Trails Act"). (Doc. 155). Class representatives ("Plaintiffs") have opposed Defendant's motion for summary judgment and cross-moved for summary judgment as to the same category, requesting this Court find Defendant liable for a taking of the class members' property on the grounds that the Federal Circuit has ruled on the issue of liability in favor of the class members and that, in the alternative, the scope of 1875 Act easements is limited to railway purposes only, and that under any analysis the interests granted under the 1875 Act did not encompass railbanking and interim trail use. (Doc. 164). In its reply brief, Defendant asserts that the Federal Circuit did not rule on the issue of liability and that railbanking and interim trails use is within the scope of the 1875 Act easement due to purported broad interests originally granted under the Act. (Doc. 166).

## ARGUMENT

### I. The Federal Circuit held that Defendant has taken the Category 1 properties.

Defendant argues that the Federal Circuit instructed this Court to resolve the question of liability, relying on an out-of-context quote from the Federal Circuit's mandate. Specifically Defendant states that "the Federal Circuit also directed that further proceedings be [undertaken] 'in accordance with the principles set forth in the *Preseault* cases.'" (Def.'s Reply at 2.) According to Defendant, "in order for further proceedings to be in accordance with the *Preseault* decisions," this Court must address the issue of liability. *Id.* But when placed back in context,

the Federal Circuit's instruction with respect to Category 1 offers no such direction to this Court:

> On the railway's abandonment of its right-of-way these owners were disencumbered of the *railway easement*, and *upon conversion of this land to a public trail, theses owners' property interests were taken for public use, in accordance with the principles set forth in the Preseault cases.* On remand the district court shall determine just compensation on the conditions that apply to these landowners.

*Hash v. United States*, 403 F.3d 1308, 1318 (Fed. Cir. 2005) (emphasis added).

The only relevant instruction in this mandate is that "the district court shall determine just compensation on the conditions that apply to these landowners." As to the reference, "in accordance with the principles set forth in the *Preseault* cases," that statement is unambiguously tied with the court's holding that "upon conversion of this land to a public trail, these property interests were taken for public use." *Id.* In other words, the Federal Court ruled that under *Preseault* principles, the conversion of the Category 1 lands to a public trail constitutes a taking. This holding and reference to the *Preseault* cases are consistent with the principles established therein. *See Preseault v. United States* 100 F.3d 1525, 1550 (Fed. Cir. 1996) ("*Preseault II*") (ruling that establishment of public recreational trial "could not be justified under the terms and within the scope of the existing easements for railroad purposes"). Thus, the Federal Circuit never directed this Court to proceed "in accordance with the principles set forth in the *Preseault* cases" in the manner Defendant now argues.

Further, on appeal, the Federal Circuit addressed the question of whether the United States retains any interests in the railway easement granted under the 1875 Act upon discontinuance of the use by the railroad. *See Hash*, 403 F.3d at 1313-18. By answering the question in the negative, the Federal Circuit has already rejected the arguments Defendant now repeats here. The substantial similarity between Defendant's brief on appeal and Defendant's

opening brief in the instant case conflicts with Defendant's assertion that the issues raised now were not considered by the appellate court. (*See* Table of Excerpted Defendant and RTC Arguments: Appeal 2003 and Remand 2006, attached as Ex. 5 to Plaintiffs' Opening Brief ("Pls.' Br.") (Doc. 164).)

Thus, although there is no dispute that the issue of liability was not specifically addressed (Pls.' Br. at 9), for the reasons set out in their opening brief regarding Category 1 (Pls.' Br. at 6-9), Plaintiffs respectfully submit that the mandate of the Federal Circuit instructs this Court to proceed to the issue of damages for the class members whose properties are burdened by the 1875 Act easement.

If this Court rules that it needs to resolve the issue of liability on the merits, it should find that the 1875 Act easements were not so broad in scope so as to encompass recreational trail use as explained in Plaintiffs' opening brief and further below.

## II. Linear park use does not fall within the scope of the 1875 Act easements and therefore constitutes a taking of a new easement for recreational trail use.

### A. The 1875 Act grants were limited to railroad purposes.

Defendant argues that the 1875 Act does not contain express language to limit the easement to railroad use, and therefore the rights granted to railway companies were sufficiently broad to include linear parks and recreational trail use. This argument is unsupportable under the general rules of statutory construction as well as for the reasons set out in Plaintiffs' opening brief.

The 1875 Act contains language limiting the 1875 Act grant to railroad purposes. Section 4 of the 1875 Act sets forth certain requirements with which a railroad company must comply in

order to enjoy the 1875 Act easement: "if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road." 43 U.S.C. § 937.

The quoted language expressly states that if the construction of "said road" is not completed within certain period of time, the granted rights shall be revoked. Put another way, the rights are granted only for the purpose of constructing "said road." Following Defendant's logic and reasoning, because the limiting language does not contain the word "railroad" or any word to that effect, "said road" can be construed to be any public transportation right of way including a recreational trail. But this interpretation is inconsistent with the purpose of the enactment of the 1875 Act, which is solely for the purpose of constructing railroads. *See Great Northern Ry. Co. v. United States*, 315 U.S. 262, 272 (1942) ("The Act is to be liberally construed to carry out its purposes.").

Under the decisional law construing the 1875 Act, it is well-established that the 1875 Act "was designed to permit the construction of railroads through the public lands and thus enhance their value and hasten their settlement." *Great Northern*, 315 U.S. at 272. As the Supreme Court noted, "[t]he House committee report on this bill said: 'The right as originally conferred and as proposed to be protected by this bill simply grants an easement or use for *railroad purposes*.'" *Id.* at 277 (citing H.Rept. No. 4777, 59th Cong., 1st Sess., p. 2 (Ser. No. 4908) and S.Rept. No. 1417, 59th Cong., 1st Sess., p. 2 (Ser. No. 4904)) (emphasis added).

With respect to the above quoted House committee report, Defendant concedes that the report is applicable in general, but suggests that only parts of the report be heeded and argues that "the *Great Northern* court quotes this language simply to support its holding that the railroad

acquires only an easement under the 1875 Act." (Def's Reply at 7 n.4.) The argument is misplaced. No matter the Court's purpose, the Supreme Court unequivocally relied on the House committee report and offered no basis for cherry-picking parts of the report as Defendant suggests this Court do here. According to Congress, the 1875 Act easement was for railroad purposes; this legislative history serves as authority that the Supreme Court relied on in *Great Northern. See id.* Thus, in accordance with the purpose and the legislative history of the 1875 Act, the 1875 Act easement was granted for railroad purposes only.

Subsequent statutes which specifically concern the 1875 Act and addresses the forfeiture issue arising thereunder further support the interpretation that the 1875 Act limits the granted easements to railroad purposes:

> Each and every grant of right of way and station grounds made prior to February 25, 1909, to any railroad corporation under sections [of the 1875 Act], where such *railroad* had not been *constructed* and the period of five years next following the location of said road, or any section thereof, had on that date expired, is declared forfeited . . .[the right of way shall revert to the owner of the legal subdivision].

43 U.S.C. § 940 (emphasis added). The Forfeiture Acts confirm that the 1875 Act granted interests for railroad purposes because if the railroad was not constructed, the rights provided by the 1875 Act would be forfeited.

In sum, the 1875 Act grant was designed for the purpose of constructing railroads and "[t]hat purpose is not fulfilled when the right of way is used for other purposes." *United States v. Union Pacific R.R. Co.*, 353 U.S. 112, 114 (1957) (construing the language "for the construction of said railroad" in a different federal railroad grant).

Defendant, however, relies on a purported contrast between the 1875 Act and an unrelated act from 1884 (Def.'s Reply at 4-5 (citing Act of July 4, 1884, 23 Stat. L. 73)), to

support its contention that the 1875 Act contains no language limiting the grant to railroad use. But as noted by the authority upon which Defendant relies, "where Congress includes particular language in one section of a statute but omits it in another section of the *same* Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (Def's Reply at 5) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)) (emphasis added). The 1884 Act and the 1875 Act are not the *same* acts and the comparison between the two acts thus lends no support to Defendant's position. *See Russello*, 464 U.S. at 23; *Beres v. United States*, 64 Fed. Cl. 403, 416 (2005) ("Because legislative goals change over the years, the risk of using subsequent legislation or subsequent legislative history to interpret the intent of an earlier congressional enactment is intuitively obvious.").

The interpretation that the 1875 Act granted easements for railroad purposes only is consistent with the general rule of construction that "any ambiguity in a grant is to be resolved favorably to a sovereign grantor-'nothing passes but what is conveyed in clear and explicit language.'" *Great Northern*, 315 U.S. at 272 (citation omitted). The interests the Defendant now claims are ones originally granted to railroad companies. *See Preseault II*, 100 F.3d at 1552 (scope of easement turns on "the terms of the easement when *first* granted") (emphasis added). Those interests were vested at the turn of the 19th century when railroad companies complied with the requirements set forth under the Act and when the legal subdivisions were patented to settlers subject only to those interests. *See* 43 U.S.C. § 937; *see also Leo Sheep Co. v. United States*, 440 U.S. 668, 687-88 (1979). Thus, the question in front of this Court can be framed as one of whether a railroad company at the turn of the 19th century could have accepted the 1875 Act grants and used them to construct recreational trails. The answer is clearly no. Under all

pertinent authority (*see* Pls.' Br. at 14-15), and the general rules of construction here, "nothing passes but what is conveyed in clear and explicit language." *See id.* The 1875 Act contains no language to allow for use of the 1875 Act easement as a recreational trail as Defendant now claims. To the contrary, under applicable statutory construction, the grants were limited to railroad purposes only.

Furthermore, authority construing the 1875 Act holds that the easements were granted for railroad purposes only. The Supreme Court addressing its earlier holding in *Great Northern* concerning the 1875 Act noted that "*only* an easement for *railroad purposes* was granted." *United States v. Union Pacific R.R. Co.*, 353 U.S. at 119 (emphasis added).[1] Additionally, charged with the execution of the 1875 Act, the Department of the Interior interpreted the Act to grant rights for railroad purposes only:

> §243.2 *Nature of Grant*. A railroad company to which a right-of-way is granted does not secure a full and complete title to the land on which the right-of-way is located. *It obtains only the right to use the land for the purposes for which it is granted and for no other purpose*, and may hold such possession, if it is necessary to that use, *as long and only as long as that use continues*.

43 C.F.R. § 243.2 (1938) (emphasis added). Even more recently, the Interior continued to interpret the scope of the 1875 Act grant to be limited to railroad use only. In discussing the nature and scope of the 1875 Act easement, the Department of the Interior explained that the 1875 Act easement was "impliedly subject to termination if the easement is no longer used for railroad purposes." *Proposed Installation of MCI Fiber Optic Communications Line Within Southern Pacific Transportation Co.'s Railroad Right-of-Way*, 96 Interior Dec. 439, 450-51, 1989 WL 434834 (Jan. 5, 1989).

---

[1] *See also* Pls.' Br. at 14-15.

Despite the plain statutory language, decisional law, legislative history, and pertinent regulations establishing that the 1875 Act easement is limited to railroad use only, Defendant relies on state deed-construction decisional law to make its case for how the federal statute should be construed. (Def.'s Reply at 5-7) (citing *Chevy Chase Land Co. v. United States*, 733 A.2d 1055 (Md. 1999)). Defendant's reliance on the state law case is unavailing, however, because applicable law on the issue of general rules of statutory construction concerns title passing in federal grants rather than application of deed construction under state law.

**B. Under federal takings jurisprudence, railbanking is irrelevant to the issue of whether Defendant has taken the Category 1 lands.**

As Plaintiffs note in their opening brief, the Federal Circuit has twice held that "railbanking" a railroad line for future potential restoration to railroad use is immaterial to the analysis of whether rails-to-trails conversion constitutes a taking. (Pls.' Br. at 26). Specifically, the Federal Circuit has held that although railbanking allows for the potential for future restoration to railroad uses, the potential for such use is speculative. *Preseault II*, 100 F.3d at 1547-48; *Toews v. United States*, 376 F.3d 1371, 1381 (Fed. Cir. 2004). As such, the actual use for an indefinite "interim" period – linear park or recreational trail use – remains the focus of the issue. Accordingly, railbanking is irrelevant to the issue of whether the government has taken the Category 1 lands.

Defendant argues that the Federal Circuit's decisions concerning "railbanking" are inapplicable to the instant case. (Def's Reply at 9-13.) Defendant relies heavily on efforts to distinguish the *Preseault II* and *Toews* decisions from the instant case, in part reasoning that those two cases turn on state law. To be sure, both of those cases involved an application of state

law to address the nature and scope of the easements granted through private deeds. But whereas it is true that deed construction under Vermont, California, or other state law is unhelpful to the statutory construction here, Defendant confuses that part of the analysis with the Federal Circuit's ruling under federal takings jurisprudence that speculation may not provide a basis for the taking of private property. Specifically, the Federal Circuit explains:

> There is a reality test in *takings law*. It is clear from the record that for the foreseeable future these lands will be used for the recreational trail project. Whether there ever will be a light rail system or other railroad service over these paved routes in Clovis is a matter of speculation about the distant future, based on uncertain economic and social change, and a change in government policy by managers not yet known or perhaps even born. Such speculation does not provide a basis for denying protection to existing property rights under the Constitution.

*Toews*, 376 F.3d at 1381 (emphasis added).

Thus, under takings jurisprudence, "railbanking" is immaterial to questions of liability, not because of *state* law – state law played no role in this part of the Federal Circuit's analysis.[2] Rather, under federal takings jurisprudence, railbanking is speculative and "speculation" provides no "basis for denying protection to existing property rights under the Constitution." *Id.* Accordingly, railbanking is irrelevant to a court's analysis of whether there has been a taking of vested property interests. *See id.*

Defendant represents to this Court that the *Preseault II* decision is "not controlling here" because a certain question presented there – quoted by Defendant – was "'not now before'" the

---

[2] Defendant labors to distance this case from the *Preseault II* and *Toews* decisions. A reading of those decisions shows that the only point of distinction from this case concerns the narrow exercise of determining the nature of interests granted in the private deeds. Apart from that process, the remaining steps and approach to the analysis in both cases apply federal takings jurisprudence, as is evident from the discussion found therein. Therefore, these two cases are controlling authority to the issues presented herein.

court which, according to the Defendant "is the very question that is now before this Court." (Def.'s Reply at 10-11.) This representation is not only flat wrong but Defendant's confusion on this issue is remarkable given Defendant's familiarity with the relatively complex issue of accrual and the triggering of a rails-to-trails takings case under federal takings jurisprudence. *See Caldwell v. United States*, 57 Fed. Cl. 193 (2003), *aff'd*, 391 F.3d 1226 (Fed. Cir. 2004). The quote at issue reads as follows:

> Whether, at the time a railroad applies to abandon its use of an easement limited to railroad purposes, a taking occurs under an ICC order to "railbank" the easement for possible future railroad use, and allowing in the interim for use of the easement for trail purposes, is a question not now before us. We offer no opinion at this time on that question.

(Def.'s Reply at 10, *quoting Preseault II*, 100 F.3d at 1552.) The Federal Circuit's statement regarding what was "not now before" the court had nothing to do with the issues presented here. Rather the point made by the court in the portion of the decision quoted by Defendant concerned the question of whether there is a taking under federal law at the moment a NITU is issued but before there is an occupation by a trail sponsor – i.e., "at the time a railroad applies" for and an order is issued, but before the conversion to trail use has taken place. *Preseault II*, 100 F.3d at 1551-2. This correct reading of the court's statement on point is clear when read in the context of that part of the decision. *Id*. Defendant's confused reading of the decision and/or it efforts to obfuscate the issues should be rejected summarily.[3]

---

[3] Defendant likewise attempts to weaken the controlling impact of the decision by referring to the issues addressed therein as "dictum." (Def.'s Reply at 10 n.6.) Just as with its usage of the phrase "plurality" to attempt to discount the precedential weight of *Preseault II* (*see* Pls.' Br. at 9-10), the Defendant's efforts to escape the decision's lengthy and careful analysis concerning questions of liability in a federal takings case should be rejected.

**C. Recreational trail use falls outside the scope of the 1875 Act easement.**

As noted in Plaintiffs' opening brief, use of a railroad easement for a linear park or a nature trail is an entirely different use. (Pls.' Br. at 22-25.) In *Preseault II* and in *Toews*, the Federal Circuit analyzed in detail the reality of the differences between recreational trail use and railroad use. *Preseault II*, 100 F.3d at 1542-43; *Toews*, 376 F.3d at 1376-77.

Nonetheless, Defendant presents a contrary view to that taken by the Federal Circuit and relies on select state cases that the Federal Circuit expressly rejected in its analysis on point. (Def.'s Reply at 13-15.) As the Federal Circuit explains, "[f]or reasons peculiar to the particular circumstances, these few cases depart from the well established common law rules governing easements, and carry *little persuasive authority*." *Preseault II*, 100 F.3d at 1544 (emphasis added).

In furtherance of its argument on this issue, Defendant implies that Plaintiffs have disingenuously coined the phrase "linear park" to influence the analysis. (Def's Reply at 13.) In fact, it is not Plaintiffs but rather the Federal Circuit, along with other courts, that aptly uses the phrase "linear park" to capture the purpose for which the right of way is put under the Trails Act. *See Toews*, 376 F.3d at 1379 ("a public transportation easement defined as one for railroad purposes is not stretchable into an easement for a recreational trail and linear park for skateboarders and picnickers"); *Toews v. United States*, 53 Fed. Cl. 58, 62 (2002) ("[t]he current use, a linear park, is, in short, fundamentally different in kind than a railroad purpose."); *Consolidated Rail Corp., Inc. v. Lewellen*, 666 N.E.2d 958, 960 (Ind. App. Ct. 1996) (discussing that a right of way was to be deeded "for a linear park."). A linear park for recreational activities is precisely the use to which the right of way is put in the instant case and for the reasons

enumerated by the Federal Circuit (*see* Pls.' Br. at 23-25), such use is manifestly differently from railroad use.

**CONCLUSION**

The 1875 Act easement is limited for railroad purposes and is "not stretchable into an easement for a recreational trail and linear park for skateboarders and picnickers, however desirable such uses may be for these linear strips of land." *Toews*, 376 F.3d at 1379. Although Defendant may exercise its legal power to impose such use, in so doing it must "pay the just compensation mandated by the Constitution." *See id.* Thus, for the foregoing reasons and the reasons presented in their opening brief, Plaintiffs move this Court for summary judgment in favor of Plaintiffs as to the Category 1 lands.

Dated: September 1, 2006

Respectfully submitted,

ACKERSON KAUFFMAN FEX, PC

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
CECILIA FEX, *pro hac vice* (DC Bar No. 435061)
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831

Of Counsel:
Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net

*Counsel for Plaintiffs' Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 1st day of September, 2006, I electronically filed Class Representatives' Reply Brief in Support of their Cross-Motion for Summary Judgment as to the Category 1 Lands, through the CM/ECF system, which caused the following parties or counsel to be served with this document by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
kristine.tardiff@usdoj.gov

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
Counsel for Plaintiffs' Class