U.S. DISTRICT COURT
DISTRICT OF IDAHO
Filed at 4:30 p. M
NOV 27 2001
CLERK, U.S. DISTRICT COURT
By VG. Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROBERT HASH and GERLENE HASH, WILLIAM DON LAKEY and NANCY HAWKINS, for themselves and all others similarly situated,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. CV 99-324-S-MHW

**MEMORANDUM DECISION**

## INTRODUCTION

Currently before the Court for its consideration is the Examination of the Original Conveyances to the Railroad for the Purpose of Determining the Nature of the Property Interest Acquired by the Railroad and the Nature of the Property Interest Retained by the Grantors. On August 8, 2001, the Court conducted a hearing on the above matter with counsel for all parties present. The Court is now prepared to issue its Memorandum Decision determining the nature of the property interest acquired by the Railroad and the nature of the property interest retained by the grantors.

# I.

# BACKGROUND.

Plaintiffs each own an interest in land that once constituted part of a railroad corridor operated by the Pacific and Idaho Northern Railroad Company ("Pacific & Idaho") between Weiser and New Meadows, Idaho, but that has since been converted to interim use as a recreational trail (the "Weiser Trail") by order of the Interstate Commerce Commission ("ICC") under the provisions of the National Trails System Act, 16 U.S.C. § 1241, *et seq.* (the "Rails-to-Trails Act"). Plaintiffs allege that the conversion of their property for interim trail use has deprived them of their rights to possession, control and enjoyment of their land and constitutes a taking for which they are entitled just compensation under the Fifth Amendment of the United States Constitution.

Plaintiffs maintain that the subject right-of-way is made up of 192 original parcels. Although Plaintiffs acknowledge that these parcels were conveyed to the railroad, Plaintiffs argue that the method of conveyance is immaterial because the railroad only recorded an easement to use the railroad right-of-way for railroad purposes. Plaintiffs further assert that they are the owners in fee simple of the land burdened by this restricted use easement and that Idaho law would have terminated these easements but for the ICC decision that authorized the right-of-way to be used for interim trail use.

The briefing presently before the Court is limited to an examination of the original conveyances to the Pacific & Idaho for the purpose of determining the nature of the property interest acquired by Pacific & Idaho at the time of conveyance and the nature of the property interest, if any, retained by the original grantors. To further this process, the parties agreed to

divide railroad company title issues into categories and identify the relevant portions of the right-of-way corridor with the methods by which the railroad company obtained its rights to use the corridor of land. The parties also agreed to select sample documents representing the categories and to provide the Court with briefs on the relevant title by reference to the representative documents. *See* Joint Appendix for representative documents. Category 1 encompasses conveyances from the United States to Pacific & Idaho under the General Railroad Right-of-Way Act of March 3, 1875, ch. 152, 18 Stat. 482 (codified as 43 U.S.C. §§ 934-939 (1982)) (the "1875 Act") and includes 24 parcels of property consisting of approximately 895 acres of land.[1] Categories 2 through 9 encompass lands that were conveyed to Pacific & Idaho by a warranty deed or a quitclaim deed. Category 10 contains a number of original parcels for which no conveyance instrument has been located. For the purposes of this opinion Category 10 Parcels will be treated as having been acquired by Pacific & Idaho through adverse possession. Finally, Category 14, an overlapping category, contains deeds that were executed after Pacific & Idaho already entered and possessed the right-of-way corridor.

As a preliminary matter, the conveyance of strips of land in fee is disfavored in some states as a matter of public policy and therefore gives rise to a presumption that the conveyance of a strip of land is an easement rather than a fee. This is commonly referred to as the "strip and gore doctrine." Plaintiffs apply this principle to support their contention that most of the subject deeds conveyed only an easement even where the otherwise ambiguous language of the deeds indicates the conveyance of fee simple title.

---

[1] This acreage represents approximately 60% of the land at issue in this litigation.

However, in *C & G, Inc. v. Rule*, 25 P.3d 76 (Idaho 2001), the Idaho Supreme Court expressly declined to apply the strip and gore doctrine to railroad deeds. In so doing, the court acknowledged that although it "has tacitly recognized the existence of the 'strip and gore' doctrine, it has only done so in the context of vacated alleys." *Id.* at 81. In addition, the court stated that "[w]e have never recognized such a policy in a railroad deed construction case and are reluctant to do so in light of the legislature's mandate in favor of conveying fee simple title." *Id.* Thus, the strip and gore doctrine does not apply to railroad lands under Idaho law.

The Court finds that this same analysis applies to the construction of the deeds at issue in this case. Therefore, this Court will not apply a presumption that the railroad deeds conveying strips of land must be interpreted as conveying only an easement.

As another introductory matter, the Court points out that deeds are generally structured in a similar manner and contain several cognizable parts. These parts typically include: (1) the granting clause, which is found in the premises of the deed; (2) the consideration for the conveyance; (3) the descriptive clause, which generally follows the granting clause and provides a more detailed description of the property conveyed; and (4) the habendum clause. *See* 23 Am.Jur.2d Deeds §§ 18-24 (1983).

Under Idaho law, the goal of deed interpretation is to determine and give effect to the intention of the parties. The Idaho Court of Appeals has held that "[i]n construing a deed of conveyance, the trial court's primary function is to seek and give effect to the real intention of the parties." *Bumgarner v. Bumgarner*, 862 P.2d 321, 329 (Idaho Ct. App. 1993). To determine the intent of the parties, Idaho follows the "four corner rule." That is, "the intent of a plain and unambiguous deed must be ascertained from the deed, and parol evidence is not admissible." *City*

*of Kellogg v. Mission Mountain Interests Ltd.*, 16 P.3d 915, 919 (Idaho 2000); *see also C & G*, 25 P.3d at 78 ("In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument.")

Therefore, in order for the Court to determine the nature of the property interest acquired by Pacific & Idaho at the time of conveyance and the nature of the property interest, if any, retained by the original grantors, the Court will examine each deed in each category on an individual basis.

**II.**

**CATEGORY 1.**

Again, Category 1 encompasses conveyances from the United States to Pacific & Idaho under the 1875 Act.[2] Thus, a conveyance under this category would occur as follows: The United States owned the land and Pacific & Idaho acquired easements to the land under the 1875 Act. When settlers would later obtain federal grants through patents issued pursuant to the Homestead Act of 1862, the patents would be granted subject to, *inter alia*, the 1875 Act easements that already encumbered the land. The issue then becomes whether the United States retained a reversionary interest in the subject parcels or if any reversionary interest accompanied the patents and vested in the homesteaders. Here, while Defendant United States has not asserted that it owns underlying fee, it does argue that it owns the reversionary interest. Plaintiffs, however, contend that they own any reversionary interest for the majority of the parcels in Category 1.[3]

---

[2] A discussion of the 1875 Act appears in the following subsection.

[3] Concerning Tabs 1-4 in the Joint Appendix, Plaintiffs represent that they will stipulate to conveyance in fee to Pacific & Idaho. With respect to Tabs 7-10, 12, 15-17,

**A. The 1875 Act.**

The 1875 Act granted "an interest suitable for railroad purposes – a right-of-way, which, by definition, carried with it the right to exclusive use and occupancy by land." *State of Idaho v. Oregon Short Line R.R. Co.*, 617 F. Supp. 207, 212 (D. Idaho 1985). The United States Supreme Court has interpreted the 1875 Act as conveying only an "easement" to the acquiring railroad rather than a fee simple interest. *See Great Northern Ry. Co. v. United States*, 315 U.S. 262, 277 (1942). Accordingly, the parties in the present litigation agree that Pacific & Idaho received an easement under the 1875 Act, not a common law easement.

In 1920, Congress enacted a statute which allowed land grant railroads to convey any portion of their rights-of-way to "any State, county, or municipality . . . to be used as a public highway or street[,]" provided that the railroad retain at least 50 feet on either side of the center line of its railroad (i.e., a 100-foot wide right-of-way). Act of May 25, 1920, ch. 197, 41 Stat. 621 (codified at 43 U.S.C. § 913). This statute did not, however, authorize the government to convey any portion of its reversionary interest in 1875 Act rights-of-way to the owners of lands abutting or traversed by such rights-of-way. Accordingly, the Court finds that Plaintiffs could not and did not receive a vested interest in the subject properties under 42 U.S.C. § 913.

In 1922, Congress enacted a separate but related piece of legislation that was known as the Railroad Right-of-Way Abandonment Act of March 8, 1922, 42 Stat. 414 (codified at 43 U.S.C. § 912) (referred to herein as "Section 912"). Section 912 was intended "to ensure that railroad rights of way would continue to be used for public transportation purposes." *Vieux v. East Bay*

---

Plaintiffs insist that the language in such deeds is ambiguous. Further, Plaintiffs argue that Tabs 5-6, 11, 13-14, 18 are unambiguous grants of easements to Pacific & Idaho.

*Regional Park Dist.*, 906 F.2d 1330, 1335 (9th Cir. 1990); *see also Oregon Short Line R.R.*, 617 F. Supp. at 212 (finding that Sections 912 and 913 "evince an intent to ensure that railroad rights-of-way would continue to be used for public transportation purposes, primarily for highway transportation").

Plaintiffs' contention that they own fee title to the subject lands and any reversionary interest is based on *City of Aberdeen v. Chic. & N.W. Transp. Co.*, 602 F. Supp. 589 (D.S.D. 1984), in which the court held that Section 912 does not apply to rights-of-way granted under the 1875 Act. However, despite Plaintiffs' assertions to the contrary, Section 912 does apply to this case because, in 1988, Congress effectively repealed those portions of Section 912 that had allowed the government to relinquish its interest in these rights-of-way to adjacent landowners. *See Oregon Short Line R.R.*, 617 F.Supp. 207 (D. Idaho 1985); *see also* 16 U.S.C. § 1248(c) (providing that, for abandonment or forfeiture of rights-of-way after October 4, 1988, title reverts to the United States). Thus, after October 1988, the United States had no authority to relinquish its reversionary interest in 1875 Act rights-of-way to adjacent landowners such as Plaintiffs.

Based on the foregoing, the Court finds that the United States held the reversionary interest in the subject rights-of-way when the ICC issued the notice of interim trail use in 1995. Accordingly, Plaintiffs did not own a vested property interest in any of the 1875 Act rights-of-way at issue when those rights-of-way were railbanked and interim trail use was authorized by the ICC.

## III.

## CATEGORIES 2 THROUGH 9.

### A. Categories 2 and 3.

Categories 2 and 3 contain deeds restricting the use of the conveyed property to railroad purposes and contain a reverter clause. A conveyance under these categories would occur as follows: Individuals or companies owned certain parcels of land. Pacific & Idaho approached such landowners and requested a rights-of-way. Warranty deeds were subsequently executed. The issue in these categories is whether the representative deeds conveyed fee simple title to the railroad or merely a fee simple determinable.

The representative deed for Category 2 is the deed for Parcel 94. The stated consideration for Parcel 94 is fifty dollars ($50.00) for approximately 2.23 acres of land. The grantor was The New England Mortgage Security Company of Connecticut ("N.E. Mortgage") and the grantee is Pacific & Idaho.

The granting clause provides that N.E. Mortgage "does grant, bargain, sell, convey and confirm unto [Pacific & Idaho] and to its successors and assigns forever, all that certain tract of land situate, lying and being in the County of Washington, State of Idaho described as follows . . . ." The description clause indicates that the "tract of land" generally identified in the granting clause is "[a] strip of land one hundred feet wide being fifty feet on each side of the center line of the [Railroad]."

The habendum clause states, "TO HAVE AND TO HOLD; all and singular the above mentioned and described premises, together with all and singular the above mentioned and

described premises, together with the appurtenances, unto the said party of the second part, and to its successors and assigns forever."

Following the habendum clause, the deed for Parcel 94 contains three conditions. First the deed states that,

> This conveyance is made upon the express condition that the property herein conveyed is to be used for the maintainance [sic] and operation of a railroad, and if the said premises shall cease, at any time to be used for railroad purposes, and no line of railroad shall be maintained over and across the same then in and in such event the said property herein granted shall revert to the grantor its successors and assigns[.]

Second, the grantor reserved for itself, its successors and assigns, the right to have and use one wagon crossing over and across the railroad. Third, the deed requires the railroad to "construct and maintain a suitable fence upon both sides of the track along the boundary line of the premises herein conveyed."

The deed for Parcels 158 and 164, the sample deed for Category 3, is a warranty deed dated January 10, 1911. The grantor was Payette Lumber and Manufacturing Company and the stated consideration is one dollar ($1.00).[4] The granting clause of this deed states that the lumber company "does by these presents sell and convey unto the [Railroad], its successors and assigns,

---

4 The consideration paid by a railroad company is sometimes viewed as evidence of the parties' intent to convey fee title or an easement. *See, e.g.*, *Clark v. CSX Transp., Inc.*, 737 N.E.2d 752, 759 (Ind. Ct. App. 2000). However, "nominal consideration, alone, does not make the instrument ambiguous, nor does it create an easement." *Id.* *See also Machado v. So. Pac. Transp. Co.*, 233 Cal.App.3d 347, 359 (Ct. App. 2d Dist. 1991) (declining to attribute any significance to the $1.00 consideration stated in the deed and noting that the court was unable to ascertain whether the nominal amount was the true consideration for the conveyance).

all that piece, pieces, parcel and parcels of land, and all the following described real estate, privileges and rights . . . ."

The descriptive clause identifies the land as:

> A strip of land one hundred (100) feet wide, of which the center line of the route and line of [Pacific & Idaho] as the same is now surveyed and constructed, is the center . . ., being fifty (50) feet wide on each side of the center line of said route, over, across, and through the following [described tracts].

The habendum clause in the deed for Parcels 158 and 164 reads in part as follows:

> TO HAVE AND TO HOLD the same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, unto the said part of the second part, its successors and assigns forever, so long as they or either of them shall use said property for right of way purposes, and in the event that said property shall cease to be used for right of way purposes, it shall then and thereupon and thereby revert to said grantor herein, its successors and assigns.

Looking to the general deed construction, the Court finds that the Category 2 and 3 deeds are examples of a fee simple determinable, i.e., a fee simple conveyance with a possibility of reverter.[5] Conversely, the Court does not find that the presence of reversionary interest language requires these deeds to be interpreted as conveying easements. The deeds falling in Categories 2 and 3 contain explicit language that mandates a reversion of conveyed rights upon cessation of the

---

[5] Restatement (First) of Property § 44 (1936) states that "[a]n estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple; and (b) provides that the estate shall automatically expire on the occurrence of a stated event." The Court also notes that court decisions interpreting similar deeds under the law of other states have found that such deeds conveyed a fee simple determinable. *See, e.g.*, *State of Oregon v. Tolke*, 586 P.2d 791, 795 (Or. 1978) (holding that a warranty deed conveying a strip of land to a railroad and further providing that the land shall immediately revert to the grantors if it is abandoned or ceases to be used as a railroad right of way was "a classic example of the creation of a fee simple determinable").

corridor for railroad use. Specifically, the Parcel 94 deed refers to cessation of use for "railroad purposes" while the deed for Parcels 158 and 164 refers to cessation of "right of way purposes." Accordingly, the Court finds that the interests conveyed to Pacific & Idaho in the Parcel 94, 158, and 164 deeds terminated upon cessation of the corridor for railroad use and reverted back to the grantors.

**B. Categories 4 and 7.**

Category 4 contains deeds with language in the granting clauses that convey all estate, right, title and interest in and to the subject property, including the reversionary and remainder interests. Category 7 contains deeds that conveyed a parcel or tract of land, together with "all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining, and the rents, issues, and profits thereunder."

The Court notes that Plaintiffs stipulate that all of the representative deeds for Category 4 (Parcels 13-15, 17, 19, and 23) and one of the representative deeds for Category 7 (parcel 16 at J.App.3) "are in the form of deeds conveying fee simple and contain no restrictions, qualification, or other indication that the parties intend other than a fee simple conveyance" to Pacific & Idaho, and are therefore willing to stipulate that the deeds conveyed fee title.

As to the remaining parcel in Category 7, Parcel 128, Plaintiffs' arguments do not operate to convert otherwise ambiguous fee simple conveyances into mere easements. Therefore, the Court finds that the Pacific & Idaho also acquired fee simple title to Parcel 128.

**C. Category 5.**

Category 5 contains deeds with granting clauses that are the same or substantially similar to the deeds in Category 4, but also contain "right of way" language in the granting clause. When

a deed to any grantee contains a granting clause that conveys a "right-of-way," the deed generally will be interpreted as conveying an easement.

However, the mere mention of the term "right-of-way" does not necessarily constitute the conveyance of an easement limited to railroad purposes. Rather, the term "right-of-way" may be used to describe a right belonging to a party (i.e., a right of passage over a tract of land), or it may be used to describe a strip of land which railroad companies acquire to construct their railroads (i.e., the land itself). *See Joy v. St. Louis*, 138 U.S. 1, 44 (1891). These two distinct meanings of the term right-of-way have long been recognized under Idaho law. *See Oregon Short Line. Ry. Co. v. Yeates, Assessor*, 17 P. 457, 460 (Idaho 1888) (holding that the term "right-of-way" "sometimes is used to mean the mere intangible right to cross" and "is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its road-bed").

Further, in 1864, Idaho's territorial legislature enacted a fee simple presumption statute which provided that "[a] fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." 1864 Idaho Session Laws § 43 at 528. This fee simple presumption statute appears today in Idaho Code § 55-604. Further, as noted *supra*, the Idaho Supreme Court has found that the state's fee simple presumption statute applies to railroad deeds. *See C & G* 25 P.3d at 81.

The deed for Parcels 109 and 111, one of the sample deeds for Category 5, reads in part, as follows:

> [Grantors] do grant, bargain, sell, convey and confirm unto [Pacific & Idaho], and to its successors and assigns forever, all the following described real estate . . . .

> A perpetual right of way through, over, and across [described land] . . . . the said right of way so conveyed being fifty feet wide each side of the center line of the railway belonging to [Pacific & Idaho] as the same is now located, constructed and operated on the ground; said right of way being one hundred (100) feet wide along the entire route across said premises occupied and used by [Pacific & Idaho].
>
> TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of the said [grantors].
>
> TO HAVE AND TO HOLD, all and singular the above mentioned and described premises, together with the appurtenances, unto [Pacific & Idaho] and to its successors and assigns forever. And the [grantors] and their heirs, the said premises in the quiet and peaceable possession of [Pacific & Idaho] its successors and assigns, against the [grantors] and their heirs, and against all and every person and persons whomsoever, lawfully claiming or to claim the same, shall and will warrant and by these presents forever defend.

The deed for Parcel 116, also a sample deed for Category 5, provides as follows:

> [Grantors] have granted, bargained and sold and by these presents do grant, bargain, sell, convey and confirm unto [Pacific & Idaho], and to its successors and assigns forever, all the following described real estate . . . .
>
> A right of way one hundred feet in width being fifty feet on each side of the center line of the survey of [Pacific & Idaho] . . . and [Pacific & Idaho] will also put a box across the road bed upon such right of way . . . and will fence such right of way.

In the cases cited by Plaintiffs, the deeds under consideration had granting clauses that granted a "right-of-way," not "real estate" or a "parcel of land" that is simply described as a right-of-way. When the term "right-of-way" is used in the descriptive clause to identify and describe land or "real estate" granted in the granting clause, the use is treated as merely descriptive of the

land granted and not as limiting the grantee railroad's use of the property. *See, e.g.*, *Johnson v. Valdosta, M. & W.R. Co.*, 150 S.E. 845, 846-47 (Ga. 1929) (holding that the use of the phrase "for a railroad right-of-way" in the descriptive clause "was intended to describe the land granted, and not to fix the tenure of the grantee therein"); *see also Mayberry v. Gueths*, 777 P.2d 1285, 1288 (Mont. 1989) (finding deed to railroad conveyed a fee interest despite the use of the term "right-of-way" in the descriptive clause).

Accordingly, the Court finds that the Category 5 deeds convey "real estate," not a "right-of-way" across real estate owned by the grantor. Although the term "right-of-way" is used in the representative deeds, it is used simply to describe and locate the land granted and not to limit the estate granted. Further, all of the other language in the Category 5 deeds supports the conclusion that these deeds conveyed fee title to the railroad.

**D. Categories 6 and 8.**

Category 6 contains deeds with granting clauses that are the same or substantially similar to the deeds in Category 4, but also contain "as a perpetual right of way" for a rail line language in the habendum clauses. Category 8 contains deeds with granting clause language that is the same or similar to the deeds in Category 6, but that also contain purpose language. While Plaintiffs concede that the Category 6 and 8 deeds "contain language that is also found in deeds conveying the fee," Plaintiffs also contend that the use of the term "right-of-way" in the deeds requires the Court to conclude that the deeds conveyed only an easement for railroad purposes.

Again, the mere use appearance of the term right-of-way within the four corners of the deeds does not necessarily indicate an intent to limit the estate granted to a mere easement. Rather, the Court must also look at the context in which the term "right-of-way" is employed and

the other language used in the deed. Looking to the deeds in Categories 6 and 8, the mere appearance of the term "right-of-way," without any other expression of limitation of the title to the estate conveyed, is not sufficient to convey only an easement. Accordingly, the Court finds that the deeds in Categories 6 and 8 conveyed fee simple title to Pacific & Idaho.

**E. Category 9.**

Category 9 contains deeds that generally convey a strip or tract or parcel of land, together with "all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said party of the second part, its successors and assigns forever." Plaintiffs contend that the mere use of the term "right-of-way" in the captions of the representative deeds for Category 9 requires the Court to finds that these deeds conveyed only an easement for limited purposes. However, the Idaho Supreme Court has held that when the term "right-of-way" appears on a deed cover sheet, but is not found in the granting or habendum clauses, the use of the term right-of-way "merely describes generally the strip of property acquired by the [railroad] and does not express a limitation of the title to the estate conveyed." *See C & G*, 25 P.3d at 81. Accordingly, the Court finds that the Category 9 deeds conveyed fee simple title to Pacific & Idaho.

## IV.

## CATEGORY 10.

Category 10 deeds encompass those parcels of land that the railroad acquired by adverse possession. There are two decisions from the Idaho Supreme Court that support the conclusion that a railroad can acquire fee title by adverse possession. In *Oregon Short Line R.R. Co. v. Caldwell*, 39 Idaho 71, 226 Pac. 175 (1924), the court was presented with the question of whether

the City of Caldwell had a right to construct a road across the railroad's right-of-way as a result of the dedication of a street by the filing of a plat in 1885. The court held that the City had no such right because the railroad was -- as a result of its road construction in 1882 and 1883 "in open and notorious possession of the right of way before any rights attached by virtue of the attempted [street] dedication." 39 Idaho at 76. The court further noted that "[t]here can be no more effective means of giving notice of a claim to a right of way than the building and operation of a railroad over it." *Id.* In sum, the *Caldwell* decision supports the conclusion that a railroad can acquire fee title by adverse possession.

In *O'Brien v. Best*, 194 P.2d 608 (Idaho 1948), the court was asked to quiet title to a parcel of land (referred to as "Parcel 2"), which had been used and occupied by the railroad since 1903-1904, when the railroad changed the location of its main line. The railroad was claiming title to this parcel by adverse possession. The court found that the railroad met the burden of proving its claim for adverse possession by proof that the railroad had paid taxes and adversely used the parcel since the realignment of its tracks.

In light of the above cases, the Court finds that Pacific & Idaho acquired fee title to lands it adversely possessed.

**V.**

**CATEGORY 14.**

The deeds falling into Category 14, an overlapping category, were executed after Pacific & Idaho already entered and possessed the right-of-way corridor. Plaintiffs contend that a deed executed after the use of the land had already been appropriated for railroad purposes was as a mere recognition of the easement taken for railroad purposes; it did not expand interests that

Pacific & Idaho already possessed by its taking nor did it diminish the landowner's interest further beyond what had already been lost.

However, under Idaho law, railroads are authorized to acquire fee simple title by purchase, donation or condemnation. In addition, as discussed *supra*, the strip and gore doctrine does not apply to railroad lands under Idaho law. Moreover, Idaho has a fee simple presumption statute that was in existence at the time of the subject conveyances and that the Idaho Supreme Court has determined applies to railroad deeds. *See C& G*, 25 P.3d at 81. Accordingly, the fact that the deeds in Category 14 were executed after Pacific & Idaho already entered and possessed the right-of-way corridor does not bar Pacific & Idaho from acquiring fee simple title.

## VI.

## SUMMARY AND CONCLUSION.

To summarize, the Court finds as follows: (1) Plaintiffs did not own a vested property interest in the 1875 Act rights-of-way found in Category 1 when such rights-of-way were railbanked and interim trail use was authorized by the ICC in 1995. Rather, the United States held the reversionary interest in such rights-of-way; (2) The interests conveyed to Pacific & Idaho in the representative deeds for Categories 2 and 3 terminated upon cessation of the corridor for railroad use and reverted back to the grantors; (3) Pacific & Idaho acquired fee simple title to the deeds found in Categories 4 and 7; (4) The Category 5 deeds conveyed "real estate," not a "right-of-way" across real estate owned by the grantor. Thus, the Category 5 deeds conveyed fee title to Pacific & Idaho; (5) In Categories 6 and 8, the mere appearance of the term "right-of-way," without any other expression of limitation of the title to the estate conveyed, is not sufficient to convey only an easement. Accordingly, the deeds in Categories 6 and 8 conveyed fee simple title

to Pacific & Idaho; (6) The mere use of the term "right-of-way" in the captions of the representative deeds for Category 9 does not prevent Pacific & Idaho from acquiring fee title; (7) Pacific & Idaho acquired fee title to the lands it adversely possessed in Category 10; and (8) The fact that the deeds in Category 14 were executed after Pacific & Idaho already entered and possessed the right-of-way corridor does not bar Pacific & Idaho from acquiring fee simple title.

DATED: November 26, 2001.

MIKEL H. WILLIAMS
UNITED STATES MAGISTRATE JUDGE

**MAILING CERTIFICATE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 28th day of Nov., 2001, to the following:

LARY C. WALKER
DELTON L. WALKER
WALKER LAW OFFICE
P.O. BOX 828
WEISER, ID 83672

C. TOM ARKOOSH
ARKOOSH LAW OFFICES, CHTD.
P.O. BOX 32
GOODING, ID 83330

NELS J. ACKERSON
DAVID A. COHEN
JAMES R. BAARDA
THE ACKERSON GROUP, CHTD.
1666 K STREET, N.W., SUITE 1010
WASHINGTON, D.C. 20006-1217

KRISTINE S. TARDIFF
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT & NATURAL RESOURCES DIVISION
C/O OFFICE OF THE UNITED STATES ATTORNEY
55 PLEASANT STREET, SUITE 352
CONCORD, NH 03301

EVELYN KITAY
SURFACE TRANSPORTATION BOARD
OFFICE OF THE GENERAL COUNSEL
1925 K STREET NW SUITE 600
WASHINGTON DC 20423

ANDREA C. FERSTER
GENERAL COUNSEL
RAILS-TO-TRAILS CONSERVANCY
1100 17TH STREET, N.W., 10TH FLOOR
WASHINGTON, D.C. 20036

D MARC HAWS
CHIEF, CIVIL DIVISION
U.S. ATTORNEY'S OFFICE, DISTRICT OF IDAHO
FIRST INTERSTATE CENTER
877 WEST MAIN, SUITE 201
BOISE, ID 83702

Cameron S. Burke, Clerk
United States District Court

Vicki Jones
by Deputy Clerk