IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, et al., Plaintiffs, | Case No. CV-99-324-S-MHW |
| v. | **MEMORANDUM DECISION** |
| UNITED STATES OF AMERICA, Defendant. | |

**INTRODUCTION**

Pending before the Court are the following motions: Defendant's Motion for Summary Judgment regarding Category 1 (Docket No. 155) and Plaintiffs' Cross Motion for Summary Judgment regarding Category 1 (Docket No. 164). The Rails-to-Trails Conservancy has filed an amicus brief in support of Defendant's Motion for Summary Judgment (Docket No. 157).

For the reasons that follow, the Defendant's Motion for Summary Judgment will be denied and the Plaintiffs' Cross Motion for Summary Judgment will be granted consistent with this opinion.

Also pending before the Court are the supplemental memoranda invited by the Court regarding the stipulations involving the Category 2 and 3 deeds. The Court had previously denied Plaintiffs' Motion to Reconsider (Docket No. 135) the Court's prior decision on those categories in light of the *Neider* decision, in part because of various stipulations entered into by

the parties regarding those categories. However, in denying the Motion to Reconsider, the Court invited supplemental briefing as described below. *Order* at 19 (Docket No. 169).

For the reasons that follow, the Court has determined that the stipulations should be set aside and that the Motion for Reconsideration will be granted.

## CATEGORY 1 DEEDS

### A. Background

Plaintiff Category 1 landowners are successors-in-interest to those who obtained their land pursuant to the Homestead Act after the Railroad had acquired its right-of-way over public land from the United States pursuant to the General Railroad Right-of-Way Act of March 3, 1875, ch. 152, 18 Stat. 482 (codified as 43 U.S.C. §§ 934-939 (1982)) (the "1875 Act"). This Court held in a prior Memorandum Decision (Docket No. 88) that the United States retained ownership of the land underlying the right-of-way and that the Category 1 landowners had no reversionary rights upon discontinuance of the Railroad right-of-way. Plaintiffs appealed that decision to the Federal Circuit which, in turn, reversed this Court's decision after concluding that the Category 1 landowners own the land over which the right of way passes in fee subject to the railway easement and that:

> [o]n the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the *Preseault* cases. On remand, the district court shall determine just compensation on the conditions that apply to these landowners.

*Hash v. United States*, 403 F.3d 1308, 1318 (Fed. Cir. 2005).

In its Motion for Summary Judgment, Defendant contends, in spite of rather clear

language in the mandate otherwise, that the question of liability is now back before this Court. Defendant argues that Plaintiffs must now establish that absent the application of the Trails Act, the easements would have been deemed abandoned or otherwise extinguished under applicable law. *Def.'s Mot. Summ. J*. at 3 (Docket No. 155-1). Defendant contends that the 1875 Act easement is broad enough to allow for the preservation of the right-of-way through railbanking and to allow the interim use as a public trail. *Id.* at 4. Alternatively, Defendant contends that the present uses of the rights-of-way are permissible under the doctrine of shifting public uses. *Id.* In short, the Defendant argues that the Federal Circuit never decided liability and it is now for this Court to decide whether a compensable taking has occurred.

Not surprisingly, in their Cross Motion for Summary Judgment, Plaintiffs strongly assert that the underlying issue of liability and whether there has been a compensable taking has already been decided in their favor and the only issue now to be determined is just compensation. In other words, the issue of liability has already been decided, and the Court has no jurisdiction to do anything but determine damages. *Resp. Mot. Summ. J*. at 2 (Docket No. 165-1). Alternatively, Plaintiffs contend that if for some reason this Court concludes that the issue of liability was not resolved by the express language of the mandate, then they are entitled to a finding on the merits that a taking has occurred. *Id.* Plaintiffs argue that the use of the right-of-way as a conservation trail is beyond the scope of the easement, that the easement terminated upon cessation of use of the right-of-way for Railroad purposes, and that the subsequent use as a trail constituted a taking for which they are entitled to just compensation.

Finally, in reply, Defendant argues:

> However, the Federal Circuit also directed that further proceedings be "in accordance with the principles set forth in the <u>Preseault</u>

> cases." This additional instruction is important because in Preseault the Supreme Court expressly recognized that "under any view of takings law, only some rail-to-trail conversions will amount to takings[,]" noting that some rights-of-way "are held as easements that do not even as a matter of state law revert upon interim use as nature trails." (Citations omitted.) Thus, in order for further proceedings to be in accordance with the Preseault decisions, this Court must address and resolve the question of whether the current uses of the 1875 Act easements for railbanking and interim trial use purposes falls within the scope of those easements, in which case there would be no taking and no compensation due "on the conditions that apply to these landlowners." Hash, 403 F.3d at 1318. (Footnotes omitted.)

*Reply Br. Supp. Mot. Summ. J.* at 2 (Docket No. 166-1).

There will be two steps in the Court's analysis of the parties' respective positions. The first step will be to address the issue of the Federal Circuit's mandate. If the mandate limits this Court's consideration to the question of the amount of damages based on a compensable taking, then the Plaintiffs' cross-motion should be granted and the parties can move to the next stage of the litigation. The second step in the analysis will be to determine whether this Court must first decide the liability issue before reaching the compensation issue. This step will only be necessary if the Court agrees with the Defendant's interpretation of the scope of the mandate. A general overview of the parameters placed on the authority of a lower court by a mandate issued from an appellate court is helpful to the Court's analysis.

**A. Discussion**

**1. Rule of Mandate**

The Supreme Court articulated the rule of mandate over 100 years ago:

> When a case has once been decided by this court on appeal, and remanded to the circuit court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The circuit court is bound by the decree as the law of the case, and

> must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.

*In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895). This case is still cited by courts today when faced with interpreting the mandate of an appellate court. *See, e.g., United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006); *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000); *Exxon Chemical Patents, Inc. v. The Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 877 (1998); and *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995).

In *Kellington*, the Ninth Circuit thoroughly examined *Sanford Fork* and recognized the continued relevance of its clear directives in construing and following the scope of a mandate:

> In the seminal case on the subject, *In re Sanford Fork & Tool Co.*, the Supreme Court emphasized that, in addition to the mandate itself, "[t]he opinion by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate . . . ." 160 U.S. 247, 256, 16 S.Ct. 291, 40 L.Ed. 414 (1895). The Court added that it is important, in determining "what was heard and decided" by the appellate court, to bear in mind the "settled practice" of courts with respect to the applicable substantive law. 160 U.S. at 256, 16 S.Ct. 291. Thus, in construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises. As the talismanic language from *Sanford Fork* makes clear, the ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that have not . . . .

*Kellington*, 217 F.3d at 1093.

What is clear from these cases is that the lower court must act on an appellate mandate "without variance or examination, only execution." *Garcia-Beltran*, 443 F.3d at 1130. For

example, the rule of mandate precludes a district court from refusing to dismiss a case when the mandate requires it, from revisiting any final determinations unless the mandate allows it, and from engaging in any proceedings inconsistent with a reversal. *Cote*, 51 F.3d at 181 (citations omitted). On the other hand, the district court may consider and decide any matters not addressed by the mandate. *Id*. at 182 (citations omitted).

The lower court may consider the opinion of the appellate court to ascertain what matters have been left open as well as the specific directives on remand. *Sanford Fork*, 160 U.S. at 256; *Cote*, 51 F.3d at 182. Indeed, an appellate court's mandate is not to be read in a vacuum but includes both the judgment and the opinion of the Court. *Exxon,*137 F.3d at 1483 (citing *Sanford Fork* and Fed. R. App. P. 41(a)).

Here, the Federal Circuit's specific mandate is, "On remand, the district court shall determine just compensation on the conditions that apply to these landowners." *Hash*, 403 F.3d at 1318. However, this mandate must be enlightened by the context of the Federal Circuit's opinion and not just read in a vacuum. Defendant argues that "the Federal Circuit also directed that further proceedings be 'in accordance with the principles set forth in the Preseault cases.'" *Rep. Br. Supp. Mot. Summ. J*. at 2 (Docket No. 166-1). But this contention parses the wording of the Federal Circuit's conclusion by removing that phrase from its context. To understand the Federal Circuit's directive, the entire concluding paragraph addressing Category 1 must be read together. As noted above, the Federal Circuit stated,

> On the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, *in accordance with the principles set forth in the Preseault cases* (emphasis added).

*Hash*, 403 F.3d at 1318.

Reading this sentence together with the specific mandate, it appears that the Federal Circuit found that based on the *Preseault* cases, the railway abandoned the right-of-way; that upon abandonment, the Category 1 owners were disencumbered of the railway easement; and that conversion of the land to a public trail constituted a taking for which this Court is to determine just compensation. In other words, rather than directing this Court to conduct further proceedings in accordance with *Preseault*, the Federal Circuit itself, rightly or wrongly, made the liability determination applying *Preseault*.

Even if the Court were to accept Defendant's argument that the mandate is not as clear as it appears initially, the Federal Circuit's opinion provides additional guidance on how this Court should construe the language of the mandate. The opinion of the Federal Circuit discussed each category of land separately. All but the last paragraph of that portion of the opinion which addressed Category 1 parcels discussed whether the Government retained a reversionary interest in the land on which the right-of-way is situated. The Federal Circuit, equating the Government's claim with a claim of a fee interest in the land, determined that the United States did not retain either a reversionary or fee interest in the land underlying the rights-of-way. Rather, it concluded that the Category 1 landowners own the land in fee, subject to the railway easement.

While the Federal Circuit did not fully set forth the reasoning behind its finding of abandonment and taking, its shorthand reference to "the principles set forth in the *Preseault* cases" provides some enlightenment. In the earlier of the two cases, the Supreme Court upheld the constitutionality of the Rails-to-Trails Act because any takings occasioned by the Act are

compensable under the Tucker Act. *Preseault v. Interstate Commerce Commission*, 494 U.S. 1 (1990). In the latter, the Federal Circuit held, *inter alia*, that the scope of the easements granted for maintenance and operation of the railroad did not encompass the use of easements for public trails. *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996).

In addition, this case is somewhat unique because the Federal Circuit was in a position to correct the very error the Defendant claims that Court committed by purporting to decide the issue of liability, that opportunity being present in the Petition for Rehearing.

**2. Petition for Rehearing.**

During briefing and oral argument on the pending motions, the parties advised the Court of the general nature of the issues raised in the Petition for Rehearing. However, the Court felt it prudent to determine exactly what was before the Federal Circuit when it decided not to grant the Petition for Rehearing. Therefore, the Court obtained from the Federal Circuit the Petition of the United States for Panel Rehearing and Plaintiffs-Appellants' Opposition to Petition of the United States for Panel Rehearing. After reviewing this material, the Court is even more convinced that the mandate did resolve the issue of liability in favor of the Plaintiffs.

The Table of Contents contained in the Defendant's Petition for Rehearing probably sets it out best, under the "Argument" section:

> II. The panel erroneously reached the question of takings liability
>
> A. The panel reached a question not addressed by the district court or the parties.
>
> B. Critical questions of law and fact necessary to determinations taking liability have not yet been addressed or decided.

*Pet. for Reh'g*, June 29, 2005. Indeed, Defendant specifically asked the panel to delete the

language in the opinion purporting to hold the United States liable for a taking on the grounds that the question of liability was not addressed by the parties or by this Court at the trial level, was not addressed on appeal, and was not before the panel. *Id.* at 2.

If the Federal Circuit had felt that its mandate had gone too far, or was not being properly construed, it certainly had the opportunity to grant the Petition for Rehearing when the issues were squarely presented to them in this fashion. Nevertheless, in the Order dated August 15, 2005, denying the Petition for Rehearing, the panel stated that "upon consideration" of the matters raised by the Defendant in the Petition and the "invited" Response of the Plaintiffs, the Petition for Rehearing would be denied. In fact, the arguments made in the Petition for Rehearing are almost a mirror copy of the arguments now being made to this Court by the Defendant. In the present procedural posture of this case, the Court finds that the mandate means what it states – that the Court is to proceed to a determination of just compensation for the Category 1 parcels.

Although the Defendant does not agree with the Federal Circuit's conclusion, it is beyond cavil that when presented with an opportunity to correct or even limit its mandate, the Federal Circuit chose not to do so. This Court is precluded from reviewing the mandate for apparent error. *Sanford Fork*, 160 U.S. at 255. Should this Court's reading of the mandate be in error, Defendant's remedy is a new appeal or by a writ of mandamus. *Id.*

**C. Conclusion**

The Court declines to address the liability issue as urged by Defendant. Rather, it will follow the strict terms of the mandate and proceed to determine the just compensation owing to the Category 1 landowners. At the hearing on the pending motions, the parties advised the Court

that they would propose a joint case management order for proceeding with the compensation issue which would involve engaging experts and/or appraisers to determine just compensation and otherwise facilitating resolution of the matters affecting the Category 1 landowners. The Court concurs with the parties' recommendation in this regard.

**CATEGORY 2 AND 3 DEEDS**

**A. Background**

The Court will next address the deeds in Categories 2 and 3. Generally, these deeds restricted the use of the conveyed property to railroad purposes and contained a reverter clause. The Court previously determined that those deeds conveyed a fee simple determinable interest in the subject parcels rather than an easement. *See generally Mem. Dec*. at 8-11 ("*2001 Mem. Dec*.") (Docket No. 88). The parties thereafter entered into various stipulations pertaining to those deeds. In the first stipulation, they agreed that the Court's 2001 decision should be applied to those properties and that the reversionary interests retained by the original grantors had not been extinguished under Idaho law. *Joint Stipulations* dated April 5, 2002 ("*April Joint Stipulation*") (Docket Nos. 92 and 93). They next filed a stipulation that the owners of the reversionary interests as of the alleged date of taking are properly included as class members. *Initial Stipulations* dated August 8, 2002 (Docket No. 97). Finally, they filed a stipulation identifying the owners of some of the reversionary interests. *Final Stipulations* dated November 8, 2002.

Plaintiffs thereafter sought entry of judgment as to the categories of deeds that had been finally decided and appealed certain of the Court's findings regarding those categories. After the Federal Circuit remanded the case to this Court for consideration of the effect of the then

recently decided Idaho Supreme Court case of *Neider v. Shaw*, 65 P.3d 525 (Idaho 2003), Plaintiffs filed a Motion for Reconsideration of Memorandum Decision (Docket No. 135). Specifically, Plaintiffs urged the Court to find, in light of *Neider*, that the deeds in Categories 2 and 3 conveyed easements rather than fee simple determinable interests to the Railroad. The Court denied Plaintiff's Motion on the grounds that the parties had not appealed that finding, that the parties had stipulated to outstanding issues regarding the original conveyances to the railroad, and that regardless of whether categorized as a fee simple determinable or an easement, the result would be the same. However, the Court allowed the parties to each file a supplemental memorandum explaining why they should be allowed to withdraw from the stipulations regarding Categories 2 and 3 and why a determination on the easement issue would advance the interests of the parties. *2001 Mem. Dec*. at 19 (Docket No. 88).

In addition to the arguments set forth below, in its Supplemental Response, Plaintiffs point out that the Court's decision on these categories did not resolve all of the issues in these categories, was not "final" under Fed. R. Civ. P. 54(b), and was therefore not appealable.

**B. Discussion**

Plaintiffs contend that stipulations can be set aside for several reasons: where there is an intervening change in controlling law, where the stipulation concerns a question of law rather than fact, and where failure to set aside a stipulation would result in manifest injustice. *See American Honda Motor Co., Inc. v. Richard Lundgren*, 314 F.3d 17, 21 (1st Cir. 2002) (intervening change in law); *U. S. Nat'l. Bank of Oregon v. Independent Ins. Agents of American, Inc.*, 508 U.S. 439, 448 (1993) (stipulations to law are non-binding); *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir. 1987) (manifest injustice). The Court concurs

with Defendant that the determinative issue here is whether an intervening change in law in the form of the *Neider* decision rendered the Court's prior determination incorrect. If it did, that change would allow both for setting aside the stipulations to the extent necessary and for reconsidering its prior finding. Effectively, this amounts to making a finding on the motion to reconsider first. Accordingly, the Court will review the impact of *Neider* on its determination that the Category 2 and 3 grantors conveyed fee simple determinable interests. Given the reality that *Neider* had not yet been decided when Plaintiffs initially appealed and also because the Category 2 and 3 deeds contain more than just the term "right-of-way" in the granting and habendum clauses, the Court will examine the issue on the merits.

Plaintiffs' Motion to Reconsider is very straightforward and based on the similarity of the language in the Bow deed discussed in *Neider* and the language used in the Category 2 and 3 deeds. In response, Defendant opposed reconsideration on the grounds (1) that *Neider* was not controlling because *Neider* involved an easement vs. fee simple subject to a condition subsequent issue and here the Court was faced with an easement vs. fee simple determinable issue; (2) that the presence of a reverter clause is indicative of a fee simple determinable rather than an easement; and (3) that *Neider* should be limited to the unique facts of that case.

**1. *Neider***

The Court previously analyzed *Neider* in the context of the Category 5, 6, and 8 deeds and concluded that *Neider* did not affect its prior determination that those deeds conveyed a fee simple determinable interest. *Mem. Dec.* (*"2006 Mem. Dec."*) (Docket No. 169). In so doing, as Defendant points out, the Court opined that *Neider* broke no new ground and did not create any new rules of construction of railroad deeds. *Id.* at 10. However, that comment was made in the

context of construing deeds that contained language indicative of an outright fee simple conveyance except for the term "right-of-way" in the granting or habendum clauses. However, the Category 2 and 3 deeds at issue here contain limiting and reverter language similar to that in the deed at issue in *Neider*. A table comparing the language in the Category 2 and 3 deeds with the language in the Bow deed is useful:

| <u>BOW DEED</u> | <u>CATEGORY 2 DEED</u> | <u>CATEGORY 3 DEEDS</u> |
|---|---|---|
| <u>Granting & Descriptive Clauses</u> | <u>Granting & Descriptive Clauses</u> | <u>Granting & Descriptive Clauses</u> |
| "grant, bargain, sell, convey and confirm . . . the following described real estate . . . to wit: commencing at [description of metes and bounds];<br><br>*Provided: nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should party of the second part fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said [Grantors] or their legal heirs."* (emphasis added.)<br><br>"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reservations, | "[g]rant, bargain, sell, convey, and confirm . . . that certain tract of land . . . to wit: a strip of land one hundred feet wide . . . ." | "sell and convey . . . all that piece, pieces, parcel and parcels of land, and all the following described real estate, privileges and rights, . . . . to-wit: A strip of land [metes and bounds followed along with a second tract and description];" |

| | | |
|---|---|---|
| remainder and remainders, rents, issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of the said parties of the first part.” | | |
| <u>Habendum Clause</u> | <u>Habendum Clause</u> | <u>Habendum Clause</u> |
| “TO HAVE AND TO HOLD all and singular the above mentioned and described premises in the quiet and peaceable possession of the said party of the second part, and of its heirs and assigns forever and the said parties of the first part, and their heirs, the said premises in the quiet and peaceable possession of the said party of the second part its heirs and assigns, against the said parties of the first part, and their heirs and against all and every person and persons whomsoever, lawfully claiming or to claim the same, shall and will warrant, and by theses presents forever defend.” | “TO HAVE AND TO HOLD; all and singular the above mentioned and described premises, toge[ther] with all and singular the above mentioned and described premises, together with the appurtenances, unto said [Railroad], and to its successors and assigns forever.<br><br>*“This conveyance is made upon the express condition that the property herein conveyed is to be used [for] the maintenance and operation of a railroad, and if the said [premises] shall cease, at any time to be used for railroad purposes . . . then . . . in such event the said property herein granted shall revert to the grantor it[s] successors and assigns.*” (emphasis added.) | “TO HAVE AND TO HOLD the same, together with all singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, unto the said party of the second part its successors and assigns forever, *so long as . . . [Railroad] shall use said property for right of way purposes, and in the event that said property shall cease to be used for right of way purposes, it shall then and thereupon . . . revert to said grantor herein, its successors and assigns*.” (emphasis added.) |

It is apparent when examining the table that the language in the Category 2 and 3 deeds

is substantially similar to that in the Bow deed. First, all of the deeds contain more reference to railroad purpose than the mere term "right-of-way." Second, they all contain language that would ordinarily evidence an intent to convey fee title. Third, they all also contain language that evidences a clear intent to have the property return to the grantor in the event the property is not used for railroad purposes. *Neider* found that such limiting language "unambiguously reflects [an] intent to convey only an easement to the Railroad." *Neider*, 65 P. 3d at 530.

### 2. Fee Simple Determinable vs. Fee Simple Subject to Condition Subsequent

The Court recognizes the distinction raised by Defendant between a fee simple determinable and fee simple subject to a condition subsequent. In the case of a fee simple determinable interest, the fee interest terminates automatically when a specified condition occurs. On the other hand, in the case of a fee simple subject to a condition subsequent, the fee interest terminates only if the grantor exercises his right of reentry or power of termination. *Nebraska v. Union Pacific Railroad Company*, 242 Neb. 97, 490 N.W.2d 461, 464 (1992); *Forsgren v. Sollie*, 659 P.2d 1068, 1069-70 (Utah 1983). A review of *Neider* indicates that although it identified the initial issue as fee simple subject to a condition subsequent vs. easement, the decision did not again mention the term. In other words, it did not limit its discussion to fee simple subject to condition subsequent. Rather, the entire analysis revolved around the broader concept of fee simple and presumably included any type of fee simple interest. Had the *Neider* court limited its analysis to fee simple subject to condition subsequent vs. easement, the Court would agree that its holding would not be controlling. However, such is not the case.

### 3. Fee Simple Determinable vs. Easement

Defendant contends that the use of the terms "reverter" or "reversion" is indicative of a fee simple determinable conveyance rather than an easement. *Resp. to Mot. Recons.* at 6 (Docket No. 143). Indeed, Plaintiffs recognize that some courts have found fee simple determinable when reverter language is used in a deed. *Reply* at 3 (Docket No. 146). Obviously, this Court feels that the reverter language in the Category 2 and 3 deeds constituted fee simple determinable and so held. Nevertheless, the *Neider* court construed the nearly identical language in the Bow deed to be an easement. Therefore, the Court feels compelled to follow the direction taken by the Idaho Supreme Court on this issue and find that the Category 2 and 3 deeds conveyed an easement. Had *Neider* been decided prior to the issuance of its 2001 decision, the Court would have no doubt felt constrained to conclude that an easement was conveyed.

### 4. *Neider* Should Be Limited to its Facts

The facts in *Neider* are somewhat unique in that the grantors contemporaneously recorded a plat dedicating public streets across the same property. *See Neider*, 65 P.3d at 527, 529-30. Had the Bows conveyed fee title to the property, the dedication of the public streets would have been of no effect. Defendant contends that *Neider*'s decision that an easement was conveyed was influenced by that factor and that interpretation of the deed as conveying an easement gave effect to both instruments.

There is nothing in the *Neider* decision that indicates the court considered any evidence beyond the four corners of the deed. In keeping with the cited rules of interpretation of a deed, the court found the language of the deed to be unambiguous and did not rely on extrinsic facts when determining intent. *Neider*, 65 P. 3d at 530. Finding an easement did indeed result in

upholding the street dedication. However, the mere fact that the street dedication in the recorded plat was found to be effective does not demand the conclusion that the *Neider* court was influenced by that contemporaneous document to find an easement.

**C. Conclusion**

Because the language in the Category 2 and 3 deeds is substantially similar to the language in the Bow deed, the Court is compelled to conclude under Idaho law that the deeds conveyed an easement rather than fee simple determinable. Because there was a change in controlling law after the Court's initial decision, the parties are not bound by any inconsistent stipulations entered into prior to that decision. The Court recognizes from the briefing of the parties that some disagreement exists as to the effect of finding an easement rather than fee simple determinable interest. The Court will not attempt to analyze those issues at this time. Rather, due to the confusing array of stipulations and the possible disagreements, the Court will direct the parties to meet and confer and decide what issues can be resolved by stipulation. Thereafter, the parties will file (1) an entirely new and "stand-alone" stipulation that will not incorporate any prior stipulations regarding the Category 2 and 3 deeds; and (2) a management plan for resolving any remaining factual or legal issues.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment regarding Category 1 (Docket No. 155) is DENIED and Plaintiffs' Cross Motion for Summary Judgment regarding Category 1 (Docket No. 164) is GRANTED.

IT IS FURTHER HEREBY ORDERED that the stipulations entered into between the parties regarding Category 2 and 3 deeds are set aside and Plaintiffs' Motion for Reconsideration (Docket No. 135) is GRANTED. The Court therefore finds that *Neider* dictates a finding that

the Category 2 and 3 deeds conveyed an easement to the Railroad.

IT IS FURTHER HEREBY ORDERED that within sixty (60) days from the date of this Order the parties submit to the Court a proposed case management schedule for determining just compensation owing to the Category 1 landowners and any unresolved issues pertaining to the Category 2 and 3 deeds. The proposed case management schedule shall include any stipulations reached as a result of the Court's directive to meet and confer regarding the Category 2 and 3 deeds.

DATED: **February 1, 2007**

Honorable Mikel H. Williams
United States Magistrate Judge