# In the United States Court of Federal Claims

No. 01-718 L

(E-Filed: February 22, 2007)

| | | |
|---|---|---|
| RON AND BETTY BLENDU, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | Takings; Summary Judgment; General Railroad Right-of-Way Act of March 3, 1875, 43 U.S.C. §§ 934-39; National Trails System Act, 16 U.S.C. § 1247(d) |

## OPINION

The court has before it the parties' Joint Motion for Partial Summary Judgment on the Question of Liability with Respect to the 1875 Act Lands (Joint Motion or Jt. Mot.), filed on December 1, 2006. The parties cross-move for summary judgment on the question of liability with respect to those claims involving segments of the railroad right-of-way that consist of easements created under the General Railroad Right-of-Way Act of March 3, 1875 (1875 Act), 43 U.S.C. §§ 934-39 (2004). Jt. Mot. 1. The Joint Motion is based on cross-motions for summary judgment previously filed on the same question of law in the Federal District Court for the District of Idaho (District Court). Id. Attached to the Joint Motion are the cross-motions and related briefing submitted to the District Court. Id. at 2.[1] The briefing includes filings by Amicus Curiae Rails-to-Trails

[1] The cross-motions and related briefing are organized by tabs appended to the Joint Motion for Partial Summary Judgment on the Question of Liability with Respect to the 1875 Act Lands (Joint Motion or Jt. Mot.). The tabs referenced in this Opinion are the following: Tab 1, including Defendant's Motion for Summary Judgment as to the Category 1 Lands (Def.'s Mot.) and Defendant's Memorandum in Support of its Motion for Summary Judgment as to the Category 1 Lands (Def.'s Mem.); Tab 4, Brief of Amicus Curiae Rails-to-Trails Conservancy in Support of Defendant's Motion for Summary Judgment (Amicus Br.); Tab 5, including Class Representatives' Cross-Motion for Summary Judgment as to the Category 1 Lands (Pls.' Mot.)

Conservancy, "a non-profit corporation . . . dedicated to assisting . . . governments and other organizations in preserving otherwise to be abandoned railroad corridors for continued public use." Id. at Tab 4 (Amicus Br.), 1-2. Plaintiffs seek just compensation for the United States' alleged taking of so-called Category 1 easements through the Interstate Commerce Commission's (ICC) issuance of a Notice of Interim Trail Use (NITU) under Section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d) (Trails Act) (2004). Jt. Mot. Tab 5 (Pls.' Mot.), 3-4; id. at Tab 1 (Def.'s Mot.), 1-2. Defendant seeks to dismiss the complaint as to plaintiffs' claims under the Category 1 easements, alleging that no unlawful taking took place. Id. at Tab 1 (Def.'s Mot.), 4. For the following reasons, plaintiff's motion for summary judgment on liability is GRANTED, and defendant's motion for summary judgment is DENIED.

## I. Background

Plaintiffs are successors to homesteaders who were granted land patents pursuant to the Homestead Act of 1862. Hash v. United States (Hash II), 403 F.3d 1308, 1312 (Fed. Cir. 2005). Plaintiffs are the current owners of land allegedly abutting or traversed by the Railroad right-of-way. Jt. Mot. Tab 1 (Def.'s Mem.), 6. Plaintiffs brought a class-action lawsuit in the District Court on July 26, 1999, alleging property interests in the right-of-way operated by Friends of the Wieser River Trail (FWRT) that were taken by the Trail Act agreement without just compensation, id. at Tab 1 (Def.'s Mem.), 9; id. at Tab 4 (Amicus Br.), 3.

Plaintiffs' claims stem from laws enacted in the late nineteenth century to encourage and protect the construction of railroads in the west. Hash II, 403 F.3d at 1310; see Jt. Mot. Tab 5 (Pls.' Mem.), 2. The 1875 Act gave railroads rights-of-way through public lands for one hundred feet on each side of the central line, together with appurtenant rights to the natural resources necessary for the construction of the railroad. 43 U.S.C. § 934. Anticipating the subsequent disposition of the public lands, the 1875 Act further provided that "all such lands over which such right of way shall pass shall be disposed of subject to such right of way." Id. § 937.

At the same time, the United States also encouraged and protected settlement of the West. Hash II, 403 F.3d at 1311. By enacting the Homestead Act of 1862, 43 U.S.C. § 161 (repealed 1976), Congress permitted settlers to acquire up to 160 acres of public

---

and Class Representatives' Memorandum in Support of Their Cross-Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment . . . as to the Category 1 Lands (Pls.' Mem.); and Tab 13, Defendant's Reply Brief in Support of its Motion for Summary Judgment as to the Category 1 (1875 Act) Lands (Def.'s Reply).

land by "entering one quarter-section or a less quantity of unappropriated public lands." Id. § 161; Hash II, 403 F.3d at 1311.

Despite the initial boom in railroad lines, by the early twentieth century railroads largely gave way to the automobile. Hash II, 403 F.3d at 1311. In response, Congress passed the Trails Act, 16 U.S.C. §§ 16 U.S.C. 1241-51, which established "a process of 'railbanking' by which railroads desiring to cease rail operations over specific lines for the present can, instead of 'abandoning' the lines, convey them to qualified users for interim use as recreational trails until such time as the railroad may wish to reactivate rail service." Jt. Mot. Tab 4 (Amicus Br.), 2; 16 U.S.C. § 1247(d); Hash II, 403 F.3d at 1311. A party interested in railbanking and interim trail use must file an abandonment application or request for an exemption and then request the issuance of a certificate of interim trail use (CITU) (in abandonment application proceedings) or a NITU (in abandonment exemption proceedings). Jt. Mot. Tab 1 (Def.'s Mem.), 5 (citing 5 C.F.R. § 1152.29(c)-(d)). "If the railroad indicates that it is willing to negotiate a Trails Act agreement, the issuance of the NITU is required." Id. at Tab 1 (Def.'s Mem.), 6 (quoting Citizens Against Rails-To-Trails v. STB, 267 F.3d 1144, 1150-53 (D.C. Cir. 2001)). The NITU preserves the government's jurisdiction and allows the trail sponsor to assume management of the right-of-way, subject to the right of the railroad to reassert control of the property in order to restore rail service. Id.

The present action involves a right-of-way previously used by the Railroad between Weiser and New Meadows, Idaho. Id. The right-of-way is approximately 83 miles in length and runs generally along the Weiser River. Id. Construction of the railroad began in December of 1900 and was completed in 1911. Id. at Tab 1 (Def.'s Mem.), 7. Due to changing economic conditions in the area, the Railroad filed a petition with the Surface Transportation Boad (STB) seeking an exemption under 49 U.S.C. § 10505 from the prior approval requirements of 49 U.S.C. § 10903-04 to abandon the line. Jt. Mot. Tab 1 (Def.'s Mem.), 8. Subject to several conditions, the STB granted the petition. Id. On December 28, 1995, the STB issued a NITU (1) authorizing the Railroad to discontinue its use of the right-of-way; (2) railbanking, or preserving, the right-of-way for future railroad use; and (3) authorizing the right-of-way to be used as a recreational trail in the interim. Id.; id. at Tab 4 (Amicus Br.), 3. Subsequently, the Railroad reached a Trails Act agreement with the FWRT, who took control of the right-of-way and assumed operation of the trail. Id. at Tab 1 (Def.'s Mem.), 8-9.

Plaintiffs filed a class-action lawsuit in the District Court on July 26, 1999, alleging property interests in the right-of-way operated by FWRT that were taken by the Trail Act agreement without just compensation. Hash v. United States (Hash I), No. 99-324, 2001 U.S. Dist. Lexis 24898, at *7 (D. Idaho Nov. 27, 2001); Jt. Mot. Tab 1 (Def.'s

Mem.), 9; id. at Tab 4 (Amicus Br.), 3. During the course of the proceedings, the parties created categories, numbering from 1 through 14, based on how each segment of the right-of-way was acquired by the Railroad. Jt. Mot. Tab 1 (Def.'s Mem.), 9.

The case was heard by Magistrate Judge Mikel H. Williams on August 8, 2001. Hash I, No. 99-324, 2001 U.S. Dist. Lexis 24898, at *1-2. The issue before the Magistrate Judge was "whether the United States retained a reversionary interest in the subject parcels or if any reversionary interest accompanied the patents and vested in the homesteaders." Id. at *7-8. The United States did not assert that it owns the underlying fee, but it did argue that it owns the reversionary interest. The plaintiffs in Hash I argued that they owned the reversionary interest for most of the parcels in Category 1. Id. at *8. The District Court held "that the United States held the reversionary interest in the subject rights-of-way when . . . the notice of interim trail use [was issued] in 1995. Accordingly, [the plaintiffs] did not own a vested property interest in any of the 1875 Act rights-of-way at issue when those rights-of-way were railbanked . . . ." Id. at *11.

Plaintiffs appealed to the United States Court of Appeals for the Federal Circuit. Hash II, 403 F.3d at 1312. The court held that, as to the Category 1 land, the District Court erred in ruling that the United States held the reversionary interest in the rights-of-way. Id. at 1318. It remanded the case to the District Court to determine just compensation to the plaintiffs. Id. A remand decision was issued by the District Court pertaining to Category 1 land earlier this month. See Hash v. United States (Hash III), No. 99-324, slip op. at 7 (D. Idaho Feb. 1, 2007) (holding that the Federal Circuit found that "conversion of the [Category 1] land to a public trail constituted a taking for which this [c]ourt is to determine just compensation").

Shortly after the District Court's decision in Hash I, plaintiffs in this case filed a complaint with the Court of Federal Claims, alleging that "[e]ach of the [p]laintiffs own[s] an interest in land constituting part of the railroad corridor on which the . . . Railroad had a right to operate a railroad, and which corridor is now or has been occupied or controlled for trail use by reason of the Trail Use Orders . . . pursuant to the [Trails Act]." Complaint, Dec. 26, 2001 (Compl.) 4-5. Plaintiffs alleged a taking without just compensation pursuant the Fifth Amendment to the United States Constitution. Id. at 5. The parties filed a Joint Motion to Stay on April 9, 2002, requesting the court to stay the case pending final resolution of Hash I because, they claimed, "while the case has some factual differences from the Hash case . . . , the legal questions presented by both cases are essentially the same." Joint Motion to Stay, Apr. 9, 2002, 1-2. The court granted the stay. Order, Apr. 11, 2002. Upon completion of the appeal to the Federal Circuit, the stay was lifted. See Joint Preliminary Status Report, Dec. 21, 2005, 2; Order, Jan. 4, 2006.

## II. Discussion: Whether the Federal Circuit's Decision Precludes this Court's Consideration of the Merits in this Case

The court now has before it the parties' Joint Motion, requesting the court to issue summary judgment on the question of liability with respect to Category 1 land claims, as defined by Hash II. Compare Hash II, 403 F.3d 1308, 1312, with Jt. Mot. 1. The Joint Motion concerns only Category 1 land, which encompasses the land acquired by the Railroad directly from the United States under the 1875 Act. Id. The Joint Motion is made on behalf of successors to "those landowners who obtained their land, pursuant the Homestead Act, after the Railroad had acquired its right-of-way traversing then-public land pursuant to the 1875 Act." Hash II, 403 F.3d at 1312. The owners of Category 1 land are, therefore, successors to the original landowners who were granted their patents subject to the 1875 Act easements. Hash I, No. 99-324, 2001 U.S. Dist. Lexis 24898, at *7.

The issues, in the alternative, are (1) whether the 1875 Act creating the easements is properly interpreted to allow for the preservation of defendant's right-of-way through railbanking and interim use of the right-of-way as a public trail, Jt. Mot. Tab 1 (Def.'s Mem.), 21; id. at Tab 5 (Pls.' Mem.), 9; (2) whether the doctrine of shifting public uses applies and allows for railbanking and interim trail use, id. at Tab 1 (Def.'s Mem.), 26; and (3) whether the court has jurisdiction to decide these issues in light of the Federal Circuit's decision in Hash II, Jt. Mot. Tab 5 (Pls.' Mem.), 6.

Plaintiffs argue that the Federal Circuit in Hash II was presented with the same issues and decided on the merits that "these owners' property interests were taken for public use . . . . On remand the [D]istrict [C]ourt shall determine just compensation . . . ." Jt. Mot. Tab 5 (Pls.' Mem.), 6 (quoting Hash II, 403 F.3d at 1318). Plaintiffs argue that the decision in Hash II precludes the court's consideration of these issues. Id. In the alternative, plaintiffs argue that "the government is liable for taking private land because the scope of the rights of way granted solely to railroad under the 1875 Act which burdened patentees' lands did not include the use of linear parks for hiking, picnicking, wildlife and nature walks, and other recreational pursuits." Id. (capitals omitted).

Defendant argues that the issues were not decided by the Federal Circuit in Hash II, 403 F.3d at 1318, because Hash II merely instructed that proceedings comply with Preseault v. ICC, 494 U.S. 1 (1990). According to defendant, the recognition in Preseault that "under any view of takings law, only some rail-to-trail conversions will amount to takings" means that "this [c]ourt must address and resolve the question of whether the current uses of the 1875 Act easements for railbanking and interim trail use purposes

fall[] within the scope of those easements." Jt. Mot. Tab 13 (Def.'s Reply), 2 (quoting Preseault, 494 U.S. at 16) (alteration in original)). Defendant argues that "the 1875 Act . . . demonstrate[s] that Congress intended to grant a right-of-way that could be used for multiple public transportation purposes" such that the use of the Category 1 trails for railbanking did not exceed the scope of the easements. Id. at Tab 1 (Def.'s Mem.), 21. Alternatively, defendant argues that the doctrine of "shifting public uses," whereby "adaptation of a viatic easement to accommodate new public use was understood not to trigger an abandonment," applies in this case and precludes the finding of a taking without just compensation. Id. at Tab 1 (Def.'s Mem.), 27.

The Federal Circuit described the issue before it on appeal concerning Category 1 lands as "whether, for the segments of right-of-way granted over public lands in accordance with the 1875 Act, the ownership of the underlying land remained with the United States for lands subsequently patented to settlers under the Homestead Act." Hash II, 403 F.3d at 1313. Plaintiffs took the position that "their Homestead Act lands were held by them in fee simple, subject to the railway easement as provided by the 1875 Act, and that when the easements were relinquished, their land was simply disencumbered." Id. at 1314. Defendant countered that "various enactments and decisions and current policy show that there was no governmental intention to relinquish ownership of the underlying land." Id. After careful analysis, the court held that

> the land of Category 1 is owned in fee by the landowners, subject to the railway easement. The [D]istrict [C]ourt's contrary decision is reversed. On the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the [Preseault] cases. On remand the [D]istrict [C]ourt shall determine just compensation on the conditions that apply to these landowners.

Id. at 1318.

In this case, under defendant's articulation of the standard set out in Hash, "whether the Trails Act effects a taking [of Category 1 lands] depends upon the nature of the property interest that a plaintiff would have enjoyed 'absent the federal action and upon the extent that the federal action burdened that interest.'" Jt. Mot. Tab 1 (Def.'s Mot.), 3 (quoting Preseault, 494 U.S. at 24 (O'Connor, J., concurring)). In other words, what needs to be decided – again, in defendant's words – is "the nature and scope of the easement and, correspondingly, the nature and scope of the plaintiff's property interest." Id. at Tab 1 (Def.'s Mot.), 4. As the excerpt block-quoted above makes clear, that is exactly what the Federal Circuit decided in Hash II, a case that, as both parties agreed,

presented the same legal questions as the ones posed here. Joint Motion to Stay, Apr. 9, 2002, 1-2.

It is true, as plaintiffs concede, that "the issues [in Hash II] were not couched in terms of whether the Government was, in fact, liable for a taking." Jt. Mot. Tab 5 (Pls.' Mem.), 9. However, the issues did concern the scope and nature of the railroad interests granted to the railroads under the 1875 Act and those granted to landowners pursuant their patents. Whether there was a taking turns on the nature of these interests, as defendant concedes, Jt. Mot. Tab 1 (Def.'s Mot.), 3, and in deciding these interests the court implicitly decided whether there was a taking. Indeed, its remand order explicitly directed that the District Court determine "just compensation" to be awarded to plaintiffs, not whether compensation needed to be made. Hash II, 403 F.3d at 1318. Presumably, this compensation was for the taking of plaintiff's proprietary interests pursuant the Fifth Amendment of the United States Constitution, given that the only compensation ever at issue in this case was for this purpose. See Jt. Mot. passim.

Defendant's argument that Preseault precludes the foregoing reading of Hash II is not persuasive. Defendant argues that the holding in Preseault that "under any view of taking law, only some rail-to-trail conversion will amount to takings" defeats resolution of the takings issue in Hash II. Jt. Mot. Tab 13 (Def.'s Reply), 2 (quoting Preseault, 494 U.S. at 16). Defendant argues that "in order for further proceedings to be in accordance with the Preseault decisions [as the Federal Circuit demands, Hash II, 403 F.3d at 1318], this [c]ourt must address and resolve the question of whether the current uses of the 1875 Act easement for railbanking and interim trail use purposes falls within the scope of those easements." Jt. Mot. Tab 13 (Def.'s Reply), 2. Defendant is correct in its implicit argument that Preseault did not decide whether Category 1 lands were taken by the United States without just compensation to the alleged owners. What Preseault decided was that the Trails Act was a valid exercise of Congressional power under the Commerce Clause, the possibility that it gave rise to a taking notwithstanding because compensation was available to landowners under the Tucker Act, 28 U.S.C. 1491(a)(1). 494 U.S. at 4. The Court in Preseault did not reach the issue of whether a taking occurred, but it did leave open the possibility that some rail-to-trail conversions will amount to takings, id., and the Federal Court in Hash II decided that such was the case with Category 1 lands. See Hash II, 403 F.3d at 1318. The Federal Circuit directed the lower courts to decide the remand "in accordance with the principles set forth in the [Preseault] cases." Id. Deciding that Category 1 lands amounted to a takings pursuant the Fifth Amendment of the United States, as the Federal Circuit in Hash II implicitly did, does not violate the holding or the

principles of Preseault.[2]

Amicus Curiae argues that "a determination that the Government did not retain the reversionary interests in rights-of-way conveyed under the 1875 Act does not resolve the issue whether the Railroad abandoned its rights-of-way upon conveying the right-of-way to a qualified entity under the . . . Trails Act for railbanking and interim trail use." Jt. Mot. Tab 4 (Amicus Br.), 6. The court finds that argument contrary to the plain language of the Federal Circuit's holding. As Amicus Curiae recognizes, the Federal Circuit's opinion addresses how "[o]n the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement." Id. (quoting Hash II, 403 F.3d at 1318) (emphasis in original). The Federal Circuit's decision is not framed in terms of a contingency (e.g., if the railway abandoned its right-of-way, then these owners will have been disencumbered of the railway easement), but is phrased instead in terms of an existing condition. The Federal Circuit held that, by allowing railbanking, defendant had in fact abandoned its easement and thereby forfeited its proprietary interests. See Hash II, 403 F.3d at 1318.

It is long established that

> [w]hen a case has been once decided by [a superior court] on appeal, and remanded to the [lower court], whatever was before [the superior court], and disposed of by its decree, is considered as finally settled. The [lower court] is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.

In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895). Although this particular case has not reached the Federal Circuit, and the Federal Circuit did not remand Hash II to this court, the Federal Circuit's decision in Hash II is binding on this court. Roane v. United States, 231 F.3d 1348, 1349 (Fed. Cir. 2000) (holding that published decisions of the Federal Circuit constitute binding precedent on the Court of Federal Claims); see also W. Seattle Gen. Hosp., Inc. v. United States, 1 Cl. Ct. 745, 746 (1983). This court's

[2]Defendant, after all, does not offer any other interpretation of the clear language of the holding – language such as "upon conversion of this land to a public trail, these owners' property interests were taken for public use," Hash v. United States (Hash II), 403 F.3d 1308, 1318 (Fed. Cir. 2005) – other than the one offered by plaintiffs. See Jt. Mot. passim. The court believes this is because there is no other reasonable interpretation of the language in Hash II.

consideration of the merits of the Joint Motion would be tantamount to "intermeddl[ing]" with the mandate of a superior court whose authority is binding. See W. Seattle Gen. Hosp., 1 Cl. Ct. at 746; In re Sanford Fork & Tool Co., 160 U.S. at 255. The court agrees with plaintiff that "the Federal Circuit's mandate precludes this [c]ourt from exercising jurisdiction over this question." Jt. Mot. Tab 5 (Pls.' Mem.), 9.

III. Conclusion

For the foregoing reasons, the court GRANTS plaintiff's motion for summary judgment on liability as to the Category 1 lands and DENIES defendant's cross motion for such summary judgment. The plaintiff owners who are Category 1 plaintiffs shall FILE SEPARATE COMPLAINTS for damages on or before Tuesday, April 3, 2007. The filing fees for such complaints shall be WAIVED. Further proceedings to determine damages will be discussed at the Telephonic Status Conference scheduled for Monday, February 26, at 3:00 p.m. Eastern Standard Time.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge