IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RON AND BETTY BLENDU, *et al.*, | ) | |
| Plaintiffs, | ) | No. 01-718 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| Defendant. | ) | |

**REVISED TITLE STIPULATIONS**
(MODIFIED May 30, 2007)

The stipulations set forth herein replace the title-related stipulations previously filed by the parties that the parties have jointly moved to withdraw.[1] The stipulations set forth below are expressly based on facts and information available and known to the parties at this time, and are subject to modification or revocation by either party should additional factual information come to light that affects the accuracy of these stipulations. In addition, if there is an intervening change in the law that affects the stipulations set forth herein while this case is still pending, then either party may seek to be relieved of the stipulations on that ground.

Some of the parties' stipulations are based on the decisions in the related case of Hash v. United States, No. CV-99-324-S-MHW (D. Idaho), which involves the same railroad right-of-way that is at issue in this case. In Hash, the parties categorized the original conveyances to the railroad into deed categories and then briefed the question of whether the subject deeds conveyed

[1]The withdrawn stipulations are set forth in the parties' Stipulations Regarding Title Matters (filed Jan. 22, 2007) (Doc. 35), and in their Second Set of Stipulations Regarding Title Matters (filed Feb. 5, 2007) (Doc. 37).

an easement or fee simple title to the railroad. In a memorandum decision of November 21, 2001, the district court held that the deeds for deed categories 4 through 9 conveyed fee simple title to the railroad. See Hash v. United States, No. CV-99-324-S-MHW, Mem. Decision at 11-18 (D. Idaho Nov. 21, 2001) (Exhibit 1). The Hash plaintiffs subsequently appealed the district court's interpretation of the deeds for categories 5, 6 and 8, but did not appeal the district court's interpretation of categories 4, 7 and 9. Plaintiffs herein also do not challenge the district court's interpretation of categories 4, 7 and 9.

On appeal, the Federal Circuit vacated the district court's ruling as to categories 5, 6 and 8, and remanded for redetermination in light of an intervening decision from the Idaho Supreme Court. Hash v. United States, 403 F.3d 1308, 1319-21, 1323 (Fed. Cir. 2005). On remand, the district court interpreted the deeds in deed categories 5, 6 and 8 and held that, under Idaho law, those deeds conveyed fee simple title to the railroad. Hash v. United States, No. CV-99-324-S-MHW, Mem. Decision at 6-17 (D. Idaho Aug. 18, 2006) (Exhibit 2). That interlocutory decision remains subject to appeal. The parties herein do not agree as to the applicability of this Hash decision to certain deeds in this case, and have thus proposed further briefing as to the nature of the interest acquired by the Railroad pursuant to several deeds that fall within deed category 6.[2] This proposed briefing schedule is set forth in the parties' Joint Status Report and Scheduling Proposal, filed this date (Doc. 51).

[2]This case involves several Category 6 deeds. There are no Category 5 or Category 8 deeds at issue in this case.

Stipulations Applicable to All Plaintiffs (Background Facts)

1. The railroad right-of-way at issue in this case ("the subject right-of-way") is located between Weiser and New Meadows, Idaho. This right-of-way is approximately 83 miles in length and generally follows the path of the Weiser River.

2. Between 1899 and 1900, the Pacific and Idaho Northern Railway (the "Railroad") commenced construction of its railroad line on the subject right-of-way. Construction of the Railroad's line reached Cambridge in December 1900, Council in March of 1901, and Meadow Valley or "New Meadows" in 1911.

3. The Railroad acquired its interest in certain portions or segments of the right-of-way on which its line was constructed by deed. The interpretation of these deeds is governed by Idaho state law.

4. On March 17, 1995, citing the closure of a Boise Cascade sawmill in Council and an anticipated loss of 75% of the rail traffic on the Weiser to New Meadows line, the Railroad filed a petition with the Surface Transportation Board ("STB") seeking an exemption under 49 U.S.C. § 10505 from the prior approval requirements of 49 U.S.C. § 10903-04 to abandon the 83-mile line.

5. By a decision served on November 1, 1995, the STB granted the Railroad's petition, subject to several conditions.

6. Several groups filed requests for the issuance of a Notice of Interim Trail Use ("NITU"), along with "Statements of Willingness to Assume Financial Responsibility" for the right-of-way, and the Railroad indicated it was willing to

negotiate a railbanking and interim trail use agreement pursuant to the National Trails System Act, 16 U.S.C. § 1247(d).

7. On December 28, 1995, the STB issued a NITU that reopened the exemption proceedings and modified its decision of November 1, 1995, to allow the parties 180 days to negotiate a railbanking and interim trail use agreement. The NITU also authorized the Railroad to discontinue service on the line and to "salvage track and track materials consistent with interim trail use/rail banking."

8. The Railroad reached a Trails Act agreement with the Friends of the Weiser River Trail ("FWRT"), and quitclaimed its interest in the subject right-of-way to FWRT on June 17, 1997. Subject to the Trails Act and the conditions set forth in the NITU, the right of way presently is owned and operated by FWRT and is known as the "Weiser River Trail."

9. The alleged date of taking in this case is December 28, 1995, which is the date on which the STB issued its decision and NITU. See Caldwell v. United States, 391 F.3d 1226 (Fed. Cir. 2004), cert. denied, 126 S. Ct. 366 (2005); Barclay v. United States, 443 F.3d 1368 (Fed. Cir. 2006).

Stipulations Applicable to Plaintiffs Ron and Betty Blendu

10. On December 28, 1995, Plaintiffs Ron and Betty Blendu were the owners of certain real property located in Washington County, Idaho. Portions of this property abut or are traversed by the subject right-of-way. The Blendus' predecessors-in-title include: (1) Francis M. and Pauline Potter, (2) Andrew M. and Ona Reed, and (3) John P. and Eva Hallstrom.

11. On July 22, 1899, Francis M. and Pauline Potter conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a warranty deed (the "Potter deed"). The Potter deed, which is attached hereto as Exhibit 3, was recorded in Washington County, Idaho at Book 10, Page 91.

12. The Potter deed is comparable to the warranty deeds in Hash deed categories 4, 7 and 9, which were held by the district court to convey fee simple title to the Railroad. 2001 Mem. Decision at 11, 15 (Ex. 1). Under Idaho law, as interpreted and applied in Hash, the Potter deed conveyed fee simple title to the strip of land described therein to the Railroad.

13. Because the Railroad acquired fee simple title to the right-of-way segment that was conveyed to it by the Potter deed (Ex. 3), the Blendus have no ownership interest in this segment of the right-of-way and thus cannot pursue a claim that this segment was taken from them by operation of the Trails Act. The parties therefore stipulate that this portion of the Blendus' takings claim shall be dismissed by order of the Court.

14. On September 6, 1899, Andrew M. and Ona Reed conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a warranty deed (the "Reed deed"). The Reed deed, which is attached hereto as Exhibit 4, was recorded in Washington County, Idaho at Book 10, Page 161.

15. The Reed deed is comparable to the deeds in Hash deed category 6. The parties intend to brief the disputed question of what interest the Railroad acquired by the Reed deed in accordance with the schedule proposed in their separately filed Joint Status Report and Scheduling Proposal.

16. On August 23, 1899, John P. And Eva Hallstrom conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a warranty deed (the "Hallstrom deed"). The Hallstrom deed, which is attached hereto as Exhibit 5, was recorded in Washington County, Idaho at Book 10, Page 145.

17. The Hallstrom deed is comparable to the deeds in Hash deed category 6. The parties intend to brief the disputed question of what interest the Railroad acquired by the Hallstrom deed in accordance with the schedule proposed in their separately filed Joint Status Report and Scheduling Proposal.

18. In addition to the lands described in paragraphs 11 – 16, the Railroad acquired its interest in two segments of the portion of the right-of-way that traverses the land owned by the Blendus under the General Railroad Right-of-Way Act of March 3, 1875, ch. 152, 18 Stat. 482 (codified as 43 U.S.C. §§ 934-939 (1982)) (the "1875 Act"). The segments acquired under the 1875 Act traverse the SW1/4 SW1/4 of Section 33 in T14N R3W and the NE1/4 NE1/4 of Section 5 in T13N R3W. The Court's ruling regarding liability as to these segments is set forth in the Court's Opinion of February 22, 2007 (Doc. 42).

19. In addition to the lands described in paragraphs 11 – 17, the Railroad acquired its interest in a segment of the subject right-of-way that abuts or traverses the land owned by the Blendus in the N1/2 NW1/4 of Section 8 and in the SW1/4 SW1/4 of Section 5, both in T13N R3W, by adverse possession. The parties are not stipulating at this time to the nature of the interest that the Railroad acquired by adverse possession under Idaho law.

Stipulations Applicable to Plaintiffs Dean and Velda Fairchild

20. On December 28, 1995, Plaintiffs Dean and Velda Fairchild were the owners of certain real property located in Washington County, Idaho. This property abuts or is traversed by the subject right-of-way. The Fairchilds' predecessors-in-title include: (1) William H. Male, (2) Marvin and Jane Kilborn, (3) Norman Girling, and (4) Adeline Day.

21. On May 2, 1900, William H. Male conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a warranty deed (the "Male deed"). The Male deed, which is attached hereto as Exhibit 6, was recorded in Washington County, Idaho at Book 9, Page 445.

22. The Male deed was one of the representative deeds for Hash deed category 9. The district court held that the category 9 deeds, including the Male deed, conveyed fee simple title to the Railroad. 2001 Mem. Decision at 15 (Ex. 1). Under Idaho law, as interpreted and applied in the Hash decision, the Male deed conveyed fee simple title to the strip of land described therein to the Railroad.

23. Because the Railroad acquired fee simple title to the right-of-way segment that was conveyed to it by the Male deed (Ex. 6), the Fairchilds have no ownership interest in this segment of the right-of-way and thus cannot pursue a claim that this segment was taken from them by operation of the Trails Act. The parties therefore stipulate that this portion of the Fairchilds' takings claim shall be dismissed by order of the Court.

24. On August 29, 1899, Marvin Kilborn and Jane Kilborn conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a warranty deed (the "Kilborn deed"). The Kilborn deed, which is attached hereto as Exhibit 7, was recorded in Washington County, Idaho at Book 10, Page 149.

25. The Kilborn deed is comparable to the warranty deeds in Hash deed categories 4, 7 and 9, which were held by the district court to convey fee simple title to the Railroad. 2001 Mem. Decision at 11, 15 (Ex. 1). Under Idaho law, as interpreted and applied in the Hash decision, the Kilborn deed conveyed fee simple title to the strip of land described therein to the Railroad.

26. Because the Railroad acquired fee simple title to the right-of-way segment that was conveyed to it by the Kilborn deed (Ex. 7), the Fairchilds have no ownership interest in this segment of the right-of-way and thus cannot pursue a claim that this segment was taken from them by operation of the Trails Act. The parties therefore stipulate that this portion of the Fairchilds' takings claim shall be dismissed by order of the Court.

27. On August 29, 1899, Norman Girling conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a warranty deed (the "Girling deed"). The Girling deed, which is attached hereto as Exhibit 8, was recorded in Washington County, Idaho at Book 10, Page 144.

28. The Girling deed is comparable to the deeds in Hash deed category 6. The parties intend to brief the disputed question of what interest the Railroad acquired by the Girling deed in accordance with the schedule proposed in their separately filed Joint Status Report and Scheduling Proposal.

29. On July 18, 1899, Adeline Day conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a quitclaim deed (the "Day deed"). The Day deed, which is attached hereto as Exhibit 9, was recorded in Washington County, Idaho at Book 10, Page 74.

30. The Day deed is comparable to the deeds in Hash deed category 6. The parties intend to brief the disputed question of what interest the Railroad acquired by the Day deed, in accordance with the schedule proposed in their separately filed Joint Status Report and Scheduling Proposal.

Stipulations Applicable to Plaintiffs Milton and Lola Kerner

31. On December 28, 1995, Plaintiffs Milton and Lola Kerner were the owners of certain real property located in Washington County, Idaho. This property abuts or is traversed by the subject right-of-way. The Kerners' predecessors-in-title include Sarah J. Jeffreys.

32. On July 1, 1899, Sarah J. Jeffreys conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a warranty deed (the "Jeffreys deed"). The Jeffreys deed, which is attached hereto as Exhibit 10, was recorded in Washington County, Idaho at Book 10, Page 49.

33. The Jeffreys deed is comparable to the warranty deeds in Hash deed categories 4, 7 and 9, which were held by the district court to convey fee simple title to the Railroad. 2001 Mem. Decision at 11, 15 (Ex. 1). Under Idaho law, as interpreted and applied in the Hash decision, the Jeffreys deed conveyed fee simple title to the strip of land described therein to the Railroad.

34. Because the Railroad acquired fee simple title to the right-of-way segment that was conveyed to it by the Jeffreys deed (Ex. 10), the Kerners have no ownership interest in this segment of the right-of-way and thus cannot pursue a claim that this segment was taken from them by operation of the Trails Act. The parties therefore stipulate that this portion of the Kerners' takings claim shall be dismissed by order of the Court.

Stipulations Applicable to Bruce and Julie Kerner

35. Bruce and Julie Kerner own certain property in Washington County, Idaho that abuts land owned by Plaintiffs Milton and Lola Kerner. However, the property owned by Bruce and Julie Kerner does not abut and is not traversed by the subject right-of-way. Accordingly, the parties stipulate that Plaintiffs Bruce and Julie Kerner do not have an ownership interest in the subject right-of-way and cannot pursue a takings claim in this case. The parties therefore stipulate that the takings claim of Bruce and Julie Kerner shall be dismissed by order of the Court.

Stipulations Applicable to Plaintiffs Steven R. and Elsie B. Shumway

36. On December 28, 1995, Plaintiffs Steven R. and Elsie B. Shumway were the owners of certain real property located in Adams County, Idaho. This property

abuts or is traversed by the subject right-of-way. The Shumway's predecessors-in-title include William M and Martha L. Glenn and William Hartley.

37. On August 16, 1905, William M. and Martha L. Glenn conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a quitclaim deed (the "Glenn deed"). The Glenn deed, which is attached hereto as Exhibit 11, was recorded in Washington County, Idaho.

38. The Glenn deed is comparable to the deeds in Hash deed category 6. The parties intend to brief the disputed question of what interest the Railroad acquired by the Glenn deed in accordance with the schedule proposed in their separately filed Joint Status Report and Scheduling Proposal.

39. On August 16, 1905, William Hartley conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a quitclaim deed (the "Hartley deed"). The Hartley deed, which is attached hereto as Exhibit 12, was recorded in Washington County, Idaho at Book D, Page 178.

40. The Hartley deed is comparable to the deeds in Hash deed category 6. The parties intend to brief the disputed question of what interest the Railroad acquired by the Hartley deed in accordance with the schedule proposed in their separately filed Joint Status Report and Scheduling Proposal.

Stipulations Applicable to Plaintiff Twila Harrison

37. On December 28, 1995, Plaintiff Twila Harrison was the owner of certain real property located in Washington County, Idaho. Portions of this property abut or are traversed by the subject right-of-way. Harrison's predecessors-in-title include George W. Hoffstatter.

38. On November 20, 1899, George W. Hoffstatter conveyed a strip of land in Washington County, Idaho to the Pacific and Idaho Northern Railway Company by a quitclaim deed (the "Hoffstatter deed"). The Hoffstatter deed, which is attached hereto as Exhibit 13, was recorded in Washington County, Idaho at Book 10, Page 403.

39. The Hoffstatter deed was included in Hash deed category 6. The parties intend to brief the disputed question of what interest the Railroad acquired by the Hoffstatter deed in accordance with the schedule proposed in their separately filed Joint Status Report and Scheduling Proposal.

Dated: May 30, 2007

Respectfully submitted,

s/ Lary C. Walker
LARY C. WALKER
WALKER LAW OFFICE
232 East Main
Post Office Box 828
Weiser, ID 83672
TEL: (208) 414-0390
FAX: (208) 414-0404
E-MAIL: walker_law@justice.com

Attorney for Plaintiffs

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant

**Appendix of Joint Exhibits to Revised Title Stipulations**

| Exhibit No. | Description |
|---|---|
| 1 | Hash v. United States, No. CV-99-324-S-MHW, Mem. Decision (D. Idaho Nov. 21, 2001) |
| 2 | Hash v. United States, No. CV-99-324-S-MHW, Mem. Decision (D. Idaho Aug. 18, 2006) |
| 3 | Potter Deed |
| 4 | Reed Deed |
| 5 | Hallstrom Deed |
| 6 | Male Deed |
| 7 | Kilborn Deed |
| 8 | Girling Deed |
| 9 | Day Deed |
| 10 | Jeffreys Deed |
| 11 | Glenn Deed |
| 12 | Hartley Deed |
| 13 | Hoffstatter Deed |

U.S. DISTRICT COURT
DISTRICT OF IDAHO
Filed at 4:30 p. M
NOV 27 2001
CLERK, U.S. DISTRICT COURT
By VG. Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, WILLIAM DON LAKEY and NANCY HAWKINS, for themselves and all others similarly situated, | |
| Plaintiffs, | Case No. CV 99-324-S-MHW |
| v. | **MEMORANDUM DECISION** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## INTRODUCTION

Currently before the Court for its consideration is the Examination of the Original Conveyances to the Railroad for the Purpose of Determining the Nature of the Property Interest Acquired by the Railroad and the Nature of the Property Interest Retained by the Grantors. On August 8, 2001, the Court conducted a hearing on the above matter with counsel for all parties present. The Court is now prepared to issue its Memorandum Decision determining the nature of the property interest acquired by the Railroad and the nature of the property interest retained by the grantors.

Blendu v. US, No. 01-718L
Revised Title Stipulations, Ex. 1

## I.

## BACKGROUND.

Plaintiffs each own an interest in land that once constituted part of a railroad corridor operated by the Pacific and Idaho Northern Railroad Company ("Pacific & Idaho") between Weiser and New Meadows, Idaho, but that has since been converted to interim use as a recreational trail (the "Weiser Trail") by order of the Interstate Commerce Commission ("ICC") under the provisions of the National Trails System Act, 16 U.S.C. § 1241, *et seq.* (the "Rails-to-Trails Act"). Plaintiffs allege that the conversion of their property for interim trail use has deprived them of their rights to possession, control and enjoyment of their land and constitutes a taking for which they are entitled just compensation under the Fifth Amendment of the United States Constitution.

Plaintiffs maintain that the subject right-of-way is made up of 192 original parcels. Although Plaintiffs acknowledge that these parcels were conveyed to the railroad, Plaintiffs argue that the method of conveyance is immaterial because the railroad only recorded an easement to use the railroad right-of-way for railroad purposes. Plaintiffs further assert that they are the owners in fee simple of the land burdened by this restricted use easement and that Idaho law would have terminated these easements but for the ICC decision that authorized the right-of-way to be used for interim trail use.

The briefing presently before the Court is limited to an examination of the original conveyances to the Pacific & Idaho for the purpose of determining the nature of the property interest acquired by Pacific & Idaho at the time of conveyance and the nature of the property interest, if any, retained by the original grantors. To further this process, the parties agreed to

divide railroad company title issues into categories and identify the relevant portions of the right-of-way corridor with the methods by which the railroad company obtained its rights to use the corridor of land. The parties also agreed to select sample documents representing the categories and to provide the Court with briefs on the relevant title by reference to the representative documents. *See* Joint Appendix for representative documents. Category 1 encompasses conveyances from the United States to Pacific & Idaho under the General Railroad Right-of-Way Act of March 3, 1875, ch. 152, 18 Stat. 482 (codified as 43 U.S.C. §§ 934-939 (1982)) (the "1875 Act") and includes 24 parcels of property consisting of approximately 895 acres of land.[1] Categories 2 through 9 encompass lands that were conveyed to Pacific & Idaho by a warranty deed or a quitclaim deed. Category 10 contains a number of original parcels for which no conveyance instrument has been located. For the purposes of this opinion Category 10 Parcels will be treated as having been acquired by Pacific & Idaho through adverse possession. Finally, Category 14, an overlapping category, contains deeds that were executed after Pacific & Idaho already entered and possessed the right-of-way corridor.

As a preliminary matter, the conveyance of strips of land in fee is disfavored in some states as a matter of public policy and therefore gives rise to a presumption that the conveyance of a strip of land is an easement rather than a fee. This is commonly referred to as the "strip and gore doctrine." Plaintiffs apply this principle to support their contention that most of the subject deeds conveyed only an easement even where the otherwise ambiguous language of the deeds indicates the conveyance of fee simple title.

---

[1] This acreage represents approximately 60% of the land at issue in this litigation.

However, in *C & G, Inc. v. Rule*, 25 P.3d 76 (Idaho 2001), the Idaho Supreme Court expressly declined to apply the strip and gore doctrine to railroad deeds. In so doing, the court acknowledged that although it "has tacitly recognized the existence of the 'strip and gore' doctrine, it has only done so in the context of vacated alleys." *Id.* at 81. In addition, the court stated that "[w]e have never recognized such a policy in a railroad deed construction case and are reluctant to do so in light of the legislature's mandate in favor of conveying fee simple title." *Id.* Thus, the strip and gore doctrine does not apply to railroad lands under Idaho law.

The Court finds that this same analysis applies to the construction of the deeds at issue in this case. Therefore, this Court will not apply a presumption that the railroad deeds conveying strips of land must be interpreted as conveying only an easement.

As another introductory matter, the Court points out that deeds are generally structured in a similar manner and contain several cognizable parts. These parts typically include: (1) the granting clause, which is found in the premises of the deed; (2) the consideration for the conveyance; (3) the descriptive clause, which generally follows the granting clause and provides a more detailed description of the property conveyed; and (4) the habendum clause. *See* 23 Am.Jur.2d Deeds §§ 18-24 (1983).

Under Idaho law, the goal of deed interpretation is to determine and give effect to the intention of the parties. The Idaho Court of Appeals has held that "[i]n construing a deed of conveyance, the trial court's primary function is to seek and give effect to the real intention of the parties." *Bumgarner v. Bumgarner*, 862 P.2d 321, 329 (Idaho Ct. App. 1993). To determine the intent of the parties, Idaho follows the "four corner rule." That is, "the intent of a plain and unambiguous deed must be ascertained from the deed, and parol evidence is not admissible." *City*

*of Kellogg v. Mission Mountain Interests Ltd.*, 16 P.3d 915, 919 (Idaho 2000); *see also C & G*, 25 P.3d at 78 ("In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument.")

Therefore, in order for the Court to determine the nature of the property interest acquired by Pacific & Idaho at the time of conveyance and the nature of the property interest, if any, retained by the original grantors, the Court will examine each deed in each category on an individual basis.

## II.

## CATEGORY 1.

Again, Category 1 encompasses conveyances from the United States to Pacific & Idaho under the 1875 Act.[2] Thus, a conveyance under this category would occur as follows: The United States owned the land and Pacific & Idaho acquired easements to the land under the 1875 Act. When settlers would later obtain federal grants through patents issued pursuant to the Homestead Act of 1862, the patents would be granted subject to, *inter alia*, the 1875 Act easements that already encumbered the land. The issue then becomes whether the United States retained a reversionary interest in the subject parcels or if any reversionary interest accompanied the patents and vested in the homesteaders. Here, while Defendant United States has not asserted that it owns underlying fee, it does argue that it owns the reversionary interest. Plaintiffs, however, contend that they own any reversionary interest for the majority of the parcels in Category 1.[3]

---

[2] A discussion of the 1875 Act appears in the following subsection.

[3] Concerning Tabs 1-4 in the Joint Appendix, Plaintiffs represent that they will stipulate to conveyance in fee to Pacific & Idaho. With respect to Tabs 7-10, 12, 15-17,

**A. The 1875 Act.**

The 1875 Act granted "an interest suitable for railroad purposes – a right-of-way, which, by definition, carried with it the right to exclusive use and occupancy by land." *State of Idaho v. Oregon Short Line R.R. Co.*, 617 F. Supp. 207, 212 (D. Idaho 1985). The United States Supreme Court has interpreted the 1875 Act as conveying only an "easement" to the acquiring railroad rather than a fee simple interest. *See Great Northern Ry. Co. v. United States*, 315 U.S. 262, 277 (1942). Accordingly, the parties in the present litigation agree that Pacific & Idaho received an easement under the 1875 Act, not a common law easement.

In 1920, Congress enacted a statute which allowed land grant railroads to convey any portion of their rights-of-way to "any State, county, or municipality . . . to be used as a public highway or street[,]" provided that the railroad retain at least 50 feet on either side of the center line of its railroad (i.e., a 100-foot wide right-of-way). Act of May 25, 1920, ch. 197, 41 Stat. 621 (codified at 43 U.S.C. § 913). This statute did not, however, authorize the government to convey any portion of its reversionary interest in 1875 Act rights-of-way to the owners of lands abutting or traversed by such rights-of-way. Accordingly, the Court finds that Plaintiffs could not and did not receive a vested interest in the subject properties under 42 U.S.C. § 913.

In 1922, Congress enacted a separate but related piece of legislation that was known as the Railroad Right-of-Way Abandonment Act of March 8, 1922, 42 Stat. 414 (codified at 43 U.S.C. § 912) (referred to herein as "Section 912"). Section 912 was intended "to ensure that railroad rights of way would continue to be used for public transportation purposes." *Vieux v. East Bay*

---

Plaintiffs insist that the language in such deeds is ambiguous. Further, Plaintiffs argue that Tabs 5-6, 11, 13-14, 18 are unambiguous grants of easements to Pacific & Idaho.

*Regional Park Dist.*, 906 F.2d 1330, 1335 (9th Cir. 1990); *see also Oregon Short Line R.R.*, 617 F. Supp. at 212 (finding that Sections 912 and 913 "evince an intent to ensure that railroad rights-of-way would continue to be used for public transportation purposes, primarily for highway transportation").

Plaintiffs' contention that they own fee title to the subject lands and any reversionary interest is based on *City of Aberdeen v. Chic. & N.W. Transp. Co.*, 602 F. Supp. 589 (D.S.D. 1984), in which the court held that Section 912 does not apply to rights-of-way granted under the 1875 Act. However, despite Plaintiffs' assertions to the contrary, Section 912 does apply to this case because, in 1988, Congress effectively repealed those portions of Section 912 that had allowed the government to relinquish its interest in these rights-of-way to adjacent landowners. *See Oregon Short Line R.R.*, 617 F.Supp. 207 (D. Idaho 1985); *see also* 16 U.S.C. § 1248(c) (providing that, for abandonment or forfeiture of rights-of-way after October 4, 1988, title reverts to the United States). Thus, after October 1988, the United States had no authority to relinquish its reversionary interest in 1875 Act rights-of-way to adjacent landowners such as Plaintiffs.

Based on the foregoing, the Court finds that the United States held the reversionary interest in the subject rights-of-way when the ICC issued the notice of interim trail use in 1995. Accordingly, Plaintiffs did not own a vested property interest in any of the 1875 Act rights-of-way at issue when those rights-of-way were railbanked and interim trail use was authorized by the ICC.

## III.

## CATEGORIES 2 THROUGH 9.

### A. Categories 2 and 3.

Categories 2 and 3 contain deeds restricting the use of the conveyed property to railroad purposes and contain a reverter clause. A conveyance under these categories would occur as follows: Individuals or companies owned certain parcels of land. Pacific & Idaho approached such landowners and requested a rights-of-way. Warranty deeds were subsequently executed. The issue in these categories is whether the representative deeds conveyed fee simple title to the railroad or merely a fee simple determinable.

The representative deed for Category 2 is the deed for Parcel 94. The stated consideration for Parcel 94 is fifty dollars ($50.00) for approximately 2.23 acres of land. The grantor was The New England Mortgage Security Company of Connecticut ("N.E. Mortgage") and the grantee is Pacific & Idaho.

The granting clause provides that N.E. Mortgage "does grant, bargain, sell, convey and confirm unto [Pacific & Idaho] and to its successors and assigns forever, all that certain tract of land situate, lying and being in the County of Washington, State of Idaho described as follows . . . ." The description clause indicates that the "tract of land" generally identified in the granting clause is "[a] strip of land one hundred feet wide being fifty feet on each side of the center line of the [Railroad]."

The habendum clause states, "TO HAVE AND TO HOLD; all and singular the above mentioned and described premises, together with all and singular the above mentioned and

described premises, together with the appurtenances, unto the said party of the second part, and to its successors and assigns forever."

Following the habendum clause, the deed for Parcel 94 contains three conditions. First the deed states that,

> This conveyance is made upon the express condition that the property herein conveyed is to be used for the maintainance [sic] and operation of a railroad, and if the said premises shall cease, at any time to be used for railroad purposes, and no line of railroad shall be maintained over and across the same then in and in such event the said property herein granted shall revert to the grantor its successors and assigns[.]

Second, the grantor reserved for itself, its successors and assigns, the right to have and use one wagon crossing over and across the railroad. Third, the deed requires the railroad to "construct and maintain a suitable fence upon both sides of the track along the boundary line of the premises herein conveyed."

The deed for Parcels 158 and 164, the sample deed for Category 3, is a warranty deed dated January 10, 1911. The grantor was Payette Lumber and Manufacturing Company and the stated consideration is one dollar ($1.00).[4] The granting clause of this deed states that the lumber company "does by these presents sell and convey unto the [Railroad], its successors and assigns,

---

[4] The consideration paid by a railroad company is sometimes viewed as evidence of the parties' intent to convey fee title or an easement. *See, e.g.*, *Clark v. CSX Transp., Inc.*, 737 N.E.2d 752, 759 (Ind. Ct. App. 2000). However, "nominal consideration, alone, does not make the instrument ambiguous, nor does it create an easement." *Id.* *See also Machado v. So. Pac. Transp. Co.*, 233 Cal.App.3d 347, 359 (Ct. App. 2d Dist. 1991) (declining to attribute any significance to the $1.00 consideration stated in the deed and noting that the court was unable to ascertain whether the nominal amount was the true consideration for the conveyance).

all that piece, pieces, parcel and parcels of land, and all the following described real estate, privileges and rights . . . ."

The descriptive clause identifies the land as:

> A strip of land one hundred (100) feet wide, of which the center line of the route and line of [Pacific & Idaho] as the same is now surveyed and constructed, is the center . . ., being fifty (50) feet wide on each side of the center line of said route, over, across, and through the following [described tracts].

The habendum clause in the deed for Parcels 158 and 164 reads in part as follows:

> TO HAVE AND TO HOLD the same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, unto the said part of the second part, its successors and assigns forever, so long as they or either of them shall use said property for right of way purposes, and in the event that said property shall cease to be used for right of way purposes, it shall then and thereupon and thereby revert to said grantor herein, its successors and assigns.

Looking to the general deed construction, the Court finds that the Category 2 and 3 deeds are examples of a fee simple determinable, i.e., a fee simple conveyance with a possibility of reverter.[5] Conversely, the Court does not find that the presence of reversionary interest language requires these deeds to be interpreted as conveying easements. The deeds falling in Categories 2 and 3 contain explicit language that mandates a reversion of conveyed rights upon cessation of the

---

[5] Restatement (First) of Property § 44 (1936) states that "[a]n estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple; and (b) provides that the estate shall automatically expire on the occurrence of a stated event." The Court also notes that court decisions interpreting similar deeds under the law of other states have found that such deeds conveyed a fee simple determinable. *See, e.g., State of Oregon v. Tolke*, 586 P.2d 791, 795 (Or. 1978) (holding that a warranty deed conveying a strip of land to a railroad and further providing that the land shall immediately revert to the grantors if it is abandoned or ceases to be used as a railroad right of way was "a classic example of the creation of a fee simple determinable").

corridor for railroad use. Specifically, the Parcel 94 deed refers to cessation of use for "railroad purposes" while the deed for Parcels 158 and 164 refers to cessation of "right of way purposes." Accordingly, the Court finds that the interests conveyed to Pacific & Idaho in the Parcel 94, 158, and 164 deeds terminated upon cessation of the corridor for railroad use and reverted back to the grantors.

**B. Categories 4 and 7.**

Category 4 contains deeds with language in the granting clauses that convey all estate, right, title and interest in and to the subject property, including the reversionary and remainder interests. Category 7 contains deeds that conveyed a parcel or tract of land, together with "all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining, and the rents, issues, and profits thereunder."

The Court notes that Plaintiffs stipulate that all of the representative deeds for Category 4 (Parcels 13-15, 17, 19, and 23) and one of the representative deeds for Category 7 (parcel 16 at J.App.3) "are in the form of deeds conveying fee simple and contain no restrictions, qualification, or other indication that the parties intend other than a fee simple conveyance" to Pacific & Idaho, and are therefore willing to stipulate that the deeds conveyed fee title.

As to the remaining parcel in Category 7, Parcel 128, Plaintiffs' arguments do not operate to convert otherwise ambiguous fee simple conveyances into mere easements. Therefore, the Court finds that the Pacific & Idaho also acquired fee simple title to Parcel 128.

**C. Category 5.**

Category 5 contains deeds with granting clauses that are the same or substantially similar to the deeds in Category 4, but also contain "right of way" language in the granting clause. When

a deed to any grantee contains a granting clause that conveys a "right-of-way," the deed generally will be interpreted as conveying an easement.

However, the mere mention of the term "right-of-way" does not necessarily constitute the conveyance of an easement limited to railroad purposes. Rather, the term "right-of-way" may be used to describe a right belonging to a party (i.e., a right of passage over a tract of land), or it may be used to describe a strip of land which railroad companies acquire to construct their railroads (i.e., the land itself). *See Joy v. St. Louis*, 138 U.S. 1, 44 (1891). These two distinct meanings of the term right-of-way have long been recognized under Idaho law. *See Oregon Short Line. Ry. Co. v. Yeates, Assessor*, 17 P. 457, 460 (Idaho 1888) (holding that the term "right-of-way" "sometimes is used to mean the mere intangible right to cross" and "is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its road-bed").

Further, in 1864, Idaho's territorial legislature enacted a fee simple presumption statute which provided that "[a] fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." 1864 Idaho Session Laws § 43 at 528. This fee simple presumption statute appears today in Idaho Code § 55-604. Further, as noted *supra*, the Idaho Supreme Court has found that the state's fee simple presumption statute applies to railroad deeds. *See C & G* 25 P.3d at 81.

The deed for Parcels 109 and 111, one of the sample deeds for Category 5, reads in part, as follows:

> [Grantors] do grant, bargain, sell, convey and confirm unto [Pacific & Idaho], and to its successors and assigns forever, all the following described real estate . . . .

> A perpetual right of way through, over, and across [described land] . . . . the said right of way so conveyed being fifty feet wide each side of the center line of the railway belonging to [Pacific & Idaho] as the same is now located, constructed and operated on the ground; said right of way being one hundred (100) feet wide along the entire route across said premises occupied and used by [Pacific & Idaho].
>
> TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of the said [grantors].
>
> TO HAVE AND TO HOLD, all and singular the above mentioned and described premises, together with the appurtenances, unto [Pacific & Idaho] and to its successors and assigns forever. And the [grantors] and their heirs, the said premises in the quiet and peaceable possession of [Pacific & Idaho] its successors and assigns, against the [grantors] and their heirs, and against all and every person and persons whomsoever, lawfully claiming or to claim the same, shall and will warrant and by these presents forever defend.

The deed for Parcel 116, also a sample deed for Category 5, provides as follows:

> [Grantors] have granted, bargained and sold and by these presents do grant, bargain, sell, convey and confirm unto [Pacific & Idaho], and to its successors and assigns forever, all the following described real estate . . . .
>
> A right of way one hundred feet in width being fifty feet on each side of the center line of the survey of [Pacific & Idaho] . . . and [Pacific & Idaho] will also put a box across the road bed upon such right of way . . . and will fence such right of way.

In the cases cited by Plaintiffs, the deeds under consideration had granting clauses that granted a "right-of-way," not "real estate" or a "parcel of land" that is simply described as a right-of-way. When the term "right-of-way" is used in the descriptive clause to identify and describe land or "real estate" granted in the granting clause, the use is treated as merely descriptive of the

land granted and not as limiting the grantee railroad's use of the property. *See, e.g.*, *Johnson v. Valdosta, M. & W.R. Co.*, 150 S.E. 845, 846-47 (Ga. 1929) (holding that the use of the phrase "for a railroad right-of-way" in the descriptive clause "was intended to describe the land granted, and not to fix the tenure of the grantee therein"); *see also Mayberry v. Gueths*, 777 P.2d 1285, 1288 (Mont. 1989) (finding deed to railroad conveyed a fee interest despite the use of the term "right-of-way" in the descriptive clause).

Accordingly, the Court finds that the Category 5 deeds convey "real estate," not a "right-of-way" across real estate owned by the grantor. Although the term "right-of-way" is used in the representative deeds, it is used simply to describe and locate the land granted and not to limit the estate granted. Further, all of the other language in the Category 5 deeds supports the conclusion that these deeds conveyed fee title to the railroad.

**D. Categories 6 and 8.**

Category 6 contains deeds with granting clauses that are the same or substantially similar to the deeds in Category 4, but also contain "as a perpetual right of way" for a rail line language in the habendum clauses. Category 8 contains deeds with granting clause language that is the same or similar to the deeds in Category 6, but that also contain purpose language. While Plaintiffs concede that the Category 6 and 8 deeds "contain language that is also found in deeds conveying the fee," Plaintiffs also contend that the use of the term "right-of-way" in the deeds requires the Court to conclude that the deeds conveyed only an easement for railroad purposes.

Again, the mere use appearance of the term right-of-way within the four corners of the deeds does not necessarily indicate an intent to limit the estate granted to a mere easement. Rather, the Court must also look at the context in which the term "right-of-way" is employed and

the other language used in the deed. Looking to the deeds in Categories 6 and 8, the mere appearance of the term "right-of-way," without any other expression of limitation of the title to the estate conveyed, is not sufficient to convey only an easement. Accordingly, the Court finds that the deeds in Categories 6 and 8 conveyed fee simple title to Pacific & Idaho.

**E. Category 9.**

Category 9 contains deeds that generally convey a strip or tract or parcel of land, together with "all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said party of the second part, its successors and assigns forever." Plaintiffs contend that the mere use of the term "right-of-way" in the captions of the representative deeds for Category 9 requires the Court to finds that these deeds conveyed only an easement for limited purposes. However, the Idaho Supreme Court has held that when the term "right-of-way" appears on a deed cover sheet, but is not found in the granting or habendum clauses, the use of the term right-of-way "merely describes generally the strip of property acquired by the [railroad] and does not express a limitation of the title to the estate conveyed." *See C & G*, 25 P.3d at 81. Accordingly, the Court finds that the Category 9 deeds conveyed fee simple title to Pacific & Idaho.

## IV.

## CATEGORY 10.

Category 10 deeds encompass those parcels of land that the railroad acquired by adverse possession. There are two decisions from the Idaho Supreme Court that support the conclusion that a railroad can acquire fee title by adverse possession. In *Oregon Short Line R.R. Co. v. Caldwell*, 39 Idaho 71, 226 Pac. 175 (1924), the court was presented with the question of whether

the City of Caldwell had a right to construct a road across the railroad's right-of-way as a result of the dedication of a street by the filing of a plat in 1885. The court held that the City had no such right because the railroad was -- as a result of its road construction in 1882 and 1883 "in open and notorious possession of the right of way before any rights attached by virtue of the attempted [street] dedication." 39 Idaho at 76. The court further noted that "[t]here can be no more effective means of giving notice of a claim to a right of way than the building and operation of a railroad over it." *Id.* In sum, the *Caldwell* decision supports the conclusion that a railroad can acquire fee title by adverse possession.

In *O'Brien v. Best*, 194 P.2d 608 (Idaho 1948), the court was asked to quiet title to a parcel of land (referred to as "Parcel 2"), which had been used and occupied by the railroad since 1903-1904, when the railroad changed the location of its main line. The railroad was claiming title to this parcel by adverse possession. The court found that the railroad met the burden of proving its claim for adverse possession by proof that the railroad had paid taxes and adversely used the parcel since the realignment of its tracks.

In light of the above cases, the Court finds that Pacific & Idaho acquired fee title to lands it adversely possessed.

## V.

## CATEGORY 14.

The deeds falling into Category 14, an overlapping category, were executed after Pacific & Idaho already entered and possessed the right-of-way corridor. Plaintiffs contend that a deed executed after the use of the land had already been appropriated for railroad purposes was as a mere recognition of the easement taken for railroad purposes; it did not expand interests that

Pacific & Idaho already possessed by its taking nor did it diminish the landowner's interest further beyond what had already been lost.

However, under Idaho law, railroads are authorized to acquire fee simple title by purchase, donation or condemnation. In addition, as discussed *supra*, the strip and gore doctrine does not apply to railroad lands under Idaho law. Moreover, Idaho has a fee simple presumption statute that was in existence at the time of the subject conveyances and that the Idaho Supreme Court has determined applies to railroad deeds. *See C& G*, 25 P.3d at 81. Accordingly, the fact that the deeds in Category 14 were executed after Pacific & Idaho already entered and possessed the right-of-way corridor does not bar Pacific & Idaho from acquiring fee simple title.

## VI.

## SUMMARY AND CONCLUSION.

To summarize, the Court finds as follows: (1) Plaintiffs did not own a vested property interest in the 1875 Act rights-of-way found in Category 1 when such rights-of-way were railbanked and interim trail use was authorized by the ICC in 1995. Rather, the United States held the reversionary interest in such rights-of-way; (2) The interests conveyed to Pacific & Idaho in the representative deeds for Categories 2 and 3 terminated upon cessation of the corridor for railroad use and reverted back to the grantors; (3) Pacific & Idaho acquired fee simple title to the deeds found in Categories 4 and 7; (4) The Category 5 deeds conveyed "real estate," not a "right-of-way" across real estate owned by the grantor. Thus, the Category 5 deeds conveyed fee title to Pacific & Idaho; (5) In Categories 6 and 8, the mere appearance of the term "right-of-way," without any other expression of limitation of the title to the estate conveyed, is not sufficient to convey only an easement. Accordingly, the deeds in Categories 6 and 8 conveyed fee simple title

to Pacific & Idaho; (6) The mere use of the term "right-of-way" in the captions of the representative deeds for Category 9 does not prevent Pacific & Idaho from acquiring fee title; (7) Pacific & Idaho acquired fee title to the lands it adversely possessed in Category 10; and (8) The fact that the deeds in Category 14 were executed after Pacific & Idaho already entered and possessed the right-of-way corridor does not bar Pacific & Idaho from acquiring fee simple title.

DATED: November 26, 2001.

MIKEL H. WILLIAMS
UNITED STATES MAGISTRATE JUDGE

## MAILING CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 28th day of Nov., 2001, to the following:

LARY C. WALKER
DELTON L. WALKER
WALKER LAW OFFICE
P.O. BOX 828
WEISER, ID 83672

C. TOM ARKOOSH
ARKOOSH LAW OFFICES, CHTD.
P.O. BOX 32
GOODING, ID 83330

NELS J. ACKERSON
DAVID A. COHEN
JAMES R. BAARDA
THE ACKERSON GROUP, CHTD.
1666 K STREET, N.W., SUITE 1010
WASHINGTON, D.C. 20006-1217

KRISTINE S. TARDIFF
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT & NATURAL RESOURCES DIVISION
C/O OFFICE OF THE UNITED STATES ATTORNEY
55 PLEASANT STREET, SUITE 352
CONCORD, NH 03301

EVELYN KITAY
SURFACE TRANSPORTATION BOARD
OFFICE OF THE GENERAL COUNSEL
1925 K STREET NW SUITE 600
WASHINGTON DC 20423

ANDREA C. FERSTER
GENERAL COUNSEL
RAILS-TO-TRAILS CONSERVANCY
1100 17TH STREET, N.W., 10TH FLOOR
WASHINGTON, D.C. 20036

D MARC HAWS
CHIEF, CIVIL DIVISION
U.S. ATTORNEY'S OFFICE, DISTRICT OF IDAHO
FIRST INTERSTATE CENTER
877 WEST MAIN, SUITE 201
BOISE, ID 83702

Cameron S. Burke, Clerk
United States District Court

Vicki Jones
by Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT HASH and GERLENE HASH, et al., | ) | |
| | ) | Case No. CV-99-324-S-MHW |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ___________________________________ | ) | |

Pending before the Court are the following motions: Defendant's Motion for Partial Summary Judgment regarding Categories 5, 6, 8, 14, and 15 (Docket No. 122); Plaintiffs' Cross Motion for Partial Summary Judgment regarding Categories 5, 6, and 8 (Docket No. 127); Plaintiffs' Motion for Reconsideration of Memorandum Decision (Docket No. 135); and Defendant's Motion for Clarification Regarding Proceedings on Remand regarding Categories 10, 12, and 13 (Docket No. 145).

Having considered the record, the briefs of the parties, and oral argument, and being otherwise fully informed, the Court enters the following Order.

## BACKGROUND

As previously set forth in its Memorandum Decision (Docket No. 88), Plaintiffs each own an interest in land that once constituted part of a railroad corridor operated by the Pacific



Blendu v. US, No. 01-718L
Revised Title Stipulations, Ex. 2

and Idaho Northern Railroad Company (“Pacific & Idaho” or “Railroad”) between Weiser and New Meadows, Idaho, that has since been converted to interim use as a recreational trail (the “Weiser Trail”) by order of the Interstate Commerce Commission (“ICC”) under the provisions of the National Trails System Act, 16 U.S.C. § 1241, *et seq.*, (the “Rails-to-Trails Act”). Plaintiffs alleged that conversion of their property that once constituted part of a railroad corridor for interim use as a recreational trail constituted a taking for which they are entitled to just compensation under the Fifth Amendment.

The parcels were conveyed to the Railroad under various forms of documents arguably resulting in the Railroad’s acquisition of various forms of property interests. However, Plaintiffs maintain that despite the form of conveyance, the Railroad acquired only an easement for railroad purposes that would have been terminated but for the Rails-to-Trails Act. As stated in the Court’s decision, “[t]he briefing presently before the Court is limited to an examination of the original conveyances to the Pacific & Idaho for the purpose of determining the nature of the property interest acquired by Pacific & Idaho at the time of conveyance and the nature of the property interest, if any, retained by the original grantors.” *Mem. Dec.* at 2 (Docket No. 88).

In order to determine the nature of the property interest acquired by the Railroad and the nature of the property interest, if any, retained by the original grantors, this Court previously examined the original conveyances to the Railroad, categorized them by stipulation of the parties according to the methods by which the Railroad obtained its rights to use the corridor, and entered its decision setting forth its determination with regard to each category. In reaching its decision, the Court was cognizant of the fact that deeds usually contain several distinct parts: (1) the granting clause, which is found in the premises of the deed; (2) the consideration for the

conveyance; (3) the descriptive clause, which generally follows the granting clause and provides a more detailed description of the property conveyed; and (4) the habendum clause. *See* 23 Am.Jur.2d Deeds §§ 18-24 (1983). The Court was also aware in examining each of these clauses, that the presence or absence of specific terms, such as "right of way" or "as long as," would be important in determining the intent of the parties.

The Court ruled in favor of Defendant as to Categories 1, 5, 6, 7, 8, 9, 10, 12, 13, 14, and 15 finding that the Railroad acquired fee title. Plaintiffs thereafter appealed those portions of the Court's decision pertaining to Categories 1, 5, 6, 8, 14, and 15 to the Federal Circuit Court of Appeals which reversed in part, vacated in part, and remanded for further proceedings. *See Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005) (Docket No. 116).

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**CATEGORIES 5, 6, 8, 14, AND 15**

The Court had previously found that the deeds in Categories 5, 6, 8, and 14 conveyed fee title to the Railroad rather than an easement. The Court's Memorandum Decision did not address Category 15, but the Federal Circuit decision included it with Categories 5, 6, and 8. The Federal Circuit remanded these categories to allow this Court to consider whether the Idaho Supreme Court decision in *Neider v. Shaw*, 65 P.3d 525 (Idaho 2003), issued after this Court's initial decision, would change its analysis that the deeds in those categories conveyed fee title to the Railroad.[1]

Defendant identifies the threshold question in this case as whether Plaintiffs have an ownership interest in the right of way entitling them to compensation. Defendant contends that

---

[1] As indicated in the parties' briefing, Plaintiffs do not seek review of Category 14, and the deeds in Category 15 overlap with the deeds in Categories 5, 6, and 8 and need not be considered separately.

each of the representative deeds in question is unambiguous and conveyed fee simple title to the Railroad. Furthermore, Defendant contends that *Neider*, while reaffirming long-established principles of deed interpretation under Idaho law, is not controlling because the deed at issue in *Neider* is substantively distinguishable from the deeds at issue here.

The *Neider* court neatly summarized Idaho law with respect to construing documents conveying an interest in land:

> When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction. *Daugharty v. Post Falls Highway Dist.*, 134 Idaho 731, 735, 9 P.3d 534, 538 (2000) (citing *Gardner v. Fliegel*, 92 Idaho 767, 770, 450 P.2d 990, 993 (1969)). The intent of the parties is determined by viewing the conveyance instrument as a whole. *Id*. (citing *Doyle v. Ortega*, 125 Idaho 458, 461, 872 P.2d 721, 724 (1994)). Interpretation of an unambiguous conveyance instrument is a question of law to be settled by its plain language. *City of Kellogg v. Mission Mtn. Interests Ltd., Co.*, 135 Idaho 239, 243, 16 P.3d 915, 919 (2000). Interpretation of an ambiguous deed is a question of fact to be settled by the language in the conveyance instrument and the facts and circumstances of the transaction. *Id*. Whether a deed is ambiguous is a question of law. *Id*. at 244, 16 P.3d at 920. Ambiguity exists only if language of the conveyance instrument is subject to conflicting interpretations. *Id*.

*Neider*, 65 P.3d at 530.

### A. *Neider* Decision

*Neider* involved a conveyance instrument to a railroad which used terms such as "grant," "bargain," and "sell" but which contained the following handwritten language:

> Provided: nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should [the Railroad] fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said J. Fremont Bow and C.A. Bow, his wife, or their legal heirs.

*Neider*, 65 P.3d at 527. Based on that language, the Court concluded,

> In this case, a substantive provision of the conveyance instrument, in handwriting, grants a "right of way" to the Railroad, which this Court has identified as language that creates an easement. The conveyance instrument from the Bows to the Railroad granted an easement to the Railroad rather than a fee simple.

*Id.*

In making its determination that the instrument conveyed an easement rather than fee title, the Court relied on its prior holding in *C&G, Inc. v. Rule*, 25 P.3d 76 (Idaho 2001). *C&G* involved two deeds containing granting and habendum clauses stating that the grantor, in exchange for consideration:

1. <u>Thomas Deed</u>:

> [D]oes grant, sell and convey unto the said Idaho Northern Railway Company, Limited, the following described piece, parcel of land, to wit: A strip, piece or parcel of land one hundred feet in width, situated in the North West quarter (NW 1/4 ) of Section seventeen (17) . . . .
>
> To Have and to Hold, the said above described premises unto the said Idaho Northern Railway Company, Limited, its successors and assigns forever.

*Id.* at 78.

2. <u>Cheney Deed:</u>

> [S.F. Chaney] does grant, sell and convey unto the said Idaho Northern Railway Company, Limited, the following described piece, parcel of land one hundred feet in width, situated in the West one half (W 1/2 ) of the Northeast quarter (NE 1/4) . . . .
>
> To have and to hold, the said above described premises unto the said Idaho Northern Railway Company, Limited, its successors and assigns forever.

*Id.*

In *C&G*, the lower court had determined that the use of the words "Right of Way" on the

cover page created an ambiguity although it ultimately ruled that the railroad had acquired fee title. The Idaho Supreme Court disagreed that an ambiguity existed and determined that the language on the cover sheet was merely descriptive of the strip of property being conveyed. It held that those words created no ambiguity because they were not in the granting or habendum clauses of the deeds. *Id.* at 79-80. In other words, that court found that the deeds conveyed fee simple title to the railroad.

**B. Application of *Neider* to Category 5 Deeds (Approximately 8 parcels)**

One of the Category 5 deeds reads, in part, as follows:

> [Grantors] do grant, bargain, sell, convey and confirm unto [Pacific & Idaho], and to its successors and assigns forever, all the following described real estate . . . .
>
> A perpetual right of way through, over, and across [described land] . . . . the said right of way so conveyed being fifty feet wide each side of the center line of the railway belonging to [Pacific & Idaho] as the same is now located, constructed and operated on the ground; said right of way being one hundred (100) feet wide along the entire route across said premises occupied and used by [Pacific & Idaho].
>
> TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of the said [grantors].
>
> TO HAVE AND TO HOLD, all and singular the above mentioned and described premises, together with the appurtenances, unto [Pacific & Idaho] and to its successors and assigns forever. And the [grantors] and their heirs, the said premises in the quiet and peaceable possession of [Pacific & Idaho] its successor and assigns, against the [grantors] and their heirs, and against all and every person and persons whomsoever, lawfully claiming or to claim the same, shall and will warrant and by these presents forever defend.

J. App. 13.[2]

Another sample deed for Category 5 reads, in part:

> [Grantors] have granted, bargained and sold and by these presents do grant, bargain, sell, convey and confirm until [Pacific & Idaho], and to its successor and assigns forever, all the following described real estate . . . .
>
> A right of way one hundred feet in width being fifty feet on each side of the center line of the survey of [Pacific & Idaho] . . . and [Pacific & Idaho] will also put a box across the road bed upon such right of way . . . and will fence such right of way.
>
> Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of said parties of the first part.

*Id.* at 14.

In *Neider*, the Idaho Supreme Court, citing *C&G*, stated, "This Court, however, recognized that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement. (Citation omitted)." *Neider*, 65 P.3d at 530. What did the *Neider* court mean when it said if the term "right of way" is used in the "substantive" portion of the deed an easement is created? With that broad statement, did the *Neider* court mean to hold that if the words "right of way" are *ever* used in *any* part of deed, then an easement is created? The Court does not believe the Idaho Supreme Court intended to articulate such a broad rule. The Court further believes that its ruling is tempered by the language in the deed that was before the Idaho Supreme Court in that case.

---

[2] J.App. refers to the Joint Appendix (Docket No. 82) filed on June 1, 2001.

The Idaho Supreme Court itself has stated that its opinions "must be considered and construed in the light of the rule that they are authoritative only on the facts on which they are founded. General expressions must be taken in connection with the case in which those expressions are used. 'There is a pronounced line of demarcation between what is *said* in an opinion and what is *decided* by it.' (Citation omitted)." *Bashore v. Adolf*, 238 P. 534 (Idaho 1925) (emphasis in original). Applying that directive, the Court finds it significant that the Idaho Supreme Court has not yet interpreted a deed containing the term "right of way" in the body of the deed with no other limiting language. As more thoroughly discussed below, *C&G* involved the use of the term on the cover sheet only, and *Neider* involved the use of the term in connection with clear language indicating that the grantees' rights (regardless of what they were) were to be terminated upon cessation of use of the property for railroad purposes.

As noted earlier, deeds generally contain three important clauses: the granting clause, the habendum clause, and the descriptive clause. The granting clause is examined to determine the object of the conveyance. The habendum clause may modify or limit the grant, but does not defeat a clear, unambiguous grant. It is generally held that if there are any inconsistencies between the granting clause and the habendum clause, the granting clause will prevail because the granting clause is "the most dependable expression of the grantor's intention" and "is considered to be the very essence of the deed." *Long v. Horton,* 133 N.E.2d 568, 570-571 (Ind. Ct. App. 1956). Finally, the descriptive clause provides a means for identification of the land being conveyed.

The significance of the term "right of way" in a deed depends, in part, on where the term appears in the deed:

> The mere presence of the term "right of way" does not, in and of itself, indicate an intent to convey an easement. Rather, when appearing *outside of the granting clause*, the term is of limited value because it has two meanings. Right of way refers to 1) a right to cross over the land of another, an easement, and 2) the strip of land upon which a railroad is constructed. *Joy v. City of St. Louis*, 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843 (1891); (citation omitted); Black's Law Dictionary 191 (5th ed.1979) (stating that the "[t]erm 'right of way' sometimes is used to describe a right belonging to a party to pass over land of another, but it is also used to describe that strip of land upon which railroad companies construct their road bed, and, when so used, the term refers to the land itself, not the right of passage over it").

*Clark v. CSX Transportation, Inc.,* 737 N.E.2d 752, 758 (Ind. Ct. App. 2000) (emphasis added).[3]

With this general guidance, the Court will now turn to the actual deed at issue in the *Neider* case, because once it is examined, it becomes clearer what the Idaho Supreme Court was referring to as the substantive portions of a deed. First, the deed contained printed provisions, setting forth traditional language normally found in the granting and habendum clauses which would evidence an intent to convey a fee simple absolute title to the property to the railroad.

Second, the deed contained a handwritten description of the property to be conveyed. This descriptive clause in the deed did not mention “right of way.” As discussed in *Clark*, many courts have struggled in construing the intent of the parties when “right of way” is contained in the descriptive clause of a deed since it can mean, as discussed in the *Clark* case, either an easement or a description of the land over which the railroad constructs its tracks. The Idaho Supreme Court was not confronted with this particular problem in the *Neider* case.

What the *Neider* deed did have was a separate handwritten sentence which modified the printed granting clause in the deed. Rather than conveying fee simple absolute title, this separate

---

[3] The Idaho Supreme Court in *C&G* repeatedly cited to the *Clark* decision.

paragraph "unambiguously reflects the Bows' intent to convey only an easement to the Railroad." *Neider*, 65 P.3d at 530.

In a perfect world, the *Neider* deed would have had this handwritten sentence incorporated into the granting clause so that the granting clause would be appropriately modified to indicate that the grant was of an easement as opposed to a fee simple. While not as precisely set out as it could have been, the Idaho Supreme Court had no difficulty determining that the handwritten sentence was a substantive part of the deed and reflected the intent of the parties to create an easement, without having to go into a detailed discussion that it modified the granting clause. Likewise, the unambiguous expression of intent in the *Neider* deed obviated the need for the Idaho Supreme Court to go into a detailed discussion of what constituted "substantive."

When considered in this context, the *Neider* decision broke no new ground, did not create any new rules regarding the construction of railroad deeds, and is consistent with its decision in *C & G*. In *C&G*, the Idaho Supreme Court had to address a different issue than presented in *Neider*. "Right of way" was contained on a cover sheet to the deed and the court had to determine the intent of the parties. A close reading of *C&G* reveals that the court did not state that the use of the term right-of-way in the *descriptive* portion of the deed would always create an easement since it could just be describing the nature of the land acquired by the railroad. In fact, it said that the right of way words were merely descriptive of the strip of property being conveyed. *Id.* at 80. Rather, the Supreme Court noted:

> Accordingly, because the words "right of way" appear only on the cover pages of the Thomas and Chaney deeds *instead of being found in the granting or habendum clauses*, we hold that the use of the term "right of way" on the cover sheets merely describes generally the strip of property acquired by Idaho Northern and does not express a limitation of the title to the estate conveyed.

> . . . What Galvin fails to note, however, is that the majority of these cases do not address the current situation involved here: where *there is no mention of the term "right of way" in either the granting or habendum clause*, nor any other language in the deeds that serves *to limit the use of the land for the purpose of a railroad right of way*.

*C&G*, 25 P.3d at 80-81 (emphasis added).

In the Category 5 deeds, the words “right of way” do not appear in the granting or habendum clauses. They appear only in the descriptive clause. However, the appearance of the term is not necessarily determinative of intent to create an easement. As the court did in *Clark*, the court in *C&G* recognized that “right of way” can either limit the interest granted in a deed, in which case it would convey an easement, or it can be a phrase describing a parcel of land being conveyed to a railroad for railroad purposes. *Id.* at 80. In the latter sense, the term is “merely descriptive” of the use to which the land is being put. *Id.* Clearly, in the Category 5 deeds, the term is used in the descriptive sense as it is contained in the descriptive clause and contains no limitations regarding the use of the land.

Except for the fact that the Category 5 deeds contain the term "right-of-way" in the descriptive clause, the language in these deeds otherwise falls within the language of the *C&G* deeds and the conclusions as to the *C&G* deeds are applicable here:

> Although we recognize that a conflict exists among courts as to the interpretation of deeds purporting to convey land where there is also a reference to a "right of way," where the railroad deed does not contain language about its purpose or otherwise limiting the conveyance and conveys a definite parcel of land, courts consistently hold that "the deed will be construed to convey fee simple title." (Citations omitted.) Much of the conflict in the caselaw can be traced to the different meanings of the phrase "right of way." (Citations omitted.) On one hand "right of way" can serve "to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement)." (Citation omitted.) On

> the other, the phrase can describe the parcel of land being conveyed to the railroad for the purpose of constructing its rail line. (Citation omitted.) Used in this manner, "right of way" is merely descriptive as to the use to which the land is being put and does not serve to limit or restrict the estate conveyed.

*Id.* at 80.

The Court is further convinced that the Category 5 deeds conveyed fee title after reviewing a case heavily cited in *C&G* regarding the different meanings of the term “right of way,” an *en banc* decision by the Washington Supreme Court. *See Brown v. State*, 924 P.3d 908 (Wash. 1996). *Brown* involved the interpretation of several railroad deeds, most of which were the statutory warranty form deed, some of which also had references to “rights of way.” The Washington Supreme Court stated,

> The words "right of way" can have two purposes: (1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway. (Citations omitted.) Unlike *Swan*, *Veach*, and *Roeder*, where "right of way" was used in the granting or habendum clauses to qualify or limit the interest granted, *"right of way" in the deeds at issue here appears in either the legal description of the property* conveyed or in the portion of the deeds describing Milwaukee's obligations with respect to the property. The Eidal deed, for example, states:
>
> > Said Railway Company ... will permit a telephone wire and an electric light wire to cross its said right-of-way.... Before grading is begun Right of way fences shall be built.... Said Railway Company is to furnish such facilities for conducting water for irrigation and other purposes under its track and across its Right-of-Way as are reasonable and practicable....
>
> Clerk's Papers (Brown) at 27. Used in this manner, "right of way" merely describes a strip of land acquired for rail lines; it does not qualify or limit the interest expressly conveyed in the granting and habendum clauses. To point out that the Eidal deed and others describe the property as right of way simply begs the question of

> what interest Milwaukee acquired, because a railroad can own rights of way in fee simple if that is what the deed conveys.

*Id.* at 914 (emphasis added).

The *Brown* decision also noted that the obligation to construct or maintain farm crossings or irrigation canals is consistent with the conveyance of fee simple title, with an easement back to the grantors to cross the land conveyed to the railroad. *Id.* at n.9.

The Court does not find the fact that *Brown* was based on statutory warranty form deeds a distinguishable factor from the Category 5 deeds because the language is essentially the same. Rather, the Court finds it significant that *Brown* held that the use of the term "right of way" in the descriptive clause of the deeds, as opposed to the granting or habendum clauses, does not create an easement. Furthermore, as in *Brown*, the fact that one of the deeds in Category 5 contains language requiring the Railroad to put in wagon road crossings and a passageway for calves under the road bed can indicate an intent to grant fee title to the Railroad, yet retain an easement across the Railroad property for the grantor. J. App. 14.

As stated in this Court's prior decision, finding the deeds in Category 5 to have granted fee title is consistent with Idaho's fee simple presumption statute, Idaho Code § 5-604, a conclusion also reached by the court in *C&G*. *C&G*, 25 P. 3d at 81. It is also consistent with the Idaho Supreme Court's refusal to recognize the strip and gore policy in a railroad deed construction case based on its reluctance to do so in light of the legislature's mandate favoring fee simple title. *See id.* Finally, it is consistent with the Idaho Supreme Court's recognition that railroads can acquire fee simple title to land for both operating and non-operating purposes as well as its holding that a deed granting, selling, and conveying a described piece of land to have and hold forever, without any indication of intention of reversion, conveys fee simple absolute

title. *See Union Pacific Railroad Company v. Ethington Family Trust*, 50 P.3d 450, 453 (Idaho 2002).

### C. Application of *Neider* to Category 6 Deeds (Approximately 24 parcels)

The Category 6 deeds grant "real estate" in the granting clause, do not mention right of way in the descriptive clause, but state the following in the habendum clause:

> TO HAVE AND TO HOLD all and singular the tenements, hereditaments and appurtenances as a perpetual right-of-way for said second party's Rail Way Line unto the said party of the second part and to its successors and assigns forever.

J. App. 5.

These deeds obviously differs from the Category 5 deeds in that the term "right of way" appears in the habendum clause. However, as stated above, the granting clause prevails over an inconsistent habendum clause. *Long*, 133 N.E.2d at 570-71. Furthermore, the Court does not believe that *C&G* dictates that the mere presence of the term right of way in habendum clause indicates an intent to grant an easement. While the court in *C&G* said that absence of the words "right of way" in the habendum clause indicated an intent to convey fee title, it did not state that the mere presence of the words necessarily indicated an intent to convey an easement. Rather, it noted that there are two meanings to the term. *Id.* at 80. The Court concludes that in the absence of the term "right of way" in the granting clause or any limiting language regarding purpose or reversion, the language is merely descriptive of the purpose for which the property was conveyed. Indeed, the land was conveyed together with "reversion and reversions." J. App. 5.

As observed in *Brown*, there is no question but that the Railroad acquired the property for railroad purposes. "Identifying the purpose of the conveyance, however, does not resolve the issue at hand because a railroad can own rights of way in fee simple or as easements." *Brown*,

924 P.2d at 913. Accordingly, the Court finds that the Category 6 deeds conveyed fee title.

### D. Application of *Neider* to Category 8 Deed (One parcel)

The deed at issue in this category provides that the landowner granted to the Railroad "a strip of land for a right of way . . . ." Next, the deed contains a legal description of the property with a final sentence describing the use to which the property would be put:

> The said Strip of land is to be used by the said Railway Company for a right of way for the said Railway and for all and every purpose necessary to be used in connection with the running and operation of the said Railway.

J. App. 6

Unlike the *Neider* deed, however, there is no language stating that the deed would be null and void if the Railroad did not establish and maintain the property for right of way, station, sidetrack, and warehouse purposes or that the property would revert to the grantor. While the language in this Category 8 deed suggests a possible intent to create an easement, the presence of the term "right of way" in the granting and descriptive clause does not always lead to a finding of an easement.

The deed at issue here is similar to a deed discussed in a recent Ninth Circuit decision which was applying Washington law:

> Here the term "right of way" appears in the granting clause as well as in the legal description. In this sense, the Hilchkanum deed suggests a possible intent to create only an easement in a way the deeds at issue in *Brown* did not. However, neither the granting nor the habendum clauses contains language *clearly limiting the use of the land to a specific purpose*. In virtually all cases where Washington courts have found only an easement, the granting or the habendum clauses contained such language . . . . Without such additional language, the use of the term "right of way" merely "begs the question" since a railroad could own a right of way either as an easement or in fee. *Brown*, 924 P.2d at 914. . . .

> The Hilchkanum deed contained precatory language indicating that the parties expected that the right of way would be used to construct and operate a railroad, but it did not actually condition the conveyance on such use. *Brown*, 924 P.2d at 912-13. Also, in *Brown*, the court noted that identifying the general purpose of a conveyance, i.e., for railroad purposes, is not helpful in discerning intent because it does not clarify whether the right of way is an easement or a fee. *Id*. at 913.

*King County v. Rasmussen*, 299 F.3d 1077, 1086 (9th Cir. 2002) (emphasis added).

Similarly, the West Virginia Supreme Court found that the deed in question conveyed fee simple title rather than an easement where (1) the granting clause granted "a strip of land for a right-of-way" rather than the right to use the land; and (2) the habendum clause gave the railroad the right "[t]o have and to hold said strip of land unto said Railway for a right of way, its successors and assigns forever." *Grill v. West Virginia Railroad Maintenance Authority*, 423 S.E.2d 893, 896-97 (W.Va. 1992). The court reasoned that the words "right-of-way" were merely descriptive and not a limitation of the grant.

More recently, the Court of Appeals for Indiana reached the same conclusion where the deed conveyed a strip of land for railroad purposes "forever." *See Poznic v. Porter County Develpment Corp.*, 779 N.E.2d 1185 (Ind. App. 2002). The court emphasized the conveyance of a strip of land rather than just a right, the use of the word "forever," and the lack of any limiting language such as a provision that the deed would be void if it were not used for railroad purposes. *Id.* at 1190-91.

Like the deeds in *Rasmussen*, *Grill*, and *Poznic*, the Category 8 deed did not contain language "clearly limiting" or "explicitly restricting" the grant to Railroad purposes or providing for a reversion to the grantor if the Railroad ceased to operate. Also, like those deeds, the Category 8 deed conveyed to the Railroad, its heirs, and assigns "forever," a "temporal

descriptor more consistent with the conveyance of a fee than of an easement." *Tazian v. Cline*, 686 N.E.2d 95, 101 (Ind. 1997). Accordingly, the Court finds that the Category 8 deed conveyed fee title to the Railroad.

**E. Conclusion**

*Neider* does not require a finding that the deeds in Categories 5, 6, and 8 conveyed easements. The Court finds, consistent with its findings in its earlier Memorandum Decision, that the deeds in all of these categories conveyed fee title to the Railroad.

**PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT CATEGORIES 5, 6, AND 8**

Plaintiffs' cross motion and response to Defendant's summary judgment motion is premised on the contention that *Neider* is controlling and dictates that the appearance of "right of way" language *anywhere* in the deed indicates intent to convey an easement only. Based on the Court's finding on Defendant's Motion for Partial Summary Judgment that the deeds in Categories 5, 6, and 8 conveyed fee title, Plaintiffs' Cross Motion for Summary Judgment is denied with respect to those categories.

**PLAINTIFFS' MOTION FOR RECONSIDERATION**

Plaintiffs request the Court to reconsider its decision that the deeds in Categories 2 and 3 conveyed a fee simple determinable or fee simple conveyance with possibility of reverter. Plaintiffs contend that in light of *Neider*, these deeds should be construed as having conveyed an easement only. More specifically, Plaintiffs contend that the language of the Category 2 and 3 deeds contain language substantially similar to the language of the Bow deed in *Neider* which was held to convey an easement.

On the other hand, Defendant contends that Plaintiffs' motion is premised on the

erroneous assumption that a fee simple subject to a condition subsequent (the argument of the Appellant in *Neider*) is the same as a fee simple determinable. Defendant reasons that because *Neider* was deciding between an easement and a fee simple subject to a condition subsequent, its holding does not apply to what is in this case a decision between an easement and a fee simple determinable.

In its Memorandum Decision, this Court addressed the issue of whether the deeds in Categories 2 and 3 conveyed fee simple title or merely a fee simple determinable. It did not address the issue of fee title vs. easement. The Court concluded that because the deeds contained reverter clauses to take effect if the Railroad ceased using the land for railway purposes, the deeds conveyed fee simple determinable or a fee simple conveyance with a possibility of reverter as opposed to fee simple absolute. The Court ultimately found that the interests conveyed to the Railroad in these deeds terminated upon cessation of the corridor for railroad use and reverted to the grantors. This ruling was not appealed.

After the Court's decision, the parties entered into at least three stipulations regarding outstanding issues pertaining to the original conveyances to the railroad under Categories 2 and 3. The parties stipulated (1) that the reversionary interests retained by the original grantors had not been extinguished under Idaho law; (2) that the owners of the reversionary interests as of the alleged date of taking are properly included as class members in this action; and (3) to the identity of the owners of the reversionary interests. *See Joint Stipulation*, ¶ 5 (dated April 5, 2002) (Docket No. 92); *Joint Stipulations Regarding Category 2 and 3 Parcels* (dated August 8, 2002) (Docket No. 97) and *Joint Status Report, Stipulations, and Proposed Schedule* (dated Nov. 8, 2002) (Docket No. 101); and *Id.*, respectively. Prior to entering into these stipulations,

counsel had gone to considerable effort to identify the parties who would be entitled to any reversionary interest. In moving for reconsideration of the Court's earlier decision, Plaintiffs' have not sought to withdraw from the stipulations.

It appears to the Court that regardless of whether the deeds are categorized conveying a fee simple determinable, fee simple subject to a condition subsequent, or as creating an easement, the result is the same – the interest in the land that had been conveyed to the Railroad reverts to the landowner. The only remaining matter would be determination of just compensation.

While Plaintiff's counsel may have some sound reason it is now necessary to revisit this area in view of the stipulations and the fact no appeal was ever filed in this issue, it is far from obvious to the Court. The Court notes that at oral argument, Plaintiffs referred to the potential issue of who would constitute the proper class members upon extinguishment of an easement – the heirs of the grantors or the adjoining landowners. Counsel observed that the law is quite mixed. However, the stipulations seem to have resolved this issue.

Since the Court's finding on Categories 2 and 3 was never appealed, and the parties stipulated that all issues regarding the original conveyances to the Railroad in Categories 2 and 3 had concluded, the Court will deny the motion for reconsideration. However, the Court will grant Plaintiffs' counsel until September 8, 2006, to submit a memorandum explaining why they should be allowed to withdraw from the stipulation and why a determination on this easement issue would advance the interests of the parties in this litigation.

**DEFENDANT'S MOTION FOR CLARIFICATION**
**CATEGORIES 10, 12, AND 13 (Adverse Possession)**

**A. Background**

Based on the briefing of the parties pertaining to these categories, the Court assumed for the purposes of its decision that the Railroad had acquired *some* interest by adverse possession and proceeded to consider whether that interest was an easement or fee title.[4] In its Memorandum Decision, this Court found that the Railroad had acquired fee title.

The Federal Circuit found that the stipulation of the parties to treat these properties for purposes of litigation as having been acquired by adverse possession "was not a concession that the requirements of adverse possession had been met." *Hash*, 403 F.3d at 1322. The Federal Circuit further noted that the great weight of authority from other jurisdictions is that adverse occupancy of a railroad right-of-way does not confer any greater interest in the land than that of a right-of-way easement. *Id*. Citing *Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.*, 733 P.2d 733, 736 (Idaho 1987), it found that position consistent with Idaho's rule that any acquired prescriptive right is limited by the purpose for which it was acquired and the use to which it was put during the prescriptive period. *Id.* The Federal Circuit concluded that Defendant had not met the burden of establishing adverse possession to the fee to the underlying land in addition to the right-of-way over the land. Accordingly, it reversed this Court's judgment that the Railroad acquired fee title to the underlying lands in Categories 10, 12, and 13. Notably, the Federal Circuit did not reverse and remand.

The Defendant contends that the Federal Circuit's reversal leaves open the question of what other interest, if any, the Railroad had acquired by adverse possession. In essence, the Defendant contends that it should be able to present evidence on the adverse possession issue.

Plaintiffs contend that the law of the case mandates that as a matter of law the Railroad

---

[4] The parties previously stipulated that the parcels in Categories 12 and 13 would be subject to the Court's ruling on Category 10. Joint Stipulation, ¶ 4 (Apr. 5, 2002)(Docket No. 92).

obtained only an easement by prescription. Alternatively, Plaintiffs contend that if the Federal Circuit did not decide the issue as a matter of law, then Defendant's request to put on evidence regarding obtaining fee title by adverse possession should be denied because it failed to do so in the case in chief.

Plaintiffs note that the parties argued their positions before this Court on the issue of fee vs. easement by adverse possession as a matter of law without presenting any evidence. Plaintiffs further note that they first observed at oral argument that the Defendant had not submitted any evidence to satisfy the requisite elements of adverse possession under Idaho law. On appeal, Plaintiffs raised two issues as separate grounds for holding that the Railroad could only have acquired an easement: (1) whether a railroad can obtain fee title to a right of way by claiming adverse possession without satisfying the statutory requirements necessary to establish fee title by adverse possession, and (2) whether the interest obtained in the right of way by a railroad through prescription is in any event limited to an easement.

On the other hand, the Defendant framed the issue as with respect to rights of way obtained by the Railroad by adverse possession, whether the Railroad obtained fee simple ownership in the rights of way. Rather than raise the argument that the Federal Circuit should refuse to address the insufficiency of the evidence argument for failing to timely raise it in this Court, Plaintiffs contend that Defendant simply requested a remand for presentation of evidence should the Federal Circuit determine that it had not establish the required elements of adverse possession.[5] Nonetheless, the Federal Circuit, while finding the evidence insufficient, reversed

[5] A review of Defendant's appellate brief reveals that it did, in fact, argue that Plaintiffs were challenging the district court's ruling on grounds not raised in their briefs or ruled upon. Defendant specifically argued, "Thus, this issue is not properly before this Court and should not be addressed in this appeal." Docket No. 148-4, p. 5.

this Court's determination that the Railroad acquired fee title and did not remand for further proceedings despite remanding other issues. The Defendant did not petition for rehearing on the Category 10 portion of the Federal Circuit's decision.

**B. Applicable Law**

The parties have each cited cases from the Federal Circuit as well as other circuits regarding law of the case and the rule of mandate. Indeed, both doctrines appear to be described in much the same way as in a recent Ninth Circuit case:

> According to the law of the case doctrine, on remand a lower court is bound to follow the appellate court's decision as to issues "decided explicitly or by necessary implication." *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir.1982). However, the lower court is so bound only as to those issues addressed by the appellate court. *See United States v. Cote*, 51 F.3d 178, 181 (9th Cir.1995) (quoting *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir.1991)) . . . .
>
> The lower court must also adhere to the rule of mandate. "The rule of mandate is similar to, but broader than, the law of the case doctrine." *Cote*, 51 F.3d at 181 (citing *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir.1993)). The rule of mandate requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414 (1895); accord *Stamper v. Baskerville*, 724 F.2d 1106, 1107 (4th Cir.1984).

*United States v. Garcia-Beltran*, 443 F.3d 1126, 1129-30 (9th Cir. 2006).

In other words, the doctrine of law of the case requires that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case and bars only those issues actually considered and decided by the trial court. *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (citations omitted) (construing mandate where reversal did not include a remand order). On the other hand, the rule of mandate precludes a district court from

refusing to dismiss a case when the mandate requires it, from revisiting any final determinations unless the mandate allows it, and from engaging in any proceedings inconsistent with a reversal. *Id.* (citations omitted). Once a mandate issues, the district court assumes jurisdiction and may consider and decide any matters not addressed by the mandate. *Id*. at 182. In order to determine what matters have been left open by the mandate, the court may consider the opinion of the appellate court to ascertain its intent. *Id*. Reversal without a remand order does not necessarily preclude a new trial. *Id.*

A Supreme Court case addressing the rule of mandate over 100 years ago contained similar language and is still cited by courts today, as it was in the following Ninth Circuit case:

> In the seminal case on the subject, *In re Sanford Fork & Tool Co.*, the Supreme Court emphasized that, in addition to the mandate itself, "[t]he opinion by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate····" 160 U.S. 247, 256, 16 S.Ct. 291, 40 L.Ed. 414 (1895). The Court added that it is important, in determining "what was heard and decided" by the appellate court, to bear in mind the "settled practice" of courts with respect to the applicable substantive law. 160 U.S. at 256, 16 S.Ct. 291. Thus, in construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises. As the talismanic language from Sanford Fork makes clear, the ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that have not . . . .
>
> In most cases, enforcing the mandate is uncontroversial because its terms are plain and they square both with the underlying opinion and the procedural history of the case. Under these circumstances, the lower court must execute the mandate without hesitation. However, as the First Circuit has observed, "[o]n remand, courts are often confronted with issues that were never considered by the remanding court." (Citations omitted.) In such cases, "[b]roadly speaking, mandates require respect for what the higher court decided, not for what it did not decide." (Citations omitted.)

*United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000). *See also Exxon Chemical Patents, Inc. v. The Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir.), *cert. denied*, 525 U.S. 877 (1998) (district court should look also to the language of the appellate court's opinion).

**C. Discussion**

While it is clear that the courts and the parties generally agree on the rules of law addressed above, it is equally clear that the parties do not agree on what issues were decided or on the interpretation or scope of the mandate.

**1. Law of the Case**

A review of the Federal Circuit decision reveals that it made the following points:

- The stipulation of the parties was not a stipulation that both the underlying fee and the overlying Railroad belonged to the Railroad;
- The stipulation was not a concession that the requirements of adverse possession had been met.
- There was no evidence that the requirements of I.C. § 5-210 regarding the material facts of adverse possession were met.
- The law of adverse possession does not require that the property owner be deprived of greater rights than those that are used by the adverse possessor.
- Adverse occupancy of a right-of-way does not confer on the railway any greater interest in the land than that of a right-of-way easement.
- Under Idaho law, any right gained by prescription is confined to the right as exercised during the prescriptive period and limited by the purpose for which it is acquired and the use to which it is put.
- Defendant has not met the burden of establishing compliance with the law of adverse possession as applied to the fee underlying the land, as well as for the right-of-way traversing the land, by clear and satisfactory evidence.
- The judgment that the Railroad acquired fee title to the underlying lands in Categories 10, 12, and 13 is reversed.

Plaintiffs argue that by finding that Defendant did not meet its burden of proving adverse possession resulting in fee title, the Federal Circuit by implication found that the Railroad acquired only an easement.

The Federal Circuit cited what it referred to as the great weight of authority to the effect that adverse occupancy of a right-of-way does not confer any greater interest than that of a right-of-way easement. A review of those cases is necessary to fully appreciate the distinctions made by the Federal Circuit.

In *Maryland & Pennsylvania R.R.Co. v. Mercantile-Safe Deposit & Trust,* 166 A.2d 247, 249 (Md. 1960), the court was faced with a plaintiff with "good" paper title to land and a railroad without documentary evidence claiming adverse possession based on evidence of use for a railway right-of-way since 1880. The court relied on cases from several jurisdictions and general policy considerations and sided with the "weight of authority" that the railroad had acquired an easement only.

In *Wheeling Stamping Co. v. Warwood Land Co.*, 412 S.E.2d 253 (W.Va. 1991), the court likewise addressed the issue of whether the railroad held an easement or an estate in fee in the absence of a written document of conveyance. In this case, railroad records referred to a "release." The court determined that absent a recorded document, the railroad only acquired a right-of-way easement by prescription having met the necessary elements set forth in an earlier case: "The open, continuous and uninterrupted use of a road over the land of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years. . . . (citation omitted)." *Id.* at 257 n.2. The court was persuaded by the reasoning of *Maryland & Pennsylvania* that "the nature of the user by the railroad requires no more than an easement in

the right of way and does not, therefore, amount to an occupancy adverse to the claim of another to the fee." *Id.* at 249. It concluded that the use of the property for railroad purposes defined the parameters of the easement to railroad purposes.

Finally, in *Strother v. Bootheel Rail Properties, Inc.*, 66 S.W.3d 751, 754 (Mo.Ct.App. 2001), the court addressed the issue of whether the railroad had acquired fee title or an easement. While noting that a railroad could hold property in fee without restriction, it further noted that a railroad acquired only an easement if the property was acquired for right-of-way purposes by condemnation, voluntary grant, or conveyance in fee. *Id.* at 753. Defendant argued that its predecessor in title, the railroad, had operated and maintained a railroad for 90 years on the subject property and thereby acquired it by adverse possession rather than condemnation, voluntary grant, or conveyance in fee. Relying on both *Wheeling* and *Maryland & Pennsylvania*, in the absence of a recorded document, the court concluded that the railroad acquired a right of way easement by prescription. The court distinguished acquisition of title by adverse possession from a prescriptive easement as follows:

> Although akin to acquisition of title to real estate by adverse possession, "a prescriptive easement is defined solely by its use during the prescriptive period." *Jacobs v. Roschevitz*, 20 S.W.3d 598, 600 (Mo.App.2000). "[I]t is not necessary for one to intend to violate the owner's rights. It is sufficient that one uses land without regard to any right of the owner to prohibit the use." *Umphres v. J.R. Mayer Enterprises, Inc.*, 889 S.W.2d 86, 89 (Mo.App.1994). It is established by "use which is shown to have been continuous, uninterrupted, visible, and adverse for a period of ten years." *Speer v. Carr*, 429 S.W.2d 266, 268 (Mo.1968). "A prescriptive right, where there is no color of title, cannot be any broader than the claim which the user evidences...." *Pollnow v. State Dept. of Natural Resources*, 88 Wis.2d 350, 276 N.W.2d 738, 742 (1979) (quoting *Consumers' Gas Trust Co. v. American Plate Glass Co.*, 162 Ind. 393, 68 N.E. 1020, 1021 (1903)).

Interestingly, *Strother* relies on *Boyles v. Missouri Friends of Wabash Trace Nature*, 981 S.W.2d 644 (Mo. App. 1998), for the proposition that acquisition of a right-of-way by a railroad results in only an easement. *Boyles*, in turn relied on the Missouri Constitution, Article I, section 26 which provided in relevant part that "the fee of land taken for railroad purposes without consent of the owner thereof shall remain in such owner subject to the use for which it is taken" as well as other Missouri cases citing statutes specifically directed at controlling the nature and extent of a railroad's interest in real estate. *See, e.g., Quinn v. St. Louis-San Francisco Ry. Co.*, 439 S.W.2d 533, 534-35 (Mo. 1968) (en banc) (discussing the legislative policy established in Missouri arising from factors peculiar to railroads). Obviously, the Missouri constitution and statutes were driving forces in the decisions of the Missouri courts and are not pertinent to Idaho.

The Federal Circuit observed that the authority cited in the above cases was consistent with Idaho's "long established rule" on rights acquired by prescription as described in *Idaho Forest Industries, Inc. v. Hayden Lake Watershed Improvement District*, 733 P.2d 733, 736 (Idaho 1987). In none of these cases, however, was the question of payment of taxes or an adverse possession statute discussed. It is unclear whether the courts would have found fee title if payment of taxes and compliance with adverse possession statutes had been proven.

The Idaho Supreme Court recently had an opportunity to discuss the differences between adverse possession and prescriptive easement after the Federal Circuit's decision was filed. *See Luce v. Marble*, 127 P.3d 167 (Idaho 2005). In describing the elements of adverse possession, the court indicated that the statutory requirements of § I.C. 5-210 are in addition to certain non-statutory requirements:

> Oral claims for adverse possession are governed by Idaho Code § 5-210. This section requires that the land being claimed have been

> enclosed or that the land being claimed be cultivated or improved, that the possession be for a period of five years and that the adverse possessor pay all taxes levied and assessed on the land. The party claiming adverse possession must prove all of the essential elements of adverse possession by clear and satisfactory evidence. *Roark v. Bentley*, 139 Idaho 793, 796, 86 P.3d 507, 510 (2004). In addition to the requirements of I.C. § 5-210, this includes that the possession has been actual, open, visible, notorious, continuous and hostile to the party against whom the claim is made. *Winn v. Eaton*, 128 Idaho 670, 673, 917 P.2d 1310, 1313 (Ct.App.1996) (citing *Kolouch v. Kramer*, 120 Idaho 65, 67-68, 813 P.2d 876, 878-79 (1991)).

*Id.* at 175. Unless one of several exceptions applies, "§ 5-210 requires actual payment of property taxes, levied and assessed, with regard to the disputed property." *Id*. The law presumes the adverse possessor paid taxes on a disputed parcel, thereby satisfying the tax payment requirement of the statute, unless the land was assessed under a metes and bounds description or there is evidence that the adverse possessor did not pay taxes. *Id*. Even uncontradicted testimony that the adverse possessor paid taxes is sufficient to satisfy the statute if the tax records are inconclusive. *Id.*

On the other hand, the court described the legal requirements of a prescriptive easement as follows:

> "It is well established in this jurisdiction that an easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991). To establish a prescriptive easement, the claimant must prove, by clear and convincing evidence, open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the servient estate owner for five years. See, e.g., *Wood v. Hoglund*, 131 Idaho 700, 702, 963 P.2d 383, 385 (1998).

*Id*. at 176. The court concluded that the plaintiff could not prevail on her adverse possession

claim because she presented no evidence of tax payments. It further concluded that she could not prevail on her prescriptive easement claim because an easement over an entire parcel would be more akin to a conveyance of ownership. *Id.* at 177.

In reviewing the Federal Circuit's decision in light of the distinctions between adverse possession and prescriptive easement, it becomes apparent that while the Federal Circuit made many points, it decided only one issue. That one issue was whether Defendant acquired adverse possession based on the so-called stipulation.

The Federal Circuit noted that Plaintiffs suggested that the adverse possessor may have acquired a prescriptive easement and opined that the weight of authority seems to hold that railroads get only a prescriptive easement rather than fee title to undocumented rights-of-way. However, it did not so find and indeed could not have so found given that there had been no evidence presented before this Court in support of either theory. Just as all essential elements of adverse possession are required to be proven by clear and satisfactory evidence, all elements of prescriptive easement must be proven by clear and convincing evidence. *Luce*, 172 P.2d at 175, 176. Therefore, because such evidence was not even presented much less proven, it is not the law of the case that Defendant acquired a prescriptive easement.

**2. Rule of Mandate**

As stated above, in construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises. *Kellington*, 217 F.3d at 1093. In this case, the elements of adverse possession were not litigated. The issue before the Federal Circuit went beyond the issue decided in this Court's decision and reached the sufficiency of the stipulation. Therefore, the Court will construe the

mandate as being limited to the issue of the sufficiency of the stipulation and not as precluding presentation of evidence on the issue of adverse possession and/or prescriptive easement. The Federal Circuit did not direct entry of judgment in favor on Plaintiffs. Allowing Defendant the opportunity to prove adverse possession would not affect the Federal Circuit's decision that the stipulation was not sufficient. Nor would allowing evidence on prescriptive easement or acquisition of any other type of property interest.

**D. Conclusion**

Neither the law of the case nor the rule of mandate precludes the Court from taking evidence on the issues of adverse possession, prescriptive easement, or any other issue not inconsistent with the Federal Circuit's holding that the Railroad did not acquire adverse possession by virtue of the stipulation categorizing the properties for which no documentation exists. The question of whether the Railroad acquired an interest by adverse possession, and, if so, the nature of that interest, are still open questions to be litigated before this Court.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1. Defendant's Motion for Partial Summary Judgment (Docket No. 122) is GRANTED with respect to Categories 5, 6, 8,14, and 15.
2. Plaintiffs' Cross Motion for Partial Summary Judgment (Docket No. 127) is DENIED with respect to Categories 5, 6, and 8.
3. Plaintiffs' Motion for Reconsideration (Docket No. 135) is DENIED. However, Plaintiffs shall have until September 8, 2006 in which to submit a supplemental memorandum as described above.

4. Defendant's Motion for Clarification (Docket No. 145) is GRANTED.

DATED: August 18, 2006

Honorable Mikel H. Williams
United States Magistrate Judge

 10/91

This Indenture made this 22 ond day of July in the year of our Lord one thousand eight hundred and ninety- nine between Francis M. Potter and Pauline Potter, his wife. both of Middle Valley County of Washington State of Idaho the parties of the firt part and the Pacific and Idaho Northern Railway Company, a corporation organized [illegible] State of Idaho the party of the second part.

Witnesseth: That the said Parties of th e first part, for and in consideration of the sum of six hundred dollars, lawful money of the United States of America, to them in hand paid by the said party of the second part the receipt whereof is hereby acln owledged have granted, bargained and sold, and by these presents, does grant, bargain, sell convey and confirm unto the said party of the second part and to its successors and assigns forever, all the following described real estate situated in the County of Washington, State of Idaho, to-wit:

A strip of land one hundred feet wide though the east half of the south west quarter of section five, township thirteen, north range three west, Boise Meridian, being fifty feet on each side of the center line of the Pacific and Idaho Northern Railway, as the same is now located and staked upon the ground, . Said center line being described as follows, to-wit:

Beginning at a point designated as station 177 X 98.2 of the Pacific and Idaho Northern Railway Stattions, whence the south east corner of the south west quarter of section five township thirteen North range thr ee west of the Boise Meridian, bears south 48 Deg. 0 MIN. East a distance of 1720 feet thence 12 deg. 32 Min. East along the line of the said Railway survey a distance of 130 feet; thence along the line of the curve to the right having a radius of 955 feet a distance of 930.6 feet; thence north 68 Deg. 22 Min.East a distance of 710 feet to a po ny designated as station 196 X 16.8 of said Railway survey stations whence the south east corner of the south west quarter of section five township thirte en North range three west Boise Meridian bears south a distance of 2280 feet . Said strip containing am arae of four and eighteen hundreths acres more or less.

Together with all and singular the tenements, hereidtaments andappurtenances thereunto belonging or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate right title and interest in aNd to the said property as well in law as in equity of the said parties of the first part :

TO HAVE AND TO HOLD; All and singular, the above mentioned and described premises together with the appurtenances, unto the said party of the second part, and to its successors and assigns, forever. And the said parties of the first part, and their heirs, the said premises in the quiet and peaceable possession of the said party of the second part. and their heirs . against said parties of the first part and against all and every person and persons whomsoever, lawfully claiming or to claim the same shall and will warrant and by these presents forever defend.

In witness whereof the said parties of the first part have hereunto set their hands, and seals the day and year first above written.
Signed, sealed and delivered in the presence of Ida Vreeland

Francis M. Potter (Seal)
Pallina E. Potter (Seal)

State of Idaho
}ss
County of Washington

I.R.$ 1.00 Cancelled.

On this 24th da y of July 1899 before me Enoch Vreeland a Justice of the Peace, in and for said County, personally appeared Francis M. Potter and Pallina E. Potter known to me to be the persons whose names are subscribed to the ithin instrument and acknowledged to me that he executed the same; and on this 24th day of July 1899 before me the officre above described personally appeared Pallina E. Potter known to me to be the person whose name is subscribed to the within instrument described as a married woman and upon an examination without the hearing of her husband I made her acquainted with the contents of the instrument and ther eupon she acknowledged to me that she executed the same and that she does not wish to retract such execution

In witness whereof I have hereunto set my hand and seal the day and year in this Certificate first above written.

Enoch Vreeland

Justice of the Peace.

Filed at the request of B.S.Varian this 28 day of July 1899 at 11 A.m.

I.F.Smith

Ex-officio Recorder.

This Indenture made the 6th day of september in the yesr of our Lord one thousand eight Hundred ans Ninety-nine between Andrew M. Reed and ora reed his wife both, of Middle Valley County of ashington State of Idaho, the parties of the first part, and the Pacific and Idaho Northern Railway Company , a corporation organized and existing under and by virtue of the laws of the State of Idaho and havinf its office and princiapl place of business at Weiser in aaid County and State the party of the second part.

WITNESSETH, That the said parties of the first part for and in sonsideration of th e sum of one H undred dollars, lawful money of the United States of America, to them in hand paid by the said party of the sec nd part, the receipt whereof is hereby acknowledged have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto the said party of the second part and to its successors and assigns forever all the following described real estate situated in Washington County State of Idaho, to wit:

A strip of land One Hundred feet wide though, over and across a portion of the north half of the South east quarter od Sec 5 Tp. 13 north range Three West of the Boise Meridian being fifty feet on each side of the center line of the Pacific and Idaho Northern railway as the same is located and stake upon the ground across said premises in said County, which said center line is described as follows, to wit:

Beginning at a point designated as station 196 X 23 of the Middle valley Survey stations of the Pacific and Idaho Northern railway whence the north west corner of the South east quarter of sec. 5 Tp. 13 North range 3 west of the Boise Meridian bears north a dis ance of 372 f eet thence north 66 deg 29 Min. East along the line of said railway a distance of 1055 feet to a point designated as station 206 X 78 of said Survey Stations whence the North west corner of the south east quarter of section Five Tp. 13 North range Three west B.M. bears west a distance of 1000 feet said dtrip contains an area of two and forty two hundredths acres more or le s.

Together with all and singular the t enements hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate right title and interest in and to the said property as well in law as in equity of the said parties of the first part.

TO HAVE AND TO HOLD, all and singular the above mentioned and described premises together with the appurtenances unto the said party of the second part, and to its successors and assigns forever. as a perpetual right of way for second party's railway line. And the said p rties of the first part, and their heirs the said premises in the quiet and peaceable possession of the said party of the se ond part against the said parties of the first part and their heirs a d against all and every person an s persons whomsoever lawfully claiming or to claim the same shall and will warrant and by these preanets forever defend.

In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

Signed, sealed and deliv red in the presence of B.S.Varian

Andrew M. Reed (Seal)
Ona Reed (Seal)

State of Idaho
} ss
County of Washington

On this 6th day of september 1899, before em. B.S.Varian a Notary Public in and for said County personally appeared Andrew M. Reed known to me to be the person hose name is subscribed to the within instrument and acknowledged to me that he executed the same, and on this 6th day of September 1899 before me the Officer above described personally appeared Ona Reed known to me to e the person whose name is subscribed to the within instrument described as a married woman and upo n an examination with out ht ehearing of her husband I made her acquainted with the contents of the minstrument and thereupon she acknowledged to me that she executed the same and that she does not wish to retract such execution.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

(SEAL)

B.S.Varian
Notary Public.

Fied at the request of B.S.Varian this 6th day of september 1899 at 2 P.M.

I.F.Smith
Ex-officio Recorder.

Fees $ 1.65

This indenture made this 23rd day of August, in the year of our Lord one thousand eight hundred and ninety-nine, between John P. Hallstrom and Eva Hallstrom, his wife, both of Middle Valley County of Washington, State of Idaho, the parties of the first part, and the Pacific and Idaho Northern Railway Company. a corporation orgainzed and existing under the and by virtue of the laws of Idaho, the party of the second part.

WITNESSETH: That the said Parties of the first part foe and in consideration of the sum of One Hundr d and Twenty-five dollars, lawful money of the United States of America, to them in hand paid by the said party of the first part, the receipt whereof is hereby acknowledged, have granted bargained and sold and by these presents do grant, bargain, sell , convey, and confirm unto the said party of the second part, and to its successors and assigns forever, all the following described real estate situated in Washington County, State of Idaho, to wit:

A strip of land one hundred feet wide over, though and across, the south half of the north east quarter of Section Five, Township Thirteen North range 3 west Boise Meridian, being fifty feet on each side of the center line of the Pacific and Idaho Northern Railway as the same ie located and stake upon the gr und, which said center line is described as follows to-wit:

Beginning at a point designated as station 206 X 78 of th Pacific and Idaho Northern Railway survey stations whence the south west corner of the north east quarter of section Five Towns hip Thirteen, North range 3 west of the Boise Meridian bears west a distance of 1000 feet thence North 66 Degs, 28' East along the line of said railway a distance of 507.8 feet thence along the line of sa curve to the left having a radius of 575 feet a distance of 432 feet thence north 23 degs, 17' East a distance of 686.6 feet thence along the line of a curve to the right, having a ridius of 1432 feet, a distance of 247.5 feet to a point designated as station 225.X 52 of said railway survey Stations whence the north east corner of the south east quarter of the north east quarter of section Five t ownship thirteen north range three west B.M. bears east 298.0 feet.

Said strip containing an area of Four and thirty- hundreths (4.30) acres more or less.

# as a perpetual right of way for second party's Steam railway line.

Together with all and singular the tenement s, hereditaments, and appurtenances, thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder andremainders, rents, issues and profits thereof, and all estate right title and inetrest in and to the said property, as well in law as in equity, of the said parties of the first part,

TO HAVE AND TO HOLD: all and singular , the above mentioned and described premises together with the appurtenances, unto the said party of the second part, and o its successors, and assigns forever, # And the said parties of the first part, and their heirs, the said premises in the quiet and peaceable possession of the said party of the second part, its successors and assigns, against the said parties of the fir t part, hand their heirs, and against all and every person and persons, whomsoever lawfully claiming or to claim the same, shall and will warrant and by these presents forever defend.

In witness whereof the said parties of the first part, have hereunto set their hands and seals the day and year first above written.

Signed, sealed and delivered in the presence of
B.S.Varian W.W.Scott.

John P. Hallstrom. (Seal)
Eva X Hallstrom (Seal)
mark

State of Idaho,
County of Washington

I.R.50 cts cancelled.

On this 23rd day of August 1899, before me, B.S.Varian a Notary Public in and for said C ounty, personally appeared John P. Hallstrom known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same, and on this 23rd day of August in the ear 1899 before em, the officer above described personally appeared Eva Hallstrom known to me to be the person whose name is subscribed to the within instrument,described a s a married woman and upon an examination without the hearing of her husband I made her acquainted with the contents of the instrument and acknowledge to me that she executed the same and that she does not wish to retrack such execution.

In witness whereof I have hereunto set my hand and affixed my official seal the day and yea in this certificate first above written.

(SEAL)

B.S.Varian
Notary Public.

Filed at therequest of B.S.Varian this 2nd day of September 1899 at 3 P.M.

Fees $ 1.65

I.F. Smith
Recorder.

Blendu v. US, No. 01-718L
Revised Title Stipulations, Ex. 5

Warranty Deed.

This Indenture, Made this Second day of May A.D. 1900 - Between William H. Male (a widower) of the County of Kings, in the State of New York, of the first part, and The Pacific and Idaho Northern Railway Company, a corporation organized under the laws of the State of Idaho of the Second Part.

Witnesseth: That the Party of the First Part, in consideration of the sum of Ninety Dollars to him in hand paid, the receipt whereof is hereby acknowledged, does by these presents, grant, bargain, sell and convey to the said Party of the Second Part, its successors and assigns forever, all the following described land, situate in the County of Washington, in the State of Idaho described as follows to-wit:

A strip of land One Hundred feet wide through, over and across a portion of the South East Quarter of the South West Quarter of Section number Nineteen, and the North East Quarter of the North West Quarter of Section number Thirty, all in Township Number Thirteen North of Range number Three West of Boise Meridian, said strip being fifty feet on each side of the center line of the Pacific and Idaho Northern Railway as the same is located and staked upon the ground across said premises which said center line is described as follows: Beginning at a point designated as station 1556+90 of the Pacific and Idaho Northern Railway survey stations, whence the north west corner of section Thirty, Township Thirteen North of Range Three West B.M. bears North 63° 29' West a distance of 1327 feet; Thence north 5° 21' East a distance of 248.5 feet; Thence Northerly along the line of a curve to the right having a radius of 1910.1 feet a distance of 420.6 feet; thence North 17° 58' East a distance 1418 feet to a point designated as station 14+18 of said railway stations whence the quarter corner on the west line of section 19, township Thirteen North Range three west bears North 55° 49' West a distance of 2223 feet. Said strip containing 4.79 acres.

To have and to hold the same together with all and singular, the Tenements, hereditaments and appurtenances, thereunto belonging, or in anywise appertaining unto the said party of the second part, its successors and assigns forever.

And the said party of the first part, for himself and his heirs, executors and administrators, does hereby covenant, promise and agree to, and with the said Party of the Second Part, and its successors and assigns, that he will warrant and defend the above granted and described premises, with the appurtenances thereunto belonging, to the said Party of the Second Part, against

claims of all persons whomsoever claiming, or to claim, by, through or under him only.

In Witness Whereof, the said party of the first part has hereunto set his hand and seal the day and year first above written.

Signed, Sealed and Delivered
In the presence of
W. D. Swain.

William H. Male. L.S.

( 50 cts Int. Revenue = Cancelled )

State of New York }
County of New York } ss

Be it Remembered, That on this Second day of May, in the year of our Lord, One Thousand, Nine Hundred, before me Wilbert D. Swain, a Notary Public in and for said County and State personally appeared William H. Male personally known to me to be the identical person described in, and whose name is subscribed to, the foregoing Deed as Grantor, and he duly acknowledged to me that he executed the same.

In Witness Whereof, I have hereunto set my hand and official seal the day and year last above written.

{ Notarial Seal }

W. D. Swain,
Notary Public,
Kings Co. N.Y.

Certificate Filed
In New York County.

Filed for record this 28th day of August at 3 minutes past 3 O'clock P.M., A.D. 1900.

Fees $1.25

S. F. Smith, —
Ex Officio County Recorder.

The Indenture madethis Twenty-ninth day of August in the year of our Lord one thousand eight hundred and ninety- nine betwcen Marvin Kilborn and Jane Kilborn. his wife, both of Middle Valley County of Washington State of Idaho, the prrties of the irst part, and the Pacific and idaho Northern railway Company , a corporation organized and existing under and by virtue of the laws of the State of idaho and having its office and principal place of business at Weiser In said County and state , party of t h esecond part,

WITNESSETH; that the said parties of the first part for and in consideration of the sum of two hundred a nd fifty, dollars, lawful money of the United S ates of America, to them in hand paid by the said party of the second part the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by thes e presents does grant, bargain, sell, convey and comfirm unto the said party of the seconf part and to its successors and assigns forever, all the following described real estate situated in Washington,County State of idaho to wit:

A strip of land one hundred feet wide though, over nd across the South half of the south east quarter of Section 18, Tp. 13 North of Range three west of the Boise Meridian, being fifty feet on each side of the center line of the Pacific and Idaho Northern Railway as the same is l cated and staked upon the ground across said premis es in said County, which said line is des cribed as follows, to wit:

Beginning at a p oint designated as station, 56 X 68.3 of he Middle Valley Survey Stations, of the Pacific and idaho Nortern Railway , whence the south west corner of the south east quarter of section 18 Tp. 13 North Range 3 west of the Boise Meridian bears west a distane of 705.4 feet; and running thence north 15 degs, 47 Mon, East along he line of said railway a distance of 1397 fee t to apoint designated as station 70 X 65.3 of said Rail way survey stations whence the north west corner of the south west quarter of the south east quarter of said section 18 Tp. 13 North of Range 3 West bears west a distance of 1146 feet .
Said strip contains an area of three and twenty hundredths a cres more or less.

Together with all and singular, the tenements, hereitaments, and appurtenances thereunto belonging, or in any wise apperatinign, and the reversion and reversions, remainder and remainders, rents, issue s and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity,of the said parties of the first part;

TO HAVE AND TO HOLD; All and singular, the above mentioned and described premises, together with the appurtenances, unto the said party of the second part,and to its successors, and assigns fore ver, And he said parties of the first part, and their heirs the said premises, in the quiet nd peaceable possession of the said part ea of the second part against the said parties of the first part, and against all and every person and persons whomsoever lawfully claiming or to claim the same shall and will warrant and by these presents forever defend.
In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

signed, sealed and delivered in he presents of ] Marvin Kilborn (Seal.)
Jane Kilborn (Seal)

State of Idaho ]
]ss
County of Washington ]

On th s 29th day of August 1899 before me B.S.varian, a Notary Public in and for said County, personally apeared Marvin Kilborn known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same , and on this 29th day of August 1899, before me the officer above descr bed personally appeared jane Kilborn known to me to be the person w ose name is subscri bed to the within instrument; described as a married woman and upon an exanination without the hearing of her husband I made her acquainted with the content s of the Instrument and ther upon she acknowledged to me that she executed the sa me. and that she does not wish to retract such execution.
In witness whereof I have hereunto set m y hand and affixed my official seal the day and year in this certificate first above written.

(SEAL) B.S.Varian
Notary Publ ic,

I.R. 50 cts cancelled.
Filed at the request of B.S.varian this 2nd day of September 1899 at 3 P.M.
I.F.Smith
Exofficio Recorder

Fees $ 1.45

This Indenture made this 29th day of August in the year of our Lord one thousand eight hundred and ninety-nine between Norman Girling unmarried of Middle Valley Count of Washington State of Idaho the party of the first part, and the Pacific and Idaho Northern Railway Company, a corporation orgaized and existing under the laws of the State of Idaho and having its principal Office and place of Business at Weiser in said County and State the party of the second part.

Witnesseth that the said party of the first part, for and in consderat on of the sum of Three Hundred and Seventy-five dollars, lawful money of the United States of America, to him in hand paid by the said party of the second part, the receipt whereof i s hereby acknowledged, has granted, bargained and sold, and by hese presents does grant bargain, sell, convet and comfirm unto the said party of the second part, and to its successors and assigns forever, all the following described real estate situated in washington County, State of Idaho, to wit:

A strip of land one hundred feet wide over, though, and across the west half of the North east quarter and the East half of the North west quarter of section Ninet een Township Trirteen north of Ran ge 3 West B .M. being fifty feet on each side of the center line the Pacific and Idaho Northern Railway as the same is located and stake on the ground in said County and across said premises, which said center line is described asfollows:

Beginning at a point designated as station 28X32 of the Middle Valley Survey stations of the Pacific and Idaho Northern Railway Survey Stations whence the south west corner of the north west quarter of Sec. 19 Tp.13 North, Range 3 West of B.M. bears west a distance of 2276 feet; thence north 15 Deg. 47 Min. East along the line of said railway a distance of 2836.3 feet to a point designated as station 56X68.3 of said Railwat Survey Stattons, whence the north west corner of the north east quarter of section 19 Tp. Thirteen North range 3 West bears west a distance of 708.4 feet containing an area of six and fifty two hundredths acres ore or less.

Together with all and sing ular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the recersion and reversions, remainder and remainders, rents, issues and profits thereof. and all estate, right, title. and interest in and to the said propert y, as well in law as in equity, of the said party of the first part,

TO HAVE AND TO HOLD; All and singular, th e above mentioned and described premises, together with the appurtenances, unto the said party of the second part, and to its successors and assigns, forever; as a perpetual right of way for second party's railway line.

And the said party of the first part and his heirs the said premises in the uiet and peaceable possession of the said party of the second part,its successors and assigns forever, against the said party of the first part and against all and every person and persons whomsoever lawfully claiming or to claim the same shall and will warrant and by these presents forever defend.

In witness whereof the said party of the first part hashereunto set their hand and seal the day and year first above written,

Signed, sealed and delivered in the presence of
B.S.Varian — Norman Girling.

State of Idaho, }
} ss
County of Washington }

On this 29th day of August 1899 before me, B.S.Varian , a notary Public in a nd for said Coun y, personally appeared Norman Girling known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

In witness whereof, I have hereunto set my hand and affixed my official seal the day and year first above written.

B.S.Varian
Notary Public.

I.R.50cts cancelled.

Filed at therequest of B.S.Varian this 2nd day of september 189 nat 3 P.M.
I.F.Smith
Ex-officio Recorder.

Fees $ 1.45

This Indenture made this Eighteenth day of July in the year of our Lord one thousand eight hun dred and ninety-nine between Adeline Day, a widow, of Weiser County of Washington State of Idaho the party of the first part and the pacific and Idaho Northern Railway Compa ny a corporation orgaized and existing under and by virtue of the laws of the State of Idaho the party of the second part.

Witnesseth that he said party of the first part for and in consideration of the sum of one hundred dollars lawful money of the United states of America, to her in hand paid by the said party of the first part the receipt whereof is hereby acknowledged has remised, released, and forever quitclaimed and by these presents do remise release and forever quitclaim unto the said party of the second part and to its heirs and assigns forever, all th following described real estate situated in the County of Washington State of Idaho and particularly described as follows, to-wit:

A strip of land 100 feet wide though a portion of the North east quarter of the south west q uarter of section nineteen township thirteen north of range three west Boise Meridian being fifty f eeet on each side of the cener line of the Pacific and Idaho Northern Railway as the same is now located and staked upon the ground in said County which said center line is described as follows, to-wit:

Commencing at a point designated as Station 14 x 12 of the Bacific and Idaho Northern Railway Survey Stations whence the south west corner of section ninteen township thirteen North range three west Boise Meridian bears south 52deg. 30' West a distance of 2220 feet; thence north 19 deg. 20' E along the line of said Railway a distance of 1420 feet to a point designated as station 28 x 32 of said railway survey Survey Stations whence the North west corner of the south west quarter of sections nineteen township thirteen north range three west Boise meridian bears west a Distance of 2280 feet said strip containing an erae of three and twen ty-six hundreths acres more or less.

Together with all and singular the tenements hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions remainder and remainders rents issues and profits thereof;

To have and to hold all and singular the said premises together with the appurtenances as a perpetual right of way for said second party's railway li ne. unto the said party of the second part and to its suc essors and assigns forever.

In witness whereof the said party of the first part has hereunto set her hand abd seal the day and year first above written.

Signed sealed and delivered in the presence of: Adeline Day (Seal)
S.W.Dauson

State of Idaho ]
] ss
County of Washington ]

On this eighteenth day of July 1899, before me B.S.Varian a Notary Publ ic in and for said County personally appeared Adeline Day known to me to be the perso n whose name is subscribed to the within instrument and acknowledged to me that she executed the same.
In witness whereof I have hereunto set my hand and seal the day and year first bove written.

B.S.Varian
Notary Public.

Filed at the r e quest of A B.S.Varian this 19th day of July 1899 at 9 A.M.

I.F.Smith
E.X officio Recorder.

Fees $ 1.25

This Indenture made the First day of July in the year of our lord one thousand eight hundred and ninety nine between Sarah J. Jeffreys, widow of Weiser County of Washington State of Idaho the party of the first part and the Pacific and Idaho Northern Railway Company a corporation organized and existing under and by virtue of the laws of the State of Idaho the party of the second part

Witnesseth that the said party of the first part for and in consideration of the sum of four hundred and fifty dollars, lawful money of the United States of America, to her in hand paid by the said party of the second part the receipt whereof is hereby acknowledged has granted, bargained and sold and by these presents do grant. bargain. sell, convey and confirm unto the party of the second part and to its successors and assigns forever all the following described premises situate, lying and being in the County of Washington and State of Idaho towit:

A strip of land one hundred feet wide though a porti n of the south west quarter of the south east quarter of section thirty-one township eleven north of range four west Boise Meridian thence runnig west 300 feet thence south 1344.5 feet, thence east 300 feet, thence north 1344.5 feet to place of beginning said strip being fifty feet on each side of the center line of the Pacific and Idaho Northern Railway as located and staked upon the ground in said County, which said center line across the premises aforesaid is described as follows to-wit; Beginning at a point designated as station 297-x73.9 of the Pacific and Idaho Northern Railway Survey Stations whence the south west corner of the south east quarter of section thirty-one township eleven north of Range four west of Boise Meridian, bears south a distance of 558 feet; thence north 66 Deg. 06 Min. east along the line said Railwat survey a distance of 131.2 feet; thence alonrg the line of a curve to the right having a radius of 1433 feet, a distance of 583.3 feet; thence north 89 Deg. 26 Min. east a distance of 628 feet to a point designated as station 311 x 16.6of said railway survey stations, whence the south west corner of the south east quarter of section thirty-one township eleven north of range four west , Boise Meridian bears south 61 Dg 00 min. West a distance of 1515 feet containing an erae of three and eight hundredths acres. more or less

Also a strip of land one hundred feet wide thoughha portion of the following described tract of land commencing at a point 264 feet south of the north east corner of the south east quarter of secti n thirty.one township eleven north of range four west Boise Meridian a nd running thence west three hundred feet thence south thirteen hundred forty-four anf five tenths feet, thence east three hundred feet, thence north thirteen hundred forty four and five tenths feet to thr palce of beginning; said strip of land being fifty feet in width on each side of the center line of the Pacific and Idaho Northern Railway as located and staked upon the ground in said County , which said center line across the premises aforesaid is described as follows,to-wit:

Beginning at a p int designated as station 294 x 32.2 of the Pacific and Idaho Northern Railway survey stations whence the south east corner of the south west quarter of section thirty one township eleven north range four west Boise Meridian bears south 35 Deg. 55 Min. Easr a distance of 520 feet; thence north 66 Deg. 06 Min. east along the line of said Railway survey a distance of 334 feet to a point designated as station 297 x 73 of the said railway survey stations whence the south east corner of the south west quarter of section thirty-one township eleven north of range four west Boise Meridian bears south a distance of 558 feet containing an area of seventy-seven hundreths acres more or less.

Together with all and singular the tenements hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions remainder and remainders rents issue s and profits thereof and all estate right title and interest in and to the said property as well in law as in equity of the said parties of the first part:
To have and to hold all and singular the above mentioned and described premises together with the appurtenances unto the said party of the second part and to its successors and assigns forever. And the saidparty of the fir st part and her heirs the said premises in the quiet and peaceable possession of the said party of the second part and to its successors and assigns against the said party of the first part and her heirs and against all and every person and persons whomsoever lawfully c laiming or to claim the same shall and will warrant and by these presents forever defend.

In witness whereof the said party of the first part have hereunto set her hand and seal the day and year first above written.

Signed sealed and delivered in the presenceof
John L. Jeffreys
B.S.Varian

Sarah J. Jeffreys (Sael)

State of Idaho
}ss
County of Washington

I.R.50 cts cancelled.

On this first day of July in the year 1899 before me John W.Ayers a Notary Public in and for said County personally appeared Sarah J.Jeffreys unmarried known to me to be the person whose name is subscrib d to th e within instrument and acknowledged to me that she executed the same.

and that she does not wish to retract such execution.

In witness whereof I have hereunto set my hand and affixed my officail seal the day and year in this certificate first above wr itten.

John W-Ayers Notary Public.

Filed at the request of B.S.Varian this third day of July 1899 at 30 min past 4 P.M.

I.I.Smith
Ex-officio Recorder

Fees $ 1.65

Blendu v. US, No. 01-718L
Revised Title Stipulations, Ex. 10

RIGHT OF WAY QUIT CLAIM DEED

(vouchered No 67)

This Indenture, made this 16th day of August A. D. 1905 between William M. Glenn and Martha L. Glenn of the County of Washington, State of Idaho, of the first part and The Pacific & Idaho Northern Railway Company of the second part,

Witnesseth, That the said parties of the first part in consideration of the sum of One Hundred and Fifty ($150.00) Dollars, the receipt of which is hereby acknowledged do by these presents convey, remise, release and quit claim unto the said party of the second part, its successors and assigns, all that piece, pieces, parcel and parcels of land and the following described real estate, privileges and rights, situate in the County of Washington and State of Idaho towit;

A strip and tract of land one hundred feet wide of which the center line of the route and line of the Pacific & Idaho Northern Railway as the same is now or shall be surveyed, staked and located is the center being fifty (50) feet on each side of the center line of said route over, across and through the following tract and tracts of land as said route and line of said railway passes through the same towit:
The S. E. ¼ of the N. E. ¼ of Sec. 22, the N. E. ¼ of the N. E. ¼ of Sec. 22 and the S. E. ¼ of the S. E. ¼ of Sec 15 all in Tp 17 North of Range 1 . West of Boise Meridian.
Beginning at a point designated as station 275+579 of the Pacific & Idaho Northern Railway Survey stations and running thence N. 0° 02' E. along the line of said survey as now staked out, over and across the E. ½ of the N. E. ¼ of Sec 22, Tp 17 N. R. 1 W. B. M. a distance of 2623 feet to station 301+80.9 of said survey stations, whence the corner of Sections 14, 15, 22 and 23 Tp 17 N. R. 1 W. bears E. 76.4 feet, thence N 0° 02' E. over and across the S. E. ¼ of the S. E. ¼ of Sec. 15 Tp 17 N. R. 1 W. 1319.1 feet to station 315 of said survey stationing making a total distance of 3942.1 feet containing nine and 5/100 (9.05) acres more or less.

It is further agreed that one good and sufficient farm crossing is to be made & maintained and culverts & track boxes as shown on the profile.
To Have and Hold the Same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said party of the second part, its successors and assigns forever.

In Witness Whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

Attest:

A. E. Fox

D. C. Nevin

W. M. Glenn (Seal)

her
Martha L. X Glenn (Seal)
mark

State of Idaho )
) ss
County of Washington )

On this 18 day of August 1905 before me D. C. Nevin a Notary Public personally appeared William M. Glenn known to me to be the person whose name is subscribed to the foregoing instrument who duly acknowledged to me that the executed the same freely and voluntarily, and on the 18 day of August 1905 before me, D. C. Nevin a Notary Public personally appeared Marth L. Glenn known to me to be the person whose name is subscribed to the within instrument, described as a married woman, and upon examination separate and apart from and without the hearing of her husband I made her acquainted with the contents of the instrument and thereupon she duly acknowledged to me that she executed the same and that she does not wish to retract such execution.

D. C. Nevin

(Notarial Seal) Notary Public

My commission expires

Filed for record at request of E. M. Heigho at 9, o'clock A. M. August 23, 1905.

Case 1:01-cv-00718-ECH Document 53-6 Filed 05/30/2007 Page 3 of 4

RIGHT OF WAY QUIT CLAIM DEED.

(Vouchered No 66)

This Indenture, made this 16th day of August A. D. 1905 between William Hartley of the County of Washington, State of Idaho, of the first part and The Pacific & Idaho Northern Railway Company of the second part,

Witnesseth, That the said party of the first part in consideration of the sum of One ($1.00) Dollars, the receipt of which is hereby acknowledged does by these presents convey, remise, release and quit claim unto the said party of the second part, its successors and assigns all that piece, pieces, parcel and parcels of land and the following described real estate, privileges and rights, situate in the County of Washington and State of Idaho towit:

A strip and tract of land one hundred feet wide of which the center line of the route and line of the Pacific & Idaho Northern Railway as the same is now, or shall be surveyed, staked and located is the center being fifty (50) feet on each side of the center line of said route over across and through the following tract and tracts of land as said route and line of said railway passess through the same, towit:

The North East Quarter (N. E. ¼) of the North East Quarter (N. E.¼) of Section Twenty Seven, Township Seventeen (17) and the East Half (E ½) of the South East Quarter (S. E.¼) of Section Twenty Two (22) Township Seventeen (17) North of Range One (1) West of Boise Meridian.

Beginning at a point designated as station 236+40 of the Pacific & Idaho Northern Railway survey stations and running thence along the line of said survey as now staked out, over and across the N. E ¼ of the N. E. ¼ of Sec 27 and E. ½ of the S. E. ¼ of Sec 22 Tp 17 N. R. 1 W. B. M. a distance of 304.2 feet along a curve to the left having a radius of 2864.9 feet to station 239+44.2 the end of the curve, thence N. 0° 02' E. 990.8 feet to station 249+35, whence the section corner of Sections 22, 23, 26 and 27 Tp 17 N. R. 1 W. bears E. 88feet, thence same course 2622.9 feet to station 275+57.9 of said survey station making a total distance of 3917.9 ft containing 8.91 acres more or less.

To Have and to Hold the Same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said party of the second part, its successors and assigns forever.

In Witness Whereof the said party of the first part has hereunto set his hand and seal the day and year first above written.

William Hartley (Seal)

State of Idaho )
) ss
County of Washington )

On this 17_ day of August 1905 before me D. C. Nevin a Notary Public _ personally appeared William Hartley known to me to be the person whose name is subscribed to the foregoing instrument who duly acknowledged to me that he executed the same freely and voluntarily.

D. C. Nevin

(Notarial Seal) Notary Public

My commission expires _

Filed for record at request of E. M. Heigho at 9, o'clock A. M. August 23, 1905.

Frank E. Smith

Fees $1.25 Ex Officio Recorder

#92

This Indenture made this Twentieth day of November in the year of our Lord one thousand eight hundred and ninety-nine, between George W. Hoffstatter, unmarried, of Salubria, County of Washington, State of Idaho the party of the first part, and Pacific and Idaho Northern Railway Company, a corporation organized and existing under and by virtue of the laws of the State of Idaho the party of the second part.

WITNESSETH, that the said party of the first part for and in consideration of the sum of One Dollar lawful money of the United States of America, to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, as remised released and forever quit claimed, and by these presents does release, remise and forever quit claim, unto the said party of the second part and to its successors and assigns forever all the following described real estate, situated in the County of Washington, and State of Idaho and bounded and described as follows, to wit:

A strip of land 100 feet wide, though, over and across the south west quarter of the North West quarter of Section One In township Fourteen North of range 3 West of Boise Meridian, being fifty feet on each side of the centerline of the Pacific and Idaho Northern railway as the same is now surveyed and staked upon the ground though, over and across the premises, which center line is described as follows, towit:-

Beginning at a point designated as station 642 of the Pacific and Idaho Northern Railway Survey Stations whence the North West corner of said section One in Township Fourteen North of range Three West of Boise Meridian, bears North 2151 feet, and running thence North 64 Deg. 38 M. East, a distance of 1440 feet, to a point desiganted as station 656-40 of said railway survey stations whence the south east corner of the south west quarter of the North West quarter of section One in Township Fourteen North of Range Three West of the Boise Meridian bears south a distance of 1008 feet, Said strip containing an area of three and thirty hundredths acres more or less.

TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof;

TO HAVE AND TO HOLD all and singular the said premises, together with the appurtenances as a perpetual right of way for said second party's Steam Railway line unto party of the second part its successors and assigns forever.

In witness whereof the said party of the first part has hereunto set his hand and seal the day and year first above written.

Signed, sealed and delivered in the presence of
B.S.Varian, George W. Hoffstatter (Seal)

State of Idaho
} ss
County of Washington

On this 10th day of January 1900, before me B.S.Varian a Notary Public, in and for said County personally appeared George W. Hoffstatter known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

(SEAL)

B.S.Varian
Notary Public.

Filed at the request of B.S.Varian this 3rd day of February 1900 at 4 P.M.

I.F.Smith
Ex-Officio Recorder.

Fees $ 1.25

Blendu v. US, No. 01-718L
Revised Title Stipulations, Ex. 13