This Indenture made this Seventh day of August in the year of oue Lord one thousand eight hundred and ninety-nine betWeen Frank E. Smith and Etta A. Smith his Wife both of Weiser Washington County State of Idaho tha parties of the first part and the Pacific and Idaho Northern RailWay Company ,a corporation organixed and esisting under and by virtue of the laWs of the State of Idaho and having its principal office and place of business at Weiser, Washington County, ida ho.

the party of the second part.

Witnesseth that the said parties of the first part forand in consideration of the sum of one dollar laWful mone of the United States of America, to them in hand paid by the said party of the second part, the receipt Whereof is hereby acknoWledged, have remised, released, and forever quitclaimed, and by these presents do remise, release and forever quitclaim. unto the said party of the second part and to its successors and assigns forever, all the folloWing descr ibed real estate situated in the County of Washington and State of Idaho, and bounded and particularly described as folloWs, to-Wit:

A triangular strip of land beginning at the north West corner of lot numbered nine of Jeffreys Addition to thr ToWn of Weiser according to the official Plat of the said addition noW on file in the office of the Recorder of the said county and running thence east along the north line of said lot a distance of tWenty-tWo feet thence south Westerly parallel to and ten feet distant from the center line of the Pacific and Idaho Northern Rail Way as the same is noW located and staked upon the ground in said County, a distance of TWenty four and five tenths feet, thence north along the West line of said lot nine a distance of ten and eight tenths feet, to place of beginingcontaining am area of three one thousandths acres, mor or less. 0.003 Ac.




Together With all and singular the tenements, hereditaments, and appurtenances, thereunto belonging or in any Wise appertaining , and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof,

TO HAVE AND TO HOLD all and singular thetenements, hereditaments and appurtenances as a perpetual right of Way for said second party's Rail Way Lineunto the said party of the second part and to its successors and assigns forever.

In Witness Whereof the said parties of the first part have hereunto set their hends and seal the day and year first above Written.

Signed, sealed and delivered in the presence of: B.S.Varian.

Frank E, Smith (Seal)
Etta A. Smith (Seal)

State of Idaho
ss
County of Washington

On this Seventh day of August 1899 brfore me B.S.Varian a Notary Public in and for said County personally appeared Frank E. Smith knoWn to me to be the perso n Whose name is subscribed to the Within onstrument and acknoWledged to me that he executed the same; and on this Seventh day of August 1899 before me the officer above described personally appeared Etta A. Smith knoWn to me to be the person Whose name is subscribed to the Within instrument and described as a married Woman and upon an examination Without the hearing of her husband I made her acquainted With thec contents of the instrument and thereupon she acknoWledged to me that she executed the same and that she does not Wish to retract such execution.

In Witness Whereof I have hereunto set my hand and affixed my official seal the day and uear in this dertificdate first above aritten.

B.S.Varian Notary Public

Filed t the re quest of B.S.Varian this Seventh day od August 1899 at 2 P.M.

I.F.Smith
Ex-off icio Recorder.

Fees $ 1.45

Kristine S. Tardiff
NH Bar No. 10058
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
EMAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. CV99-324S-MHW |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE PROPERTY INTEREST ORIGINALLY ACQUIRED BY THE RAILROAD FOR CATEGORIES 5, 6, 8, 14 and 15**

Pursuant to the Court's scheduling Order of December 22, 2005 (Doc. 120), and Fed. R. Civ. P. 56, Defendant United States hereby moves for partial summary judgment on the interpretation of certain representative deeds for deed categories 5, 6, 8, 14 and 15. Defendant contends that the representative deeds in question are unambiguous and that each deed conveyed fee simple title to the Idaho Northern and Pacific Railroad Company. Defendant therefore seeks

the entry of summary judgment on these deed interpretation issues.[1]

This is a class action in which the representative plaintiffs, on behalf of a previously defined class (collectively "Plaintiffs"), allege a taking of their ownership interest in a railroad right of way established in the late 1800's by Idaho Northern and Pacific Railroad Company (hereinafter referred to as the "Railroad"). Plaintiffs allege that their ownership interest in the subject right of way was taken by the Interstate Commerce Commission's ("ICC") issuance of a Decision and Notice of Interim Trail Use ("NITU") that authorized the Railroad to discontinue its present use of the subject right of way, "railbanked" or preserved the right of way for future railroad use, and authorized the right of way to be used, in the interim, as a public trail.[2]

A threshold question in this case is whether the Plaintiffs have an ownership interest in the subject right of way. See Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003) (identifying the well established principle that the analysis in every Fifth Amendment takings case begins with an analysis of "the nature of the interest allegedly taken to determine whether a compensable property interest exists"). If Plaintiffs do not possess a compensable

---

[1]The determination of whether a deed is ambiguous is a question of law. Neider v. Shaw, 65 P.3d 525, 530 (Idaho 2003). In addition, the "[i]nterpretation of an unambiguous conveyance instrument is a question of law to be settled by its plain language." Id. Here, each of the deeds in question is included in the Joint Appendix filed with the Court on June 1, 2001. Because this motion presents questions of law for the Court's determination, this motion is not accompanied by a separate statement of material facts under Local Civil Rule 7.1(b)(1).

[2]The NITU was issued under Section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d). The railbanking provisions of this statute are discussed in detail in earlier filed briefs and in the Court's Order of July 7, 2000 (Doc. 39). The NITU in this case was issued by the ICC on December 28, 1995. The ICC was subsequently abolished and many of its responsibilities, including those under the railbanking provisions of the National Trails System Act, were delegated to the Surface Transportation Board ("STB"). See ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803; see also http://www.stb.dot.gov/.

property interest in the subject right of way, then their claim that such an interest has been taken from them necessarily fails.

The original conveyances to the Railroad were previously categorized by the parties into deed or conveyance Categories 1 through 10 and 12 through 15. This Court's prior interpretation of a representative sampling of the original conveyances to the Railroad is set forth in the Memorandum Decision of November 27, 2001 (Doc. 88). On Plaintiffs' motion under Fed. R. Civ. P. 54(b) , the Court entered a partial final judgment in favor of Defendant as to Categories 1, 5, 6, 7, 8, 9, 10, 12, 13, 14 and 15 (Doc. 108). Plaintiffs subsequently appealed the Court's decision as to Categories 1, 5, 6, 8, 14 and 15. The Federal Circuit's decision in that appeal is published at 403 F.3d 1308 (Fed. Cir. 2005). This case is now on remand from that decision.

Defendant's motion for partial summary judgment is limited to the interpretation of the representative deeds for Categories 5, 6, 8, 14 and 15.[3] This Court previously held that the representative deeds for Categories 5, 6 and 8 conveyed fee simple title to the Railroad. Memorandum Decision at 11–15, 17-18 (Nov. 27, 2001) (Doc. 88). Category 14 is an overlapping category containing deeds that are included in one of the other deed categories but are also listed in Category 14 because they were executed after the Railroad had entered the lands in question. This Court previously held that fact that the deeds in Category 14 were executed after the Railroad entered the lands in question did not bar the Railroad from acquiring a fee simple interest under those deeds. Id. at 16-17. Category 15 is another overlapping category containing all deeds that include the term "right of way" somewhere in the deed. Category 15

---

[3]There are several other title and liability issues that will need to be addressed in this case. Those issues are summarized in the parties' Joint Status Report (filed Dec. 14, 2005) (Doc. 119).

was not addressed by this Court separately because the use of the term "right of way" was analyzed in the Court's deed-specific analysis. The district court's determination that the deeds in each of these categories conveyed fee title to the railroad was vacated by the Federal Circuit and remanded for redetermination in light of the Idaho Supreme Court's decision in Neider v. Shaw, 65 P.3d 525 (Idaho 2003). Hash, 403 F.3d at 1321, 1323.

For the reasons set forth in the Memorandum that accompanies this motion, the Supreme Court of Idaho's decision in Neider reaffirms long-established principles of deed interpretation under Idaho law. The Idaho Supreme Court applied these principles to the deed at issue in Neider and concluded that the deed conveyed only an easement to the railroad because the deed contained handwritten language added to the granting clause that limited the Railroad's use of the land and a reverter clause under which the deed became null and void and the right of way reverted to the grantors if the Railroad's permitted use of the land ceased. Although the Neider decision represents the Idaho Supreme Court's most recent interpretation of a railroad deed, the decision in does not impact this Court's prior decision that the deeds at issue in this case conveyed a fee simple interest to the Railroad because the deed interpreted in Neider is substantively distinguishable from the deeds at issue here in that none of the deeds in question limit the estate granted and contain a corresponding reverter clause. Accordingly, this Court should again conclude, applying both the well established rules of deed construction set forth under Idaho law and the recent guidance in Neider, that each of the deeds in question is unambiguous and conveyed fee simple title to the Railroad. Summary judgment on these title issues should therefore be entered in favor of Defendant.

Dated: January 20, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

/s/ Kristine S. Tardiff
E-Mail: kristine.tardiff@usdoj.gov
KRISTINE S. TARDIFF (NH Bar No. 10058)
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Washington, D.C. 20423

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of January, 2006, I electronically filed: (1) *Defendant's Motion for Partial Summary Judgment Regarding the Property Interest Originally Acquired by the Railroad for Categories 5, 6, 8, 14 and 15*, (2) *Defendant's Memorandum in Support of Its Motion for Partial Summary Judgment*, and (3) *Defendant's Supplemental Appendix*, through the CM/ECF system, which caused the following parties or counsel to be served with each of these documents by electronic means, as more fully reflected in the Notice of Electronic Filing:

Cecilia Fex, Attorney for Plaintiffs
fex@ackersonlaw.com

Nels J. Ackerson, Attorney for Plaintiffs
nels@ackersonlaw.com

Lary C. Walker
walkerlaw_bk@ruralnetwork.net

/s/ Kristine S. Tardiff
E-mail: kristine.tardiff@usdoj.gov

Kristine S. Tardiff
NH Bar No. 10058
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
EMAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. CV99-324S-MHW |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE PROPERTY INTEREST ORIGINALLY ACQUIRED BY THE RAILROAD FOR CATEGORIES 5, 6, 8, 14 and 15**

Dated: January 20, 2006

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. The Decision of the Idaho Supreme Court in *Neider v. Shaw* . . . . . . . . . . . . . . . . 2

B. Railroad Deed Interpretation Following *Neider v. Shaw* . . . . . . . . . . . . . . . . . . . 5

C. The Railroad Acquired Feed Simple Title to Lands Conveyed by the Category 5 Deeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1. The Category 5 Deeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

2. The Category 5 Deeds Do Not Contain the Same Indicators of Intent to Convey Less Than a Fee Interest That Were Found in the Neider Deed . . . . . . . . . . . . . . . . . . . . 12

D. The Railroad Acquired a Fee Simple Interest Under the Category 6 Deeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E. The Railroad Acquired a Fee Simple Interest Under the Category 8 Deeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

F. The Timing of the Execution of the Deeds in Category 14 is Extrinsic Evidence and Does Not Alter the Interpretation of those Deeds as Conveying Fee Simple Title to the Railroad . . . . . . . . . . . . . 26

G. Category 15 Does Not Require Any Separate Analysis . . . . . . . . . . . . . . . . . . . 29

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

## CASES

Akers v. D.L. White Construction, Inc.,
No. 30795, 2005 WL 3557253 (Idaho Dec. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C&G, Inc. v. Rule,
25 P.3d 76 (Idaho 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-9, 22, 23

City of Kellogg v. Mission Mountain Interests Ltd.,
16 P.3d 915 (Idaho 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Clark v. CSX Tranps., Inc.,
737 N.E.2d 752 (Ind. 2000), transfer denied, 783 N.E.2d 691 (Ind. 2001) . . . . . 18, 21, 28

Coulsen v. Aberdeen-Springfield Canal Co.,
277 P. 542 (Idaho 1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Grill v. W. Virginia R.R. Maintenance Authority,
423 S.E.2d 893 (W.Va. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Haney v. Molko,
844 P.2d 1382 (Idaho Ct. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hash v. United States,
403 F.3d 1308 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 26, 29

Hash v. United States,
No. 99-324S-MHW, Memorandum Decision (D. Idaho Nov. 27, 2001) . . . . . . . . passim

Johnson v. Valdosta, M. & W. R. Co.,
150 S.E. 845 (Ga. 1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Keener v. Railway,
31 Fed. Rep. 126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

King County v. Rasmussen,
299 F.3d 1077 (9th Cir. 2002), cert. denied, 538 U.S. 1057 (2003) . . . . . . . . . . . . . 17, 25

Louisville & Indiana RR Co. v. Indiana Gas Co.,
792 N.E.2d 885 (Ind. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Luce v. Marble,
No. 30691, 2005 WL 3556424 3 (Idaho Dec. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 19

Mayberry v. Gueths,
777 P.2d 1285 (Mont. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Miller v. Callear,
91 P.3d 1117 (Idaho 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Neider v. Shaw,
65 P.3d 525 (Idaho 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

New York Indians v. United States,
170 U.S. 1, 18 S. Ct. 531 (1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Oregon S. L. Ry. Co. v. Yeates, Assessor,
17 P. 457 (Idaho Terr. 1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Poznic v. Porter County Development Corp.,
779 N.E.2d 1185 (Ind. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Quinn v. Pere Marquette Ry. Co.,
239 N.W. 376 (Mich. 1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Ray v. King County,
86 P.3d 183 (Wash. App. 2004),
review denied, 101 P.3d 421 (Wash. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 25

Rowell v. Gulf, M & O R. Co.,
28 So.2d 209 (Ala. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Schneider v. Mobile County,
224 So.2d 657 (Ala.1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 28

Scogings v. Andreason,
418 P.2d 273 (Idaho 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sowers v. Illinois Central Gulf R.R. Co.,
503 N.E.2d 1082 (Ill. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

State of Oregon v. Tolke,
586 P.2d 791 (Or. App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Union Pac. RR Co. v. Ethington,
50 P.3d 450 (Idaho 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 17

Urbaitus v. Commonwealth Edison,
575 N.E.2d 548 (Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 30

Weaver v. Stafford,
8 P.3d 1234 (Idaho 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**STATUTES**

1864 Idaho Sess. Laws § 43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**OTHER AUTHORITIES**

23 Am. Jur.2d Deeds § 266 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
28 Am. Jur.2d Estates § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28 Am. Jur.2d Estates § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Annot., Deed to Railroad Company as Conveying Fee or Easement,
6 ALR3d 973 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Appellate Brief of Defendant-Respondant Nampa Highway District in Neider v. Shaw,
No. 28022, 2002 WL 32649162 9 (Idaho Sept. 4, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

This case is on remand from the Federal Circuit. Hash v. United States, 403 F.3d 1308 (Fed. Cir. 2005). The specific issue presented in Defendant's motion for partial summary judgment is the interpretation of several deeds under Idaho law to determine whether, in light of the Supreme Court of Idaho's recent decision in Neider v. Shaw, 65 P.3d 525 (Idaho 2003), those deeds conveyed fee simple title to the Railroad, or merely an easement.

Defendant's motion for partial summary judgment is limited to the interpretation of the representative deeds for Categories 5, 6, 8, 14 and 15.[1] This Court previously held that the representative deeds for Categories 5, 6 and 8 conveyed fee simple title to the Railroads. Hash Memorandum Decision at 11–15, 17-18 (Nov. 27, 2001) (Doc. 88). Category 14 is an overlapping category containing deeds that are also included in one of the other deed categories but are separately identified in Category 14 because they were executed after the Railroad had entered the lands in question. This Court previously held that fact that these deeds were executed after the Railroad entered the lands in question did not bar the Railroad from acquiring a fee simple interest under those deeds. Id. at 16-17. Category 15 is another overlapping category containing all deeds that include the term "right of way" somewhere in the deed. This Court did not need to address Category 15 separately in its prior decision because the use of the term "right of way" in the subject deeds was examined in the Court's deed-specific analysis. The district court's determination that the deeds in each of these categories conveyed fee title to the railroad was vacated by the Federal Circuit and remanded for redetermination in light of Neider. Hash,

[1]There are several remaining title and liability issues that will need to be addressed in this case. Those issues are summarized in the parties' Joint Status Report filed on December 14, 2005 (Doc. 119).

403 F.3d at 1321, 1323.

As set forth below, the Idaho Supreme Court's decision in Neider reaffirms long-established principles of deed interpretation under Idaho law. The court applied these principles to the deed at issue in Neider and concluded that the deed conveyed only an easement to the railroad. Although the Neider decision represents the Idaho Supreme Court's most recent interpretation of a railroad deed, the decision in does not impact this Court's prior decision that the deeds at issue in this case conveyed a fee simple interest to the Railroad because the deed interpreted in Neider is substantively distinguishable from the deeds at issue here. Accordingly, this Court should again conclude, applying both the well established rules of deed construction set forth under Idaho law and the recent guidance in Neider, that each of the deeds in question is unambiguous and conveyed fee simple title to the Railroad.

## II. ARGUMENT

### A. The Decision of the Idaho Supreme Court in *Neider v. Shaw*

The purpose of the remand in this case with respect to the deeds at issue in Defendant's present motion is to allow this Court to reconsider its interpretation of those deeds in light of Neider v. Shaw, 65 P.3d 525 (Idaho 2003). Hash, 403 F.3d at 1321, 1323.

Neider was a quiet title action arising out of a boundary line dispute between several neighbors and a title dispute involving a local highway district in Canyon County. All of the properties in question were once part of a larger 80-acre parcel acquired in 1908 by J. Fremont Bow and his wife ("the Bows"). 65 P.3d at 527. Prior to the Bows' 1908 acquisition, the Idaho Northern Railroad Company ("the Railroad") had constructed a rail line running northeast and southwest through Canyon County and across the northwest corner of the 80-acre parcel in

question. Id. On March 14, 1910, the Bows conveyed an interest in a triangular-shaped parcel in the northwest corner of their property to the Railroad consisting of approximately 10 acres ("the railroad property").[2] Id. Four months later, in July 1910, "the Bows recorded a plat consisting of their 80-acre tract, creating the township of Bowmont." Id. This plat dedicated a number of public roads, including First Avenue or "Track Avenue" running north-south on the western edge of the 80-acre tract (i.e., the western boundary of the railroad property), First Street running east-west on the northern edge of the tract (i.e., the northern boundary of the railroad property), and several other streets running either north-south or east-west across the 80-acre. Id.; see also Def. Ex. 6 (Bowmont plat maps).[3] The Neider court also found that sometime before 1935, an irrigation canal was constructed parallel to the rail line, between the rail line and the eastern boundary of the railroad property. 65 P.3d at 527. In addition, the court found that sometime between 1935 and 1945 a fence was constructed between the canal and the rail line. Id.

In 1994, the Railroad removed its tracks and quitclaimed the subject property to the Bows' living heirs. Id. In 1997, the Nampa Highway District ("NHD") re-aligned and graveled a portion of Track Road on the railroad property. Id. In 2001, the surviving heir (Evelyn Bow) conveyed the subject property to Jay Neider ("Neider"). Id.

The Neider quiet title action involved: (1) the twenty to thirty foot strip of land situated

---

[2]There is no discussion in the Neider decision regarding whether the Railroad acquired its interest in the right-of-way corridor through a separate conveyance or dedication prior to the 1910 deed from the Bows.

[3]Defendant Exhibits 1 through 4 are included in Defendant's Appendix (Doc. 82) that was filed with Defendant's Brief on the Nature of the Ownership Interest Originally Acquired by the Railroad in the Subject Properties (filed June 1, 2001) (Doc. 81). Defendant Exhibits 5 and 6 are included in Defendant's Supplemental Appendix, which has been filed with this Memorandum.

between the location of the fence described above and eastern boundary of the railroad property (as originally conveyed to the Railroad), with Neider claiming he owned to the eastern boundary of the railroad property and his neighbors to the east claiming that the fence marked the boundary between their properties and the parcel acquired by Neider in 2001; and (2) the portions of the railroad property claimed by NHD for roads based on the plat recorded in 1910 that dedicated those roads. 65 P.3d at 528. Resolution of the title dispute with NHD required the state court to determine the nature of the interest acquired by the Railroad from the Bows in 1910 because, if the Bows had conveyed fee simple title to the Railroad in March 1910, then they owned no interest in the triangular railroad property in July 1910, and their recordation of the plat creating the township of Bowman on that date would not have been effective under Idaho law to dedicate any public roads on the railroad property.

Thus, the deed interpreted in Neider was the March 1910 deed from the Bows to the Railroad. 65 P.3d at 527. The deed was prepared on a printed form, but contained the following handwritten clause:

> Provided: nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should [The Railroad] fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said J. Fremont Bow and C.A. Bow, his wife or their legal heirs.

Def. Ex. 5 (copy of the Neider deed). See also 65 P.3d at 527.

In determining the nature of the interest conveyed to the Railroad by this deed, the Neider court found that "[w]hile the printed language uses terms such as 'grant,' 'bargain' and 'sell,' the handwritten clause unambiguously reflects the Bows' intent to convey only an easement to the

Railroad." 65 P.3d at 530.[4] The Neider court further noted that "the Railroad's interest in the land was limited to railroad purposes by the handwritten clause." Id. Accordingly, the Neider court held that "[i]n this case, a substantive portion of the conveyance instrument, in handwriting, grants a 'right of way' to the Railroad, which this Court has identified as language that creates an easement." Id. As a result of this determination, the Neider court concluded that when, a few months later, the Bows recorded the Bowmont plat, that recordation was sufficient under Idaho law to dedicate the public roads identified on the plat, including those roads located on the property identified in their 1910 deed to the Railroad. The court thus affirmed the trial court's decision to quiet title as to the roads identified on the Bowmont plat to the local highway district, NHD.

B. Railroad Deed Interpretation Following *Neider v. Shaw*

The Neider decision provides guidance in a case such as this because the Idaho Supreme Court was interpreting the nature of the interest conveyed to a railroad by a deed. Importantly, the Neider decision affirms several important deed interpretation principles that this Court acknowledged and applied when it first examined the deeds at issue in this case.

First, the Neider court reaffirmed the long-standing principles that "[w]hen construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to

---

[4]The trial court in Neider also gave more weight to the handwritten language in the deed than to the pre-printed form language in the deed. As quoted in the NHD's appellate brief, the trial court emphasized that the use of the term "right-of-way" and the "railroad purposes" language was found in the granting clause of the deed, and stated that the preprinted, boilerplate language suggestive of a fee conveyance "has far less bearing on the intention of the grantor, in comparison as the handwritten reversionary clause clearly stating the grantor's intended purpose." Neider v. Shaw, No. 28022, Appellate Brief of Defendant-Respondant Nampa Highway District, 2002 WL 32649162, *9-*10 (Idaho Sept. 4, 2002). As discussed *infra*, there is no comparable language in the deeds at issue in this case.

the transaction" and that "[t]he intent of the parties is determined by viewing the conveyance instrument as a whole." Neider, 65 P.3d at 530. See also C&G, Inc. v. Rule, 25 P.3d 76, 79 (Idaho 2001) ("In interpreting a deed of conveyance, the primary goal is to seek and give effect to the real intention of the parties."). In addition, Neider reaffirms that the interpretation of an unambiguous deed is a question of law to be settled by the plain language of the instrument as a whole, whereas the interpretation of an ambiguous deed "is a question of fact to be settled by the language in the conveyance instrument and the facts and circumstances of the transaction." Neider, 65 P.3d at 530. See also C&G, 25 P.3d at 79-80 (detailing the same principles regarding ambiguity in deeds).

Second, the Neider decision does not disturb the Idaho Supreme Court's prior ruling in C&G that Idaho's fee simple presumption statute applies to railroad deeds. C&G, 25 P.3d at 81. This statute, as first enacted in 1864 by Idaho's territorial legislature, provides that "[a] fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." See 1864 Idaho Sess. Laws § 43 at 528 (current version found at I.C. § 55-604). Although the Neider deed contained pre-printed form language indicative of a fee conveyance, the court found that the handwritten language included in the granting clause of the Neider deed unambiguously indicated the grantors' intent to convey a lesser estate by limiting the railroad's use of the land to railroad purposes and providing for a reversion to the grantors (or their heirs) if that limited use ceased. Neider, 65 P.3d at 530. Thus, the presumption of a fee simple grant was overcome by the unambiguous handwritten language added to the Neider deed.

Third, the Neider decision does not contradict prior rulings that railroads can acquire fee

title to lands under Idaho law. See Union Pac. RR Co. v. Ethington, 50 P.3d 450, 452 (Idaho 2002) (holding that railroads can own property under Idaho law); C&G, 25 P.3d at 80 (holding that a railroad acquired fee title to right of way lands by deed). Thus, there is no dispute that the Railroad in this case had authority to acquire fee title to the lands that comprise its right of way. Indeed, by the prior stipulations of the parties and the Court's rulings, it has been established in this case that the Railroad acquired fee simple title under the deeds in Categories 4, 7 and 9, and a fee simple determinable estate under the deeds in Categories 2 and 3. Hash Mem. Decision at 8-11, 15 (Nov. 27, 2001) (Doc. 88). Plaintiffs did not appeal these deed interpretations.

Fourth, the Neider decision does not disturb the Idaho Supreme Court's prior recognition that the use of the term "right-of-way" in a deed to a railroad can be merely descriptive and does not always serve to limit the grant to an easement or some other estate that is less than a fee simple estate. As the Supreme Court explained in C&G,

> Although we recognize that a conflict exists among courts as to the interpretation of deeds purporting to convey land where there is also a reference to a "right of way," where the railroad deed does not contain language about its purpose or otherwise limiting the conveyance and conveys a definite parcel of land, courts consistently hold that "the deed will be construed to convey fee simple title." Much of the conflict in the case law can be traced to the different meanings of the phrase "right of way." On one hand "right of way" can serve "to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement)." On the other, the phrase can describe the parcel of land being conveyed to the railroad for the purpose of constructing its rail line. Used in this manner, "right of way" is merely descriptive as to the use to which the land is being put and does not serve to limit or restrict the estate conveyed.

C&G, 25 P.3d at 80 (internal citations and footnote omitted). The Idaho Supreme Court's acknowledgment in C&G that the term "right-of-way" may be simply descriptive instead of

limiting is consistent with the long-standing recognition of the two distinct meanings and uses of this term in Idaho and elsewhere. Coulsen v. Aberdeen-Springfield Canal Co., 277 P. 542, 544 (Idaho 1929) ("the term 'right of way' may mean merely the right to pass over a tract of land or it may refer to the specific tract itself"); Oregon S. L. Ry. Co. v. Yeates, Assessor, 17 P. 457 (Idaho Terr. 1888) ("The term 'right of way' has a twofold signification. It sometimes is used to mean the mere intangible right to cross, — a right of crossing, a right of way. It is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its road-bed." (quoting Keener v. Railway Co., 31 Fed. Rep. 126)).

In C&G, the court held that the use of the term "right of way" on the cover pages of the deeds in question did not limit or restrict the estate conveyed. Id., 25 P.3d at 80-81. In so holding, the C&G court made note of the fact that there was "no mention of the term 'right of way' in either the granting or habendum clause, nor any other language in the deeds that serves to limit the use of the land for the purpose of a railroad right of way." Id. at 81. Two years later in the Neider decision, the Idaho Supreme Court again noted that it had held that the C&G deeds unambiguously conveyed a fee simple rather than an easement because the substantive provisions of those deeds did not limit the railroad's use of the land to railroad purposes or include any language indicating a reversionary interest in the grantors. Neider, 65 P.3d at 530. The court reached the opposite conclusion in its interpretation of the deed before it in Neider because handwritten language had been added to the granting clause indicating that the grant was made for "right of way, station, and warehouse purposes" and further providing for a reverter to the grantors (or their legal heirs) if the Railroad failed to use the land for such purposes. 65 P.3d at 527 (quoting relevant handwritten language); 65 P.3d at 530 (holding that this language

"unambiguously reflects the [grantors'] intent to convey only an easement to the Railroad").

The Idaho Supreme Court's decisions in Neider and C&G are consistent in that both decisions recognize the importance of the granting clause of the deed. In C&G, the court's determination that the deeds in question unambiguously conveyed fee title to the railroad turned in part on the fact that the granting clause operated to "grant, sell and convey" a strip or a piece or a parcel of land, that neither the granting clause nor the habendum clause ("To have and to hold . . .") mentioned the term "right of way," and that there was no other language in the deed that served to limit the railroad's use of the land granted. C&G, 25 P.3d at 78-81. In Neider, the court's analysis again focused on "the substantive provisions" of the deed, with specific focus on handwritten language that was added to the granting clause and limited the railroad's use of the land to railroad purposes by expressly providing for a reversion of the interest granted to the grantors or their legal heirs if the railroad ceased to use the property for the purposes identified in the deed.

The fact that the Idaho Supreme Court's interpretation of deeds in general, and railroad deeds in particular, focuses on the granting clause is not unexpected. Indeed, the granting clause of a deed is considered significant, if not controlling, on the question of the grantor's intent because

> [t]he question of whether a particular deed conveys a fee or merely confers an easement requires construction of the instrument to determine whether the granting clause conveys a designated strip, piece, parcel, or tract of land, or whether it basically refers to a right or privilege with respect to the described premises. In the absence of language relating to the use or purpose of the grant, or limiting directly or indirectly the estate conveyed, a conveyance of a definite strip, piece, parcel, or tract of land is generally construed as passing an estate in fee.

23 Am. Jur.2d Deeds § 266 (1983). See also Annot., *Deed to Railroad Company as Conveying Fee or Easement*, 6 ALR3d 973, 979 (1966) ("Deeds purporting to convey to railroads a strip, piece, parcel, or tract of 'land,' which do not contain additional language describing or otherwise referring to the land in terms of the use or purpose to which it is to be put, or in other ways cutting down or limiting, directly or indirectly, the estate conveyed, are generally construed as passing an estate in fee.").

Accordingly, consistent with the Federal Circuit's remand, this Memorandum re-analyzes the deeds in Categories 5, 6, 8, 14 and 15, in light of Neider. As set forth below, Defendant submits that the Neider decision, although providing additional guidance from the Idaho Supreme Court on the interpretation of railroad deeds, does not affect the Court's prior determination that the deeds in question conveyed fee title to the Railroad.

C. The Railroad Acquired Fee Simple Title to Lands Conveyed by the Category 5 Deeds

The Court previously interpreted two representative deeds for Category 5 as conveying fee simple title to the Railroad (J. App. 13 & 14).[5] Hash Mem. Decision at 11-14. Because the Federal Circuit found that the guidance relied on by this Court from the Idaho Supreme Court's decision in C&G has since been modified by Neider "in a way that appears to be highly relevant to the deeds here at issue[,]" the Federal Circuit vacated this Court's findings and remanded for reconsideration in light of the Neider decision. However, as set forth below, the Neider decision does not compel a different conclusion because the deed at issue in Neider is distinguishable

[5]The "J. App." citations used herein refer to the Joint Appendix filed on June 1, 2001, with Plaintiffs' Opening Brief regarding title issues (Doc. 83). All of the deeds addressed in this Memorandum are included in that Joint Appendix.

from the representative deeds for Category 5. Thus, notwithstanding Neider, it remains clear that when the Category 5 deeds are viewed as a whole, those deeds conveyed fee title to the Railroad.

1. The Category 5 Deeds

The representative deeds for Category 5 are both warranty deeds, with one dated June 2, 1906 (J. App. 13, Parcels 109 & 111), and the other dated September 18, 1900 (J. App. 14, Parcel 116). The granting clauses in both deeds use standard grant, bargain and sell language and convey "real estate" to the Railroad, "and to its successors and assigns forever[.]" J. App. 13; J. App. 14. The descriptive clauses of both deeds further identifies the property conveyed as either "[a] perpetual right of way through, over, and across" a parcel of land in Washington County that is 100 feet wide (J. App. 13), or as "[a] right of way one hundred feet in width . . ." (J. App. 14). The descriptive clauses also use the center line of the railway as a monument to describe the location of the land granted. See J. App. 13 ("[t]he said right of way so conveyed being fifty feet wide each side of the center line of the railway belonging to the second party as the same is not located, constructed and operated on the ground.").

The "together with" language of the granting clauses further state that the real estate is conveyed

> TOGETHER With all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of the [grantors].

J. App. 13; see also J. App. 14. Identical habendum clauses in both deeds reaffirm that the grant is to the Railroad "and to its successors and assigns forever[,]" and that the grantors warrant and

will "forever defend" their title. J. App. 13; J. App. 14. The stated consideration in the first deed $50.00 (J. App. 13),[6] and $200 for 8.07 acres in the second deed (approximately $24.78 per acre).

In addition, the second deed (J. App. 14) includes additional language following the description of the real estate conveyed, stating that "it is understood" that the Railroad will construct two wagon crossings on the right of way and "a passage way under such road bed of sufficient size for the passage of calves under such road bed." This additional language also requires the Railroad to fence the right of way.

2. The Category 5 Deeds Do Not Contain the Same Indicators of Intent to Convey Less Than a Fee Interest That Were Found in the *Neider* Deed

The most reasonable interpretation of the Category 5 deeds, even in light of Neider, continues to be that the deeds conveyed a fee simple interest to the Railroad.

The granting clauses of both deeds use typical grant, bargain and sell language to convey "real estate" rather than a right to use the land of the grantors. This granting language is indicative of a fee conveyance. See Union Pacific RR Co. v. Ethington, 50 P.3d 450, 453 (Idaho 2002) (holding that a deed that "grant[s], sell[s] and convey[s]" a "piece, parcel of land" that is described as "[a] strip of land ONE HUNDRED (100) feet wide, being FIFTY (50) feet on each side of the centerline of the main track" of the railroad, conveyed fee simple title rather than an easement). The "[t]ogether with" language at the end of the granting clause (following the descriptive clause) also provides that the grantees intended to convey "*all* estate, right, title and interest in and to the said property" to the Railroad. J. App. 13 & 14 (emphasis added). This

[6]The 1916 schedule filed by the Railroad with the ICC indicates that this $50.00 sum consists of (1) $12.00 paid for Parcel 109, which is 0.85 acres (about $14 per acre), and (2) $38.00 paid for Parcel 111, which is 3.56 acres (about $10.67 per acre). J. App. 19.

same clause conveys the subject property to the Railroad together with "the reversion and reversions, remainder and remainders, rents, issues and profits thereof . . . ." It is well established that a conveyance of "all estate, right, title and interest" is an unambiguous conveyance of a fee simple absolute interest. See 28 Am. Jur.2d Estates § 1 ("The term 'estate' embraces every species of property possessed by an individual . . . ."); see also Louisville & Indiana RR Co. v. Indiana Gas Co., 792 N.E.2d 885, 891-92 (Ind. 2003) (holding that a deed granting "the Right of Way, and all my interest" in the land thereafter described in the deed reflects an unambiguous intent to convey the land to the railroad in fee simple). In addition, the grant of "the reversion and reversions, remainder and remainders, rents, issues and profits" is commonly recognized as language that clearly operates to convey a fee interest in the property. 28 Am. Jur.2d Estates § 15. Significantly, unlike the deed in Neider, this unambiguous language indicating that the grantor intended to convey a fee simple estate to the Railroad is not modified by any added language in the granting clause (handwritten or otherwise) by which the grantor expressly limited the grant and retained a reversionary interest.

Plaintiffs seek to overcome the unambiguous language of the granting clause by pointing to the use of the term "right of way" in the descriptive clause of Category 5 deeds. However, the purpose of the descriptive clause of a deed is simply to identify the location of property conveyed. Under Idaho law, such a description "will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers." City of Kellogg v. Mission Mountain Interests Ltd., 16 P.3d 915, 920 (Idaho 2000) (citing Haney v. Molko, 844 P.2d 1382 (Idaho Ct. App. 1992)).

The descriptive clauses of the Category 5 deeds identify the "real estate" conveyed as a

"perpetual right of way through, over, and across" certain lands (J. App. 13) or simply as a "right of way" (J. App. 14). The land is further described in both deeds as 100 feet wide, being 50 feet on either side of the center line of the railway as already constructed (J. App. 13) or as surveyed (J. App. 14). This Court previously held that the term "right-of-way" in these descriptive clauses "is used simply to describe and locate the land granted and not to limit the estate granted." Hash Mem. Decision at 13-14. The Court supported this conclusion by reference to the instrument as a whole, noting that "all of the other language in the Category 5 deeds supports the conclusion that these deeds conveyed fee title to the railroad." Id. at 14.

Finally, the use of the term "right of way" in the stated understandings of the parties regarding a wagon crossing, cattle crossings and fences that appear in the second Category 5 deed (see J. App. 14) do not limit the estate otherwise granted by this deed. Instead, these uses of the term "right of way" are merely descriptive. See Urbaitus v. Commonwealth Edison, 575 N.E.2d 548, 554 (Ill. 1991) (holding that the use of the term "right-of-way" in a conditions clause requiring the railroad to construct an at-grade road crossing and a culvert underneath its roadbed for cattle passage "was not intended to limit the estate granted[,]" but instead "served only to locate and describe the land on which the railroad and the required improvements were to be constructed).

Nothing in the Neider decision compels a different conclusion. Indeed, the descriptive clause of the Neider deed also describes the property at issue by reference to the physical location of the existing railroad, expressly describing the location of the property by distances measured from the center line of the railroad and describing one boundary of the property as running "parallel with the center line of the said Railway." Def. Ex. 5 (Neider deed). However, the

Neider court's interpretation of this deed included no discussion of or reliance on the descriptive clause.[7] Instead, the sole focus of the Neider court's discussion was the handwritten language added to the granting clause that indicated that the grant was made for specific uses and providing for full reversion to the grantor in the event the Railroad failed to put the land to the permitted uses. Neider, 65 P.3d at 527 & 530. As noted above, the Category 5 deeds contain no such limiting language in the granting clauses (handwritten or otherwise); nor do the Category 5 deeds include a reversionary clause. To the contrary, the Category 5 deeds expressly grant both the land and any reversionary interest to the Railroad. J. App. 13 & 14.

Although the Idaho Supreme Court does not address the precise deed interpretation question presented by the Category 5 deeds in Neider, other courts have. A survey of such decisions demonstrates that when the term "right-of-way" is not used in the granting clause, but does appear in the descriptive clause, the use of the term is generally treated as merely descriptive of the land granted and not as limiting the estate conveyed.

For example, in Schneider v. Mobile County, 224 So.2d 657 (Ala.1969), the Alabama Supreme Court was presented with the question of whether two deeds granting a strip of land for

---

[7]It should be noted here that it is common practice to refer to physical monuments in a descriptive clause to describe the precise location of the lands conveyed by the deed in question. Under Idaho law, a monument "is generally considered to be a permanent, visible and identifiable physical feature." Akers v. D.L. White Construction, Inc., No. 30795, 30845, 2005 WL 3557253 (Idaho Dec. 30, 2005) (quoting Weaver v. Stafford, 8 P.3d 1234, 1240 (Idaho 2000)). The use of the centerline of a railroad as a monument in a deed is common because "[r]eferences to monuments control over conflicting calls for courses and distances if the monument is of a permanent nature and established with reasonable certainty." Id. (citing Miller v. Callear, 91 P.3d 1117, 1121 (Idaho 2004)). Thus, the absence of any discussion in Neider regarding the references in the descriptive clause of the Neider deed to the center line of the existing railway is not surprising because those references were descriptive only and certainly would not have been interpreted as limiting or defining the estate or interest granted by the deed.

a road right of way conveyed fee title or only an easement. Like the Category 5 deeds, the granting clauses of the deeds at issue in Schneider include standard "grant, bargain, sell and convey" language indicative of a fee conveyance and grant "the following described Real Estate . . . ." Schneider, 224 So.2d at 660. The descriptive clauses then identify the "real estate" conveyed as "[a] strip of land, to be used as right of way for the Citronelle Road, 30 feet wide being 15 feet on each side of the following described line." Id. The habendum clause in one of the deeds state, "TO HAVE AND TO HOLD the aforegranted premises to the said Mobile County," with the second deed including the phrase "Their heirs and assigns FOREVER" at the end of the habendum. Id. The Schneider court held that these deeds conveyed fee title to the lands described therein rather than only an easement. In so holding, the court relied part on its prior interpretation of a railroad deed in the Rowell v. Gulf, M & O R. Co., 28 So.2d 209 (Ala. 1946), explaining that the where the granting and habendum clauses clearly convey an easement, the use of the term right of way in the deed or purpose language is not "a debasement of the fee," nor is it a condition that limits the grantee's use of the land and results in a reverter if the condition is not met. Schneider, 224 So.2d at 661-663; Rowell, 28 So.2d at 465-66. As explained by the Supreme Court of Alabama in Rowell,

> It is [] established that "a fee will pass by a deed containing a clause or recital which is merely declaratory of the use contemplated of the land where the other parts of the deed operate as a conveyance of the fee." 18 C.J. 336, § 335. See also 26 C.J.S., Deeds, § 134, p. 436.
>
> And, in deeds granting "land" rather than a "right," the fact that the instrument contains additional language embodying some reference to its contemplated use as a "right of way" does not without further qualifying terms operate to limit the estate conveyed or cut it down from a title in fee to an easement. 44 Am. Jur. 317, § 102.

Rowell, 28 So.2d at 211.

Numerous other state courts have reached the same conclusion, holding that the use of the term "right of way" or language such as "for a railroad right of way" in the descriptive clause of the deed merely describes the land granted and does not operate to limit the estate granted. See, e.g., King County v. Rasmussen, 299 F.3d 1077, 1085-86 (9th Cir. 2002) (applying Washington law and noting that when the term "right of way" appears in a deed's legal description or in the description of the railroad's obligation, the term merely describes the strip of land and does not qualify or limit the interest expressly conveyed by the deed), cert. denied, 538 U.S. 1057 (2003); Mayberry v. Gueths, 777 P.2d 1285, 1288 (Mont. 1989) (deed to railroad conveyed a fee interest despite the use of the term "right-of-way" in the descriptive clause); Sowers v. Illinois Central Gulf R.R. Co., 503 N.E.2d 1082 (Ill. App. 1987) (holding that a railroad deed that used the term "right of way" in the legal description conveyed fee title to the railroad because the term was used to describe and locate the strip of land conveyed, not to limit the estate granted to an easement); State of Oregon v. Tolke, 586 P.2d 791, 795-96 (Or. App. 1978) (holding that the use of the term "right of way" in the legal description did not limit the railroad's interest to an easement); Johnson v. Valdosta, M. & W. R. Co., 150 S.E. 845, 846-47 (Ga. 1929) (holding that the use of the phrase "for a railroad right-of-way" in the descriptive clause "was intended to describe the land granted, and not to fix the tenure of the grantee therein.").

Finally, the habendum clauses in the Category 5 deeds confirm that the grant is to the Railroad and its successors and assigns "forever." This language is consistent with the granting clauses and thus supports the conclusion that the grantors intended to convey the fee rather than just an easement. See Union Pacific RR Co. v. Ethington, 50 P.3d 450, 453 (Idaho 2002) (interpreting a railroad deed with a granting and habendum clause similar to the Category 5 deeds

as conveying fee simple title, noting the deeds' use of the term "forever" is "consistent with the conveyance of a fee simple rather than an easement"). See also Ray v. King County, 86 P.3d 183, 190 (Wash. App. 2004) (holding that a habendum clause similar to the one in the Category 5 deeds indicates that the conveyance is without any reservation or limitation and thus suggests the grant of a fee interest instead of an easement), review denied, 101 P.3d 421 (Wash. 2004); Clark v. CSX Tranps., Inc., 737 N.E.2d 752, 761 (Ind. 2000) ("although not dispositive, the habendum clause provides that the grant is 'forever,' indicating a grant in fee simple rather than an easement"), transfer denied, 783 N.E.2d 691 (Ind. 2001).

For all of these reasons, Defendant submits that the Court should determine that when the Category 5 deeds are interpreted as a whole, these deeds are unambiguous and conveyed a fee simple interest to the Railroad. This interpretation is consistent with Idaho's fee simple presumption statute, which applies in this case. And, unlike Neider, that statutory presumption is not overcome in this case by any language in the Category 5 deed. Thus, nothing in Neider requires or even suggests that a different interpretation of the Category 5 deeds is warranted here.

Alternatively, even if the Court determines that the deeds are ambiguous because of the use of the term "right of way" in the descriptive clause, the same result should be reached because all available extrinsic evidence supports the conclusion that this deed conveyed fee title rather than an easement. As noted previously, Idaho's fee simple presumption statute was in place at the time of these conveyances and the Railroad was authorized to acquire fee title to lands. In addition, there is no dispute that the Railroad did acquire fee title to other lands that comprise the 83.1-mile right of way at issue in this case by deeds that are remarkably similar to the deeds in Category 5. Compare Category 4 and 7 deeds (J. App. 1-2 and J. App. 3 and 15)

with Category 5 deeds (J. App. 13-14).

No other extrinsic evidence suggests that the parties intended to convey less than a fee simple interest by the Category 5 deeds. To the contrary, the schedule of "Lands Owned or Used for Purposes of a Common Carrier" that was prepared by the Railroad and filed with the Interstate Commerce Commission ("ICC") in 1916 reveals that the Railroad believed that it "owned" all of the lands that it had acquired by deed (and by adverse possession), but that it was limited to just the "use" of the streets and alleys in the City of Weiser. J. App. 19 (ICC Schedule, p. 9). In addition, the consideration paid by the Railroad is consistent with the going price of land at the time of the conveyance for Parcels 109 & 111 (J. App. 13), and is substantially higher than the going price of land for Parcel 116 (J. App. 14). See Def.'s Brief at 16-18 (June 1, 2001) (Doc. 81) (discussing consideration and historical land values in Idaho). Accordingly, even if the Court determines that the Category 5 deeds are ambiguous, the available evidence supports the conclusion that these deeds were intended and understood by the parties to convey a fee simple interest to the Railroad.

D. The Railroad Acquired a Fee Simple Interest Under the Category 6 Deeds

As with Category 5, the recent decision in Neider does not suggest that the representative deed for Category 6 (J. App. 5, Parcel 34) conveyed only an easement. Instead, the Court should again conclude, based on the plain and unambiguous language of the Category 6 deed, that this deed conveyed a fee simple interest to the Railroad.

The representative deed for Category 6 is a quitclaim deed dated August 7, 1899. J. App. 5. Under Idaho law, a quitclaim deed operates to convey whatever interest the grantor possessed at the time of the conveyance. Luce v. Marble, No. 30691, 2005 WL 3556424, * 3 (Idaho Dec.

30, 2005); Scogings v. Andreason, 418 P.2d 273, 277 (Idaho 1966). There is no indication in the record that the grantors held less than a fee simple interest in the property they quitclaimed to the Railroad in the subject deed.

In addition, as with the Category 4 and 7 deeds already determined to convey fee simple title, the Category 6 deed conveys land, rather than simply a right to use the land of the grantors. Specifically, the granting clause of the Category 6 deed conveys "real estate" that is described as "[a] triangular strip of land" consisting of approximately 0.003 acres. This land is conveyed "[t]ogether with all and singular the tenements, hereditaments, and appurtenances, thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof." As explained above, this "together with" language is language associated with a fee simple conveyance rather than an easement.

The descriptive clause identifies the location of this "triangular strip of land" by reference to the center line of the railway "as the same is now located and staked upon the ground[.]" J. App. 5. However, as explained above, the use of the centerline as a monument is descriptive and does not serve to limit the estate otherwise granted by this quitclaim deed.

The only difference between the Category 4 and 7 deeds, which the Court already has determined conveyed fee simple title to the Railroad, and the Category 6 deed, is the use of the term "right of way" in the habendum clause. Specifically, the habendum clause states:

> TO HAVE AND TO HOLD all and singular the tenements, hereditaments and appurtenances as a perpetual right of way for said second party's Rail Way Line unto the said party of the second part and to its successors and assigns forever.

Thus, the specific deed interpretation question presented with respect to the Category 6 is

whether the use of the term "right of way" in the habendum clause serves to limit or debase the fee simple estate otherwise conveyed by the granting clause of this quitclaim deed. Otherwise stated, is the use of the term "right of way" in the habendum clause sufficient to overcome the statutory presumption that this deed conveyed fee simple title? The answer should be "no," for several reasons.

First of all, it is widely recognized that the habendum clause "may explain, enlarge, or qualify, but cannot contradict or defeat the estate granted [in the granting clause] . . . ." New York Indians v. United States, 170 U.S. 1, 18 S. Ct. 531, 535 (1898). See also Ray v. King County, 86 P.3d 183, 190 n.45 (Wash. App. 2004) (applying the same rule of deed construction); Clark v. CSX Transp., 737 N.E.2d 752, 758 (Ind. Ct. App. 2000) (same). Second, Idaho law requires the court to interpret the deed as a whole in order to ascertain the intent of the parties. Neider, 65 P.3d at 530; C&G, 25 P.3d at 79-80. Here, to interpret the Category 6 deed as conveying only an easement would be contrary to the grantors' use of a quitclaim deed, which conveys the grantors' entire interest, and to the clear and unambiguous granting clause, which conveys land rather than simply the right to use the grantors' land for specified and limited purposes. Moreover, there is no reverter clause in this deed, nor any other language within the four corners of the deed that limits the estate conveyed to the Railroad by this deed.

Nothing in Neider suggests that the mere use of the term "right of way" in the habendum clause of a deed operates to limit the estate granted when the form of the deed used by the grantor (a quitclaim deed), the granting clause, and all other language within the four corners of the deed, are indicative of a fee simple conveyance without any limitation or restriction on use. Indeed, as explained above, the deed at issue in Neider was held to convey only an easement because

handwritten language was added to the granting clause that defined the purpose of the grant and provided for a reverter if the grantee (the Railroad) failed to use the land for the specified purposes. The Category 6 deed includes no such language to overcome the statutory presumption of a fee simple conveyance. The absence of such restricted use language and a corresponding reverter clause in the Category 6 deed is an important factor that distinguishes this deed from the deeds at issue in Neider. As explained by the Supreme Court of Michigan,

> It seems to be the weight of authority that, where there is no reverter clause, a statement of use is merely a declaration of the purpose of conveyance, without effect to limit the grant. The reasoning is that, as a railroad company may take real estate only for railroad purposes, the declaration that it is to be so used is merely an expression of the intention of the parties that the deed is for a lawful purpose.

Quinn v. Pere Marquette Ry. Co., 239 N.W. 376, 379 (Mich. 1931) (holding that a warranty deed conveying a parcel of land "to be used for railroad purposes only" conveyed fee simple title to the railroad, rather than an easement).

In sum, Idaho law requires that the intent of the parties to a conveyance be determined by viewing the deed as a whole and avoiding a construction that "would result in an inconsistent reading of the document[] as a whole." C&G, 25 P.3d at 80. Here, an interpretation of the Category 6 deed as a whole compels the conclusion that this quitclaim deed conveyed a fee simple estate to the Railroad. The use of the term "right of way" in the habendum clause of the Category 6 deed identifies the purpose of the grant in a manner that is descriptive only. There is no other language in the Category 6 deed suggesting that the grantors intended, by this descriptive language, to limit their conveyance to the Railroad to an easement only. To give the habendum clause the controlling effect sought by the Plaintiffs herein would be inconsistent with

the form of the conveyance instrument used by the grantor (a quitclaim deed), and the granting clause (which conveys land rather than simply a right to use land). Based on an interpretation of the Category 6 deed as a whole, the Court should find that this quitclaim deed is unambiguous and that it conveyed a fee simple interest to the Railroad.[8]

E. The Railroad Acquired a Fee Simple Interest Under the Category 8 Deeds

As with the other deed categories addressed above, the Idaho Supreme Court's decision in Neider does not suggest that the Court's prior interpretation of the representative deed for Category 8 (J. App. 6, Parcel 37) was incorrect.

The representative deed for Category 8 is a warranty deed dated May 2, 1899. (J. App. 6). The stated consideration is $300 for approximately 3.27 acres of land (about $92 per acre), which far exceeds the going price of land in Idaho in 1899. See Def.'s Brief at 16-18 (June 1, 2001) (Doc. 81) (explaining that historical land prices for agricultural land in Idaho during this time period were about $13 per acre, and prices for lands not suitable for cultivation were much less).

The granting clause of the Category 8 deed conveys to the Railroad

> and to its successors and assigns forever. A strip of land for a right of way for the Pacific and Idaho Northern Railway Company, one hundred feet wide and being fifty feet on each side of the center line of the said railway track as now surveyed and staked out over, upon and across [the described sections of land].

J. App. 6. Following a description of the strip of land by reference to the Railroad's survey stations, the deed provides that,

---

[8]Even if the Court finds the Category 6 deed to be ambiguous, all available extrinsic evidence supports the conclusion that the deed conveyed fee simple title. See *supra* at 18-19.

> The said strip of land is to be used by the said Railway Company for a right of way for the said Railway and for all and every purpose necessary to be used in connection with the running and operation of said Railway.

Id. The strip of land is conveyed "[t]ogether with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the rents, issues, and profits thereof." Finally, the habendum clause reaffirms that the conveyance is to the Railroad and its successors and assigns "forever" and that the grantor warrants the title conveyed.

The distinguishing feature of the Category 8 deed is that it contains the term "right of way" in the granting clause. However, because the term "right of way" is recognized as having two different meanings under Idaho law (see *supra* at 7-8), the mere appearance of this term in the granting clause does not compel a particular interpretation of the deed as a whole. Instead, the Court must apply Idaho's standard rules of deed interpretation – including the recent guidance from Neider – to determine the intent of the parties by examining the deed as a whole.

Here, consideration of the entire deed demonstrates a clear and unambiguous intent to convey a fee simple interest. To begin with, the granting clause conveys "a strip of land for a right of way." J. App. 6. Thus, the statutory presumption that the deed conveys fee simple title applies. Moreover, other courts have construed granting clauses containing this same language and have determined that the deed conveys the land itself (indicating a fee conveyance) rather than a mere right to use the land (which would indicate the conveyance of an easement).

For example, in Poznic v. Porter County Development Corp., 779 N.E.2d 1185 (Ind. 2002), the Court of Appeals of Indiana interpreted an 1892 warranty deed to a railroad with a granting clause almost identical to the one in the Category 8 deed. The Poznic deed conveyed to

the railroad "and to its successors and assigns Forever, a strip of land for railroad purposes One Hundred fee in width along the line of the Railroad now located (or hereafter located) . . . over and across their certain piece of land situate . . . " 779 N.E.2d at 1189. The Poznic court rejected the argument that the "for railroad purposes" language in the granting clause compelled the conclusion that the deed conveyed only an easement. The court examined the deed as a whole and distinguished it from deeds that imposed specific conditions on the railroad and indicated that the deed would be void if those conditions were not met. The court thus held that the deed conveyed fee simple title to the railroad despite the "railroad purpose" language found in the granting clause. 779 N.E.2d at 1190-92.

The Supreme Court of Appeals of West Virginia reached the same conclusion when it interpreted a similar deed in Grill v. W. Virginia R.R. Maintenance Authority, 423 S.E.2d 893 (W.Va. 1992). Like the Category 8 deed, the granting clause in Grill conveyed "unto the said Railway a strip of land for a right-of-way one hundred (100) feet wide through lands of the [grantor]." The court held that the words "for a right-of-way" – as used in this deed – "are not limiting, but are merely descriptive. The deed clearly 'grant[s] unto the said Railway a strip of *land*,' and not simply a right to use the land." Id., 423 S.E.2d at 896. Similarly, in King County v. Rasmussen, 299 F.3d 1077, 1080 (9th Cir. 2000), the Ninth Circuit examined an 1887 deed to a railroad that granted "a right of way one hundred (100) feet in width through our lands[.]" The Ninth Circuit, applying Washington state law, held that the deed conveyed fee title the railroad, noting that the deed "contained precatory language indicating that the parties expected the right of way would be used to construct and operate a railroad, but it did not actually condition the conveyance on such use." 299 F.3d at 1086. See also Ray v. King County, 86 P.3d 183 (Wash.

App. 2004) (state appellate court interpreting the same deed at issue in Rasmussen as granting fee title), review denied, 101 P.3d 421 (Wash. 2004).

As in Poznic, Grill and Rasmussen, the granting clause in the Category 8 deed conveys a "strip of land," and not merely the right to use the land of the grantors. The declaration of purpose found in the granting clause and repeated following the description identifies the purpose of the grant, but does not limit the estate granted or impose conditions on the Railroad's use of the land, nor does the deed provide for a reversion to the grantors. In addition, all of the other language found within the four corners of the deed – including the "together with" clause and the habendum clause – indicate an intent to convey fee title rather than an easement.

Nothing in Neider suggests or requires that the Category 8 deed be interpreted as conveying only an easement. Unlike the Neider deed, the purpose language in the Category 8 deed does not mandate a particular use and provide that the deed "shall be null and void" if the Railroad doesn't use the land as required. In addition, unlike the Neider deed, the Category 8 deed does not contain a reverter clause. Thus, the deed interpreted by the Idaho Supreme Court in Neider as conveying only an easement is distinguishable from the Category 8 deed. Unlike Neider, the statutory presumption that fee simple title was conveyed simply is not overcome by any language in the Category 8 deed.

Accordingly, the Court should find that the use of the term "right of way" in the Category 8 deed is merely descriptive and that such this deed, when viewed as a whole, conveyed fee title to the Railroad.

F. The Timing of the Execution of the Deeds in Category 14 is Extrinsic Evidence and Does Not Alter the Interpretation of those Deeds as Conveying Fee Simple Title to the Railroad

Category 14 is an overlapping category containing deeds to the Railroad that were executed after the Railroad had entered and occupied the right of way. All of the deeds identified in Category 14 also are included in one of the other deed categories (Categories 2 – 9). Plaintiffs contended before both this Court and the Federal Circuit that, notwithstanding any other language in the deeds, these lands were taken by *de facto* condemnation and that "[u]nder these circumstances, the railroad acquired by the executed deeds no more than what it would have acquired had it instituted the condemnation proceedings – a mere easement for railroad purposes." Pls.' Opening Brief at 37-38 (June 1, 2001) (Doc. 83); Hash, 403 F.3d at 1323.

The Federal Circuit acknowledged that this Court "declined to treat these deeds differently based on the atmosphere of compulsion that the appellants postulated, by analogy to condemnation or forced sale." Hash, 403 F.3d at 1323. The Federal Circuit stated that "[w]e agree with that position, for there was no evidence of any greater inequality between the buyer and the seller than for the other deeds." Id. However, the Federal Circuit found that it is appropriate for the court to review the Category 14 deeds, along with those in Categories 5, 6 and 8, in light of Neider. Id. For that reason, the Federal Circuit vacated this Court's ruling as to Category 14 and remanded for further review. Id.

The circumstances surrounding the execution of a deed are extrinsic evidence of the parties' intent and thus are not relevant to the interpretation of the deed unless the court determines that the deed in question is ambiguous. Neider, 65 P.3d at 530 ("Interpretation of an unambiguous conveyance instrument is a question of law to be settled by its plain language."). Accordingly, Plaintiffs' "threat of condemnation" arguments need only be considered for any deed or category of deeds that the court determines to be ambiguous. Assuming the Court

determines that any of the deeds analyzed above for Categories 5, 6 and 8 are ambiguous, Defendant submits that the timing of the execution of those deeds relative to the Railroad's entry of the lands and construction of its rail line does not compel the conclusion the Railroad acquired only an easement. Instead, for the reasons previously discussed in Defendant's Response Brief at 7-9 (July 13, 2001) (Doc. 86), to interpret the deeds at issue as conveying only an easement simply because the Railroad had already entered the lands in question would require the Court to reject the plain and unambiguous language of the deeds, which indicate that the grantors intended to convey fee title to the railroad. Such an interpretation would be contrary to the well established principles of deed interpretation under Idaho law.

Notably, the same argument "*de facto* condemnation" argument was made by the plaintiffs (who were represented by the same counsel as Plaintiffs herein) in Clark v. CSX Transportation, Inc., 737 N.E.2d 752 (Ind. 2000). In Clark, the plaintiffs argued that because the deed in question was granted after the railroad had already begun construction, it was granted in lieu of condemnation proceedings and since the railroad (under Indiana state law) could only acquire an easement by condemnation, the deed had to be interpreted as conveyed only an easement. 737 N.E.2d at 760. The Court of Appeals of Indiana held that even if the original grantors had been under a "threat of condemnation" – an alleged fact that the court noted the plaintiffs had presented no evidence to support – the court was not permitted to consider such extrinsic evidence where the deed itself is unambiguous. Id. Other courts have reached the same conclusion and have declined to construe a deed to a railroad as conveying only an easement simply because the deeds were executed by the grantors under the "threat of condemnation." See, e.g., Schneider v. Mobile County, 224 So.2d 657, 662 (Ala. 1969) (refusing the construe

deeds to a railroad as conveying only an easement based on the assumption "that these deeds were executed under a threat of condemnation").

The Idaho Supreme Court's decision in Neider does not reach the question presented here with respect to Category 14. As noted above, the Neider deed describes the location of the land at issue by reference to the centerline of the already existing Railway. Def. Ex. 5 (Neider deed). The fact that the railroad had already entered the property and constructed its line was not part of the Idaho Supreme Court's analysis in Neider of whether the deed conveyed fee title or an easement. Neider, 65 P.3d at 529-31. Instead, the Neider court applied the well established rules of deed interpretation and determined that the deed conveyed only an easement by looking at the deed as a whole and finding that the handwritten language added to the granting clause modified and limited the estate granted. Id. Further, because the Neider court found that the deed was unambiguous, it did not consider any extrinsic evidence of the circumstances surrounding the execution of the deed to aid its interpretation. Id., 65 P.3d at 530.

Accordingly, the Court should find that Neider does not affect its prior rejection of the Plaintiffs' *de facto* condemnation argument, and the Court should once again hold that "the fact that the deeds in Category 14 were executed after Pacific & Idaho already entered and possessed the right-of-way corridor does not bar Pacific & Idaho from acquiring fee simple title." Hash Mem. Decision at 17 (Doc. 88).

G. Category 15 Does Not Require Any Separate Analysis

Category 15 is an overlapping category that encompasses all deeds that contain the term "right of way" somewhere in the deed (without regard to where the term appears or how it is used). Because this Court previously analyzed the representative deeds on a deed-specific basis,

there was no need for it to address Category 15 separately. The Federal Circuit's decision also includes no separate discussion of Category 15; however, the concluding paragraph vacates any ruling as to Category 15 and remands for redetermination in light of Neider. Hash, 403 F.3d at 1323.

The question of whether each representative deed conveyed fee title to the Railroad or merely an easement should be determined on the language in each deed. The mere appearance of the term "right of way" somewhere within the four corners of a deed is not a litmus test under Idaho law (or elsewhere) for determining the nature of the interest conveyed by the deed. See, e.g., Urbaitus, 575 N.E.2d at 553 ("there is no per se rule that the mere inclusion of the term 'right-of-way' in any deed to a railroad negates the possibility that title in fee simple was conveyed. Such a rule would allow form to predominate over substance and would create results that frustrate the otherwise clearly demonstrated intent of the parties."). Accordingly, the Court should again analyze the representative deeds on a deed-specific basis, and the Court's interpretation of each deed should control. This deed-specific analysis, which will necessarily include consideration of Neider, will fully satisfy the Federal Circuit's instructions for remand. No separate analysis of Category 15 is required.

## III. CONCLUSION

For the reasons set forth above, Defendant's respectfully request that the Court grant its motion for partial summary and find that the representative deeds for Categories 5, 6, 8, 14 and 15 conveyed fee simple title to the Railroad.

Dated: January 20, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

/s/ Kristine S. Tardiff
E-Mail: kristine.tardiff@usdoj.gov

______________________________________

KRISTINE S. TARDIFF (NH Bar No. 10058)
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577

Of Counsel:

ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Washington, D.C. 20423

Kristine S. Tardiff
NH Bar No. 10058
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
EMAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. CV99-324S-MHW |

**DEFENDANT'S SUPPLEMENTAL APPENDIX OF EXHIBITS**
**(FILED IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT)**

The attached exhibits are supplemental to those exhibits previously submitted to the Court in: (1) the parties' Joint Appendix, which was filed on June 1, 2001, with Plaintiffs' Opening Brief (regarding title issues) (Doc. 83), and contains copies of the representative deeds for each deed category; and (2) Defendant's Appendix (Doc. 82), which was filed on June 1, 2001, with Defendant's Opening Brief (regarding title issues) (Doc. 81).

Defendant's Appendix (Doc. 82) included Defendant's Exhibits 1 through 4. This Supplemental Appendix includes Defendant's Exhibit 5 and 6.

Case 1:99-cv-00732-EMHW Document 31-2 Filed 01/20/2006 Page 2 of 4

INDEX OF DEFENDANT'S SUPPLEMENTAL EXHIBITS

| Exhibit No. | Description of Exhibit |
|---|---|
| 5 | Copy of the Deed of March 14, 1910, between J. Fremont Bow and C.A. Bow, and The Idaho Northern Railway Company, Ltd.. This is the deed that was the subject of the Supreme Court of Idaho's opinion in Neider v. Shaw, 65 P.3d 525 (Idaho 2003). The attached copy was provided to Defendant by Plaintiffs' counsel of record. |
| 6 | Copies of the Survey and Plat Map for Bowmont, Canyon County, Idaho, recorded by J. Fremont Bow on July 19, 1910. This plat is referenced in Neider v. Shaw, 65 P.3d 525, 527 (Idaho 2003). These plat maps were provided to Defendant by Kenneth F. White, Attorney at Law, Nampa, Idaho, who was counsel of record for the Defendant-Respondents in Neider v. Shaw. |

Dated: January 20, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

/s/ Kristine S. Tardiff
E-Mail: kristine.tardiff@usdoj.gov

KRISTINE S. TARDIFF (NH Bar No. 10058)
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Washington, D.C. 20423

This Indenture, Made this 14th day of March in the year of our Lord one thousand nine hundred and ten [illegible] between J. Fremont Bow and E. A. Bow his [illegible] of Nampa County of Canyon State of Idaho, the part ies of the first part, and The Idaho Northern Railway Company, Limited, the part y of the County of Canyon State of Idaho of Nampa

WITNESSETH, that the said part ies of the first part, for and in consideration of the sum of One and no/100 lawful money of the United States of America, to them in hand paid by the said part y of the second part, the receipt whereof is hereby acknowledged, ha ve granted, bargained and sold, and by these presents do grant, bargain, sell, convey and confirm unto the said part y of the second part, and to its heirs and assigns forever, all the following described real estate situated in Canyon County, State of Idaho, to-wit:

Commencing at the northwest corner of the Northeast Quarter of section 2, [illegible] thence east [illegible] feet to a point 50 feet east of the center line of Idaho Northern Railway Company, Limited, line of railroad; thence in a [illegible] westerly direction parallel with the center line of the said Railway, [illegible] feet; thence west 51 feet; thence southwesterly, parallel with the center line of the said Railway 1166 feet to a point 186 feet north of the southwest corner of the Northeast Quarter of section 2, said township and range; thence north along the west line of the said Northeast Quarter of section 2, 2474 feet to place of beginning. Containing ten acres more or less. Subject to right of way of Government Canal. Provided nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should party of the second part fail to establish and maintain station and side track, this deed shall be null and void and said land shall revert back to the said J. Fremont Bow and E. A. Bow his wife, or their legal heirs.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of the said part ies of the first part.

TO HAVE AND TO HOLD all and singular the above mentioned and described premises, together with the appurtenances, unto the part y of the second part, and to its heirs and assigns forever.

and the said part ies of the first part, and their heirs, the said premises in the quiet and peaceable possession of the said part y of the second part its heirs and assigns, against the said part ies of the first part, and their heirs and against all and every person and persons whomsoever, lawfully claiming or to claim the same, shall and will warrant, and by these presents forever defend. Except taxes for 1910 and thereafter.

IN WITNESS WHEREOF, The said part ies of the first part ha ve hereunto set their hand s and seal s the day and year first above written.

Signed, Sealed and Delivered in the Presence of

F. Estabrook

J. Fremont Bow (SEAL)
E. A. Bow (SEAL)
(SEAL)
(SEAL)

STATE OF Idaho
County of Canyon } ss.

On this 14th day of March in the year 1910, before me Frank Estabrook, a Notary Public in and for said County, personally appeared J. Fremont Bow and E. A. Bow his wife known to me to be the persons whose names are subscribed to the within instrument, and acknowledged to me that they executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

(SEAL)

Frank Estabrook
Notary Public

STATE OF IDAHO,
County of Canyon, } ss.

I hereby certify that this instrument was filed for record at the request of E. V. [illegible] at 25 minutes past 8 o'clock A. M., this 23 day of May 1910.

[illegible] Deputy. O. V. Riddley [illegible] Ex-Officio Recorder.

**_KENNETH F. WHITE Chtd._**

Attorney at Law
703 2ND STREET SOUTH
P O BOX 1099
NAMPA ID 83653-1099
Telephone (208) 466-3100
Facsimile (208) 466-3498

January 4, 2006

Kristine Tardiff

Re: Neider V. Shaw

Dear Ms. Tardiff:

I enclose SIX (6) pages of maps for Bowmont, Idaho, in the above-referenced railroad matter. I hope these are of assistance.

Besides this case which I argued and won in front of the Idaho Supreme Court, I have worked numerous other railroad cases dealing with abandonment and possession, and would be happy to assist you if you have any issues that need an attorney here in Idaho.

Respectfully yours,

KENNETH F. WHITE
KFW:cs

Enc: 4 legal-sized maps
2 letter-sized maps

Book 3 - Page 57




Filed for record at the request of J. F. Bow at 4:00 minutes past 8 o'clock A.M. this 19 day of July 1910 and duly recorded in Book 3 of Plats at page 57.
A. T. Bailey
Recorder
Deputy

I, Robert Millikan, do hereby certify that I am a Licensed Surveyor for the State of Idaho, and that I am the surveyor who surveyed and platted the lands shown in the accompanying map and designated as the townsite of Bowmont.

Robert Millikan
Surveyor. License No. 83.

Know All Men By These Presents, that we, J. Fremont Bow, and C. A. Bow, his wife, do hereby certify that we are the owners of the tract and parcel of land shown in the foregoing map and platted as the townsite of Bowmont, and described as the West half of the Northeast quarter of Section Two, Township One North, of Range Two West, Boise Meridian.

And we do further certify that, of our own free will and desire, we have had the same surveyed and platted as shown on the foregoing map and do dedicate for sale and use all Blocks, Lots, and other tracts shown by number, and all Streets and Alleys for public use forever.

J. Fremont Bow
C. A. Bow

County of Canyon } S.S.
State of Idaho }

Personally appeared before me, a Notary Public in and for Canyon County, J. Fremont Bow, and C. A. Bow, his wife, by me known to be the persons herein named, and acknowledged that they executed the above document.

Signed and Sworn to before me this 23 day of June 1910.

Frank Eastabrook 3-57
(SEAL) Notary Public

BOWMONT IN SEC. 2, T1N, R2W, B.M.

DUPLICATE PLAT BOOK 3 PAGE 57

THIS IS A REDUCED COPY

CERTIFICATE DEC 31 1960
I hereby Certify that this Duplicate Plat conforms to the Original Plat on file in the Records of Canyon County, Idaho.
M. V. Davenport
Canyon County Surveyor




Hash v. U.S., No. 99-324S-MHW
Def. Supplemental Appendix (Jan. 20, 2006)
Def. Exhibit 6, page 3 of 3