Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net
and
Cecilia Fex, *pro hac vice* (DC Bar No. 435061)
ACKERSON KAUFFMAN FEX, PC
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831
Email: fex@ackersonlaw.com

Counsel for Plaintiffs' Class

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*, | ) | |
| Plaintiffs, | ) | Case No. CV99-324S-MHW |
| v. | ) | Honorable Mikel H. Williams |
| UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

# CLASS REPRESENTATIVES' CROSS MOTION AND RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE PROPERTY INTEREST ORIGINALLY ACQUIRED BY THE RAILROAD FOR CATEGORIES 5, 6, AND 8

Representatives of Plaintiffs' Class ("Plaintiffs"), by counsel, hereby cross-move for partial summary judgment on the interpretation of certain representative deeds for Categories 5,

6, and 8.[1] As indicated by the Federal Circuit when remanding this case to the Court for further proceedings, the Idaho Supreme Court decision, *Neider v. Shaw*, 65 P.3d 525 (Idaho 2003), unavailable when this Court ruled as to the interests acquired through Category 5, 6, & 8, has explained Idaho law "in a way that appears to be highly relevant to the deeds here at issue." *Hash v. United States*, 403 F.3d 1308, 1319-21 (Fed. Cir. 2005). The holding and reasoning in *Neider*, along with the reasoning in *C&G, Inc. v. Rule*, 25 P.3d 76 (2001), from which the *Neider* court drew principles to reach its result, establish that "right of way" language appearing in any substantive portion of a railroad deed grants an easement. *Neider*, 65 P.3rd at 530. Accordingly, and as explained in Plaintiffs' memorandum in support of their cross-motion and response to the Defendant's motion, the holding in *Neider* – unavailable to this Court when the issues were first briefed – is highly relevant and, indeed, controls the issues here. For the reasons set out in *Neider* and further explained in the earlier decision, *C&G*, the deeds in Categories 5, 6, & 8 unambiguously conveyed easements.

The factual and procedural history of this litigation was summarized by the Defendant in its Motion for Partial Summary Judgment (Doc. 122) and Plaintiffs generally concur with its summary. Additionally, Plaintiffs concur with Defendant that interpreting intent from an unambiguous deed is a matter of law while interpretation of an ambiguous instrument presents a question of fact. *Neider*, 65 P.3d at 530; *C&G, Inc.*, 25 P.3d at 78. Whether a deed is ambiguous is a question of law. *Id.* Because this cross-motion, like the Defendant's motion (Doc. 122), presents questions of law for the court's determination, this cross-motion is not accompanied by

[1] Plaintiffs are not requesting review of Category 14 deeds and Plaintiffs agree with Defendant (*see* Def. Br. at 29-30), that Category 15 deeds do not require additional review because they are overlapping deeds.

a separate statement of material facts under Local Civil Rule 7.1(b)(1).

In remanding these issues back to this Court, the Federal Circuit reasoned and stated as follows:

> the Idaho court now teaches that the use of "right-of-way" in the substantive part of the deed creates an easement, not a transfer in fee. Appellants argue that all of the deeds in Categories 5, 6, and 8 use "right-of-way" in substantive portions of the conveyance, and that they are therefore distinguished from the *C & G* case on which the district court relied.
>
> The *Neider* court further counseled that "When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction. The intent of the parties is determined by viewing the conveyance instrument as a whole." The district court herein applied this salutary rule, but applied the guidance of *C & G;* this guidance is now modified by *Neider* in a way that appears to be highly relevant to the deeds here at issue. We therefore vacate the court's decision with respect to Categories 5, 6, 8, and 15, and remand for reconsideration in light of the weight that the *Neider* court has placed on the use of "right-of-way" in the substantive grant and there is no explicit conveyance of the underlying land.

*Hash*, 403 F.3d at 1321.

For the foregoing reasons, as well as for the additional reasons set forth in the memorandum that accompanies this cross-motion, Plaintiffs on behalf of themselves and all members of the class similarly situated who have Category 5, 6, & 8 railroad deeds in their chain of title, respectfully request that the Court deny the Defendant’s motion and grant Plaintiffs’ cross-motion for partial summary judgment and find the deeds under Categories 5, 6, and 8 (and Category 15 wherever these categories overlap) conveyed only easements to the railroad.

Dated: February 10, 2006

Respectfully submitted,
**ACKERSON KAUFFMAN FEX, PC**

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
CECILIA FEX, *pro hac vice* (DC Bar No. 435061)
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831

Of Counsel:
Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net

*Counsel for Plaintiffs' Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 10th day of February, 2006, I electronically filed Class Representatives' Cross Motion and Response to Defendant's Motion for Partial Summary Judgment Regarding the Property Interest Originally Acquired by the Railroad for Categories 5, 6, and 8, through the CM/ECF system, which caused the following parties or counsel to be served with this document by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
kristine.tardiff@usdoj.gov

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
Counsel for Plaintiffs' Class

Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net
and
Cecilia Fex, *pro hac vice* (DC Bar No. 435061)
ACKERSON KAUFFMAN FEX, PC
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831
Email: fex@ackersonlaw.com

*Counsel for Plaintiffs' Class*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*, | ) | |
| Plaintiffs, | ) | Case No. CV99-324S-MHW |
| v. | ) | Honorable Mikel H. Williams |
| UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**CLASS REPRESENTATIVES' MEMORANDUM IN SUPPORT OF THEIR CROSS MOTION AND RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE PROPERTY INTEREST ORIGINALLY ACQUIRED BY THE RAILROAD FOR CATEGORIES 5, 6, AND 8**

Dated: February 10, 2006

# TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 1

1. Rules of construction . . . . . . . . . . 1

A. General rules . . . . . . . . . . 1
B. Application of the rules to railroad deeds . . . . . . . . . . 2
C. Idaho law under *Neider* and *C&G* . . . . . . . . . . 3

(1) *"Substantive Portions" are applied broadly, not restrictively, under Idaho precedent.* . . . . . . . . . . 3
(2) *Conflicting law on point is commonplace; Idaho law is aligned with authority where "right of-way" language in any substantive portion of the deed is decisive.* . . . . . . . . . . 5
(3) *When right-of-way language is used in the substantive parts of a railroad deed, the statutory presumption of fee is inapplicable.* . . . . . . . . . . 7
(4) *The historical context from which the phrase "right of way" emerged explains the Idaho court's and other state courts' emphasis on the probative weight of the phrase.* . . . . . . . . . . 9

2. The Category 5, 6, & 8 deeds unambiguously conveyed an easement to the railroad because they all satisfy the *Neider* test for containing the term "right-of-way" in the substantive portions of the deeds. . . . . . . . . . . 10

A. The Category 5 deeds . . . . . . . . . . 10

(1) *The Category 5 deeds contain right-of-way language in the substantive portions.* . . . . . . . . . . 11
(2) *Boilerplate language in the deeds here carry no greater weight than in Neider.* . . . . . . . . . . 13
(3) *The type of print or handwriting used in the deeds at issue are indistinguishable from the portions the Neider court found controlling the Bow deed.* . . . . . . . . . . 15
(4) *A reverter clause alone will satisfy Neider but is unnecessary to finding an easement under the "substantive portion" test.* . . . . . . . . . . 17
(5) *More than nominal consideration does not elevate an easement grant into a fee.* . . . . . . . . . . 17

B. The Category 6 deeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

(1) *The C&G and Neider decisions "recognized" and held that right-of-way language creates an easement if contained in the habendum clause.* . . . 19

(2) *Finding right-of-way language in the habendum clause to create an easement is consistent with authority on point during the time Category 6 deeds were issued.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

(3) A quitclaim deed purports to convey nothing more than the interest described . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

(4) *The language used in the habendum clause expresses the intent to convey an easement and is in harmony with all parts of the deed.* . . . . . . . . . . . 22

C. The Category 8 deeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Case 1:99-cv-00324-MCW Document 58 Filed 06/04/2007 Page 9 of 48

# TABLE OF AUTHORITIES

**PAGE**

**AUTHORITIES**


*Brewer and Taylor Co. v. Wall,*
769 S.W.2d 753 (Ark. 1989) . . . . . . . . . . 7, 24

*C&G, Inc. v. Rule,*
25 P.3d 76 (Idaho 2001) . . . . . . . . . . *Passim*

*Chevy Chase Land Co. v. U.S.,*
733 A.2d 1055 (Md. 1999) . . . . . . . . . . 6, 9, 20

*City of Eunice v. Sunland Properties, Inc.,*
597 So.2d 1198 (La. App. 3d Cir. 1992) . . . . . . . . . . 6

*City of Port Isabel v. Missouri Pacific R. Co.,*
729 S.W.2d 939 (Tex. Ct. App. 1987) . . . . . . . . . . 6, 13

*Consolidated Rail Corp., Inc. v. Lewellen,*
666 N.E.2d 958 (Ind. App. 1996) . . . . . . . . . . 6, 10, 12, 24

*Corbin v. Moser,*
403 P.2d 800 (Kan. 1965) . . . . . . . . . . 2

*Cumbaa v. Town of Geneva,*
179 So. 227 (Ala. 1938) . . . . . . . . . . 18

*Great Northern R. Co. v. United States,*
315 U.S. 262 (1942) . . . . . . . . . . 24

*Greek Catholic Congregation of Borough of Olyphant v. Plummer,*
12 A.2d 435 (Pa. 1940) . . . . . . . . . . 21

*Hanson Indsutries, Inc. V. County Spokane,*
58 P.3d 910 (2002) . . . . . . . . . . 2, 3, 17, 18, 24

*Hartman v. J & A Development Co.,*
672 S.W.2d 364 (Mo. Ct. App. 1984) . . . . . . . . . . 6, 9, 12

*Hash v. United States,*
403 F.3d 1308 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Illinois Cent. R. Co. V. Roberts,*
928 S.W.2d 822 (Ky. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Kershaw Sunnyside Ranches, Inc. V. Yakima Interurban Lines Association*,
91 P.3d 104 (Wash. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*King County v. Rasmussen,*
299 F.3d 1077 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kipp v. Estate of Chips,*
732 A.2d 127 (Vt. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Lawson v. Simonsen,*
417 A.2d 155 (Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Louisville & Nashville R. Co. V. Pierce,*
230 S.W.2d 430 (Ky. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Luce v. Marble,*
__ P.3d __, 2005 WL 3556424 (Idaho Dec. 30, 2005) . . . . . . . . . . . . . . . . . . . . 21

*McCoy v. McCoy,*
868 P.2d 527 (Idaho App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*McVey v. Unknown Shareholders of Inland Coal and Washing Co.,*
427 N.E.2d 215 (Ill. App. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Neider v. Shaw,*
65 P.3d 525 (Idaho 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Phillips Industries, Inc. v. Firkins,*
827 P.2d 706 (Idaho App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Ross, Inc. v. Legler*,
199 N.E.2d 346 (Ind.1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Scogings v. Andreason,*
418 P.2d 273 (Idaho 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Sherman v. Petroleum Exploration*,
132 S.W.2d 768 (Ky. App. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State Highway v. Black,*
79 S.E.2d 778 (N.C. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tallman v. Eastern Illinois & Peoria R. Co.*,
41 N.E.2d 537 (Ill. 1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22

*Union Pacific Railroad v. Ethington Family Trust,*
50 P.3d 450 (Idaho 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Veach v. Culp,*
599 P.2d 526 (Wash. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**OTHER AUTHORITIES**

IDAHO CODE § 55-604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

2 ELLIOTT ON RAILROADS § 1158. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

Public Broadcasting System, *American Experience - Ulysses S. Grant: People & Events - The Panic of 1873*, *available at* http://www.pbs.org/wgbh/amex/grant/peopleevents/e_panic.html . . . . . . . . . . . . . . . . . 25

## INTRODUCTION

Unavailable to this Court when originally presented with the issues herein (Doc. 88), was the holding and underlying reasoning issued by the Idaho Supreme Court in *Neider v. Shaw*, 65 P.3d 525 (Idaho 2003). In light of the pronouncements in *Neider*, and the reasoning the Idaho court embraced from its earlier decision, *C&G, Inc. v. Rule*, 25 P.3d 76 (Idaho 2001), the United States Court of Appeals for the Federal Circuit vacated this Court's decision with respect to the deeds under Categories 5, 6, 8, 14, and 15, and remanded the matter for further proceedings. *Hash v. United States*, 403 F.3d 1308, 1319-21 (Fed. Cir. 2005).

In *Neider*, the Idaho Supreme Court held that "right-of-way" language found anywhere in the substantive portions of a railroad deed conveys an easement, and not fee simple title nor qualified fee. As such, *Neider* is controlling here, where in all of the representative deeds in Categories 5, 6, & 8, the deeds use "right-of-way language" in the substantive portions of the deed, thereby indicating only an easement was intended to be conveyed.

## ARGUMENT

### 1. Rules of construction

### A. General rules

It is undisputed that when construing a railroad deed, a court shall give effect to the intent of the parties to the transaction wherever possible. *Neider*, 65 P.3d 525, 530 (Idaho 2003); *McCoy v. McCoy*, 868 P.2d 527, 532 (Idaho App. 1994). The intent of the parties is determined by examining the entire deed, and not merely a particular part of it. *Neider*, 65 P.3d at 530; *Phillips Industries, Inc. v. Firkins*, 827 P.2d 706, 710 (Idaho App. 1992) (technicalities should be discarded). Idaho law embodies the full spirit of this latter statement and is consistent with

authority holding that "every part of a deed ought to take effect, and every word to operate" because "it never could be a man's intent to contradict himself." *Ross, Inc. v. Legler*, 199 N.E.2d 346, 347-48 (Ind. 1964); *see also Neider*, 65 P.3d at 530; *Kipp v. Estate of Chips*, 732 A.2d 127, 129 (Vt. 1999) ("we construe the various clauses of the document, wherever possible, so that the deed has a consistent, or harmonious, meaning").

Interpreting intent from an unambiguous deed is a matter of law while interpretation of an ambiguous instrument presents a question of fact. *Neider*, 65 P.3d at 530; C&G, 25 P.3d at 78. Whether a deed is ambiguous is a question of law. *Id.* "Ambiguity exists only if language of the conveyance instrument is reasonably subject to conflicting interpretation." *Id.*

**B. Application of the rules to railroad deeds**

Under Idaho law, a railroad deed containing "right-of-way" language in any of the substantive portions of the deed is recognized as conveying merely an easement and therefore it follows that a deed with such language is *not* "reasonably subject to conflicting interpretation." *See id*. If no right-of-way language appears in the substantive portions of a deed, however, and any doubts remain, "[w]here a deed is ambiguous as to the character of the interest conveyed and the railroad was responsible for the form of the deed," courts "will construe the language of the deed in favor of the grantor and against the railroad." *Hanson Industries, Inc. v. County Spokane,* 58 P.3d 910, 916 (2002) *rev'w den'd,* 78 P.3d 656 (Wash. 2003). The underlying rationale for this rule is that "since a grant is expressed in words of the [drafter's] own selection, it is, *prima facie*, an expression of his intention, and he is therefore chargeable with the language used." *Corbin v. Moser*, 403 P.2d 800, 804-05 (Kan. 1965) (*quoting* 16 Am.Jur., Deeds, § 165, p. 530). And, when it concerns a railroad deed the railroad company, and not the grantor

landowner, is ordinarily the drafter of the deed. *Hanson Industries,* 58 P.3d at 91.

**C. Idaho law under *Neider* and *C&G***

The *Neider* decision disposes of any question of *whether* the deeds at issue here can be deemed ambiguous under any measure. 65 P.3d at 530 (finding that the clause "stating the 'deed is made for *right of way,* station, and warehouse purposes' . . . unambiguously reflects the [grantors'] intent to convey only an easement to the Railroad" (emphasis in the original). "The Idaho court now teaches that the use of 'right-of-way' in the substantive part of the deed creates an easement, not a transfer in fee." *Hash*, 403 F.3d at 1321. That ruling, as the Federal Circuit concluded, has "modified" or "clarified" then existing Idaho law on the construction of railroad right-of-way deeds granted by landowners to railroad companies. The rule and reasoning expressed in *Neider* serves as additional guidance on deed construction which, the Federal Circuit instructed, is "highly relevant" to the deeds in the case at bar. *Hash*, 403 F.3d at 1321.

**(1) *"Substantive portions" are applied broadly, not restrictively, under Idaho precedent.***

To understand the breadth and spirit of the *Neider* court's ruling, it is noteworthy that the court did *not* limit its holding to say that the "right-of-way" language must be present in one, *specific* "substantive provision." *See* 65 P.3d at 530. Rather, through its choice of the terms "provisions" and "portions" the court repeated the holding that "right-of-way" language can appear *anywhere* in substantive "portions" or "provisions" in an instrument and thereby unambiguously convey an easement. *Id.*

At no point throughout the *Neider* decision, then, did the court mention the "granting" clause or any other clause in a deed. Indeed, the court eschewed a holding that the right-of-way language appear specifically in either the granting clause. Instead, the *Neider* court embraced the

implicit reasoning in *C&G* where if "there [had been] mention of the term 'right of way' in either the granting or habendum clause, [*or*] *any other language in the deeds that serves to limit the use of the land for the purpose of a railroad right of way*" a deed under application of Idaho law would unambiguously convey an easement. *See C&G*, 25 P.3d at 81 (emphasis added); *Neider*, 65 P.3d at 530. As such, the *Neider* court repeatedly used the more general phrase "substantive portions" in lieu of the restrictions argued for by the Government.

As is evident from the decision, the holding was driven by the cardinal rule of construction, reviewed by the court before it issued its holding: a court shall read the entire written instrument *as a whole*, giving effect to every part so as to understand the words in the context of the full deed. *See Id.* Where it is possible to garner the intent of the parties in the entire deed, "[t]he division of a deed into such parts as the premises, the habendum and the tenendum, was pretty much a matter of capitalization and punctuation." *Kipp*, 732 A.2d at 129-30. Thus, Idaho law is consistent with other authority that holds it is of no "vital importance in what part of a deed the intention is expressed so long as it finds somewhere clear and adequate expression." *Id*; s*ee also Phillips Industries, supra*. By using the phrase "substantive portions," the Idaho court means what it says; the court expressed no intention, nor reason, to limit its ruling to the case in which the term "right of way" appears in the granting clause, nor on the other bases upon which the Government now argues.

Case 1:99-cv-00328-EJL-MHW Document 627 Filed 09/10/2007 Page 16 of 48

**(2) *Conflicting law on point is commonplace; Idaho law is aligned with authority where "right-of-way" language in any substantive portion of the deed is decisive.***

Also important to understanding the breadth of the holding is to note that the Idaho Supreme Court reached its ruling in full awareness of conflicting authority regarding the construction of railroad right-of-way deeds granted by landowners to railroad companies. *See* C&G, 25 P.3d at 80 ("we recognize that a conflict exists among courts as to the interpretation of deeds purporting to convey land where there is also a reference to a 'right of way'"). In acknowledging the conflicts, the Idaho Supreme Court in *C&G* cited several cases from other states and then observed that "we are inclined to agree" with appellant "that the presence of the term 'right of way' in a railroad deed usually indicates that the grantor intended to convey an easement." *See* C&G, 25 P.3d at 80-81 (citing authority in n.3 with which it expressed agreement). Thus, the Idaho Supreme Court is versed with the conflicting authority on deed construction, reasoned in a manner suggesting it would be inclined to favor finding an easement was conveyed when right-of-way language appeared in substantive portions of a deed, and later in *Neider* clarified this to be so.

That is not to say, however, that *Neider* recognizes no limits. The *Neider* court also affirmed its earlier position in *C&G* that the right-of-way language must appear in the substantive portions of the deed. The Idaho court explained that in *C&G*, the term "right-of-way" appeared only on the cover sheet and that none of the substantive provisions referred to a right of way. The instrument did not limit the use of the land to "railroad purposes." Nor was there any language indicating a reversionary interest in the grantors. *Neider*, 65 P.3d at 530. Accordingly, when "there is *no* mention of the term "right-of-way" in either the granting or habendum clause, *nor* any other language in the deeds that serves to limit the use of the land for the purpose of a

railroad right-of-way," then a fee likely is conveyed. *C&G*, 25 P.3d at 81.

Although the reasoning and holdings in *Neider* and *C&G* alone are sufficient for the court at bar to dispose of the present motion, it is worth noting that the Idaho Court's approach to railroad deed construction has enjoyed broad acceptance. *See Consolidated Rail Corp., Inc. v. Lewellen*, 666 N.E.2d 958, 962 (Ind. App.1996) ("In general, *any* reference to a right-of-way in a deed conveying real property to a railroad will cause the deed to be interpreted as conveying only an easement"); *Hartman v. J & A Development Co.*, 672 S.W.2d 364, 365 (Mo. Ct. App.1984) (use of term right of way and road are almost "*conclusive indications*" that the interest conveyed is an easement); *City of Port Isabel v. Missouri Pacific. R. Co.*, 729 S.W.2d 939, 944-45 (Tex. Ct. App. 1987) ("Although the granting clause uses the words 'fee simple,' it also contains the more specific language of the 'right of way for the use of said railroad' [in the descriptive clause]. This limits the grant to a conveyance of only an easement"); *McVey v. Unknown Shareholders of Inland Coal and Washing Co.*, 427 N.E.2d 215, 217 (Ill. App. 1981) ("Even when the deed purports to grant a strip, piece, or parcel of land, but contains additional language referring to a right-of-way, the courts have held that the deed conveyed a mere easement rather than a title in fee"); *City of Eunice v. Sunland Properties, Inc.*, 597 So.2d 1198, 1201 (La. App. 3d Cir. 1992) ("Generally . . . 'right of way' means only a servitude. This language clearly indicates the intention of both parties to transfer a 'right of way' and does not indicate a conveyance in full ownership") (internal citation omitted); *Chevy Chase Land Co. v. U.S.*, 733 A.2d 1055, 1062 (Md. 1999) ("use of the 'right-of-way' language provides a strong indication that the parties intended to convey an easement as opposed to an estate in fee simple absolute."); *Brewer and Taylor Co. v. Wall*, 769 S.W.2d 753, 755-56 (Ark. 1989) (deed conveying land for

"right-of-way" indicative of easement); *Illinois Cent. R. Co. v. Roberts*, 928 S.W.2d 822, 825 (Ky. App. 1996) ("the presence of language referring in some manner to a right of way operates to convey a mere easement notwithstanding additional language evidencing the conveyance of a fee").

These authorities support a finding that all deeds at issue here conveyed easements. Significantly, these cases are in *conflict* with the cases relied on by the Government while being in *harmony* with the reasoning and holding in *Neider*. Along with *Neider*, these cases support the principle that when interests are conveyed to a railroad company for the laying of a rail line, the presence of language in the substantive portion of the deed using "right-of-way" language to fairly imply a restriction on the grant will operate to convey an easement, notwithstanding additional language evidencing the conveyance of a fee.

**(3) *When right-of-way language is used in the substantive parts of a railroad deed, the statutory presumption of fee is inapplicable*.**

The *Neider* court reached its holding without finding the need to examine its decision under the fee simple presumption statute, Idaho Code § 55-604, as it previously had done in *C&G*. *Compare, Neider*, 65 P.3d at 530, *with*, *C&G*, 25 P.3d at 81. The Idaho Court is, of course, obligated to follow and apply the law, and the reason for the court's approach in *Neider* as contrasted with that in *C&G* is readily discernable when reviewing both of the decisions and when giving weight to the factors the court considered and found important in *Neider*. First, it repeated the cardinal rules of construction that the primary goal is to seek to give effect to the intent of the parties, which is determined by construing the instrument in its entirety and viewing the conveyance instrument *as a whole*. *See Neider,* 65 P.3d at 530; *see also C&G*, 25 P.3d at 79. Second, the *Neider* court then turned to the heart of the matter in that case and found there to be

right-of-way language in the substantive portions of the "Bow" deed at issue which, as the court noted without reservation, the "Court has identified as language that creates an easement." 65 P.3d at 530; *see C&G*, 25 P.3d at 81. In contrast, such language was *not* present in *C&G*, thereby rendering the application of the statute appropriate. *See C&G*, 25 P.3d at 81.

Under the statute, "[a] fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." Idaho Code § 55-604. Put in another way, the statute means that except on the condition that it appears from the grant that a lesser estate was intended, a fee simple title is presumed to be intended to pass by a grant of real property. Thus, the "unless" language serves to create an exception or condition to the application of the statute. If the condition is met, the statutory presumption is not triggered and the party has no hurdle to overcome. Accordingly, when a deed contains "right-of-way" language in the substantive provisions of the deed, the presumption is not triggered nor evoked. *See Neider*, 65 P.3d at 530; *C&G*, 25 P.3d at 80-81.

Unlike in *C&G*, where there was *nothing* in the deed to overcome the statutory presumption favoring fee title, in *Neider* the language that the *C&G* court "recognized" would be "sufficient," *was* present and rendered the need to search for *restrictions* on the grant inappropriate because the "use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement." *Compare*, 65 P.3d at 530, *with*, 25 P.3d at 81.

**(4) *The historical context from which the phrase "right of way" emerged explains the Idaho court's and other state courts' emphasis on the probative weight of the phrase.***

Reviewing the historical background for the use of the phrase "right of way" sheds light on why the Idaho court and other authorities entrust the phrase with the intent generally attributed to it by those courts. As the Maryland Court of Appeals explained, in the mid- to late-1800's and

Case 1:09-cv-00728-ECH Document 53-7 Filed 06/10/2010 Page 25 of 43

early 1900's, "right of way" was the vernacular phrase used to denote an easement. Quoting Professor Elliot from his treatise discussing this issue, the court agreed:

> "[r]ight of way," in its strict meaning, is "the right of passage over another man's ground;" *and in its legal and generally accepted meaning, in reference to a railway, it is a mere easement in the lands of others*, obtained by lawful condemnation to public use or by purchase. It would be using the term in an unusual sense, by applying it to an absolute purchase of the fee-simple of lands to be used for a railway or any other kind of way.

*Chevy Chase Land Co.*, 733 A.2d at 1062 (*quoting* 2 ELLIOTT ON RAILROADS § 1158, at 628 n. 77 (3d. ed.1907)) (emphasis added). Accordingly, the legal meaning of the term "right of way" is deemed to carry probative weight unless there is clear evidence of the intent to the contrary. *See Tallman v. Eastern Illinois & Peoria R. Co.,* 41 N.E.2d 537, 539 (Ill. 1942) ("If language contained in a deed has a well-known meaning in law, it will be presumed that such meaning was in the minds of the parties using it, unless a contrary intent is made manifest by other language in the deed.")

For many courts, giving controlling weight to the use of the term "right of way" is "a recognition from a practical standpoint long narrow strips of land serve little or no function other than for roads or rights of way." *Hartman*, 672 S.W.2d at 365. The parties of a deed presumably did not intend to "create an otherwise unusable interest in land." *Id.* This principle has strong public policy justifications. Long-standing public policy disfavors alienation of narrow strips or belts of land across the parent bodies of the land from which they are severed because it "is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of the property involved." *Lewellen*, 666 N.E. 2d at 962., *supra*. Further, "transaction costs are minimized by undivided ownership of a parcel of

land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased." *Id.*

For these reasons, §§ 1C (1)-(4), *supra*, and for the reasons addressed more specifically under each Category below, the Government's approach to the analysis ultimately misses the unqualified holding in *Neider*, which teaches that under Idaho law the "use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement." 65 P.3d at 530 (*citing C&G*).

**2. The Category 5, 6, & 8 deeds unambiguously conveyed an easement to the railroad because they all satisfy the *Neider* test for containing the term "right-of-way" in the substantive portions of the deeds.**

**A. The Category 5 deeds**

There are two representative deeds for Category 5. One deed conveys two parcels – Parcels 109 and 111. The deed for those parcels, in pertinent part reads as follows:

> [Grantors] do grant, bargain, sell, convey and confirm unto [the Railroad], and to its successors and assigns forever, all the following described real estate . . .
>
> A perpetual right of way through, over, and across [described land] . . . the said right of way so conveyed being fifty feet wide each side of the center line of the railway belonging to [the Railroad] as the same is now located, constructed and operated on the ground; said right of way being one hundred (100) feet wide along the entire route across said premises occupied and used by [the Railroad].

The second representative deed is for Parcel 116 and provides in relevant part as follows:

> [Grantors] have granted, bargained and sold and by these presents do grant, bargain, sell, convey and confirm unto [the Railroad], and to its successors and assigns forever, all the following described real estate. . .
>
> A right of way one hundred feet in width being fifty feet on each side of the center line of the survey of [the Railroad] . . . and [the Railroad] will also put a box across the road bed upon such right of way . . . and will fence such right of way.

(JA Tabs 13, 14.)

**(1) *The Category 5 deeds contain right-of-way language in the substantive portions.***

For the same reasons expressed in *Neider* and as was previewed in *C&G*, these representative deeds conveyed merely easements because the deeds use the term "right of way" in the substantive portions of the deeds. In *C&G*, when discussing the *lack* of the dispositive "right-of-way" language in either the "granting or habendum clause," the Idaho court recited the language that *was* contained in those two clauses:

> The granting and habendum clauses of the Thomas deed state that Thomas in exchange for consideration:
>
> > [D]oes grant, sell and convey unto the said Idaho Northern Railway Company, Limited, *the following described piece, parcel of land, to wit: A strip, piece or parcel of land* one hundred feet in width, situated in the North West quarter (NW 1/4 ) of Section seventeen (17) ...
> > ...
> > To Have and to Hold, the said above described premises unto the said Idaho Northern Railway Company, Limited, its successors and assigns forever.[1]

25 P.3d at 78 (text, omissions, and edits in the original; emphasis only added). As is evident, the Idaho court considered the portion immediately following the "to wit:" language to be included in the portion the court needed to consider when assessing whether there was right of way or purpose language in the granting or habendum clauses. *See id. also id.* at 81; *see also McVey,* 427 N.E.2d 215.

Here, like in the sample granting clauses in *C&G*, the phrase appears immediately following the introductory portion of the grant which heralds the interest to be granted: "[the grantors confirm unto the railroad company forever all the following described real estate] . . . to

[1] The second *C&G* deed was materially similar for the issue raised here.

wit: a right of way [or, "a perpetual right of way"] through over and across [the grantors' described property]." These "right of way" references *are* "the following described real estate" which the grantors intended to convey. They are not buried in the middle of the description of the metes and bounds in a manner that would carry no weight, nor are they confined to the front cover of the deed.

Moreover, while not necessary for establishing that an easement was intended under the *Neider* court's ruling, the term "perpetual" preceding "right of way" in one of the Category 5 deeds underscores the significance with which the grantors must have attributed to the term "right of way." If "right of way" was of no consequence as it was placed, the added description would have been unnecessary. Accordingly, to disregard the phrase would render use of this key term superfluous in the interpretation of the deed which is inappropriate when considering the deed in its entirety. *Cf. Lewellen*, 666 N.E. 2d at 963. As in *Neider*, the term appears in a substantive portion of the deeds; as in *Neider* therefore, the deeds conveyed easements.

The authorities with which the *C&G* court expressed agreement support this conclusion. *See* 25 P.3d at 81 n.3; *Lewellen,* 666 N.E.2d 958 (holding one deed granting "a strip of land through a part of a lot of land of twenty acres . . . for the Right of Way of [Railroad]," and another deed stating, "the Right of Way for so much of said Rail Road as may pass through the following described piece, parcel or body of land," both intended to convey merely easements) (internal ellipses and brackets in the original); *Hartman*, 672 S.W.2d at 365 (concluding that the deed that "forever Quit Claim[ed] unto [the grantee] the following described Lots. . . to wit: A right of way of a private road" conveyed easement, not fee simple); *City of Port Isabel,* 729 S.W.2d at 944-45 (language that "[the Garcia Sister] sell and convey . . . to [the railroad] in fee

simple, the following lands . . .To wit: . . The Right-of-Way for the use of the said Railroad . . ." referred to only an easement) (brackets in original); *Veach v. Culp,* 599 P.2d 526 (Wash. 1979) (holding that a deed conveying a "certain lot, piece, or parcel of land" which described the property as a "right-of-way one hundred feet wide" reflected an intent to create an easement only). As such, these Category 5 deeds granted easements.

**(2) *Boilerplate language in the deeds here carry no greater weight than in Neider.***

Like in *Neider*, these deeds contain several provisions which use boilerplate language to describe the conveyance. *Precisely* as in *Neider*, the deeds begin with the standard grant, bargain and sell language. (*Compare Neider* deed, transcribed and attached hereto as Plts' Ex. 1, *with* attachments 13 & 14 in the Joint Appendix ("JA") submitted June 1, 2001.) Precisely as in *Neider,* the two deeds convey "real estate" to the Railroad, "and to its successors and assigns *forever*." (*Compare Neider* deed, Plts' Ex. 1, *with* JA 13 & 14 (emphasis added).) Precisely as in *Neider*, the two deeds state the deed conveys all estate and interest held by the grantors:

> Together with *All* and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, *and the reversion and reservations*, remainder and remainders, rents issues and profits thereof, and *all estate, right, title and interest* in and to the said property, as well in law as in equity, of the [grantors].

(*Compare Neider* deed, Plts' Ex. 1, *with* JA 13 & 14 (emphasis added).) And, precisely as in *Neider*, the two deeds' habendum clauses contain no restrictions but purported to convey the previously described interests to the railroad and "to its heirs and assigns *forever.*" (*Compare Neider* deed, Plts' Ex. 1, *with* JA 13 & 14.)

The Government's arguments (Def. Br. at 12- 13), that the above provisions establish the Category 5 deeds conveyed fee interest are unavailing. The above provisions here are of no greater consequence than those presented in *Neider*. In *Neider*, the court dismissed the weight of

these provisions in one sentence. 65 P.3d at 530 (observing, the "printed language uses terms such as 'grant,' 'bargain,' and 'sell,' [but finding] the handwritten clause unambiguously reflects the Bows' intent to convey only an easement to the Railroad.")

The Government nonetheless makes its case for distinguishing the *Neider* deed from those in Category 5 as to these provisions (as well as in the other two Categories). In so doing, the Government asks this Court to undertake the very analysis the *Neider* court declined to take in light of its finding that there was right-of-way language used by the parties in the substantive portions of the deed. 65 P.3d at 530. The *Neider* decision is controlling here. Nothing in the present deeds warrant a departure from the *Neider* court's approach to the analysis nor reaching out to the "conflict[ing cases] . . . interpret[ing] deeds purporting to convey land where there is also a reference to a 'right of way.'" *See C&G*, 25 P.3d at 80; *compare* authority cited to by the Government (Def. Br. at 12-18), *with* authority cited herein, §§1C(1), (2), (4) & 2A(1), *supra*. It is undisputed that there is conflict between courts in construing railroad deeds. For that reason, adhering to the principles embraced by the Idaho court in *Neider* and *C&G* is essential.

While the issues raised by Defendant to argue for distinctions from the *Neider* deed lack merit, the use of the term "forever" in a railroad right-of-way deed was addressed in *C&G* and should be understood in the context now presented. In *C&G* there was, of course, *no* language in the four corners of the deed to denote an intent to convey an easement. 25 P.3d at 80-81. Accordingly, the court found "notable the deeds' use of the term 'forever'" which, the court observed, "*appears* more consistent with the conveyance of a fee simple rather than an easement." *Id.* at 80 (emphasis added); *see also Union Pacific Railroad v. Ethington Family Trust*, 50 P.3d 450, 453 (Idaho 2002). In contrast, when reviewing a deed that *did* contain right

of way language, the "forever" language – appearing three times in the *Neider* deed (*see* Plts' Ex. 1) – carried no weight under Idaho law. While the court chose not to discuss this matter, other courts have explained that as to the term "forever," it is impossible to tell from the language itself whether the deed conveyed a fee or simply transferred a perpetual easement. *See Illinois Cent. R. Co.,* 928 S.W.2d 822, 825 (Ky. App. 1996) (*citing Sherman v. Petroleum Exploration*, 132 S.W.2d 768 (Ky. App. 1939)); *see also Sherman*, 132 S.W.2d at 772 (collecting cases and stating, "[n]ot much significance should be attached to the . . . recitation in the habendum that the estate with all its appurtenances was conveyed forever, for there may be and often is a warranty of title to an easement, and the easement, together with all its incidences or appurtenances, may be granted in perpetuity").

The *Neider* deed contains the identical "*forever*" language found in the deeds here. That language did not prevent the Idaho court from concluding that the *Neider* deed unambiguously conveyed an easement. Nor should the identical language create different meaning here.

**(3)** ***The type of print or handwriting used in the deeds at issue are indistinguishable from the portions the Neider court found controlling in the Bow deed.***

The *Neider* court referenced the portions of the deed it construed by indicating some portions were handwritten while others were printed. At no point, however, did the court *limit* its holding to those instances where "right-of-way" language was set apart in handwriting as compared to the pre-printed portions containing "boilerplate" language. To the contrary, before it mentioned the details of the Bow deed, the court stated unequivocally that in *C&G* it "recognized that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement." 65 P.3d at 530. And after discussing the Bow deed the court concluded by again noting that "[i]n this case, a substantive provision of the conveyance

instrument, in handwriting, grants a right of way to the Railroad, which this Court *has identified* [in *C&G*] as language that creates an easement." *Id.* (emphasis added). The subject of the last clause was not in reference to the handwritten portion, of course, but rather to the *holding* which the court explained had previously been "identified" in *C&G*: *i.e.*, "right-of-way" language in a "substantive provision" creates an easement.

The representative deeds before this Court for all deeds including Category 5 are not the actual, original deeds but are copies from the County Recorder's Office which keeps *transcribed* copies of the original deeds. This is so because, as was commonplace during an era before photocopy machines were available, every deed recorded in the recorder's office in Washington County was literally transcribed by the Clerk of the recorder's office. Thus, up until 1899, all deeds recorded in Washington County were transcribed by the clerk from the original by hand, word for word; between 1899 and 1902 they were either handwritten or typed; and from 1902 until 1961 they were all typed by the clerk. (*See* the Declaration of Sharon Widner, attached hereto as Plts' Ex. 2.)

Accordingly, no inferences or distinctions should or can be made as to typed versus hand-printed portions of deeds at issue here.

**(4) *A reverter clause alone will satisfy Neider but is unnecessary to finding an easement under the "substantive portion" test.***

The Government contends that *Neider* is distinguishable because the *Neider* deed contains some reverter language which the deeds in the instant case do not have. Specifically, the *Neider* deed contains the language "[s]hould [the Railroad] fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said

[grantors]." 65 P.3d at 527. By stressing the difference between the *Neider* deed and the deeds at issue here in that regard, (Def. Br. at 9,13,15, 21, 26), the Government essentially argues that the reverter language compelled the Idaho court to conclude that the *Neider* deed conveyed an easement. That, however, is not the position the Idaho court took. Certainly, the court considered the language to be additional evidence indicative of an easement. *Id.* at 530. But it did not go into details to discuss the significance of the language. It merely summarized the language in one sentence as it compared the *Neider* case to the *C&G* Case. *See Id.* Thus, the Idaho court placed the controlling weight on the use of the term "right-of-way." This makes sense where an easement expires *automatically* without the need for a reverter clause. *See Hanson Industries,* 58 P.3d at 916-17 (holding a reverter clause is unnecessary because a "railroad right-of-way [easement] expires automatically upon abandonment").

**(5)** ***More than nominal consideration does not elevate an easement grant into a fee.***

The grant of a right-of-way easement typically deprived the owner of any remaining value in the part of the land taken. As such, it is unremarkable if landowners were paid the full value for the land taken and additional value for any damages to the remaining part not taken. *See King County v. Rasmussen,* 299 F.3d 1077, 1085 n.8 (9th. Cir. 2002) ("railroads paid significant amounts for both easements and fee simple"). Indeed, in condemnation cases where only easements were acquired, courts awarded such damages and expressed the reason for paying a landowner the value of the taking as if fee title were acquired:

> railroad companies are authorized to condemn "ways and rights of way," properly construed as the right to acquire an easement only. But the law is for practical purposes and looks to practical ends, and, . . . in the ordinary case of an application to condemn an easement, not limited to a term of years, the rule is to award to the owner the value of the entire fee at the time of taking.

*Cumbaa v. Town of Geneva*, 179 So. 227 (Ala. 1938) (internal citations and quotations omitted).

As explained by the North Carolina Supreme Court which collected numerous cases on point:

> Since the condemner acquires the complete right to occupy and use the entire surface of the part of the land covered by the perpetual easement for all time to the exclusion of the landowner, the bare fee remaining in the landowner is, for all practical purposes, of no value, and the value of the perpetual easement acquired by the condemner is virtually the same as the value of the land embraced by it.

*State Highway v. Black*, 79 S.E.2d 778, 783-84 (N.C. 1954).

Accordingly, during an era when condemnation of railroad right-of-way easements were commonplace and damages awarded were for the full value of the land, payment of fair market value for an easement should have no bearing on gleaning the intent of the grantor in a right-of-way deed.[2] In fact, as evident with a deed from Category 2 – which did not convey fee simple absolute – the consideration there was scarcely different from the consideration Defendant highlighted in its argument. (*Compare* Plts' Ex. 3 *with* Def. Br. at 12, 19, 23.)

Under the general rules and the reasoning presented in *Neider* and *C&G*, *see* §1C, and for the foregoing reasons, Category 5 deeds conveyed easements.

**B. The Category 6 deeds**

The representative deed for Category 6 reads, in pertinent part, as follows:

> . . . . for and in consideration of one dollar . . . [the Grantors] have remised released and forever quitclaimed . . . all the following described real estate . . .

---

[2] This is not to be confused with authority that has found *nominal* consideration to be indicative of an intent to convey merely an easement. *See Lawson v. Simonsen*, 417 A.2d 155, 159 (Pa. 1980). Also noteworthy for two different points, cattle and wagon crossings were referenced in the second Category 5 deed. (JA 14.) First, that crossings were necessary suggests the right of way disrupted an otherwise contiguous tract of land, potentially causing damages to the remainder. Second, *obliging* the Railroad to construct a crossing is "ordinarily deemed 'repugnant' to the grant of a fee." *See Hanson Industries,* 58 P.3d at 917.

> TO HAVE AND TO HOLD all and singular the tenements, hereditaments and appurtenances as a perpetual right of way for [the Railroad's] Rail Way Line unto the said party of the second part and to its successors and assigns forever.

(JA Tab 5.)

**(1) *The C&G and Neider decisions "recognized" and held that right-of-way language creates an easement if contained in the habendum clause.***

In a state where a court is to read the entire written instrument *as a whole*, giving effect *to every part* so as to understand the words in the context of the full deed, this deed operates to create nothing more than an easement. *See* §§1C(2)(4)&2(A)(1) *supra.* This is true in Idaho where the State's Supreme Court has unequivocally stated that "use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement," and where its earlier decision explained the court would look to such language in either the granting *or the habendum* clauses "*or any other language in the deeds* that serves to limit the use of the land for the purpose of a railroad right of way." *C&G*, 25 P.3d at 81 (emphasis added); *see* §1C, *supra*. In both these seminal decisions, the court was fully aware of the range of options available to it in ruling as it did. *C&G*, 25 P.3d at 80 (speaking to the "conflicts" in authority).

**(2) *Finding right-of-way language in the habendum clause to create an easement is consistent with authority on point during the time Category 6 deeds were issued.***

To a farmer in the late 1800's or early 1900's, the Idaho court's mandate that the deed be considered in its entirety, is an equitable approach considering the reality of his time. The interests that were established at the turn of the 20th century vested at that time. Contemporaneous authority when these deeds were granted, recognized the types of interests established in these railroad deeds were merely easements. *See*, *Chevy Chase Land Co.*, 733 A.2d at 1062-64 (reviewing the emerging authority from historical perspective); *see* §§1C(2)(4),

2(A)(1) *supra*.

Finally, it is worth considering the landowner himself since his intent is paramount. He is about to grant an interest to a railroad to construct or continue with constructing railroad tracks across the middle of his farm. He is not a lawyer. He agrees to convey the interest and does so with language in the deed stating the Railroad is to have and to hold the interests "*as*" a "*perpetual* right of way *for* [the Railroad's] Rail Way Line. . ." during an era where "[i]t would be using the term in an unusual sense, by applying it to an absolute purchase of the fee-simple of lands to be used for a railway or any other kind of way." *Chevy Chase, supra* (*quoting* 2 ELLIOTT ON RAILROADS § 1158, at 628 n.77). Was his intent to convey only an easement? It is reasonable to conclude it was; and controlling law in Idaho holds he did.

Moreover, like the Category 5 deeds, the Category 6 deeds contain "perpetual right of way" in the habendum clause, a substantive portion of the deed. Thus, for the foregoing reasons, including those that apply to Category 5 deeds, this Court should reject the Government's repeated argument as to the inapplicability of *Neider* and find that under *Neider*, the reference to "right-of-way" creates an easement.

**(3) *A quitclaim deed purports to convey nothing more than the interest described.***

The Government advances the remarkable argument that by using a quitclaim form, the grantors intended to convey a fee simple absolute because "a quit claim deed operates to convey whatever interest the grantor possessed." (Def. Br. at 19; see also Def. Br. at 21, 23.) The argument is unsupportable.

Quitclaim deeds are used when the grantor is unable or unwilling to warrant title to what is being conveyed. *Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 12 A.2d 435, 437 (Pa. 1940) ("Quit-claim deeds, long known to the law, are used when a party wishes to

sell or otherwise convey an interest he may think he has in land but does not wish to warrant his title.") (*citing* 16 Am. Jur., p.560, § 219). Thus, the use of a quitclaim form merely means that the grantee is on notice that the landowner transfers no greater interest than what she already owns and that there is no warranty for the interest conveyed. *See Luce v. Marble*, __P.3d __, 2005 WL 3556424, at *3 (Idaho Dec. 30, 2005) (*citing Gardner v. Fliegel*, 450 P.2d 990, 993 (Idaho 1969). To be sure, there is authority that holds that a quitclaim deed conveyed whatever title the grantor possessed. (Def. Br. at 19, 21, 23.) But the Government has taken this fragmented statement *out of the context* from which it comes:

> A quitclaim deed does not convey after-acquired title as does a grant deed. A quitclaim deed however, conveys whatever interest legal or equitable, which the grantors possess at the time of the conveyance, including rights inchoate which later may ripen into a vested estate.

*Scogings v. Andreason*, 418 P.2d 273, 277 (Idaho 1966) (citations omitted). The fragmented quote, then, derives from a discussion determining whether "rights inchoate which later may ripen into a vested estate" could be conveyed by quitclaim. *Id*. None of the law on point, as articulated by the court in *Scogings* but also found elsewhere, extends to the entirely different proposition the Government represented it does. *Id.* The Government has taken the principles stated in *Scogings* out of context, then, and by no means is there *any* law to support the Defendant's statement on point. To the contrary, like a warranty deed, a quitclaim deed is merely an instrument by which a grantor will seek to convey an interest – the nature of which must still be determined within the four corners of the deed. *See* 26A C.J.S. Deeds § 17 (2005) ("A quit claim deed is one which purports to convey, and is understood to convey, *nothing more than the interest or estate* in the property *described* of which the grantor is seized or possessed, if any, at the time, rather than the property itself.") (emphasis added).

**(4)** ***The language used in the habendum clause expresses the intent to convey an easement and is in harmony with all parts of the deed.***

Under *Neider* and *C&G*, the habendum clause *is* a substantive portion of the deed and therefore the phrase "perpetual right of way" in the habendum clause creates an easement. The habendum clause's expression of intent to convey an easement uses descriptive terms such "as" a '*perpetual*' right of way," and, "*for*" the "[Railroad's] Rail Way line." These terms are consistent with the intent to convey an easement, *Tallman*, 41 N.E.2d at 540 ("[t]he word 'as' means in the 'character, capacity, or condition of,' . . . which meaning . . . would indicate that the subject matter of the grant was the use of described land rather than the land itself") (citation omitted), and are not in conflict with other language in the deed. It is undisputed that the purpose of the habendum clause is to modify, *limit* or explain the estate conveyed in the granting clause. But this rule of construction does not *ipso facto* support the principle that the Government espouses (Def. Br., at 21-23) – i.e, that the granting clause prevails over the habendum clause. *Cf. Hanson Industries,* 58 P.3d at 915 ("if the term 'right-of-way' is used . . . as a limitation on the estate granted . . . the grant generally conveys an easement"). As already discussed, *supra*, *Neider* and *C&G* teaches that right of way or purpose language is effective if contained anywhere in the substantive portions of the deed, *including* the habendum clause. Accordingly, the Government's arguments that seek to escape the holding in *Neider* should be rejected.

For the foregoing reasons, the deed under Category 6 unambiguously conveyed only an easement and this Court should give effect to the true intent of the parties to convey an easement.

**C. The Category 8 deeds**

The representative deed under Category 8 reads in pertinent part as follows:

> [Grantors] . . . grant, bargain, sell, convey and confirm . . . forever. A strip of land for a right of way for [the Railroad] one hundred feet wide . . . described as follows, to wit: . . .

> The said strip of land is to be used by the said Railway Company for a right of way for the said Railway and for all and every purpose necessary to be used in connection with the running and operation of the said Railway.

(JA Tab 6.)

Twice in a substantive portion of the deed, "right-of-way" language is used to impart the intent of the instrument. Nonetheless, the Defendant again argues that *Neider* is inapplicable (Def. Br. at 23-26), and urges this court to consider other authorities. The Defendant's position is unsound. The Defendant relies on cases[3] that, again, conflict with the type of cases and principles the *C&G* court signaled it agreed with. 25 P.3d at 80. As to the first "right-of-way" reference, granting a strip of land "for a right of way," the cases discussed *supra*, §§1C(2)(4), 2A(1), establish that this purpose language alone is sufficient to show an easement was intended. Moreover, the cases upon which Defendant relies (Id. at 24-26), are notable for their lack of *any* language resembling the purpose language found here in the second portion containing right of way language: "The said strip of land is to be used by the said Railway Company for a right of way for the said Railway and for all the every purpose necessary to be used in connection with the running and operation of the said Railway." When courts have addressed such statements of purpose, it is common to find the courts holding that such language conveys easements. *See Lewellen*, 666 N.E.2d 958; *Brewer and Taylor Co.*, 769 S.W.2d 753.

For these reasons and for the reasons set out in both the general discussion, §1, *supra*, and

---

[3] In addition, the Government relies on Washington State cases, including from Appellate Division I. (Def. Br. 24-26.) More recently, the state's supreme court affirmed a case on point in Division III, which has addressed the same arguments on which the Government relies, but reasoning and holding in a manner favoring Plaintiffs here. *See Kershaw Sunnyside Ranches, Inc. V. Yakima Interurban Lines Association*, 91 P.3d 104 (Wash. 2004); *aff'd in part and rev'd in part on different grounds by* 2006 WL 75278 8 (Wash. 2006); *see also Hanson Industries*, 58 P.3d 910 (2002).

those pertaining to Categories 5 and 6, §2A&B, *supra*, this Court should find that the Category 8 deed conveyed only an easement.

**CONCLUSION**

The *Neider* holding allows for the relationship the settlers of the west had with the land they were taming and their relationship with the railroad industry. By the late 1800's, landowners for the most part were uninterested in granting outright fee title to the railroad companies. *Cf. Great Northern R. Co. v. United States*, 315 U.S. 262, 273-74 (1942) (discussing emerging disfavor with lavish federal grants to the railroad industry). Further, while the railroad industry's development of local and interstate commerce lines were very much welcomed for the development of the nation, bankruptcies and abandonments of corridors were not uncommon,[4] rendering a nuisance the abandoned strips of land bisecting farms and fields if not allowed to dissolve back into the parent body. Thus, the practical and straightforward approach seen in many state courts including Idaho, which eschews the restrictive and technical approach adopted by some courts and advocated by the Government here, allowed for the genuine intent of landowners at the turn of the century who were farming or improving land and who in most cases would surely have intended to retain the right to absorb the right of way back into the bisected farm or ranch if the railroad ever abandoned the right of way. Thus, while the Bow deed was riddled with the type of language the Government insists is used to intend a fee conveyance, *see* § 2A(2)*, supra,* the *Neider* court nevertheless takes the measured view maintained by other

---

[4] In fact, the 19th Century experienced several economic downturns, known as "panics," spanning 1819 - 1893. The Panics of 1873 and 1893 in particular caused the most turmoil for the railroad industry. *See Louisville & Nashville R. Co. v. Pierce*, 230 S.W.2d 430, 432 (Ky. 1950); Public Broadcasting System, *American Experience - Ulysses S. Grant: People & Events - The Panic of 1873, available at* http://www.pbs.org/wgbh/amex/grant/peopleevents/e_panic.html (attached hereto as Plts' Ex. 4)

courts, and held that under Idaho law intent shall be found *anywhere* in the deed, so long as there is right of way or other purpose language within its substantive provisions. 65 P.3d at 530; *C&G*, 25 P.3d at 81.

For the foregoing reasons, Class Representatives on behalf of themselves and all members of the class similarly situated who have Category 5, 6, & 8 railroad deeds in their chain of title, respectfully request that the Court grant their motion for partial summary judgment and find the deeds under Categories 5, 6, 8 (and Category 15 wherever these categories overlap) conveyed easements to the railroad.

Dated: February 10, 2006

Respectfully submitted,
**ACKERSON KAUFFMAN FEX, PC**

/s/ Cecilia Fex
Email: fex@ackersonlaw.com__________
CECILIA FEX, *pro hac vice* (DC Bar No. 435061)
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831

*Of Counsel:*
Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net

*Counsel for Plaintiffs' Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 10th day of February, 2006, I electronically filed Class Representatives' Memorandum in Support of their Cross Motion and Response to Defendant's Motion for Partial Summary Judgment Regarding the Property Interest Originally Acquired by the Railroad for Categories 5, 6, and 8, through the CM/ECF system, which caused the following parties or counsel to be served with this document by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
kristine.tardiff@usdoj.gov

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
Counsel for Plaintiffs' Class

Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net
and
Cecilia Fex, *pro hac vice* (DC Bar No. 435061)
ACKERSON KAUFFMAN FEX, PC
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831
Email: fex@ackersonlaw.com

Counsel for Plaintiffs' Class

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Case No. CV99-324S-MHW<br><br>Honorable Mikel H. Williams |

# CLASS REPRESENTATIVES' APPENDIX TO THEIR CROSS MOTION AND RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE PROPERTY INTEREST ORIGINALLY ACQUIRED BY THE RAILROAD FOR CATEGORIES 5, 6, AND 8

Dated: February 10, 2006

**INDEX OF DOCUMENTS INCLUDED IN CLASS REPRESENTATIVES' APPENDIX**

| Plaintiffs' Exhibit Number | Description of Exhibit |
|---|---|
| 1 | Excerpt from the March 14, 1910 Deed - Bow to Idaho Northern Railroad Company ("Bow Deed"), included as Exhibit 5 in Defendant's Supplemental Appendix and referred to in *Neider v. Shaw*, 65 P.3d 525 (Idaho 2003) |
| 2 | Declaration of Sharon Widner, Washington County (ID) Clerk - Auditor and Recorder, dated February 3, 2006 |
| 3 | Deed between the New England Mortgage Security Company and Pacific and Idaho Northern Railway Company, July 27, 1899, covering Parcel 66 as described in Conveyance Categories Agreed to by the Parties (Doc. 93) at §2 (designated as a Category 2 deed) |
| 4 | Public Broadcasting System, *American Experience - Ulysses S. Grant: People & Events - The Panic of 1873, available at* http://www.pbs.org/wgbh/amex/grant/peopleevents/e_panic.html |

**Excerpt from the March 14, 1910 Deed - Bow to Idaho Northern Railroad Company ("Bow Deed") referred to in *Neider v. Shaw*, 65 P.3d 525 (Idaho 2003)**

WITNESSETH, that the said parties of the first part, for and in consideration of the sum of One and no/100 DOLLARS [of] Lawful money of the United States of America to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain, sell, convey and confirm unto the said party of the second part, and to its heirs and assigns forever, a[cut off] the following described real estate situated in Canyon County, State of Idaho, to wit:

Commencing at the northwest corner of the Northeast quarter of section [somewhat illegible but appears to read: 2, Twp. 1 N. R. 2 W. B. M.; thence E 318] feet to a point 100 feet east of the center line of the Idaho Northern Railway Company, Limited, line of railroad; thence in a south westerly direction, parallel with the center line of the said Railway, 1329 feet; thence West 51 feet; thence southwesterly, parallel with the center line of the said Railway, 1166 feet to a point 166 feet north of the southwest corner of the northeast quarter of section 2, said township and range; thence north along the west line of the said northeast quarter of section 2, 2474 feet to place of beginning. Containing ten acres more or less. Subject to right-of-way of Government Canals. Provided: nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should party of the second part fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said J. Fremont Bow and C.A. Bow, his wife, or their legal heirs.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reservations, remainder and remainders, rents issues and profits thereof, and all estate, right, title and interest in and to the said property, as well in law as in equity, of the said parties of the first part.

TO HAVE AND TO HOLD all and singular the above mentioned and described premises in the quiet and peaceable possession of the said party of the second part, and to its heirs and assigns forever and the said parties of the first part, and their heirs, the said premises in the quiet and peaceable possession of the said party of the second part its heirs and assigns, against the said parties of the first part, and their heirs and against all and every person and persons whomsoever, lawfully claiming or to claim the same, shall and will warrant, and by these presents forever defend.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

ROBERT HASH and GERLENE HASH, *et al.*,

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendant.

Case No. CV99-324S-MHW

**DECLARATION OF SHARON WIDNER**

I, Sharon Widner, Washington County Clerk, Auditor & Recorder, am of lawful age, and am qualified and authorized to file this Declaration, Executed on February 3, 2006.

1. In accordance with the conventional practice of the times, recorded deeds in Washington County in the 1800's and in the early 1900's were *transcribed copies* of the original deeds, and were not the actual original deeds themselves.

2. From 1873 through to 1899, the County clerk would transcribe word-for-word the original deeds *by hand*. These transcribed copies were recorded in Books 1 - 9.

3. From 1899 through 1902, some original deeds would be transcribed by the Clerk by hand, and others would be typed transcriptions. If handwritten, the deeds can be found in the books noted in ¶ 2, above, and if typed in the books noted in ¶ 4, below.

4. From 1899 through 1961, the County clerk no longer copied original deeds by hand, and transcribed all deeds by typing copies of the originals. Those typed copies can be found in Books 10 through to Page 50 of Book 80.

I, Sharon Widner, declare under penalty of perjury that the foregoing is true and correct.

Sharon Widner
Washington County Clerk, Auditor & Recorder

Hash v. U.S., No. 99-325S-MHW
Plaintiffs' Appendix (Feb. 10, 2006)
Exhibit 2

#66

July 27, 1899

This Indenture made the Twenty-seventh day of July in the year of our Lord one thousand eight hundred and ninety-nine, by and between the New England Mortgage Security Company of the County of Windham and state of Connecticut, party of the first part, and the Pacific and Idaho Northern Railway Company, a corporation organized and esisting under and by virtue of the laws of the State of Idaho, party of the second part.

Witnesseth: That he said party of the first part for and in consideration of the sum of five hundred dollars, lawful money of the United States of America, to it in hand paid by the said party of the second part, the receipt wheroof is hereby acknowledged, has granted, bargained, and sold and by these presents does grant, bargain , sell, convey and confirm unto the said party of the second p art and to its successors and assigns forever, all that certain tract of land situated, lying nd being in the County of Washington State of Idaho, described as follows, to-wit:

A strip of land one hundred feet in width over, though and across a portion of the east half of the north east quarter of section eighteen township thirteen north range three west of Boise meridian, being fifty feet on each side of the center line of the Pacific and Idaho Northern Rail way Survey as located and staked upon the ground, in said County, which said center line across the premises aforesaid is described as follows, to-wit:

Beginning at a point designated as station 84 X 80 of the Pacific abd Idaho Northern Railway survey stations whence the south eas coener of the north east quarter of section eighteen township thirteen north range three west of the Boise Meridian bears east a distance of 1035 feet; thence north 21 Deg. 48 Min. East a distance of 2436.6 feet; thence along the line of a curve to the left having a radius of 5730 feet, a distance of 269.8 feet to a point designated as station 111 X 86.4 of said Railway survey Stations, whence the northeast cornerbof section eighteen township thirteen north range three west bears north 89 deg. 38 Min. east a distance of 165.8 feet. said strip contains an area of five and fifty nine hundredths acres more or less.

TO HAVE AND TO HOLD: All and singular, the above mentioned nad described premises, together with the appurtenances , unto the party of the second part, and to its successors and assigns forever.

This conveyance is made upon the express condition that the property herein convered is to be used for the maintainance and operation of a railroad, and if the said premises shall cease, at any time, tonbe used for railroad purposes and no line of railroad shall be maintained over and across the same, then and in such event the said property herein granted shall revert to the grantor, its successors or assigns. And upon the further cobdition that the the said party of the first part its successors and assigns, shall be entitle to have and use one wagon crossing at the grade of the said railroad, at such place on said p remises as the par ty of the first part shall select, and wh ich said crossing shall be constructed and maintained by the said party of the second part in suitable condition for use in crossing with wag ons and teams over and across the railroad track of the said second party;

And upon the further condition that the said party of the second part shall construct and maintain a suitable fence upon both sides of its track, along the boundary line of the premises herdin conveyed.

In witness whereof the sa id party of the first part has hereunto set its hand and corporate seal the day and year first above written.

Signed sealed and delivered in presence of
C.A.Lawrence
A.N.Hehn

SEAL

The New England Mortgage Security Co.
W.C.Bosworth
President

State of new York }
} ss
County of New York }

I.R. 50 cts cancelled.

On this 27th day of July 1899, before me C.W.Wagner a Notary Public in and for said County, came the New England Mortgage Security Company, by William C. Bosworth its President, to me personally known to be the identical person who executed the foregoing deed and who being by me duly sworn did say thet he is the President of the New England Mortgage Security Company that the seal attached to the above deed is the corporate seal of said Company and that the said deed was signed and sealed in behalf of said Company, under the authority conferred upon him by the Boa rd of Directors, and said William C. Bosworth acknowledged the execution of the above deed to be the voluntary act and deed of said corporation, by him voluntarily done and executed for th e purposes therein mentioned.

Witness my hand and official seal this 27th day of July 1899.

SEAL

C.W.Wagner
Notary Public N.Y.Co. N.Y.

Filed at the request of B.S.Varian this 5th day of august 1899 at 3 P.M.

I.F.Smith
Ex-officio recorder.

Hash v. U.S., No. 99-325S-MHW
Plaintiffs' Appendix (Feb. 10, 2006)
Exhibit 3

**People & Events: The Panic of 1873**

Since the end of the Civil War, railroad construction in the United States had been booming. Between 1866 and 1873, 35,000 miles of new track were laid across the country. Railroads were the nation's largest non-agricultural employer. Banks and other industries were putting their money in railroads. So when the banking firm of Jay Cooke and Company, a firm heavily invested in railroad construction, closed its doors on September 18, 1873, a major economic panic swept the nation.

Jay Cooke's firm had been the government's chief financier of the Union military effort during the Civil War. The firm then became a federal agent in the government financing of railroad construction. The railroad industry involved a huge amount of money -- and risk. Building tracks where land had not yet been cleared or settled required land grants and loans that only the government could provide.

The nation's first transcontinental railroad had been completed in 1869. Entrepreneurs planned a second, called the Northern Pacific. Cooke's firm was the financial agent in this venture, and poured money into it. On September 18, the firm realized it had overextended itself and declared bankruptcy.

Mirroring the firm's collapse, many other banking firms and industries did the same. This collapse was disastrous for the nation's economy. A startling 89 of the country's 364 railroads crashed into bankruptcy. A total of 18,000 businesses failed in a mere two years. By 1876, unemployment had risen to a frightening 14 percent.

An economic cloud settled over Ulysses S. Grant's second term, and he tried to find a solution that would drive it away. Workers and businesspeople argued over what should be done. Grant -- setting a course that would become the hallmark of the Republican Party -- sided with Eastern business leaders, and adopted their ideas for easing the crisis. But when Grant left office in 1877, the cloud remained.

That same year, the depression set off railroad strikes. Workers all over the country, in response to wage cuts and poor working conditions, struck and prevented trains from moving. President Rutherford B. Hayes was forced to send federal troops to more than a half dozen states to stop the strikes. In the end, the fighting between strikers and troops left more than one hundred people dead and many more injured.

Southern blacks suffered greatly during the depression. Preoccupied with the harsh realities of falling farm prices, wage cuts, unemployment, and labor strikes, the North became less and less concerned with addressing racism in the South. White supremacist organizations like the Ku Klux Klan, which had been suppressed through punitive Reconstruction legislation starting in 1868, resumed their campaign of terror against blacks and Republicans. Violent conflicts erupted, including 1873's Colfax Massacre in Louisiana. By the time the depression lifted in 1879, Southern whites would already be regaining power.

previous | return to people & events | next

Hash v. U.S., No. 99-325S-MHW
Plaintiffs' Appendix (Feb. 10, 2006)
Exhibit 4

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 10th day of February, 2006, I electronically filed Class Representatives' Appendix for their Cross Motion and Response to Defendant's Motion for Partial Summary Judgment Regarding the Property Interest Originally Acquired by the Railroad for Categories 5, 6, and 8, through the CM/ECF system, which caused the following parties or counsel to be served with this document by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
kristine.tardiff@usdoj.gov

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
Counsel for Plaintiffs' Class

Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net
and
Cecilia Fex, *pro hac vice* (DC Bar No. 435061)
ACKERSON KAUFFMAN FEX, PC
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831
Email: fex@ackersonlaw.com

Attorneys for Plaintiffs' Class

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROBERT HASH and GERLENE HASH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Case No. CV99-324S-MHW |

**<u>CLASS REPRESENTATIVES' NOTICE OF ERRATA</u>**

On February 10, 2006, Representatives of Plaintiffs' Class ("Plaintiffs") filed Class Representatives' Memorandum in Support of Their Cross Motion and Response to Defendant's Motion for Partial Summary Judgment Regarding the Property Interest Originally Acquired by the Railroad for Categories 5, 6, and 8. The Memorandum contains the following errors:

The citation for *Hanson Industries, Inc. v. County of Spokane*, 58 P.3d 910, 916 (2002), should have included the court reference "(Wash. App. 2002)" (correction is underscored). The incomplete citation appears at iii; 2; and 23, n.3.

The citation for *"Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association*, 91 P.3d 104 (Wash. 2004); *aff'd in part and rev'd in part on different grounds by* 2006 WL 75278 8 (Wash. 2006)" should have been "*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association*, 91 P.3d 104 (Wash. App. 2004); *aff'd in part and rev'd in part on different grounds,* 2006 WL 75287 (Wash. 2006)."[1] The errata appears at iv; and 23, n.3.

The last paragraph on page 12, which ends on page 13 is incorrectly stated and should be replaced with the following paragraph:

> Authorities with which the *C&G* court expressed agreement support this conclusion. *See* 25 P.3d at 81 n.3; *Lewellen,* 666 N.E.2d 958 (holding one deed granting "a strip of land through a part of a lot of land of twenty acres . . . for the Right of Way of [Railroad]," and another deed stating, "the Right of Way for so much of said Rail Road as may pass through the following described piece, parcel or body of land," both intended to convey merely easements) (internal ellipses and brackets in the original); *McVey*, 427 N.E.2d at 217 (generally noting, "[e]ven when the deed purports to grant a strip, piece, or parcel of land, but contains additional language referring to a right-of-way, the courts have held that the deed conveyed a mere easement rather than a title in fee"); *Chevy Chase*, 733 A.2d at

[1] The Pacific Reporter citation for the Washington Supreme Court decision in *Kershaw*, 126 P.3d 16, became available some time after noon on the day the Memorandum was filed.

1063 (noting, Maryland courts have often construed deeds of 'rights-of-way' to railroads as easements or have used the terms 'easement' and 'right-of-way' synonymously."). As such, these Category 5 deeds granted easements.

Counsel for Plaintiffs apologizes to the Court for these errors and respectfully requests the Court accept this submission of Notice of Errata. The Notice corrects errata in two citations and replaces the last full paragraph on page 12 to correct the misstatement made in that paragraph.

Dated: February 14, 2006

Respectfully submitted,

**ACKERSON KAUFFMAN FEX, PC**

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
CECILIA FEX, *pro hac vice* (DC Bar No. 435061)
1250 H Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 833-8833
Fax: (202) 833-8831

Of Counsel:
Lary C. Walker, ISB No. 1303
WALKER LAW OFFICE
232 East Main Street
PO Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
Email: walkerlaw_bk@ruralnetwork.net

*Counsel for Plaintiffs' Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 14th day of February, 2006, I electronically filed Class Representatives' Notice of Errata through the CM/ECF system, which caused the following parties or counsel to be served with this document by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
kristine.tardiff@usdoj.gov

/s/ Cecilia Fex
Email: fex@ackersonlaw.com
Counsel for Plaintiffs' Class