**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RON AND BETTY BLENDU, *et al*., | ) | Case No. 01-718 L |
| Plaintiffs, | ) | Honorable Emily C. Hewitt |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AS TO THE NATURE OF INTERESTS CONVEYED IN CATEGORY 6**

Lary C. Walker
WALKER LAW OFFICE
232 East Main Street
P.O. Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
walker_law@justice.com

*Counsel of Record*

**DATED**: August 9th, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................ii

QUESTION PRESENTED ....................1

SUMMARY OF THE ARGUMENT ....................1

STANDARD OF REVIEW ....................2

BACKGROUND ....................3

ARGUMENT ....................3

I. *C&G and Neider* are dispositive of the issue presented, where a deed using "right of way" language in a substantive part unambiguously creates an easemen.........3

*II.* The 2006 *Hash* briefing provides detailed analysis and context for the issue presented but the focus should remain on *C&G* and *Neider* ....................*6*

III. *Hash III* creates a new vile of law in conflict with the letter and spirit of the *C&G* and *Neider* rulings....................7

*A.* *Hash III* ignored the Federal Circuit's interpretation of *C&G* and *Neider*.........*7*

B. *Hash III* relied on a selective reading from other states' decisional law ....................10

C. *Hash III* limits *Neider* in a manner inconsistent with the Federal Circuit's description of *Neider* and in the absence of any direction to so limit by the *Neider* Court itself ....................14

CONCLUSION ....................19

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................2

*Blendu v. United States*,
75 Fed. C1.543(2007) ....................................................................................3

*Brown v. State*,
924 P.2d 908 (Wash. 1996) ..........................................................................13

C & *G, Inc. v. Rule*,
25 P.3d 76 (Idaho 2001) ........................................................................ *passim*

*Hash v. United States*,
403 F.3d 1308 (Fed. Cir. 2005) .............................................................. *passim*

*Hash v. United States*,
454 F. Supp.2d 1066 (D. Idaho 2006) ........................................... 1, 7, 10-16

*Hash v. United States*,
No. 99-324, 2001 U.S. Dist. LEXIS 24898,
(D. Idaho Nov. 27, 2001) ...............................................................................7

*Kershaw Sunnyside Ranches v. Yakima Interurban Lines Assoc.*,
126 P.3d 16 (Wash. 2006) .................................................................12, 13, 16

*Kershaw Sunnyside Ranches v. Yakima Interurban Lines Assoc.*,
91 P.3d 104 (Wash. Ct. App. 2004) ...............................................13, *14*, 16

*Neider v. Shaw*,
65 P.3d 525 (Idaho 2003) ....................................................................... *passim*

*Veach v. Culp*,
599 P.2d 526 (Wash. 1979) ..........................................................................12

## FEDERAL STATUTES & RULES

General Railroad Right of Way Act of 1875,
ch. 152, 18 Stat. 482 (codified as 43 U.S.C.§§ 934-939 (1982)) ...........................3

Fed. R. Civ. P.56 ..........................................................................................................2

RCFC 56 .....................................................................................................................2

## QUESTION PRESENTED

In Idaho, use of the term "right of way" in the substantive portions of a conveyance instrument creates an easement. The interests granted in Category 6 were expressly to be used "as a perpetual right of way for [the Railroad's] Rail Way Line." The "right of way" term in these Category 6 deeds appears in the substantive portion of the deeds. Did the Category 6 instruments convey an easement?

## SUMMARY OF THE ARGUMENT

Two recent Idaho Supreme Court decisions, *C & G, Inc. v. Rule,* 25 P.3d 76, 7882 (Idaho 2001), and *Neider v. Shaw,* 65 P.3d 525, 530 (Idaho 2003), provide the reasoning and rule of law which fully control the outcome here. In C&G, the Court explained that "right of way" or purpose language appearing anywhere in the substantive parts of a railway deed creates an easement, 25 P.3d at 80-81, where a "substantive" part included the habendum clause. *Id.* And in *Neider,* citing *C&G,* the Court held that using the term "right of way" in the "substantive portion of a deed creates an easement." 65 P.3d at 530.

Accordingly, *C&G,* by way of detailed explanation, and *Neider,* by way of example, establishes that if certain language is present in the substantive parts, narrow rules of construction, employing a clause-by-clause parsing of technical wording, do not apply. Rather, the presumption of an easement is established when, as a common-sense matter, a railway deed uses "right of way" or other purpose language in its substantive parts.

The deeds at issue in this case satisfy the letter and spirit of the *C&G* and *Neider* rule. The grantors used the term "right of way" in the habendum clause—a substantive part of the deed—to express their intent. *Hash v. United States,* 403 F.3d 1308, 1319 (Fed. Cir. 2005) *("Hash II')*

("these landowners conveyed `real estate' that was described . . . as a `perpetual right of way' in the substantive part of the deed."). Further, the interests were expressly to be held "as a perpetual right of way for [the Railroad's] Rail Way Line"(JA Exs. 4-5, 8-9), in direct satisfaction of the Idaho Court's standards for creating an easement. 25 P.3d at 80-81 (looking for "right of way" or other purpose language in the substantive parts, including habendum clause, of the deed); *see also Neider,* 65 P.3d at 530; *Hash II,* 403 F.3d at 1321

In 2006, the *Hash* district court ruled to the contrary, and issued a new rule of law, finding that "right-of-way" language appearing in the habendum clause alone does not create an easement. *See Hash v. United States,* 454 F. Supp. 2d 1066, 107176 (D. Idaho 2006) *("Hash III").* But this new rule is in direct conflict with the *Neider* and *C&G* rulings, relies on inapt and selective passages from reasoning found in other states' decisional law, sees distinctions where none exist, and should carry no weight here.

In short, the issue presented is quite straightforward, as are the standards and rule that have been established by the Idaho Supreme Court to resolve it. The deeds at issue here manifestly and unambiguously created easements.

## STANDARD OF REVIEW

The standard of review is governed by Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). RCFC 56 is materially the same as Fed. R. Civ. P. 56. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed. R. Civ. P. 56(c); *see also Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Under this standard, a fact is only material if it will make a difference in the result of a case under the governing law, i.e., if it matters to the result. Factual disputes irrelevant or unnecessary to deciding the issue presented do not preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 247-48.

## BACKGROUND

Recently, this Court in *Blendu v. United States,* No. 01-718L,75 Fed. Cl. 543 (2007), explained generally the background of this case and the background of the *Hash* class action pending in the United States District Court for the District of Idaho. *Id.* at 544-46. While the Court's focus at that point was on the question of the Government's liability for a taking of property originally burdened by the General Railroad Right of Way Act of 1875, ch. 152, 18 Stat. 482 (codified as 43 U.S.C.§§ 934-939 (1982)), classified as "Category 1" in both this case and in *Hash,* much of that general background is applicable to the Category 6 deeds.

The Category 6 deeds here are materially identical to the "Category 6" deeds in *Hash,* and Plaintiff-Landowners Blendu, Fairchild, Shuinway, and Harrison each own property burdened by Category 6 right-of-way parcels. *(See* Revised Title Stipulations (Doc. No. 53), filed May 30, 2007 at ¶¶ 1-9 (background); ¶¶ 10, 14-17 (the Blendus' interests); IT 20, 27-30 (the Fairchilds' interests); ¶¶ 36-40 (the Shumways' interests); ¶¶ 37-39 [sic] at pp.11-12 (Harrison's interests).

## ARGUMENT

### *I.* *C&G and Neider* are dispositive of the issue presented, where a deed using "right of way" language in a substantive part unambiguously creates an easement.

In two recent decisions, the Idaho Supreme Court has established the rule of law, and the approach to use, for determining whether an Idaho landowner created an easement or fee interest when deeding a railway line. First, in *C&G,* the court examined two deeds, and laid

out a detailed framework for discerning the intent of the original parties to a deed. 25 P.3d at 78-82. The framework was ultimately simple in its design. If a deed is unambiguous, then technical rules of construction do not apply. *Id.* at 79 (if "no ambiguity [is] present . . . . we consider the language of the deeds without resort to any rule of construction"). In other words, in Idaho, common sense prevails in ascertaining intent of the parties—not hyper-technical rules—if the instrument is unambiguous. And in Idaho, as explained by the *C&G* court, if "right of way" or other "purpose" language is used anywhere in the various substantive parts of the deed, those words would ordinarily establish that an easement was created. *Id.* at 80-81; *see also Neider,* 65 P.3d at 530.

The decision is notable because it essentially teaches that it would be inappropriate to engage in a structured (and perhaps comfortable), step-by-step and paragraph-by-paragraph scrutiny to locate legally technical indicia of fee or easement grants if requisite language appears in substantive parts. Instead, in an Idaho deed, the focus is on whether there was or was not "right of way" or other types of "purpose" language in any substantive portions of the deed. *C&G,* 25 P.3d at 80-81. As explained in C&G, the deeds at issue lacked these ingredients and for those reasons, those deeds conveyed fee. *Id.*

The analysis it used is best captured in the following discussion where the Court explained there is a conflict in the law, and that it was "inclined to agree" with the courts who, in essence, favored the presumption of an easement when right-of-way or purpose language was used in substantive parts:

> ... [w] e recognize that a conflict exists among courts as to the interpretation of deeds purporting to convey land where there is also a reference to a "right of way," where the railroad deed does not contain language about its purpose or otherwise limiting [sic] the conveyance and conveys a definite parcel of land, courts consistently hold that "the deed will be construed to convey fee simple title." Much of the conflict in the caselaw can be traced to

> the different meanings of the phrase "right of way." On one hand "right of way" can serve "to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement)." On the other, the phrase can describe the parcel of land being conveyed to the railroad for the purpose of constructing its rail line. Used in this manner, "right of way" is merely descriptive as to the use to which the land is being put and does not serve to limit or restrict the estate conveyed. Accordingly, because the words "right of way"appear only on the cover pages of the [railroad] deeds instead of being found in the granting or habendum clauses, we hold that the use of the term "right of way" on the cover sheets merely describes generally the strip of property acquired by Idaho Northern and does not express a limitation of the title to the estate conveyed.
>
> [The landowner-plaintiff] further argues that the presence of the term "right of way" in a railroad deed usually indicates that the grantor intended to convey an easement. He cites a number of cases and other authorities for this proposition, and we are inclined to agree. What [plaintiff] fails to note, however, is that the majority of these cases do not address the current situation involved here: where there is no mention of the term "right of way" in either the granting or habendum clause, nor any other language in the deeds that serves to limit the use of the land for the purpose of a railroad right of way. Thus, in absence of such language, the deeds fall squarely within the rule that where a deed unambiguously conveys a parcel of land and where there is no language in the deed limiting the estate conveyed or restricting the purpose of the grant, it will be seen as conveying a fee simple title. It has been held that while cover sheets to a deed may provide some additional evidence of the grantors' intent, they should be utilized only where the language of the deed is uncertain or doubtful, and are otherwise "not dispositive of the nature of the conveyance." Such is not the case here.

*Id.* at 80-81 (citations omitted). In short, the *C&G* court outlined a practical, common-sense standard for finding whether an easement had been created: a court should see whether the "term `right of way' [appears] *in either* the granting or habendum clause," or whether *"any other language* in the deeds . . . serve[s] to limit the use of the land for the purpose of a railroad right of way." *Id.* (emphasis added).

Two years later in *Neider,* in an arguably extremely short analysis, the Court unequivocally embraced its reasoning from C&G. 65 P.3d at 530. As explained by the *Neider* Court, in *C&G* it had "recognized that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement." 65 P.3d at 530. Thus, with

patently minimal discussion, the Court concluded that the parties to the deed at issue had unambiguously created an easement because such language was present there, in a handwritten, substantive part of the deed.

The case is highly instructive. First, without any equivocation whatsoever, it affirmed that *C&G* established that the term "right of way" in a substantive portion of an Idaho deed creates an easement, period. Second, the merits discussion in this decision is singular in its brevity as the *C&G* decision was in its breadth. Already heralded in C&G, when explaining how a court should identify an unambiguous intent to create an easement, *Neider is* noteworthy for its marked *absence* of any technical, step-by-step analysis. In *Neider,* the court applied the common-sense approach already carefully established in *C&G:* it simply looked for and found "right of way" language in a substantive portion of the deed. With that language present, the deed unambiguously conveyed merely an easement, and rules of construction did not apply. Accordingly, this time, leading by example, the *Neider* court refrained from employing a detailed, technical, rules-of-construction analysis.

In short, the Idaho Supreme Court has already established the inquiry and rule that governs the situation here: did the parties employ the term "right of way" or other purpose language in the substantive parts of the deed, including the habendum clause? If so, then the instrument created an easement. Proceeding under an alternative analysis on the issue presented would be unwarranted under the circumstances here. *See Hash II,* 403 F.3d at 1319-21.

**II. The *2006 Hash* briefing provides detailed analysis and context for the issue presented but the focus should remain on *C&G* and *Neider*.**

In *Hash,* the parties submitted eighty-one pages of briefing on the issue presented, a large part of which arguably would have been more appropriate for an issue that lacked the

straightforward rule already provided in *C&G* and *Neider*. Much is nonetheless useful because the briefing navigates through a myriad of questions that may arise when comparing and contrasting the *C&G* and *Neider* holdings with other states' decisions. To that end, and in response to defendant's arguments, the plaintiffs' argument in part was to show that the analysis employed by the Idaho Supreme Court was consistent with many other states— notably states with which it was "inclined to agree." *C&G,* 25 P.3d at 80-81. But for the reasons explained, §I, *supra,* the issue presented here can and should be decided by the application of the inquiry and rule already set out in *C&G* and *Neider.*

For the purposes of reviewing the *Hash* briefing, Landowners make note of the following: the Category 6 deeds in *Hash* are materially identical to the Category 6 deeds here. The Category 8 deed had some language absent in Category 6, but in other ways it was similar so that the Category 8 deed language and analysis is worth noting in light of the recent *Hash III* decision. *(See* JA Ex. D at 22-23.) Finally, the briefing was organized numerically—Categories 5, 6, and 8—so that for Category 6, all the analysis for Category 5 was incorporated by reference. For these reasons and with the caveat that ultimately all this Court really needs to decide this issue are the two Idaho Supreme Court decisions, Landowners refer the Court to the *Hash* plaintiffs' opening, reply, and sur-reply briefs in their entirety, in support of their motion. *(See JA,* Exs. D, H, and *J.)*

## III. *Hash III* creates a new rule of law in conflict with the letter and spirit of the *C&G* and *Neider* rulings..

### *A. Hash III* ignored the Federal Circuit's interpretation of *C&G* and *Neider.*

The Category 6 deeds are materially identical to the Category 6 deeds adjudicated in the *Hash* class action concerning the same trail as here. In *Hash v. United States,* No. 99-324, 2001

U.S. Dist. LEXIS 24898, * 22-23 (D. Idaho Nov. 27, 2001) *("Hash I')*, the district court combined the Category 6 and 8 deeds, and ruled that both sets of deeds granted fee simple absolute title in the United States. While recognizing that the habendum clause in Category 6 included the statement that the interests were granted "as a perpetual right of way," and additionally that "right of way" and "purpose language" was used in the Category 8 deeds, the court concluded that "the mere appearance of the term `right-of-way,' without any other expression of limitation of the title to the estate conveyed, is not sufficient to convey only an easement." *Id*. The court issued its decision after *C&G* was decided, but without the benefit of the *Neider* decision, which came two years later.

On appeal, the Federal Circuit vacated the *Hash I* decision.' *Hash II*, 403 F.3d at 1321. The "right of way" and other purpose language appears in the substantive parts, *id.* at 1319, and in light of the teaching of *C&G*, as "modified or clarified"by *Neider*, the Federal Circuit remanded the matter, with analysis and instructions for the district court, for further proceedings. *Id.* at 1321.

The Federal Circuit held the Idaho Supreme Court had ruled as follows:

> The Idaho Court held that when the term "right-of-way" appears in the substantive portion of a conveyance instrument, the correct interpretation is that the deed conveyed only an easement and that the underlying land was not conveyed unless explicitly granted in the instrument.

---

1 Categories 5, 8, and 15 were also included, but unless necessary to the discussion, Landowners will hereafter omit this refrain

*Id.* at 1320. The Court explained that in hindsight and with the benefit of subsequent, clarifying law, the district court had erred. Thus, upon remand, the Court instructed, the emphasis should be on usage of the phrase "right of way":

> The district court [in *Hash* 1] had found that the use of "right-of-way" in these deeds could have been used either to limit the legal estate conveyed, or simply to describe the land included in the deed; the district court resolved the perceived ambiguity of intent by holding that the language conveying "all right, title, and interest" was less ambiguous than the usage of "right-of-way," and concluded that these deeds conveyed the fee to the land underlying the right-of-way. However, the Idaho court in *Neider* placed controlling weight on the usage "right-of-way" in the grant clause.[2]

*Id.* at 1320. Accordingly, the Court held that the previous approach employed by the district court was incompatible with the Idaho Supreme Court rulings:

> ... Thus the Idaho court now teaches that the use of "right-of-way" in the substantive part of the deed creates an easement, not a transfer in fee... .
>
> The *Neider* court further counseled that "When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction. The intent of the parties is determined by viewing the conveyance instrument as a whole." 65 P.3d at 530 (citations omitted). The district court herein applied this salutary rule, but applied

2 The Court used the phrases "substantive grant" and "substantive clause" interchangeably. *See id.* at 1320-21. Accordingly, the correct reading of the Court's usage of "grant" here would *not* be "granting clause" but rather to mean the generic "grant" — i.e., the part or clause of the deed that expresses the grant.

> the guidance of *C & G;* this guidance is now modified *by Neider* in a way that appears to be highly relevant to the deeds here at issue. We therefore vacate the court's decision with respect to Categories 5, 6, 8, and 15, and remand for reconsideration in light of the weight that the *Neider* court has placed on the use of "right-ofway" in the substantive grant and there is no explicit conveyance of the underlying land.

*Id.* at 1321.

Upon remand, the district court again considered the nature of interests created in Categories 5, 6 and 8. *See Hash III,* 454 F. Supp.2d at 1071-76. The court broadly characterized the Federal Circuit's remand as "allow[ing] this Court to consider whether the Idaho Supreme Court decision in *Neider* . . . would change its analysis that the deeds in those categories conveyed fee title to the Railroad." *Id.* at 1069. But thereafter, in reviewing the deeds, the district court made no reference to the specific reasoning or holdings issued by the Federal Circuit when remanding the issue. *Id.* As such, the district court proceeded with underlying premises, and ultimately reached conclusions, that were at odds with the Federal Circuit's pronouncements concerning Idaho law as had been explained in C&G and clarified in *Neider. Compare, Hash II,* 403 F.3d at 1319-21, *with Hash III,* 454 F. Supp. 2d at 1071-77.

**B. *Hash III* relied on a selective reading from other states' decisional law.**

The Federal Circuit's instructions in *Hash II* aside, the district court's analysis is in conflict with the C&G and *Neider* principles and rulings themselves.

First, and as a threshold matter, the district court proceeded with an overly-broad characterization of the issue. It adopted the premise that plaintiffs in *Hash* contended that "*Neider* . . . dictates that the appearance of `right of way' language *anywhere in the deed* indicates intent to convey an easement only." 454 F. Supp. 2d at 1077 (emphasis added). But

plaintiffs never presented such an ill-conceived and unnecessarily broad argument. As is evident from the plaintiffs' briefing in chief (JA Ex. D), and in its reply to the Government's identical allegation (JA Ex. H at 1-2), the plaintiffs consistently characterized the Idaho rule in the same manner as the Idaho Supreme Court had itself. (JA Exs. D, H.) Further, the *Hash* plaintiffs even added their own qualifying language to the *C&G* and *Neider* holdings so as to accurately represent not only the letter, but the spirit of the rule: "the presence of language in the substantive portions of the deed using `right-of-way' language *to fairly imply a restriction on the grant* will operate to convey an easement." (JA Ex. D at 7 (emphasis added)) Further, the district court over-broadly paraphrased the *Neider* holding itself and questioned whether the now over-broad paraphrasing of the decision could have been intended: "did the *Neider* court mean to hold that if the words `right of way' are ever used *in any part of [the] deed,* then an easement is created?" *Hash III,* 454 F. Supp. 2d at 1072 (emphasis added).

In so characterizing the plaintiffs' arguments and paraphrasing the *Neider* holding, the district court in essence inadvertently set up a straw man analysis from which to proceed. In other words, the court set up the issue as to whether the *C&G* and *Neider* decisions warranted application of a rule which was so overlybroad—"any *part"* of the deed— that the rule would obviously fail. But neither the plaintiffs' arguments, nor more importantly the *C&G* and *Neider* rule or the Federal Circuit's holding on regarding that rule, warranted characterizing the issue in this overly-broad fashion—i.e., as to whether right of way language *in any part of the deed* meant an easement was created.

Second, and to some degree operating under the false premise, above, the district court in essence reasoned that the Idaho Court could not have meant what it said and did not hold as it

did. The district court thus replaced the *C&G* and *Neider* ruling with one of its own. It ruled that (1) using right-of-way language in a substantive part of the deed is insufficient in and of itself to create an easement; and (2) right-of-way language in the habendum clause alone does not create an easement. *Id.* at 1076-78.

In support of this new rule, the court relied on reasoning not from the Idaho Court, but from other state decisions which, when selectively applied by the district court, *see* 454 F. Supp. 2d at 1074-77, were effectively inconsistent with the Idaho Court's reasoning in *C&G*, and methodology employed by *Neider.'* In short, the district court relied on certain parts of outside state decisions in a manner that supported its view, rather than on other parts supporting the opposite view.

For example, in ruling as to Category *5,* it relied on a Washington state decision which had construed deeds with "right-of-way" language *appearing in the middle of the technical legal description*, rather than an earlier Washington state decision with "right-of-way" language appearing materially identical to the Category *5* deeds. The earlier Washington State Supreme Court decision, *Veach v. Culp,* reasoned in a manner favorable to all the *Hash* deeds, and held that "right of way" language, appearing immediately after the "to wit" grant language, was part of the granting clause, and that an easement was created. *Compare*, 454 F. Supp. 2d at 1075 (relying on *Brown v. State*, 924 P.2d 908 (Wash. 1996), *with Veach v. Culp,* 599 p.2D 526 (Wash. 1979) (noting "the description is in fact a part of the granting clause," when granting, "to-wit: A right-of-way one hundred feet wide…" the grant was an easement), *and Kershaw*

3 *See* §1, *supra; (compare* decisional law in support of the *Hash* plaintiffs, JA Exs. D and H, *with* decisional law relied on by the district court and the defendant, JA Exs. B and G.)

*Ranches v. Yakima Interurban Lines Assoc.,* 126 P.3d 16, 21 (Wash. 2006) *("Kershaw II") (en banc* 6:3) (discussing *Brown* and affirming *Veach* to be good law: "in describing the property as a "'right-of-way one hundred feet wide . . . [the deed] reflected [the] intent to create an easement only.")

While citing frequently to *Brown v. State, see* 454 F. Supp. 2d 1074-76, the district court did not seem to recognize that *Brown* upheld previous state law decisions favorable to the *Hash* plaintiffs and described circumstances to support a holding that the *Hash* deeds, including Category 6, created easements:

> Unlike *Swan, Veach,* and *Roeder,* where "right of way" was used in the granting *or habendum* clauses *to qualify or limit the interest granted,* [the] "right of way" in the deeds at issue here appears [elsewhere]... .

*Brown v. State,* 924 P.2d 908, 914 (Wash. 1996) *(en banc* 7:1 in material part) (emphasis added); *see also Kershaw II,* 126 P.3d at 24-5 ("our previous cases, which *Brown* does not overrule, and in fact incorporates, establish that . . . language establishing that a conveyance is for right of way or railroad purposes *presumptively conveys an easement* and thus provides the `additional language' which `expressly *limits or qualifies* the interest conveyed") (citation omitted) (emphasis added).

And, when selecting certain reasoning from other state decisions, the district court overlooked *Kershaw II,* which in part relied on *Brown,* and which ruled that a deed using language materially identical to the Category 8 deed created merely an easement:

- ***compare,*** [immediately following the legal description]: "the [said] property .. . [is] to be used by said [Railway Company] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same. . . ." *Kershaw Sunnyside Ranches v. Yakima Interurban Lines Assoc.,* 91 P.3d 104, 106-7 (Wash. Ct. App. 2004) *("Kershaw I"), aff'd by Kershaw II;*

- ***with,*** [immediately following the legal description]: "The said strip of land is to be used by the said Railway Company for a right of way for the said Railway and for all and every purpose necessary to be used in connection with the running and operation of the said Railway." (Category 8, JA Ex. D at 22-23.)

•

*Compare Kershaw II*, 126 P.3d at 25 (deed created easement), *with Hash III*, 454 F. Supp. 2d at 1076 (ruling Category 8 deed created fee title).[4]

In short, applying certain points of law from outside states, but overlooking others, the district court issued a new rule of law which, by implication, dismissed *as false and non-binding*, the flowing statements and holdings by the Idaho Supreme Court and the Federal Circuit:

- the "mention of the term `right of way' in either the granting or habendum clause, [ ]or any other language in the deeds that serves to limit the use of the land for the purpose of a railroad right of way," would evince the intent to create an easement. *C&G*, 25 P.3d at 81;
- The *C&G* court "recognized that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement." *Neider*, 65 P.3d at 530;
- "The district court had found that the use of `right-of-way' in these deeds could have been used either to limit the legal estate conveyed, or simply to describe the land included in the deed; . . . However, the Idaho court in *Neider* placed controlling weight on the usage of `right-of-way' in the grant clause." *Hash II*, 403 F.3d at 1320; and,
- The Idaho Court held that when the term "right-of-way" appears in the substantive portion of a conveyance instrument, the correct interpretation is that the deed conveyed only an easement and that the underlying land was not conveyed unless explicitly granted in the instrument. *Hash II*, 403 F.3d at 1320.

*Cf.*, 454 F. Supp. 2d at 1076.

**C. *Hash III* limits *Neider* in a manner inconsistent with the Federal Circuit's description of *Neider* and in the absence of any direction to so limit by the *Neider* Court itself.**

---

4 In construing the Category 8 deed as granting fee title, the district court relied in part on analysis that had been rejected by the Idaho Supreme Court, and in part on the appearance of "forever" language in the Category 8 deed. 454 F. Supp. 2d at 1075-76. The Category 6 deed also contains "forever" language. But the *Neider* deed contained *three* "forever" clauses in the grant (JA Ex. C-5), and yet the *Neider* court obviously found those clauses to be irrelevant in light of the existing language which created the presumption that the deed created an easement. 65 P.3d at 530; *(see also* the *Hash* plaintiffs' brief, JA Ex. D at 14-15.)

The district court explained its new rule was based in part on its conclusion that the *Neider* court did not really embrace its earlier standards enunciated in *C&G.* Rather, the district court surmised, the *Neider* decision was limited to narrow circumstances found in *Neider,* where the operative language appeared in a handwritten clause. 454 F. Supp. 2d at 1073. The district court reasoned that it was not the substance of the words alone that governed the *Neider* holding, but rather the *form* in which those words appeared. Thus, according to the district court, the *Neider* Court in essence meant to say that "use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement when it appears in a handwritten clause."' *Cf., id.* But this conclusion is not supported by the *Neider* decision, which relied on the analysis discussed in *C&G. See* 65 P.3d at 530; 25 P.3d at 79-81.

To be sure, the *Neider* court specifically related that the "right of way" language was included in a handwritten portion of the deed:

> The conveyance instrument from the [grantors] to the Railroad contained some printed language and a handwritten provision stating that the "deed is made for right of way, station, and warehouse purposes." While the printed language uses terms such as "grant," "bargain," and "sell," the handwritten clause unambiguously reflects the [grantor's] intent to convey only an easement to the Railroad. Further, the Railroad's interest in the land was limited to railroad purposes by the handwritten clause.

65 P.3d at 530. But, by noting that the handwritten clause "unambiguously reflect[ed]" the "intent to convey only an easement," *id.,* in no manner whatsoever did the Court limit its earlier pronouncements in C&G.

The Court itself certainly did not say it was limiting its holding to the form in which the right-of-way language appeared. To the contrary, while referencing the provision as being handwritten, it was confirming that the handwritten provision was in a substantive part of the deed, and that the *C&G* standard for identifying language that creates an easement applied in that case:

> In C&G, this Court held that the conveyance instrument unambiguously conveyed a fee

> simple, not an easement, because, while the instrument was entitled Right of Way Deed, none of the substantive provisions referred to a right-of-way. The conveyance instrument in *C&G* did not limit the use of the land to "railroad purposes" and it lacked any language indicating a reversionary interest in the grantors. This Court, however, recognized that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement.
>
> ….
>
> In this case, a substantive provision of the conveyance instrument, in handwriting, grants a "right of way" to the Railroad, *which this Court has identified as language that creates an easement.* The conveyance instrument from the [grantors] to the Railroad granted an easement to the Railroad rather than a fee simple.

*Neider,* 65 P.3d at 530 (citations omitted) (emphasis added). Thus, it is the "language that creates an easement," not the form—handwritten versus printed—in which that language is presented.

Furthermore, none of the Federal Circuit analysis supports the district court's reasoning; to the contrary, *Neider* offered guidance "in a way that appears to be highly relevant to the deeds here at issue" and "placed [weight] on the use of `right-of-way' in the substantive grant." *Hash II,* 403 F.3d at 1321.

Landowner's position on this point is borne out indirectly by the lack of significance given to a "handwritten" clause in the *Kershaw II* decision. Just as the Court did *in Neider,* in *Kershaw I* the Washington appellate court twice mentioned the operative language at issue appeared on a pre-printed form in a handwritten clause. *See Kershaw I,* 91 P.3d at 106. Nonetheless, there is no indication in *Kershaw I* that the court relied on the form in which the language appeared, *id.*,and in affirming *Kershaw I*, the Washington Supreme Court did not mention, let alone rely, on the form in which the language appeared. *See Kershaw II*, 126 P.3d 16.

Furthermore, as the *Hash* plaintiffs explained, the deeds presented here are not copies of the actual, original deeds. (JA Exs. D at 15-16; H at 10.) Rather, they are copies of the transcription of the deeds made by the clerk of the recorders' offices at the time those deeds were recorded. (Id.)

Lacking copying machines at the turn of the 20th Century, the clerk of the recorder's office would transcribe the original deeds by handwriting or by typing the deeds from the original, and record the *transcription* of the originals in the recorder's office. Upon reflection, moreover, it is only common sense that the deeds obtained from the county recorders' offices would *not* have been photocopies in the relevant time-frame these railroad deeds were recorded, since photocopying machines were several decades away from being invented.

There is no way of knowing from the *Neider* decision whether the Idaho Supreme Court was mindful no copying machines existed in 1910. But given that the Court stressed the decision turned on the "right-of-way language" appearing in a substantive part of the deed, the only meaning that should be given to the fact that the right-of-way language appeared in a handwritten clause as noted by the Court is that the operative language departed from the otherwise standard, feegranting language also found in the deed. *Id.* at 530; *(see* the *Bow* deed, JA Ex. C-5.)

Likewise, included in the record are examples of standard, fee-granting language in some deeds along the same right of way without any added language. (Exs. 3, 6, 7, and 10, Revised Title Stipulations.) In contrast, while Category 6 deeds use similar language to those deeds, they also include the added language at issue in a substantive provision. In fact, one deed is particularly illustrative of this point in that the "as a perpetual right of way" language in that deed, while identical to the others, appears as a stand-alone expression of intent in the middle of the deed, while still being tied to the habendum clause, as follows:

> This indenture made this 23rd day of August, in the year of our Lord one thousand eight hundred and ninety-nine ... .
>
> ... the said Parties of the first part for and in consideration of the sum of One Hundred and Twenty-five dollars. . . have granted bargained and sold and by these presents do grant, bargain, sell, convey, and confirm unto the said party of the second part, and to its successors and assigns forever, all the following described real estate situated in Washington County, State of Idaho, to wit:

> [metes and bounds description]
>
> # as a perpetual right of way for second party's Steam railway line.
>
> TO HAVE AND TO HOLD: all and singular, the above mentioned and described premises together with the appurtenances, unto the said party of the second part, and to its successors and assigns forever, #... .

(Ex. 5, Revised Title Stipulations.)

Unknown from this transcription, as compared with the other Category 6 deeds, is whether all the *original* Category 6 deeds are the same but ended up being transcribed differently, depending on the clerk. In other words, all the Category 6 deeds expressed the specific, added restriction that the interests were granted "as a perpetual right of way for [the Railroad's] rail way line," but did some clerks type the added language where it belonged, right after "forever" in the habendum clause, while this clerk set out the right of way language in the middle part of the deed as literally presented in the original deed? That spot was likely in that part of a preprinted railway deed which was left blank, to be filled in with the individual metes and bounds for each grantor who deeded interests to the railroad company as seen in the *Bow* deed. And does it make a difference—or should it under the *C&G* and *Neider* holdings—whether in the other Category 6 deeds, the added right-of-way language was literally used in the same paragraph as the language that preceded it, or happened to be asterisked in, as apparently was the case in the above example, as transcribed by the clerk?

Landowners are not asking this Court to construe any inferences from these examples in favor of the original grantors, because none of these nuances matter. Rather, these examples are presented to show that the question is not "in what form does the language appear—printed or handwritten?" Rather, what matters is precisely what the Idaho Supreme Court has already "recognized" matters: "use of the term right-of-way in the substantive portions of a conveyance instrument creates an

easement." *Neider*, 65 P.3d at 530. The operative language here appears in the substantive part of the deeds, *see Hash II*, 403 F.3d at 1319, in stark contrast to the fee-examples, and as such reflected the intent of the parties to create easements.

**CONCLUSION**

The Idaho Supreme Court advises that "[t]he intent of the parties is determined by viewing the conveyance instrument as a whole," and that "use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement." 65 P.3d at 530. Landowners respectfully submit these rules control the analysis, as held by the Federal Circuit in *Hash H*. Landowners thus request the Court grant their motion for summary judgment and rule that the Category 6 instruments created easements for the Railroad's rail way line.

Dated: August 9, 2007

Respectfully Submitted,

**WALKER LAW OFFICE**

Signature Not Verified Lary C. Walker Digitally signed by Lary C. Walker DN: cn=Lary C. Walker, o=Walker Law Office, c=US Date: 2007.08.09 16:33:50 -06'00' Location: ary1303

Lary C. Walker
WALKER LAW OFFICE
232 East Main Street
P.O. Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
walker_law@justice.com

*Counsel of Record*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 9th day of August, 2007, Plaintiffs' Cross-Motion for Summary Judgment as to the Nature of Interests Conveyed in Category 6, was electronically filed through the CM/ECF system, which caused the following parties or counsel to be served with each of these documents by electronic means, as more fully reflected in the Notice of Electronic Filing:

Kristine S. Tardiff, Counsel for Defendant
Kristine.tardiff@usdoj.gov

Lary C. Walker
Signature Not Verified
Digitally signed by Lary C. Walker
DN: cn=Lary C. Walker, o=Walker Law Office, c=US
Date: 2007.08.09 16:34:02 -06'00'
Location: ary1303

Lary C. Walker
WALKER LAW OFFICE
232 East Main Street
P.O. Box 828
Weiser, ID 83672
Telephone: (208) 414-0390
Fax: (208) 414-0404
walker_law@justice.com

*Counsel of Record*