IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RON AND BETTY BLENDU, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) No. 01-718 L |
| | ) Judge Emily C. Hewitt |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE INTERPRETATION OF THE CATEGORY 6 DEEDS**

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant

Filed: August 10, 2007

## TABLE OF CONTENTS


I. PROCEDURAL HISTORY. . . . . . . 1

II. ARGUMENT. . . . . . . 3

A. Under Idaho Law, The Goal of Deed Interpretation is to Determine and Give Effect to the Intention of the Parties. . . . . . . 3

B. General Rules of Deeds Interpretation. . . . . . . 4

1. Deed Structure. . . . . . . 4

2. The Use of the Term "Right of Way" in Railroad Deeds. . . . . . . 7

3. Idaho Law In Effet When the Subject Conveyances Were Made. . . . . . . 8

C. The Category 6 Deeds At Issue Conveyed Fee Simple Title to the Railroad. . . . . . . 9

1. The *Hash* Court Ruled Correctly That The Category 6 Deeds Conveyed Fee Simple Title to the Railroad. . . . . . . 10

2. The Category 6 Quitclaim Deeds At Issue Conveyed Fee Simple Title. . . . . . . 13

3. The Category 6 Warranty Deeds At Issue Conveyed Fee Simple Title. . . . . . . 16

III. CONCLUSION. . . . . . . 18

# TABLE OF AUTHORITIES

**CASES**

Banner v. United States,
238 F.3d 1348 (Fed. Cir. 2001) . . . . . 12

Brown v. State of Washington,
924 P.2d 915 (Wash. 1996) . . . . . 14

C & G, Inc. v. Rule,
25 P.3d 76 (Idaho 2001). . . . . . 3, 4, 8, 9, 11, 14, 16

City of Kellogg v. Mission Mountain Interests Ltd.,
16 P.3d 915 (Idaho 2000) . . . . . 6

Clark v. CSX Transp., Inc.,
737 N.E.2d 752 (Ind. Ct. App. 2000) . . . . . 5, 6, 14

Hash v. United States ("Hash II"),
403 F.3d 1308 (Fed. Cir. 2005) . . . . . 2

Hash v. United States ("Hash III"),
454 F. Supp.2d 1066 (D. Idaho 2006). . . . . . 2, 3, 6, 8, 11, 12, 14, 15

Hash v. United States ("Hash IV"),
No. CV99-324S-MHW, 2007 WL 1309548 (D. Idaho Feb. 1, 2007) . . . . . 2, 12

Joy v. St. Louis,
138 U.S. 1 (1891) . . . . . 7

Luce v. Marble,
127 P.3d 167 (Idaho 2005) . . . . . 13

Mississippi Cent. R. Co. v. Ratcliff,
59 So.2d 311 (Miss. 1952) . . . . . 14

Nebraska v. Union Pac. R.R.,
490 N.W.2d 461 (Neb. 1992) . . . . . 14

Neider v. Shaw,
65 P.3d 525 (Idaho 2003) . . . . . 2-4

New York Indians v. United States,
170 U.S. 1, 18 S. Ct. 531 (1898).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

No. Pac. Ry. Co. v. Hirzel,
29 Idaho 438, 161 Pac. 854 (1916). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Oregon S. L. Ry. Co. v. Yeates,
17 P. 457 (Idaho 1888). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Quinn v. Pere Marquette Ry. Co.,
239 N.W. 376 (Mich. 1931).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Scogings v. Andreason,
418 P.2d 273 (Idaho 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Union Pac. RR v. Ethington,
50 P.3d 450 (Idaho 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

**STATUTES**

1864 Idaho Sess. Laws § 43.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Idaho Code § 62-104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Idaho Code § 55-604. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**OTHER AUTHORITIES**

Annotation, Deed to Railroad As Conveying Fee or Easement, 6 ALR 3d 973 (1966). . . . . . . 4, 5

23 Am.Jur.2d Deeds §§ 18-24 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23 Am.Jur.2d Deeds § 266 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23 Am.Jur.2d Deeds § 277 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 Am. Jur.2d Estates § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

74 C.J.S. Railroads § 84.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jill K. Pearson, Balancing Private Property Rights With Public Interests: Compensating Landowners for the Use of Railroad Corridors for Fiber-Optic Technology, 84 Minn. L. Rev. 1769 (June 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING THE CATEGORY 6 DEEDS**

Pursuant to the Court's scheduling Order of July 16, 2007 (Doc. 63), Defendant submits this supplemental brief in support of its motion for summary judgment on the question of whether, as a matter of Idaho state law, the Category 6 deeds at issue in this case conveyed fee simple title to the Railroad. As set forth below, the district court in the related case of Hash v. United States, No. CV-99-324-S-MHW (D. Idaho), correctly held that the Category 6 deeds in that case conveyed fee title to the Railroad. The seven Category 6 deeds at issue in this case are indistinguishable from the deeds found by the district court to have conveyed fee title to the Railroad. These deeds have all of the attributes of fee simple conveyances and no language indicating that the grantors intended to convey only an easement, either through the retention of a reversionary interest or through other language intended to limit the estate granted. Accordingly, the Court should hold that the Category 6 deeds in this case conveyed fee simple title to the Railroad.

I. PROCEDURAL HISTORY

The Hash case is a certified class action in which the named plaintiffs and class members allege a taking of their interests in the same 83-mile railroad right-of-way at issue in this case. Plaintiffs in this case are all persons who opted out of the Hash class action and elected to file their takings claims in the Court of Federal Claims due to the $10,000 jurisdictional claim limit imposed on takings claims filed in federal district court. See Joint Motion to Defer Filing JPSR at 1-2 (filed Apr. 2, 2002). Although there are some factual differences between the two cases, the parties have acknowledged that "the legal questions presented by both cases are essentially the same." Id. at 2. For that reason, this case was stayed for over three years pending resolution

of the Hash case. That stay was lifted in late 2005, and this case has been proceeding on title and liability issues since that time.

In Hash, the parties categorized the original conveyances to the Railroad into deed categories and then briefed the question of whether the subject deeds conveyed an easement or fee simple title to the railroad by examining representative deeds from each deed category. In a memorandum decision of November 21, 2001, the district court held that the deeds in Categories 4 through 9 conveyed fee simple title to the railroad. See Hash v. United States, No. CV-99-324-S-MHW, Mem. Decision at 11-18 (D. Idaho Nov. 21, 2001).[1] The Hash plaintiffs did not appeal the district court's interpretation of Category 4, 7 and 9 deeds, nor do the Plaintiffs herein challenge that interpretation. Instead, Plaintiffs have stipulated that under Idaho law, as interpreted and applied in Hash, the Category 4, 7 and 9 deeds at issue in this case conveyed fee simple title to the Railroad. Revised Title Stipulations, ¶¶ 11-13, 21-26, 32-34 (May 30, 2007) (Doc. 53) ("Revised Title Stips.").

The Hash plaintiffs did appeal the district court's decision that the deeds in Categories 5, 6 and 8 conveyed fee simple title to the Railroad. On appeal, the Federal Circuit vacated this ruling and remanded for redetermination in light of the Supreme Court of Idaho's intervening decision in Neider v. Shaw, 65 P.3d 525 (Idaho 2003). Hash II, 403 F.3d 1308, 1319-21, 1323 (Fed. Cir. 2005). On remand, the parties filed cross-motions for summary judgment regarding

[1]For ease of reference, the Hash decisions related to the deed interpretation issues will hereinafter be referred to as follows: Hash v. United States, No. CV-99-324-S-MHW, Mem. Decision at 11-18 (D. Idaho Nov. 21, 2001) ("Hash I"); Hash v. United States, 403 F.3d 1308, 1319-21, 1323 (Fed. Cir. 2005) ("Hash II"); Hash v. United States, 454 F. Supp.2d 1066 (D. Idaho Aug. 18, 2006) ("Hash III"); and Hash v. United States, No. CV99-324S-MHW, 2007 WL 1309548 (D. Idaho Feb. 1, 2007) ("Hash IV").

the interpretation of the Category 5, 6 and 8 deeds in light of Neider. Following oral argument on the cross-motions, the district court issued a decision holding that, under Idaho law, the deeds in Categories 5, 6 and 8 conveyed fee simple title to the railroad. Hash III, 454 F. Supp.2d 1066, 1071-77 (D. Idaho 2006).[2]

The parties have identified seven deeds in this case that fall within deed Category 6. See Revised Title Stips. at 5-12. Because the parties do not agree at to the applicability of the Hash decisions with respect to the interpretation of the Category 6 deeds at issue in this case, they have agreed to present the question of whether these deeds conveyed fee simple title or an easement to the Railroad by filing copies of their cross-motions for summary judgment from Hash and supplemental briefs. The parties' cross-motions for summary judgment and supporting briefs were filed with the court in a Joint Appendix of Summary Judgment Briefs from *Hash v. United States* (filed June 4, 2007) (Doc. 58). The Joint Appendix also includes a copy of the representative deed for Category 6 that was interpreted by the district court in the Hash decisions. Joint Appendix, Ex. A.

## II. ARGUMENT

### A. Under Idaho Law, The Goal of Deed Interpretation is to Determine and Give Effect to the Intention of the Parties

Under Idaho law, "[w]hen construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction." Neider v. Shaw, 65 P.3d 525, 530 (Idaho 2003); see also C & G, Inc. v. Rule, 25 P.3d 76, 79 (Idaho 2001) ("In interpreting a deed of conveyance, the primary goal is to seek to give effect to the real intention

[2] A copy of the slip opinion is attached as Exhibit 2 to the parties' Revised Title Stipulations (Doc. 53).

of the parties."). That intent "is determined by viewing the conveyance instrument as a whole." Neider, 65 P.3d at 530. The court must determine if the deed is ambiguous, which is a question of law. Id. If the deed as whole is unambiguous, it will be "construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." C&G, 25 P.3d at 79; Neider, 65 P.3d at 530 ("Interpretation of an unambiguous deed is a question of law to be settled by its plain language."). If, however, the deed is found to be ambiguous, the interpretation of the deed "is a question of fact to be settled by the language in the conveyance instrument and the facts and circumstances of the transaction." Neider, 65 P.3d at 530.

## B. General Rules of Deed Interpretation

### 1. Deed Structure

All deeds, including railroad deeds, are generally structured in a similar manner and contain several recognizable parts, including (1) a granting clause, which is found in the premises of the deed; (2) the consideration for the conveyance; (3) the descriptive clause, which generally follows the granting clause and provides a more detailed description of the property conveyed; and, (4) the habendum clause. See 23 Am.Jur.2d Deeds §§ 18-24 (1983); Annotation, *Deed to Railroad As Conveying Fee or Easement*, 6 ALR 3d 973 (1966). Understanding the purpose of each of these components is important to the interpretation of a deed.

The granting clause is generally contained in the first section of a deed, which is known as "the premises" and includes information such as the identification of the grantor and grantee, the consideration, recitals of the grantor's intent, the words of grant, and the description of the property conveyed. 23 Am.Jur.2d Deeds § 18 (1983).

The granting clause is significant because

> [t]he question of whether a particular deed conveys a fee or merely confers an easement requires construction of the instrument to determine whether the granting clause conveys a designated strip, piece, parcel, or tract of land, or whether it basically refers to a right or privilege with respect to the described premises. In the absence of language relating to the use or purpose of the grant, or limiting directly or indirectly the estate conveyed, a conveyance of a definite strip, piece, parcel, or tract of land is generally construed as passing an estate in fee.

23 Am.Jur.2d Deeds § 266 (1983). See also 6 ALR3d at 979 ("Deeds purporting to convey to railroads a strip, piece, parcel, or tract of 'land,' which do not contain additional language describing or otherwise referring to the land in terms of the use or purpose to which it is to be put, or in other ways cutting down or limiting, directly or indirectly, the estate conveyed, are generally construed as passing an estate in fee.").

As a general rule, clear and unambiguous language in the granting clause will control the determination of whether the deed conveys fee title or an easement. As explained in 23 Am.Jur.2d Deeds § 277,

> where the granting clause in a deed purports to convey a fee simple absolute title, subsequent provisions of the deed cannot diminish that granted or deprive the grantee of the incidents of ownership in the property. Thus, where the granting, habendum and warranty clauses clearly convey a fee simple absolute, a restrictive "purpose" clause following the description of the property cannot be interpreted to reduce the interest acquired under the granting clause.

The consideration paid by the Railroad is sometimes viewed as evidence of the parties' intent to convey fee title or an easement. E.g., Clark v. CSX Transp., Inc., 737 N.E.2d 752, 759 (Ind. Ct. App. 2000). At the same time, "nominal monetary consideration, alone, does not make

the instrument ambiguous, nor does it create an easement." Id. There are several recognized reasons for this. First, "[i]t is a well-know fact that often a conveyance recites a nominal consideration whereas the true consideration is not nominal. It is therefore never certain that the recited consideration is the true consideration." Id. (quoting Pender v. Dowse, 1 Utah 2d 283, 290, 265 P.2d 644, 649 (1954)). Second, in the context of conveyances to railroads, it must be recognized that "[s]ome owners were willing to voluntarily relinquish title to that portion of their land, speculating that the benefits of living in close proximity to the railroad would soon outweigh the value of the lost property." Jill K. Pearson, Balancing Private Property Rights With Public Interests: Compensating Landowners for the Use of Railroad Corridors for Fiber-Optic Technology, 84 Minn. L. Rev. 1769, 1772-73 (June 2000).

The next provision found in the typical deed is the descriptive clause which is intended to identify the property conveyed. Under Idaho law, a description of the property conveyed "will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers." City of Kellogg v. Mission Mountain Interests Ltd., 16 P.3d 915, 920 (Idaho 2000) (citing Haney v. Molko, 844 P.2d 1382 (Idaho Ct. App. 1992)).

The habendum clause of a deed generally follows the premises and begins with the phrase "to have and to hold." Black's Law Dictionary 710 (6th ed. 1990). As explained by the district court in Hash, "[t]he habendum clause may modify or limit the grant, but does not defeat a clear, unambiguous grant. It is generally held that if there are any inconsistencies between the granting clause and the habendum clause, the granting clause will prevail because the granting clause is 'the most dependable expression of the grantor's intention' and 'is considered to be the very

essence of the deed.'" Hash III, 454 F. Supp.2d at 1072 (citation omitted). See also New York Indians v. United States, 170 U.S. 1, 18 S. Ct. 531, 535 (1898) (the habendum clause "may explain, enlarge, or qualify, but cannot contradict or defeat the estate granted [in the granting clause]. . . .").

2. The Use of the Term "Right of Way" in Railroad Deeds

It has long been recognized that the term "right-of-way" has two distinct meanings. The term may be used to describe a right belonging to a party (i.e., a right of passage over a tract of land), or it may be used to describe a strip of land which railroad companies acquire to construct their railroads (i.e, the land itself, not just a right of passage). Joy v. St. Louis, 138 U.S. 1, 44 (1891). These two distinct meanings of the term right-of-way have long been recognized under Idaho law. Indeed, as early as 1888, the Supreme Court of the Territory of Idaho stated:

> The term 'right of way' has a twofold signification. It sometimes is used to mean the mere intangible right to cross, — a right of crossing, a right of way. It is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its road-bed.

Oregon S. L. Ry. Co. v. Yeates, 17 P. 457 (Idaho 1888) (quoting Keener v. Railway Co., 31 Fed. Rep. 126). More recently, the Supreme Court of Idaho explained that,

> Although we recognize that a conflict exists among courts as to the interpretation of deeds purporting to convey land where there is also a reference to a "right of way," where the railroad deed does not contain language about its purpose or otherwise limiting the conveyance and conveys a definite parcel of land, courts consistently hold that "the deed will be construed to convey fee simple title." Much of the conflict in the case law can be traced to the different meanings of the phrase "right of way." On one hand "right of way" can serve "to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an

> easement)." On the other, the phrase can describe the parcel of land being conveyed to the railroad for the purpose of constructing its rail line. Used in this manner, "right of way" is merely descriptive as to the use to which the land is being put and does not serve to limit or restrict the estate conveyed.

C&G, 25 P.3d at 80 (internal citations and footnote omitted). Accord Hash III, 454 F. Supp.2d at 1072.

3. Idaho Law In Effect When the Subject Conveyances Were Made

The Court's construction of the deeds at issue in this case should also be guided by Idaho law in effect at the time of the conveyances.[3] See 74 C.J.S. Railroads § 84, at 473. Relevant state laws include Idaho's fee simple presumption statute, which was first enacted in 1864 by Idaho's territorial legislature and provides that "[a] fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended."[4] See 1864 Idaho Sess. Laws § 43 at 528. This fee simple presumption statute, which is presently codified as Idaho Code § 55-604, applies to the interpretation of railroad deeds. C&G, 25 P.3d at 81. In addition, it is well established under Idaho law that every railroad corporation has the power and authority to acquire fee title to lands. See I.C. § 62-104[5]; see also Union Pac. RR v. Ethington, 50 P.3d 450, 452 (Idaho 2002) (holding that railroads can own

---

[3]The Category 6 deeds at issue in this case were executed in either 1899 or 1905. See Revised Title Stips., Ex. 4-5, 9-10, 11-13 (Doc. 53).

[4]Idaho was organized as a territory on March 3, 1863. No. Pac. Ry. Co. v. Hirzel, 29 Idaho 438, 448, 161 Pac. 854, 856 (1916). Idaho was admitted to the Union in 1890.

[5]The relevant provisions of I.C. § 62-104 have been in effect since 1887, when Idaho was still a territory of the United States. See Revised Statutes of Idaho Territory, 14th Sess., Tit. IV, Ch. II, § 2666 (1887).

property under Idaho law); C&G, 25 P.3d at 80 (holding that a railroad acquired fee title to right of way lands by deed). Finally, although a common law doctrine known as the "strip and gore doctrine" is applied in some states to create a presumption that railroad deeds conveyed only an easement and that abutting landowners own fee title to the center line of railroad corridors, the Supreme Court of Idaho has expressly declined to apply the strip and gore doctrine to railroad deeds, holding instead that,

> [a]lthough this Court has tacitly recognized the existence of the 'strip and gore' doctrine, it has only done so in the context of vacated alleys. . . . We have never recognized such a policy in a railroad deed construction case and are reluctant to do so in light of the legislature's mandate in favor of conveying fee simple title.

C&G, 25 P.3d at 81.

C. The Category 6 Deeds At Issue Conveyed Fee Simple Title to the Railroad

At issue in this briefing is the interpretation of the following seven deeds, each of which is included in the record as a Joint Exhibit to the parties' Revised Title Stipulations (Doc. 53):

| Deed Description | Joint Exhibit Number | Claim That Deed Relates To |
|---|---|---|
| Warranty Deed dated September 6, 1899, from Andrew and Ona Reed to the Railroad | 4 | Blendu |
| Warranty Deed dated August 23, 1899, from John and Eva Hallstrom to the Railroad | 5 | Blendu |
| Warranty Deed dated August 29, 1899, from Norman Girling to the Railroad | 8 | Fairchild |
| Quitclaim Deed dated July 18, 1899, from Adeline Day to the Railroad | 9 | Fairchild |

| | | |
|---|---|---|
| Quitclaim Deed dated August 16, 1905, from William and Martha Glenn to the Railroad | 11 | Shumway |
| Quitclaim Deed dated August 16, 1905, from William Hartley to the Railroad | 12 | Shumway |
| Quitclaim Deed dated November 20, 1899, from George Hoffstatter to the Railroad | 13 | Harrison |

The parties have stipulated that each of these seven deeds "is comparable to the deeds in Hash deed category 6." Revised Title Stips., pp. 4-12. Although Plaintiffs disagree with the Hash court's conclusion that the Category 6 deeds conveyed fee title to the Railroad, that determination was correct and, for the reasons explained below, this Court should also rule that the Category 6 deeds at issue in this case conveyed fee simple title to the Railroad.

1. The *Hash* Court Ruled Correctly That The Category 6 Deeds Conveyed Fee Simple Title to the Railroad

The representative deed for Category 6 in Hash was a quitclaim deed dated August 7, 1899, from Frank and Etta Smith to the Railroad. Joint Appx., Ex. A (Doc. 58) ("Smith Deed"). The granting clause of the Smith Deed conveys "real estate" that is described as "[a] triangular strip of land" consisting of approximately 0.003 acres. This land is conveyed "[t]ogether with all and singular the tenements, hereditaments, and appurtenances, thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof." The descriptive clause identifies the location of this "triangular strip of land" by reference to the center line of the railway "as the same is now located and staked upon the ground[.]" Finally, the habendum clause states:

> TO HAVE AND TO HOLD all and singular the tenements,

> hereditaments and appurtenances as a perpetual right of way for said second party's Rail Way Line unto the said party of the second part and to its successors and assigns forever.

When the Hash court first interpreted this deed in 2001, it noted that the granting clause was "the same or substantially similar" to the deeds in Category 4, which were held to have conveyed fee title to the Railroad.[6] Hash I, Mem. Dec. at 14. The Hash court rejected the plaintiffs' contention that the use of the term "right-of-way" in the habendum clause required the court to conclude that the deed conveyed only an easement. Id. Instead, the court ruled that,

> the mere use [or] appearance of the term right-of-way within the four corners of the deeds does not necessarily indicate an intent to limit the estate granted to a mere easement. Rather, the Court must also look at the context in which the term "right-of-way" is employed and the other language used in the deed. Looking to the deeds in Categories 6 and 8, the mere appearance of the term "right-of-way," without any other expression of limitation of the title to the estate conveyed, is not sufficient to convey only an easement. Accordingly, the Court finds that the deeds in Categories 6 and 8 conveyed fee simple title to [the Railroad].

Id. at 14-15.

When the Hash court interpreted the Category 6 deed again in 2006 on instructions from the Federal Circuit to reconsider its prior decision in light of the Supreme Court of Idaho's decision in Neider v. Shaw, it reached the same conclusion. Hash III, 454 F. Supp.2d at 1075-76.

---

[6]As noted above, the Hash court's decision that the Category 4, 7 and 9 deeds conveyed fee title to the Railroad was not appealed in that case. In addition, Plaintiffs here have stipulated that under Idaho law, as interpreted and applied in Hash, the Category 4, 7 and 9 deeds at issue in this case conveyed fee simple title to the Railroad. Revised Title Stipulations, ¶¶ 11-13, 21-26, 32-34 (May 30, 2007) (Doc. 53).

The court acknowledged the right-of-way language in the habendum clause, but concluded "that in the absence of the term "right-of-way" in the granting clause or any limiting language regarding purpose or reversion, the language [in the habendum] is merely descriptive of the purpose for which the property was conveyed. Indeed, the land was conveyed together with 'reversion and reversions.'" Id. at 1076. Accordingly, the Hash court again concluded that the Category 6 deeds conveyed fee title to the Railroad.[7] Id.

The Hash court's interpretation of the Category 6 deeds as conveying fee title to the Railroad is a proper reading of those unambiguous deeds and is well supported by Idaho law, including the state's fee simple presumption statute, the Supreme Court's refusal to apply the strip and gore doctrine to railroad deeds, and the recognition that railroads can acquire fee simple title to land under state law. Hash III, 454 F. Supp. at 1075. Accordingly, the Hash decision, though not binding precedent for this Court, provides guidance on Idaho law and the interpretation of the Category 6 deeds in this case.[8]

---

[7]On remand from the Federal Circuit, the district court held that the deeds in Categories 5, 6 and 8 conveyed fee title to the Railroad. Hash III, 454 F. Supp.2d at 1069-77. In a separately issued decision, the district court reconsidered its ruling that the deeds in Categories 2 and 3 conveyed a fee simple determinable to the Railroad and, finding that these deeds "contain limiting and reverter language similar to that in the deed at issue in Neider[,]" held that the Category 2 and 3 deeds conveyed only easements to the Railroad. Hash IV, No. CV99-324S-MHW, 2007 WL 1309548, *7 (D. Idaho Feb. 1, 2007). As explained in Defendant's Hash briefs and above, the Category 5, 6 and 8 deeds at issue here are distinguishable from the Neider deed and the Category 2 and 3 deeds because the Category 6 deeds do not contain a combination of limiting language and a reverter clause.

[8]Alternatively, the Hash court's interpretation of the Category 6 deeds as conveying a fee simple interest to the Railroad should be given preclusive effect in this case under the doctrine of collateral estoppel, which "serves to bar the revisiting of issues that have already been litigated

2. The Category 6 Quitclaim Deeds At Issue Conveyed Fee Simple Title

Like the representative deed for Category 6 interpreted in Hash, four of the seven Category 6 deeds at issue in this case are quitclaim deeds. See Joint Ex. 9, 11-13. Under Idaho law, a quitclaim deed operates to convey whatever interest the grantor possessed at the time of the conveyance. Luce v. Marble, 127 P.3d 167, 173 (Idaho 2005); Scogings v. Andreason, 418 P.2d 273, 277 (Idaho 1966).

There is no indication in the record that the grantors held less than a fee simple interest in the property they quitclaimed to the Railroad in the subject deeds. In addition, a review of each deed as a whole reveals nothing that indicates the grantors intended to convey less than a fee simple interest to the Railroad. As with the Category 4, 7 and 9 deeds that Plaintiffs have stipulated conveyed fee simple title to the Railroad, the Category 6 quitclaim deeds all convey "land" or "real estate," rather than simply a right to use land the grantors are retaining fee title to. See Joint Ex. 9, 11-13.

Each of the Category 6 quitclaim deeds also contains a "together with" clause indicating that the deeds conveyed a full fee simple interest to the Railroad. For example, the Day Deed (Joint Ex. 9) and Hoffstatter Deed (Joint Ex. 13) both state that the described real estate is granted "[t]ogether with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof . . . ." Although a grantor's express retention of a

---

by the same parties or their privies based on the same cause of action." Banner v. United States, 238 F.3d 1348, 1354 (Fed. Cir. 2001).

reversionary interest in land granted to a railroad may indicate the conveyance of only an easement, as was the case in Neider, here the grantors expressly conveyed "the reversion and reversions" to the Railroad. The "together with" clauses in the Glenn Deed (Joint Ex. 11) and the Hartley Deed (Joint Ex. 12) do not specifically list the "reversion and reversions" as among the interests granted with the land, but the grants are otherwise comprehensive and do not include any reservation by the grantors of a reversionary interest. Accordingly, the "together with" clauses of the Category 6 quitclaim deeds support the conclusion that these deeds conveyed fee simple title to the Railroad.

In addition, the granting clauses and/or the habendum clauses in each quitclaim deed state that the grant of the land in question is to the Railroad "and to its successors and assigns forever" or to the Railroad "and to its heirs and assigns forever." See Joint Ex. 9 (granting and habendum clauses); Joint Ex. 11 (habendum clause); Joint Ex. 12 (habendum clause); Joint Ex. 13 (granting and habendum clauses). As the Hash court properly held, "a deed granting, selling, and conveying a described piece of land to have and hold forever, without any indication of intention of reversion, conveys fee simple absolute title." Hash III, 454 F. Supp.2d at 1075 (citing Union Pac. RR v. Ethington, 50 P.3d at 453); see also C&G, 25 P.3d at 80 (finding that the use of the term "forever" in a railroad deed "appears more consistent with the conveyance of a fee simple rather than an easement").

The only language that Plaintiffs can rely on in arguing that the Category 6 quitclaim

deeds conveyed an easement is the use of the term "right of way" in the habendum clause.[9] However, to interpret the Category 6 deeds as conveying only easements would be contrary to the grantors' use of a quitclaim deed, which conveys the grantors' entire interest, and to the clear and unambiguous granting clauses, which convey land rather than simply the right to use the grantors' land for specified and limited purposes. Moreover, there are no reverter clauses in these deeds, nor any other language within the four corners of the deeds that limit the estate conveyed to the, such as the combined purpose language *and* reverter clause found in the deed at issue in Neider.[10] The absence of restricted use language and a corresponding reverter clause in the Category 6 quitclaim deeds is an important factor that distinguishes these deeds from the deeds at issue in Neider. As explained by the Supreme Court of Michigan,

> It seems to be the weight of authority that, where there is no reverter clause, a statement of use is merely a declaration of the purpose of conveyance, without effect to limit the grant. The reasoning is that, as a

---

[9]Defendant notes that the two Category 6 quitclaim deeds filed as Joint Exhibits 11 and 12 are captioned as "Right of Way Quit Claim Deeds." However, under Idaho law such a caption does not render an otherwise unambiguous conveyance of a fee simple interest ambiguous, nor does it convert such a conveyance into an easement. C&G, 25 P.3d at 79-80. Accord Clark v. CSX Transp., 737 N.E.2d at 758 ("in interpreting the deed, we do not consider the cover and title of the instrument where the granting language is clear and unambiguous"); Brown v. State of Washington, 924 P.2d at 915 (Wash. 1996) (holding that a railroad deed conveyed fee simple title despite the fact that it was captioned "Right of Way Deed"); Nebraska v. Union Pac. R.R., 490 N.W.2d 461, 465 (Neb. 1992) (holding that a railroad deed entitled "Right of Way Deed" conveyed fee simple title to the railroad); Mississippi Cent. R. Co. v. Ratcliff, 59 So.2d 311, 315 (Miss. 1952) ("The mere fact that a deed may be entitled 'right of Way,' or that the term 'right of way' is employed in a recital clause, is not sufficient to convert the absolute fee conveyed by the granting clause into an easement.").

[10]A more detailed analysis of the Supreme Court of Idaho's decision in Neider v. Shaw is contained in Defendant's Cross-Motion for Partial Summary Judgment and supporting briefs in Hash, which are contained in the Joint Appendix of Hash briefs filed by the parties in this case.

> railroad company may take real estate only for railroad purposes, the declaration that it is to be so used is merely an expression of the intention of the parties that the deed is for a lawful purpose.

Quinn v. Pere Marquette Ry. Co., 239 N.W. 376, 379 (Mich. 1931) (holding that a warranty deed conveying a parcel of land "to be used for railroad purposes only" conveyed fee simple title to the railroad, rather than an easement). Accord Hash III, 454 F. Supp.2d at 1076-77 (holding that the use of the term right-of-way in the representative deed for Category 6 was "merely descriptive of the purpose for which the property was conveyed").

In sum, Idaho law requires that the intent of the parties to a conveyance be determined by viewing the deed as a whole and avoiding a construction that "would result in an inconsistent reading of the document[] as a whole." C&G, 25 P.3d at 80. Here, an interpretation of the Category 6 quitclaim deeds as a whole compels the conclusion that these quitclaim deeds conveyed a fee simple estate to the Railroad. The use of the term "right of way" in the habendum clauses of the Category 6 quitclaim deeds identifies the purpose of the grant in a manner that is descriptive only. There is no other language in the Category 6 quitclaim deeds suggesting that the grantors intended, by this descriptive language, to limit their conveyance to the Railroad to an easement only. Accordingly, the Court should find that these quitclaim deeds are unambiguous and that each such deed conveyed a fee simple interest to the Railroad.

3. The Category 6 Warranty Deeds At Issue Conveyed Fee Simple Title

The remaining three Category 6 deeds at issue in this case are warranty deeds. Joint. Ex. 4, 5 and 8. The granting clauses of these warranty deeds use typical grant, bargain and sell language to convey "real estate" rather than a right to use the land of the grantors. Under Idaho

law, this granting language is indicative of a fee conveyance. See Union Pacific RR Co. v. Ethington, 50 P.3d at 453 (holding that a deed that "grant[s], sell[s] and convey[s]" a "piece, parcel of land" that is described as "[a] strip of land ONE HUNDRED (100) feet wide, being FIFTY (50) feet on each side of the centerline of the main track" of the railroad, conveyed fee simple title rather than an easement). The "[t]ogether with" language at the end of the granting clauses, similar to that contained in some of the quitclaim deeds, conveys the land together with "the reversion and reversions." Joint Ex. 4, 5 & 8. The "together with" clauses also provide that the grantees intended to convey "*all* the estate, right, title and interest in and to the said property" to the Railroad. Joint Ex. 4, 5 & 8 (emphasis added). It is well established that a conveyance of "all estate, right, title and interest" is an unambiguous conveyance of a fee simple absolute interest. See 28 Am. Jur.2d Estates § 1 ("The term 'estate' embraces every species of property possessed by an individual . . . ."). Plaintiffs' assertion that these warranty deeds conveyed only an easement cannot be reconciled with this plain and unambiguous conveyance of the grantors' complete interest in the subject property to the Railroad.

In addition, like the quitclaim deeds, the Category 6 warranty deeds convey the land in question to the Railroad "and to its successors and assigns forever[,]" which is yet another clear indication that these deeds conveyed fee title rather than just an easement.

Again, the only language that Plaintiffs can rely on to support their assertion that these Category 6 warranty deeds conveyed only an easement is the presence of the term "right of way" in the habendum clause (Joint Ex. 4 and 8) or as a stand alone clause inserted following the descriptive clause and before the "together with" language and habendum clause (Joint Ex. 5).

For the same reasons discussed above with respect to the Category 6 quitclaim deeds, the use of this term is merely descriptive. When the deeds are interpreted as a whole in light of applicable Idaho law, as they must be, there is no indication that the grantors intended to retain a reversionary interest in the lands granted to the railroad or that they intended to grant less that a fee simple absolute interest. Accordingly, and consistent with the district court's ruling in Hash III, this Court should find that the Category 6 warranty deeds at issue in this case conveyed fee simple title to the Railroad.

## III. CONCLUSION

For the reasons set forth above and in Defendant's motion for summary judgment and supporting briefs from Hash, Defendant respectfully requests that the Court find that each of the Category 6 deeds at issue in this case conveyed fee simple title to the Railroad.

Dated: August 10, 2007

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

Attorney for Defendant