# In the United States Court of Federal Claims

No. 01-718 L

(E-Filed: November 30, 2007)

| | | |
|---|---|---|
| RON AND BETTY BLENDU, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | Rails to Trails; Takings; Summary Judgment; Hash v. United States, 403 F.3d 1308 (Fed. Cir. 2005); Hash v. United States, 454 F. Supp. 2d 1066 (D. Idaho 2006); Category 6 Deeds; Right of Way |

Cecilia Carina Fex, Washington, DC, for plaintiffs.

Kristine Sears Tardiff, with whom was Ronald J. Tenpas, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Judge

Plaintiffs claim that they are owners of land in Idaho "under or along the railroad corridor which runs from Weiser, Washington County, Idaho, to Rubicon, Adams County, Idaho." Plaintiffs' Complaint for Damages Under the Tucker Act (plaintiffs' Complaint or Compl.) 2. In the late 1800s and early 1900s many railroad companies built rail lines throughout the United States. Hash v. United States (Hash II), 403 F.3d 1308, 1311 (Fed. Cir. 2005). One such railroad company, the Pacific and Idaho Northern Railroad Company (individually and/or collectively with its successors, as the context requires, the Railroad), acquired rights-of-way in Idaho between 1899 and 1905 and constructed a rail line between 1899 and 1911. Id. Plaintiffs' predecessors-in-interest had granted these rights-of-ways to the Railroad by deed. Compl. 3.

As rail traffic diminished, the rail lines fell out of use. Hash II, 403 F.3d at 1311. "The National Trails System Act Amendments of 1983, codified as amended at 16 U.S.C. §§ 1241-51 [Trails Act], provides for the preservation of discontinued railway rights-of-way, by 'banking' the rights-of-way for possible future reactivation; the Trails Act authorizes interim use of the rights-of-way as recreational trails." Hash II, 403 F.3d at 1311. In particular, the interim use provisions of the Trails Act prohibited the treatment of certain interim uses as an abandonment of the use of the right-of-way for railroad purposes:

> Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

16 U.S.C. § 1247(d) (2006). "On March 17, 1995 the [Railroad] filed a petition for exemption to abandon, pursuant to the Rails-to-Trails Act, approximately 83.1 miles of rail line . . . ." Compl. 4. Later, it conveyed all of its interests to the Union Pacific Railroad. Id. On November 1, 1995, the Interstate Commerce Commission (ICC) granted the exemption and on December 28, 1995 the ICC served a decision and notice of interim trail use or abandonment (NITU). Id. On February 28, 1997, the Surface Transportation Board issued a revised NITU "to reflect the fact that the Friends of the Weiser River Trail was now authorized to negotiate an interim trail use agreement with the Union Pacific." Id. An interim trail use agreement [(Trail Use Orders)] was reached on July 17, 1997 and Union Pacific quit-claimed all of its rights to the Friends of the Weiser Trail. Id. Plaintiffs argue that this "deprived the Named Plaintiffs of their rights to possession, control and enjoyment of their land following the cessation of railroad operations and constitutes a taking of the Named Plaintiffs' property for public use without just compensation." Compl. 5. The question now presented to the court is whether, under the laws of Idaho, "where the railroad obtained a right-of-way by deed, . . . the railroad obtained an interest in fee simple or an easement in the parcels constituting the rights-of-way subject to the Trail Use Orders." Compl. 6.

Certain plaintiffs originally filed a class action lawsuit in the United States District Court for the District of Idaho. Hash v. United States (Hash I), No. CV 99-324-S-MHW,

2001 WL 35986188, at *1 (D. Idaho Nov. 27, 2001). "[T]he parties divided the plaintiff class into categories [1-14] based on the different mechanisms and legal forms whereby the Railroad acquired the various segments of the 83.1 miles of right-of-way." Hash II, 403 F.3d at 1312. The district court decided Hash I on November 27, 2001, Hash I, No. CV 99-324-S-MHW, 2001 WL 35986188, and plaintiffs appealed to the United States Court of Appeals for the Federal Circuit. Hash II, 403 F.3d at 1310. Certain similarly situated plaintiffs filed a complaint in the United States Court of Federal Claims on December 26, 2001. Blendu v. United States (Blendu), 75 Fed. Cl. 543, 546 (2007). Because the legal questions presented by both cases "'are essentially the same,'" the parties filed in the Court of Federal Claims, and this court granted, a Joint Motion to Stay pending final resolution of Hash I. Id. (citations omitted). The stay was lifted by order of the court, effective November 28, 2005. Order of January 4, 2006. This court issued its opinion regarding the Category 1 land claims on February 22, 2007. Blendu, 75 Fed. Cl. at 543-44. The district court recently issued its opinion regarding the Category 6 deeds. Hash v. United States (Hash III), 454 F. Supp. 2d 1066, 1076 (D. Idaho 2006) (finding that the Category 6 deeds conveyed fee simple title to the Railroad). The question of the interest conveyed by the Category 6 deeds is now before this court. The parties rely to a great extent on briefing presented to the district court in Hash III.

The Category 6 deeds contain "language in the granting clauses that convey all estate, right, title and interest in and to the subject property" and "also contain 'as a perpetual right of way' for a rail line language in the habendum clauses." Hash I, 2001 WL 35986188, at * 6, 8. The representative deed for Category 6 is a quitclaim deed dated August 7, 1899. Joint Appendix of Summary Judgment Briefs From [Hash III] Regarding the Interpretation of the Category 6 Deeds (Joint Appendix or J.A.) Ex. A. The deed contains, among other things, a granting clause that reads:

> Witnesseth that the said parties of the first part for and in consideration of the sum of one dollar lawful money of the United States of America, to them in hand paid by the said party of the second part, the receipt Whereof is hereby acknowledged, have remised, released, and forever quitclaimed, and by these presents do remise, release and forever quitclaim unto the said party of the second part and to its successors and assigns forever, all the following described real estate situated in the County of Washington and State of Idaho, and bounded and particularly described as follows, to Wit:

and a habendum clause[1] that reads:

---

[1]The habendum clause is "[t]he part of an instrument, such as a deed or will, that defines the extent of the interest being granted and any conditions affecting the grant." Black's Law

> TO HAVE AND TO HOLD all and singular the tenements, hereditaments and appurtenances as a perpetual right of Way for said second party's Rail Way Line unto the said party of the second part and its successors and assigns forever.

Id.

Before the court are the parties' Joint Appendix; Plaintiffs' Supplemental Memorandum in Support of Their Cross-Motion for Summary Judgment as to the Nature of Interests Conveyed in Category 6 (plaintiffs' Supplemental Memorandum or Pls.' Supp. Mem.); Defendant's Supplemental Brief in Support of its Motion for Summary Judgment on the Interpretation of the Category 6 Deeds (defendant's Supplemental Brief or Def.'s Supp. Br.); Defendant's Reply Brief in Support of its Motion for Summary Judgment on the Interpretation of the Category 6 Deeds (defendant's Reply or Def.'s Reply); and Plaintiff-Landowners' Supplemental Reply Memorandum in Support of Their Cross-Motion for Summary Judgment as to the Nature of Interests Conveyed in Category 6 (plaintiffs' Supp. Reply or Pls.' Supp. Reply).

Defendant moves for summary judgment that the Category 6 deeds by plaintiffs' predecessors-in-interest granting rights of way conveyed fee simple title to the Railroad, Def.'s Supp. Br. 18, while plaintiffs move for summary judgment that the Category 6 deeds conveyed easements to the Railroad, Pl. Supp. Mem. 19. If defendant prevails, then plaintiffs do not possess the requisite ownership interest to proceed with their fifth amendment takings claim. If, on the other hand, plaintiffs prevail, plaintiffs possess an ownership interest in the right-of-way that would revert back to plaintiffs following the Railroad's abandonment of the right-of-way for use as a railway.

## I. Background

In Hash I, 2001 WL 35986188, the United States District Court for the District of Idaho held that the Category 6 deeds conveyed fee simple title to the Railroad. Id. at *8. On appeal, the United States Court of Appeals for the Federal Circuit vacated the district court's decision with respect to the Category 6 deeds and remanded the issue for reconsideration in light of Neider v. Shaw (Neider), 65 P.3d 525 (Idaho 2003), a decision by the Supreme Court of Idaho that is discussed below. Hash II, 403 F.3d at 1321. When discussing the prior decisions of the Supreme Court of Idaho, including Neider, the Federal Circuit stated that "the Idaho court now teaches that use of 'right-of-way' in the

---

Dictionary 728 (8th ed. 2004).

substantive[2] part of the deed creates an easement, not a transfer in fee." Hash II, 403 F.3d at 1321 (footnote added). At another point in the Hash II opinion, the Federal Circuit had noted that, with respect to the Category 5, 6, 8, and 15 deeds, the "landowners conveyed 'real estate' that was described as a 'right of way' or as a 'perpetual right of way' in the substantive part of the deed."[3] Hash II, 403 F.3d at 1319.

On remand, the district court considered the Idaho Supreme Court's holding in Neider and again held that the Category 6 deeds unambiguously conveyed fee simple title to the Railroad. Hash III, 454 F. Supp. 2d at 1076. In Hash III, the district court relied on the premise that "the granting clause prevails over an inconsistent habendum clause." Hash III, 454 F. Supp. 2d. at 1075. As support for its approach, the court in Hash III cited to a 1956 case from the Appellate Court of Indiana, rather than to Idaho law. Id. at 1072, 1075; see Long v. Horton, 133 N.E.2d 568, 570-71 (Ind. App. 1956) ("If harmony cannot be established within the four corners of the instrument, then one clause must prevail over the other. . . . It is generally held that if there are any inconsistencies between the granting clause and the habendum clause, the granting clause will prevail, which clause in the interpretation of a deed is the most dependable expression of the grantor's intention." (citations omitted)). The Hash III court stated: "The mere presence of the term 'right of way' does not, in and of itself, indicate an intent to convey an easement. Rather, when appearing outside of the granting clause, the term is of limited value because it has two meanings." Hash III, 454 F. Supp. 2d. at 1072 (emphasis omitted).

## II. Discussion: Whether the Category 6 Deeds Conveyed Fee Simple Title or an Easement to the Railroad as a Matter of Idaho Law

The question of whether a deed conveying land to a railroad and also containing the term "right of way" conveys a fee simple or a mere easement has bedeviled the courts for at least a century and has never, as far as this court can discern, been the subject of a dispositive analysis.[4] It would be desirable to certify this question to the Idaho Supreme

---

[2]Based on this court's interpretations of the decisions of the Idaho Supreme Court, this court understands the term "substantive part" of the deed to mean either the granting clause or the habendum clause. See infra Part II.A.

[3]The Category 6 deeds contained the term "right of way" in the habendum clause. Joint Appendix of Summary Judgment Briefs From [Hash III] Regarding the Interpretation of the Category 6 Deeds (Joint Appendix or J.A.) Ex. A.

[4]A 1954 law review article, focusing on Colorado, cites to cases from as early as 1906 and 1908 in Massachusetts and Illinois and from 1921 in Colorado that discuss the extent of the interest conveyed to a railroad through a "right of way" deed. Philip A. Danielson, The Real

Court, but that is not possible.[5] Therefore, "it is the duty of this court to approximate the law of the state from decisions of its highest court as best it can." Estate of German v. United States, 7 Cl. Ct. 641, 646 (1985). In resolving the issue in this case, the court has adhered to a close analysis of existing Idaho law. Where the court finds that Idaho law does not speak directly to the specific facts of this case, the court draws on the caselaw of other states addressing similar questions to assist it in reaching its holding.

As a threshold matter, defendant argues that, because there is no indication "that the grantors held less than a fee simple interest in the property they quitclaimed to the Railroad in the subject deeds," the Category 6 quitclaim deeds conveyed fee simple title. Def.'s Supp. Br. 13. Defendant asserts the proposition that "[u]nder Idaho law, a quitclaim deed operates to convey whatever interest the grantor possessed at the time of the conveyance." Id. (citing Luce v. Marble, 127 P.3d 167, 173 (Idaho 2005); Scogings v. Andreason, 418 P.2d 273, 277 (Idaho 1966)). Plaintiffs argue that "a quitclaim deed is merely an instrument by which a grantor can convey an interest without ensuring his title to the interest." Pls.' Supp. Reply 6. Scogings, a case often cited for the proposition that defendant asserts, involved a contract for the conveyance of land by quitclaim deed. Scogings, 418 P.2d at 274. Title to the land, however, was "vested . . . in the U.S. Government, pending proof on entry." Id. at 275. The court noted that a quitclaim deed "conveys whatever interest[,] legal or equitable, which the grantors possess at the time of the conveyance, including rights inchoate which later may ripen into a vested estate." Id. at 277 (citations omitted). This discussion, however, came within the context of

---

Property Interest Created in a Railroad Upon Acquisition of its "Right of Way", 27 Rocky Mtn. L. Rev. 73, 84-85 (1954). According to the article: "When the railroad's interest is acquired by a private grant, the exact nature of that interest depends upon construction of the instrument to ascertain the intent of the parties. The Colorado Court has apparently adopted a rather mechanical test based on the words of the granting clause. If the words 'right of way' do not appear in the granting clause, it will be held to be a fee simple in Colorado, even though the words 'right of way' are used elsewhere in the instrument. Beyond that situation there is no square Colorado authority." Id. at 87 (emphasis omitted). Numerous states have grappled with this issue in their own way and there appears to be no clear consensus even for the very specific situation discussed in the 1954 article, let alone more complicated deed interpretation questions such as that currently before this court. See Deed to Railroad Company as Conveying Fee or Easement, 6 A.L.R. 3d 973 (1966).

[5]Rule 12.2(a) of the Idaho Appellate Rules grants jurisdiction to the Idaho Supreme Court to answer questions of law certified to it by a United States District Court, a United States Court of Appeals, or the Supreme Court of the United States. Idaho Appellate Rules 12.2(a). It does not, however, grant jurisdiction to the Idaho Supreme Court to answer questions of law certified to it by the United States Court of Federal Claims. Id.

concluding that "it was impossible for [the grantors] to give [the grantees] title to all the land described in the quitclaim deed because 80 acres of it had reverted to the government. Id. Neither plaintiffs nor defendant have cited cases that address the circumstances here: the determination of the interest conveyed by deeds that use a form of the verb "to quitclaim" in the granting clause and the term "right of way" in the habendum clause.

The Supreme Court of California addressed an issue similar to the circumstances here in City of Manhattan Beach v. Superior Court, 914 P.2d 160, 165 (Cal. 1996) (addressing a deed containing the phrase "remise, release and quit-claim" in the granting clause). The court stated that "'it has been often decided by this court that a quitclaim deed conveys the absolute fee-simple title if the party executing it had such title.'" Id. at 165 (quoting Spaulding v. Bradely, 22 P. 47 (Cal. 1889)). The court then declared: "Resolution of the heirs' claims cannot rest on this factor alone, however. As noted above, '[d]eeds are to be construed like any other contract and the intent of the parties arrived at by a consideration of the whole instrument and not of detached clauses.'" Id. (alteration in original) (citations omitted). The quitclaim language of the granting clause in the deed involved in City of Manhattan Beach was not consistent with the references to a "right of way" also contained within the deed. Id. The court found the rest of the language of the deed to be "equally ambiguous" and only after turning to extrinsic evidence did the court find that the deed conveyed a fee simple interest. Id. at 169-72.

Like the Supreme Court of California, this court is not persuaded that a quitclaim deed automatically conveys the grantor's entire interest regardless of the parties' intent. The court could not find, and the parties did not identify, a case from Idaho where a court relied on the mere presence of the word "quitclaim" in the granting clause of a deed to find a conveyance of a fee interest when addressing an issue similar to the issue here. Instead, this court finds support for its position in cases from other jurisdictions where the courts continued with their analyses to ascertain the intent of the parties despite the presence of the word "quitclaim" in the granting clause of a deed. See City of Manhattan Beach, 914 P.2d at 165; Hartman v. J & A Dev. Co., 672 S.W.2d 364, 365 (Mo. Ct. App. 1984); Veach v. Culp, 599 P.2d 526, 527-28 (Wash. 1979)(en banc); Chicago & N.W. Ry. Co. v. Thomson, 127 F.2d 1001, 1002, 1005 (7th Cir. 1942) (applying Illinois law).

A. The Law of Idaho

There are two Idaho Supreme Court cases, discussed extensively in the parties' briefing, that speak directly to the issue of the significance of the term "right of way" when interpreting deeds conveying land to railroads in Idaho. These two cases are C & G, Inc. v. Rule (C & G), 25 P.3d 76 (Idaho 2001), and Neider, 65 P.3d 525. In C & G,

the term "right of way" appeared on the cover page of the deed, C & G, 25 P.3d at 80, while in Neider the term "right of way" appeared in a handwritten clause in the text of the deed itself, Neider, 65 P.3d at 527. Because the question presented here rests on state law, the Idaho Supreme Court's analyses of these cases are of the utmost importance. In addition to the common law, Idaho has a fee simple presumption statute that must also be examined in deciding this case. Idaho Code Ann. § 55-604 (2007).

1. C & G, Inc. v. Rule

C & G involved the conveyance of parcels of real property, by two different individuals, George Thomas (Thomas deed) and S.F. Chaney (Chaney deed), to the Idaho Northern Railway Company in 1899 and 1900. C & G, 25 P.3d at 77. The deeds were recorded on May 9, 1901 (Thomas deed) and April 7, 1902 (Chaney deed). Id. Both deeds had "cover sheet[s] entitled 'Right of Way Deed.'" Id. In its granting clause, the Thomas deed provided that Thomas

> does grant, sell and convey unto the said Idaho Northern Railway Company, Limited, the following described piece, parcel of land, to wit: A strip, piece or parcel of land one hundred feet in width, situated in the North West quarter.

Id. at 78. The habendum clause provided:

> To Have and to Hold, the said above described premises unto the said Idaho Northern Railway Company, Limited, its successors and assigns forever.

Id. The Chaney deed contained similar language. Id. The Chaney deed provided:

> [S.F. Chaney] does grant, sell and convey unto the said Idaho Northern Railway Company, Limited, the following described piece, parcel of land one hundred feet in width, situated in the West one half (W1/2) of the Northeast quarter (NE 1/4)
>
> . . . .
>
> To have and to hold, the said above described premises unto the said Idaho Northern Railway Company, Limited, its successors and assigns forever.

Id. (alteration in original).

Martin Galvin, George Thomas's great nephew and S.F. Chaney's great grandson, inherited an interest in Thomas's and Chaney's farms. Id. at 77. Galvin and his family had "farmed the land (not including the parcels conveyed to the railroad) through their small corporation, C & G, Inc., since the 1940's." Id. The parcels conveyed by the Thomas and Chaney deeds were assigned to Union Pacific Railroad by Idaho Northern. Id. In 1996, Union Pacific abandoned the railroad line and on December 3, 1997 it quitclaimed the parcels conveyed by the Thomas and Chaney deeds to Daniel and Marjorie Rule. Id. Then, "[o]n February 17, 1998 Galvin and C & G, Inc. brought an action against Union Pacific and the Rules to quiet title to each of the parcels." Id. at 78. The C & G plaintiffs claimed that the deed had granted only an easement to the railroad rather than fee simple title. Id. The question before the court was whether the "reference to a 'right of way' in the cover sheets for the deeds creates an ambiguity by implying that Thomas and Chaney intended to convey easements rather than fee simple title in the properties." Id. The trial court held that the deeds were ambiguous and conveyed fee simple title. Id. The C & G plaintiffs appealed. Id.

In C & G the Supreme Court of Idaho set out, as a general rule in interpreting a deed of conveyance, that "the primary goal is to seek and give effect to the real intention of the parties." Id. at 79. The C & G court addressed the different approaches required when, on the one hand, a conveyance is ambiguous and, on the other hand, the language of the conveyance is unambiguous:

> Where a deed is ambiguous, interpretation of the grantor's intent is a question of fact determined from the instrument itself, as well as from the surrounding facts and circumstances. Where a deed is unambiguous, however, the parties' intent must be ascertained from the language of the deed as a matter of law without resort to extrinsic evidence. In deciding whether a document is ambiguous, the Court seeks to determine whether it is "reasonably subject to conflicting interpretation."

Id. (citations omitted). The C & G court found that the Thomas and Chaney deeds unambiguously conveyed fee simple title to the railroad. Id. at 79-80 ("In examining the language of these deeds, we can discern no intention other than that of a fee simple conveyance. The deeds do not limit the use of the parcels for 'railroad purposes,' nor is there any mention of a 'right of way' anywhere in the body of the deeds.").

In discussing the significance of the term "right of way" in the interpretation of a deed, the Idaho Supreme Court in C & G first noted that a conflict exists in the caselaw about the interpretation of deeds purporting to convey land where there is also a reference to a "right of way," id. at 80, but suggested an analytical roadmap:

> Although we recognize that a conflict exists among courts as to the interpretation of deeds purporting to convey land where there is also a reference to a "right of way," where the railroad deed does not contain language about its purpose or otherwise limiting the conveyance and conveys a definite parcel of land, courts consistently hold that "the deed will be construed to convey fee simple title."

Id. (footnote omitted) (quoting Brown v. State (Brown), 924 P.2d 908, 915 (Wash. 1996) (en banc)). The court then drew a distinction between the different meanings of the phrase "right of way." Id.

> Much of the conflict in the caselaw can be traced to the different meanings of the phrase "right of way." On one hand "right of way" can serve "to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement)." On the other, the phrase can describe the parcel of land being conveyed to the railroad for the purpose of constructing its rail line. Used in this manner, "right of way" is merely descriptive as to the use to which the land is being put and does not serve to limit or restrict the estate conveyed.

Id. (quoting Brown, 924 P.2d at 914) (other citations omitted). The distinction, then, is between use of the term "right of way" to "qualify or limit the interest granted" or to "describe the parcel of land being conveyed."[6]

The Category 6 deeds refer to a "perpetual right of way." J.A. Ex. A. As plaintiffs point out: "If 'right of way' was of no consequence as it was placed, the added description [of "perpetual"] would have been unnecessary. Accordingly, to disregard the phrase would render use of this key term superfluous in the interpretation of the deed which is inappropriate when considering the deed in its entirety." J.A. Ex. D, titled "Class Representatives' Cross Motion and Response to Defendant's Motion for Partial Summary Judgment Regarding the Property Interest Originally Acquired By the Railroad for Categories 5, 6, and 8," at 12. The court agrees that the use of the word "perpetual" makes it less likely that the term "right of way" is "merely descriptive," C & G, 25 P.3d at

[6] A similar distinction has recently been articulated in a 1999 decision by the Court of Appeals of Maryland. That court has stated that "'the term "right of way" has two meanings: in one sense it is "the strip of land upon which the track is laid"; in the other sense it is "the legal right to use such strip," and in this sense it usually means the right of way easement.'" Chevy Chase Land Co. v. United States (Chevy Chase Land Co.), 733 A.2d 1055, 1062 (Md. 1999) (citations and emphasis omitted).

80, and makes it more likely that the term "right of way" "serve[s] to limit or restrict the estate conveyed," id.

The C & G court found dispositive the absence of language in a railroad deed "about its purpose or otherwise limiting the conveyance." Id. In such a case, where "a definite parcel of land" is conveyed, the deed conveys fee simple title." Id.

> Accordingly, because the words "right of way" appear only on the cover pages of the Thomas and Chaney deeds instead of being found in the granting or habendum clauses, we hold that the use of the term "right of way" on the cover sheets merely describes generally the strip of property acquired by Idaho Northern and does not express a limitation of the title to the estate conveyed.

Id. (citations omitted).

Despite its ultimate conclusion that the deeds conveyed fee simple title, the court in C & G was aware of other authority concerning the use of the term "right of way" and stated that it was "inclined to agree" with the proposition "that the presence of the term 'right of way' in a railroad deed usually indicates that the grantor intended to convey an easement." C & G, 25 P.3d at 80-81. However, "where there is no mention of the term 'right of way' in either the granting or habendum clause, nor any other language in the deeds that serves to limit the use of the land for the purpose of a railroad right of way[,] . . . it will be seen as conveying a fee simple title." Id. at 81. The court also stated: "Although this Court has tacitly recognized the existence of the 'strip and gore' doctrine,[7] it has . . . never recognized such a policy in a railroad deed construction case and [we] are

[7]The "strip and gore" doctrine refers to the public policy rationale that disfavors "the conveyance of strips of land by [fee] simple titles to railroad companies for right-of-way purposes, either by deed or condemnation. Ross, Inc. v. Legler, 199 N.E.2d 346, 348 (Ind. 1964); see also Hartman v. J & A Dev. Co., 672 S.W.2d 364, 365 (Mo. Ct. App. 1984) ("This doctrine arises from a recognition that from a practical standpoint long narrow strips of land serve little or no function other than for roads or rights of way. Therefore, unless the parties make it clear that a fee is intended, it is presumed that they did not intend to create an otherwise unusable interest in land." (citations omitted)). "If the deed of a right-of-way is construed as an estate in fee simple, the railroad will retain the right-of-way even after it is no longer used for any transit purposes - effectively severing otherwise contiguous pieces of property, and for no useful purpose." Chevy Chase Land Co., 733 A.2d at 1064. "Transaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased." Consol. Rail Corp. v. Lewellen, 666 N.E.2d 958, 962 (Ind. Ct. App. 1996).

reluctant to do so in light of the legislature's mandate in favor of conveying fee simple title.[8]" Id. (footnotes added).

2. Neider v. Shaw

Neider v. Shaw involved a slightly more complicated factual and procedural background than the C & G case. Neider, 65 P.3d at 527. On March 14, 1910, Mr. and Mrs. J. Fremont Bows conveyed an interest in a portion of their land to the Idaho Northern Railroad Company, which was succeeded by the Union Pacific Railroad Company. Id. The deed contained the following language in which the granting language and habendum language appear to run together with the description of the real estate interest conveyed:

> Witnessed that the parties of the first part for consideration of the sum of $1.00 . . . do grant, bargain, sell, convey and confirm unto the party of the second part and to its heirs assigns forever all the following described real estate situated in Canyon County . . . together with all a singular, the tenements and hereditaments and appurtenances thereto belonging or in anywise appertaining, and in the reversion and revisions, the remainder - - - - and all the estate, right, title and interest in and to the said property, as well in law as in equity for the said parties of the first part to have and to hold . . . forever. . . .

Appellant's Opening Brief, Neider v. Shaw, No. 28022, 2002 WL 32649163, at *2 (Idaho Aug. 7, 2002) (emphasis on habendum clause added). The deed also contained a

---

[8]Idaho has a fee simple presumption statute on which defendant relies to support its interpretation that the Category 6 deeds conveyed fee simple title. Defendant's Supplemental Brief in Support of its Motion for Summary Judgment on the Interpretation of the Category 6 Deeds (defendant's Supplemental Brief or Def.'s Supp. Br.) 8. Originally enacted in 1864 and presently codified in section 55-604 of the Idaho Code, the statute reads: "A fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." Idaho Code § 55-604. Although a fee simple is presumed in Idaho, it is clear that a careful analysis is still required when one notes, as plaintiffs do, that "[t]he 'unless' language serves to create an exception or condition to the application of the statute." Pls.' Supp Reply 5. In C & G, Inc. v. Rule (C & G), 25 P.3d 76, 80-81 (Idaho 2001), the mere presence of the term "right of way" on the cover page of the deed was not enough to overcome the fee simple presumption.

handwritten reversion clause[9] that stated:

> Provided: nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should [the Railroad] fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said J. Fremont Bow and C.A. Bow, his wife, or their legal heirs.

Neider, 65 P.3d at 527. In July 1910, the Bows created the township of Bowmont by recording a plat of land. Id. "[A]n unknown party built an irrigation canal running parallel to the rail line" sometime before 1935 and "[a]n unknown party built a fence between the rail line and the canal sometime between 1935 and 1945." Id. The neighbors living on the property east of the railroad believed that the fence was the western boundary of their property. Id. The railroad abandoned the rail line in 1994 and "quitclaimed the railroad property to Evelyn and Eula Bow, the Bow's living heirs." Id. In 1997 the Nampa Highway District (NHD) re-aligned Track Road, the western boundary of the railroad property. Id. Jay Neider purchased the railroad property from Evelyn Bow on February 1, 2001. Id. Neider hired one Gordon Anderson to conduct a survey that confirmed "the canal was built inside the eastern boundary of the railroad property between the rail line and the eastern boundary, and the fence was built between the canal and the rail line." Id. Anderson also concluded that both the fence and the Track Road encroached upon the railroad property. Id. "On June 20, 2000, Neider filed an action [in the Idaho District Court] to quiet title in the twenty to thirty foot wide strip of land along the eastern boundary of the railroad property[,] . . . [and] the portions of the railroad property claimed by the NHD, . . . ." Id. at 528. The district court quieted title to the neighbors and NHD on October 24, 2001. Id. Neider then appealed to the Idaho Supreme Court. Id.

Similarly to the C & G court, the Neider court set out, as a ground rule, a focus on determining the parties' intent: "When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction." Id. at 530 (citation omitted). Where the C & G court had then turned in its analysis to the issue of different interpretive approaches based on whether the deed was ambiguous or not, the Neider court stated: "The intent of the parties is determined by viewing the conveyance instrument as a whole." Id. (emphasis added) (citation omitted).

---

[9] It is unclear where in the deed the handwritten reversion clause was inserted. The Supreme Court of Idaho did not mention its location and this court assumes the point to have been unnecessary to the resolution of the case. See Neider v. Shaw, 65 P.3d 525 (Idaho 2003).

The Neider court interpreted C & G as recognizing "that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement." Id. Of course, that rule does not appear in so many words in the C & G opinion. Compare C & G, 25 P.3d at 80 ("Accordingly, because the words 'right of way' appear only on the cover pages of the Thomas and Chaney deeds instead of being found in the granting or habendum clauses, . . . ."), with Neider, 65 P.3d at 530 ("This Court, however, recognized [in C & G] that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement."). While the deeds in C & G contained no mention of a "right of way" in the text of the deeds themselves, the Neider court found that

> the handwritten clause [in the Neider deed] unambiguously reflects the Bows' intent to convey only an easement to the Railroad. Further, the Railroad's interest in the land was limited to railroad purposes by the handwritten clause.

Neider, 65 P.3d at 530. The court distinguished the deed in Neider from those in C & G by noting that "while the instrument [in C & G] was entitled Right of Way Deed, none of the substantive provisions referred to a right-of-way." Id. Furthermore, "[t]he conveyance instrument in C & G did not limit the use of the land to 'railroad purposes' and it lacked any language indicating a reversionary interest in the grantors."[10] Id.

3. Application to the Category 6 Deeds

In C & G, the Idaho Supreme Court stated that it could "discern no intention other than that of a fee simple conveyance." C & G, 25 P.3d at 80. In declining to find an easement, the two considerations articulated by the Idaho Supreme Court in C & G were the lack of language limiting the use of the parcels to railroad purposes and the absence of the term "right of way" in the substantive part of the deed. Id. at 81. In Neider, the court stated that the factors weighing against the finding of an easement in C & G were that the substantive provisions of the deed did not refer to a "right of way," that the deed "did not limit the use of the land to 'railroad purposes[,]'" and that the deed "lacked any language indicating a reversionary interest in the grantors." Neider, 65 P.3d at 530. The Category

[10]In distinguishing Neider, Hash v. United States (Hash III), 454 F. Supp. 2d 1066, 1072, 1075 (D. Idaho 2006), drew a distinction between the effects of the granting clause and the habendum clause. This distinction does not appear in either Neider, 65 P.3d at 530 (stating that "use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement"), or C & G, 25 P.3d at 80 (declining to find an easement because the words "right of way" appeared only on the cover page "instead of being found in the granting or habendum clauses").

6 deeds that are the subject of the case now before this court suffer from only one of these three deficiencies. The Category 6 deeds contain the term "right of way" in the habendum clause, a substantive part of the deed, and also contain a designation for railway use. J.A. Ex. A. The Category 6 deeds do not, see id., however, contain "language indicating a reversionary interest in the grantors." Neider, 65 P.3d at 530.

Defendant argues that Neider is distinguishable from this case because the handwritten clause in Neider "included purpose language and made that purpose language restrictive rather than merely descriptive of the intended use of the granted land by providing that the land would revert to the grantors (or their legal heirs) if the Railroad failed to use the land for the purposes specified in the deed." Def.'s Reply 6. Although it was a consideration in Neider, 65 P.3d at 530-31, this court does not consider the presence of a reversionary clause to be dispositive where the easement is designated for a particular use. As plaintiffs argue, and the court agrees, the omission of a requirement that a reverter clause be expressed in a deed "makes sense where an easement expires automatically without the need for a reverter clause." Pls.' Supp. Reply 10 (citing Hanson Indus. v. County of Spokane, 58 P.3d 910, 916-17 (Wash. Ct. App. 2002)). The result is consistent with the articulated rationale of the Court of Appeals of Washington. "A railroad right-of-way deed need not, however, contain a reverter clause to effect an automatic reversion to the grantor upon abandonment. The railroad right-of-way expires automatically upon abandonment." Hanson Indus., 58 P.3d at 916 (citations omitted). The Category 6 deeds describe the purpose of the right-of-way as being "for said second party's Rail Way Line." J.A. Ex. A. There is no need for a reverter clause because the easement will expire and automatically revert to the grantors upon the abandonment of the use of the right-of-way for a railway.

Against the conclusion that the easement will expire automatically, defendant argues that the "forever" language contained in the Category 6 deeds conveys fee simple title. Def.'s Supp. Br. 14 (citing to Hash III and its reference to the Idaho Supreme Court's "holding that a deed granting, selling, and conveying a described piece of land to have and hold forever, without any indication of intention of reversion, conveys fee simple absolute title." Hash III, 454 F. Supp. 2d at 1075 (citing Union Pac. R.R. Co. v. Ethington Family Trust (Union Pacific), 50 P.3d 450, 453 (Idaho 2002))). In C & G, the Supreme Court of Idaho noted that "the deeds' use of the term 'forever,' . . . appears more consistent with the conveyance of a fee simple rather than an easement." C & G, 25 P.3d at 80 (citing Tazian v. Cline, 686 N.E. 2d 95, 101 (Ind. 1997) and "noting that 'forever' as a temporal descriptor suggests the conveyance of a fee simple"). The Supreme Court of Idaho relied on this language from C & G in its 2002 decision in Union Pacific. 50 P.3d at 453. Neither the deeds in Union Pacific nor the deeds in Tazian v. Cline, however, contained the term "right of way." Union Pacific, 50 P.3d at 453; Tazian, 686

N.E. 2d at 98. In C & G, the term "right of way" only appeared on the cover page of the deed. C & G, 25 P.3d at 80. Additionally, the court noted that in Union Pacific "[t]he language of these deeds does not limit the use of the parcels for railroad purposes" and "there is no language in either of the deeds indicating any intention of a reversionary interest in the properties such as a right of re-entry or possibility of reverter." Union Pacific, 50 P.3d at 453. In Tazian, the case cited by the Idaho Supreme Court, the Supreme Court of Indiana stated:

> The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right of way in such conveyance generally leads to its construction as conveying only an easement. The granting clause in the present deed does not appear to be limited to conveying only a right, nor does the deed describe the interest conveyed as a right of way.

Tazian, 686 N.E. 2d at 98 (citations and footnote omitted). Furthermore, the court in Tazian stated that the "forever" language in the habendum clause, though "more consistent with the conveyance of a fee than of an easement," was not dispositive. Id. at 101 (citing, inter alia, Cincinnati, I., St. L. & C. Ry. Co. v. Geisel, 21 N.E. 470 (Ind. 1889) (instrument purporting to "release, relinquish and forever quitclaim to the [railroad] the right of way" held to grant easement, not fee)).

Most significantly, the Idaho Supreme Court made no connection between similar "forever" language in the Neider deed and a finding of a fee simple conveyance, Neider, 65 P.3d at 530, and the case that the Idaho Supreme Court relied on in Union Pacific stated that the presence of the "forever" language was not dispositive, Tazian, 686 N.E. at 101. This court likewise declines to accord decisive significance to the presence of "forever" language in the habendum clauses of the Category 6 deeds.

Defendant also points to a "together with" clause contained in the Category 6 deeds as indicating the conveyance of a fee simple interest. Def.'s Supp. Br. 13. The "together with" clause reads: "Together [w]ith all and singular the tenements, hereditaments, and appurtenances, thereunto belonging or in any [w]ise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof." J.A. Ex. A. As appears in the quotation from the Neider court set out in Part II.A.2 above, similar language was contained in the Neider deed. See Appellant's Opening Brief, Neider, 2002 WL 32649163, at *3. Because the Supreme Court of Idaho nevertheless found an easement despite the presence of similar language in the Neider

deed, this court is not persuaded that the "together with" language necessitates the finding of the conveyance of a fee simple interest with respect to the Category 6 deeds.

For the foregoing reasons, the court concludes that the Category 6 deeds conveyed only an easement to the Railroad.[11]

---

[11]The court believes the foregoing conclusion to be consistent with the decisions of the Idaho Supreme Court. Plaintiffs cite to numerous cases from other states to support the finding of an easement. The state law behind the holdings in some of these cases is in conflict with the law of Idaho and therefore such cases do not aid the court in reaching its decision. Idaho operates under a fee simple presumption statute. See Idaho Code Ann. § 55-604 ("A fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended."). Accordingly, the presumption that only easements are conveyed by deeds to railroads, otherwise known as the "strip and gore" doctrine, does not apply to deeds made to railroads in Idaho. See supra Part II.A.1; see also C & G, 25 P.3d at 81.

Plaintiffs cite to Consolidated Rail Corp. v. Lewellen as support for the proposition that only an easement is conveyed when the term "right of way" is contained in a deed to a railroad. Pls.' Supp. Reply 6. Plaintiffs argue that in Lewellen an easement was found despite the presence of a fee simple presumption statute. Id. It is true that the court in Lewellen stated that "[i]n general, any reference to a right-of-way in a deed conveying real property to a railroad will cause the deed to be interpreted as conveying only an easement," but what plaintiffs fail to mention is that the court applied the "strip and gore" doctrine when interpreting the deed. Consolidated Rail Corp. v. Lewellen, 666 N.E.2d 958, 962 (Ind. Ct. App. 1996) ("Indiana public policy does not favor the conveyance in fee simple of land that is to be used for a railroad right-of-way." (citation omitted)); J.A. Ex. G, titled "Defendant's Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment and Reply Brief in Support of its Motion for Partial Summary Judgment Regarding the Property Interest Originally Acquired by the Railroad for Categories 5, 6, 8, 14 and 15," at 4. As defendant points out, J.A. Ex. G at 4, this reasoning is in conflict with Idaho's rejection of the "strip and gore" doctrine, see C & G 25 P.3d at 81, and therefore does not assist in the resolution of this case.

Plaintiffs also cite to Illinois Central Railroad Co. v. Roberts as support for the proposition that the presence of the term "right of way" operates to convey an easement. Pls.' Supp. Reply 8-9. As defendant points out, J.A. Ex. G at 8, the Court of Appeals of Kentucky was applying "a conclusive presumption in favor of a right-of-way easement." Illinois Cent. R.R. Co. v. Roberts, 928 S.W.2d 822, 825 (Ky. Ct. App. 1996). The reasoning of the Kentucky court is inconsistent with Idaho's fee simple presumption statute and is therefore inappropriate to apply to this case.

The Missouri Court of Appeals found the conveyance of an easement where the term "right of way" appeared in the descriptive clause of the deed. Hartman, 672 S.W.2d at 365.

B. Other Relevant Caselaw

The foregoing conclusion, which the court believes to be consistent with the decisions of the Idaho Supreme Court, is also generally consistent with numerous decisions from other state courts, making it perhaps more likely that the court has accurately "approximate[d] the law of the state." Estate of German, 7 Cl. Ct. at 645-46.

Generally, when the term "right of way" appears in the text of the deed itself, courts have found the conveyance of an easement. This includes deeds containing the term "right of way" in only the habendum clause, only the granting clause, and both the granting and habendum clauses. (Where the term "right of way" appears only in the descriptive clause of the deed the courts are divided, but the court does not believe these cases to be dispositive with respect to the Category 6 deeds.)[12] Additionally, deeds

---

However, the Missouri court applied the "strip and gore" doctrine and presumed the conveyance of an easement. Id. (recognizing "that from a practical standpoint long narrow strips of land serve little or no function other than for roads or rights of way. Therefore, unless the parties make it clear that a fee is intended, it is presumed that they did not intend to create an otherwise unusable interest in land." (citations omitted)). Hartman is therefore inapplicable to this case. See J.A. Ex. G at 4-5.

[12]Various courts have found deeds containing the term "right of way," in what the court characterized as the descriptive clause of the deed, to have conveyed fee simple title. Marland v. Gillespie, 33 P.2d 207, 212 (Okla. 1934) ("We are unable to see in this language any limitation upon the quality of the estate conveyed. As we see this language, it is but a convenient method of expressing, as between grantor and grantee, certain agreements made by them for the protection of their respective lands."); Higgins v. Oklahoma City, 127 P.2d 845, 848 (Okla. 1937) (noting that Oklahoma operates under a fee simple presumption statute and that the habendum clause of the deed contained "no words of limitation as to the estate conveyed," but further stating that "[i]n determining the extent or quantity of the estate conveyed, we are not confined to the habendum clause of the deed, but may consider every part of the instrument, and if any portion thereof discloses an intent of the grantor to curtail, limit, or qualify the estate conveyed, the effect thereof will be accorded such portion." (citation omitted)); Midland Valley R.R. Co. v. Arrow Indus. Mfg. Co., 297 P.2d 410, 411-12 (Okla. 1956) ("It has been pointed out that where the instrument purports to convey a described strip of land rather than a right of way over a strip of land the conveyance is considered a fee estate instead of an easement. Here, stripped of verbiage and analyzed, the deed by express terms attempts to convey to the plaintiff a strip of land some thirty feet in width. The direct object of the verb 'convey' is 'a strip of land.' In view of the authorities heretofore cited, the additional language, acknowledging the use to which the land is to be placed, is insufficient to limit the estate granted." (citation omitted)); see also Faus v. City of Los Angeles, 195 Cal. App. 2d 134, 141 (Cal. Ct. App. 1961); Miss. Cent. R.R. Co. v. Ratcliff, 59 So.2d 311, 314 (Miss. 1952); McCotter v. Barnes, 101 S.E.2d 330, 334-

limiting the conveyance to railroad purposes have generally been found to convey easements.

1. Where the Term "Right of Way" Appears Only in the Habendum Clause

The Court of Appeals of Maryland addressed the interpretation of a deed notably similar to the Category 6 deeds in D.C. Transit Systems, Inc. v. State Roads Commission (D.C. Transit), 270 A.2d 793 (Md. 1970). The deed in D.C. Transit read as follows:

> That in consideration of the sum of One Dollar, the said party of the first part do-grant and convey unto the party of the second part, its successors and assigns all the piece or parcel of land situate, lying and being in Prince Georges County, State of Maryland, and particularly described on a plat made by the party of the second part or its agents (the same being a plat of Rights of way of the said Columbia and Maryland Railway . . .) as follows, to wit: Beginning for the same at a point 40 feet distant from the centre line of the right of way of the Columbia and Maryland Railway, . . .
>
> . . . .
>
> To have and hold the same unto and to the use of the Columbia and

---

35 (N.C. 1958); King Assocs., LLP v. Bechtler Dev. Corp., 632 S.E.2d 243, 248 (N.C. Ct. App. 2006); Cruzan v. Mo.--Kan.--Tex. R.R. Co., 303 P.2d 313, 316 (Okla. 1956); Brown v. State, 924 P.2d 908, 910, 914 (Wash. 1996) (en banc); Roeder Co. v. K & E Moving & Storage, 4 P.3d 839, 841 (Wash. Ct. App. 2000).

Other courts have found deeds containing the term "right of way" in the descriptive clause of the deed to have conveyed an easement. Ross, 199 N.E.2d at 349 ("The description clause of a deed may be employed to describe the quality as well as the dimensions and quantity of the estate conveyed."); CSX Transp., Inc. v, Rabold, 691 N.E.2d 1275, 1278 (Ind. Ct. App. 1998) ("The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement. . . . If the parties has intended to convey a fee simple interest, nothing prevented the deed from stating this explicitly, as the deed was prepared by the railroad company." (emphasis, citations, and footnote omitted)); see also McVey v. Unknown S'holders of Inland Coal and Washing Co., 427 N.E.2d 215, 217-18 (Ill. App. Ct. 1981).

> Maryland Railway its successors and assigns for a right of way and such other purposes as said Railway Company is authorized . . . .

Id. at 795 (emphasis added). The court held that there was no conflict between the granting clause and the habendum clause and that "[t]he addition of the language for 'a right of way' in the habendum clause, obviously intended to have some meaning, makes clear the intent of the parties to grant an easement over the lands of the grantors for the railroad." Id. at 800.

2. Where the Term "Right of Way" Appears Only in the Granting Clause

In Chevy Chase Land Co. v. United States, the Court of Appeals of Maryland found an easement where "the granting clause directly convey[ed] a right-of-way and the only reference to a 'parcel of land' [was] in the descriptive clause." Chevy Chase Land Co. v. United States (Chevy Chase Land Co.), 733 A.2d 1055, 1068 (Md. 1999). In reaching its conclusion the court noted that Chevy Chase Land Co. "more clearly indicates an easement was granted than [D.C. Transit, where the term right-of-way appeared in only the habendum clause]." Id. In discussing D.C. Transit, the court stated:

> The granting clause thus conveyed "all the piece or parcel of land" . . . with the only reference to the "right-of-way" being in the habendum and not the granting clause. Moreover, the deed explicitly stated that the right-of-way could be used for purposes for which the railroad company was authorized under the law, and the deed itself noted that such authorization included the acquisition and disposal of real estate. Nevertheless, we concluded based on the deed language and the circumstances that the parties intended to convey an easement only.

Id. at 1067-68 (alteration in original).

Where the granting clause of the deed contained the phrase "for a right of way for said railway," the Supreme Court of Missouri found that only an easement was conveyed. State Highway Comm'n v. Griffith, 114 S.W.2d 976, 977, 980 (Mo. 1937) ("We think it sufficient to say that the great weight of authority is to the effect that a conveyance of land to a railroad company for right of way purposes only, irrespective of the consideration, passes only an easement, and that when such use ceases, the land reverts to the grantor or his heirs."). Similarly, where the deed contained the phrase "for railroad purposes and right-of-way," the Supreme Court of Missouri again found the conveyance of an easement. Seventy-Ninth Street Improvement Corp. v. Ashley, 509 S.W.2d 121, 122-23 (Mo. 1974). The court relied on past precedent that "'the term "right of way" has

two meanings in railroad parlance--the strip of land upon which the track is laid--and the legal right to use such strip,' but where the interest conveyed is 'limited to right of way or for right of way the estate conveyed is an easement only.'" Id. at 123 (citation omitted).

In Tallman v. Eastern Illinois & Peoria Railroad Co. (Tallman), the Supreme Court of Illinois found a "right of way easement" where the deed conveyed, in its granting clause, "as and for its right of way, a strip of land." 41 N.E.2d 537, 538, 543 (Ill. 1942). The court, quoting Bauman v. Stoller (Bauman), 85 N.E. 657, 659 (Ill. 1908), explained:

> The words of grant, convey and warrant, convey the fee unless they are limited to a lesser estate by words found in the granting clause or in the habendum of the deed, if it contain an habendum. They may be used, however, in conveying a life estate or an estate for years, and words limiting the estate conveyed to an estate of the character of either of the two last mentioned are not inconsistent with such words of grant; and where there is language, either in the granting clause or in the habendum of the deed, limiting the estate conveyed by such granting words to one less in extent than a fee, such words of limitation will be given effect.

Tallman, 41 N.E.2d at 543 (internal quotation omitted). "[G]eneral purpose words which do not describe a tenure or estate will not cut down the estate, but words which do describe a tenure or estate may not be disregarded as merely descriptive of a purpose, but must be examined in the light of the entire instrument, and, if descriptive of the thing granted, must be given effect." Id.

Courts in Michigan and Texas have likewise held that an easement is conveyed when the term "right of way" is present in the granting clause. Mich. Dept. of Natural Res. v. Carmody--Lahti Real Estate, Inc., 699 N.W.2d 272, 280 (Mich. 2005) ("Where the grant is not of the land but is merely of the use or of the right of way, or, in some cases, of the land specifically for a right of way, it is held to convey an easement only. Where the land itself is conveyed, although for railroad purposes only, without specific designation of a right of way, the conveyance is in fee and not of an easement." (footnote omitted)); City of Port Isabel v. Mo. Pac. R.R. Co., 729 S.W.2d 939, 944 (Tex. App. 1987) ("Although the granting clause uses the words 'fee simple,' it also contains the more specific language of the 'right of way for the use of said railroad.' This limits the grant to a conveyance of only an easement." (citations omitted)). The Supreme Court of Michigan further explained: "Indeed, one need only examine the language describing the right-of-way as consisting of a 'strip of land . . . across' the described parcels to confirm this fact. That the parties described the interest as going 'across' the land reveals that they understood the right-of-way as being distinct from the land itself." Mich. Dept. of

Natural Res., 699 N.W.2d at 281.

In an en banc decision that is a frequent touchstone in later cases, the Supreme Court of Washington also found the conveyance of an easement where the term "right of way" appeared in the granting clause of the deed. Veach, 599 P.2d at 528. Where the granting clause of the deed contained the phrase "for all railroad and other right of way purposes" the Supreme Court of Washington again found the conveyance of an easement. Roeder Co. v. Burlington N., Inc., 716 P.2d 855, 857 (Wash. 1986) (en banc). The court held: "Since the granting clause of the Improvement Company's deed declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement, not a fee." Id. at 859.

3. Where the Term "Right of Way" Appears in Both the Granting and Habendum Clauses

Where the granting clause contained the term "right of way" and the habendum clause contained the phrase "so long as said land is used as a right-of-way by said railway," the Court of Appeals of Washington found the conveyance of an easement. King County v. Squire Inv. Co., 801 P.2d 1022, 1023, 1025 (Wash. Ct. App. 1991). Due to the limiting language in both the granting and habendum clauses, the court found the argument for the conveyance of an easement even "more compelling" than that in Veach, discussed above in II.B.2, where the deed contained the term "right of way" only in the granting clause. Id. at 1025.

In 2006, the Supreme Court of Washington attempted to reconcile the decisions addressing whether a deed conveying land to a railroad conveyed an easement or a fee simple interest. Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n. (Kershaw), 126 P.3d 16, 20-23 (Wash. 2006). In a prior en banc decision, the Supreme Court of Washington had stated that "it is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title." Swan v. O'Leary, 225 P.2d 199, 201 (Wash. 1950); Kershaw, 126 P.3d at 21. In 1979, Veach found that an easement was conveyed when the term "right of way" appeared in the granting clause. Veach, 599 P.2d at 528; see Kershaw, 126 P.3d at 21. In 1986, in Roeder Co. v. Burlington Northern, Inc., the Washington court found an easement where the granting clause contained language declaring "the purpose of the grant to be a right of way for a railroad." 716 P.2d at 859; see Kershaw, 126 P.3d at 21. In 1996, however, that court found the conveyance of a fee simple where the term "right of way" appeared in the descriptive clause of the deed. Brown, 924 P.2d at 910, 914; see Kershaw, 126 P.3d at 22. The deed in Kershaw

contained the phrase "to be used by [the Railway] as a right of way for a railway forever" in the granting clause and the term "right of way" in the habendum clause. Kershaw, 126 P.3d at 18 (alteration in original). The court found the deed in Kershaw to be "nearly indistinguishable from the deed in Roeder [Co. v. Burlington Northern, Inc.]" and held: "Like the cases finding an easement, and unlike the deeds in Brown, the word 'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest." Id. at 23.

4. Deeds Limiting the Conveyance to Railroad Purposes

St. Louis--San Francisco Railway Co. v. White involved a deed with a granting clause that conveyed "a strip of land 100 feet wide, to be used '*** [sic] for the construction, operation, maintenance, and use of a railroad over and through [the lands in question']." St. Louis--San Francisco Ry. Co. v. White, 132 S.W.2d 807, 807 (Ark. 1939) (alterations in original). The habendum clause contained the following language: "[A]s long as the same shall be required and used for railway purposes." Id. Finding an easement, the Supreme Court of Arkansas stated that "the general rule seems to be that if the deed purports to convey only a right of way, it does not convey the land itself, but the fee remains in the grantor, and the railway company acquires a mere easement in perpetuity for railway purposes." Id. at 808. In a later case, the Supreme Court of Arkansas interpreted a deed titled "Deed of Right-Of-Way." Chicago, R.I. & P.R. Co. v. Olson, 262 S.W.2d 882 (Ark. 1953). The deed conveyed "all that piece or parcel of land, being a strip of land one hundred feet wide, for the purpose of constructing and maintaining a railroad thereon." Id. at 883. The court relied on precedent holding that if the deed conveys only a "right of way" for railroad purposes, the railroad has acquired only an easement. Id. at 884.

Interpreting Illinois law, the United States Court of Appeals for the Seventh Circuit found an easement where the granting clause conveyed "a strip of land" and the habendum clause contained the phrase "for railroad purposes only." Chicago & N.W. Ry. Co., 127 F.2d at 1002-03. According to the court:

> The general rule at common law was that where the habendum tended to cut down the estate given by the granting clause so that two repugnant[13] estates were granted, the granting clause prevailed over the habendum and the latter became of no effect. Today, this rule is applied in Illinois to deeds where words of inheritance are used. However, if no words of inheritance

[13]Repugnant is defined as "[i]nconsistent or irreconcilable with; contrary or contradictory to." Black's Law Dictionary 1330 (8th ed. 2004).

> are used, Sec. 13 of the Conveyances Act requires that every word, no matter where situated in the deed, be given weight in determining the estate granted.

Id. at 1005 (citations and footnote omitted) (footnote added). The deeds involved in Chicago & N.W. Ry. Co. did not contain words of inheritance. Id. Additionally, "[t]he words in the habendum were more than descriptive of the purpose: they were the essence of the whole grant made by [the grantor]; they were intended to describe the estate." Id. Citing to Tallman as controlling, the court held that the deed conveyed only an easement. Id.

5. Application of Cases in Other Jurisdictions to the Category 6 Deeds: Where the Term "Right of Way" Appears Only in the Habendum Clause and There is Language Limiting Use of the Conveyance to Railroad Purposes

As in C & G and Neider, many cases have mentioned that deeds appearing to convey land in fee simple can be limited by words in either the granting clause or the habendum clause. E.g., King County v. Rasmussen, 299 F.3d 1077, 1086 (9th Cir. 2002) (applying Washington law and finding a fee simple interest where "neither the granting nor the habendum clauses contains language clearly limiting the use of the land to a specific purpose."); Tallman, 41 N.E.2d at 543 ("'The words of grant, "convey and warrant," convey the fee unless they are limited to a lesser estate by words found in the granting clause or in the habendum of the deed, if [the deed] contained an habendum[,] . . . and where there is language, either in the granting clause or in the habendum of the deed, limiting the estate conveyed by such granting words to one less in extent than a fee, such words of limitation will be given effect.'" (quoting Bauman, 85 N.E. at 659)); McCotter v. Barnes, 101 S.E.2d 330, 334 (N.C. 1958) (finding that "[t]he habendum clause places no limitation on the estate in fee conveyed by the granting clause" and that "all the operative clauses of the deed refer to a fee simple estate"); Cruzan v. Mo.--Kan.--Tex. R.R. Co., 303 P.2d 313, 316 (Okla. 1956) (finding that a fee simple interest was conveyed when "the words, claimed to limit the grant to an easement, appear neither in the granting nor the habendum clauses"); Higgins v. Oklahoma City, 127 P.2d 845, 848 (Okla. 1937) (finding a fee simple interest, but noting that "we are not confined to the habendum clause of the deed, but may consider every part of the instrument, and if any portion thereof discloses an intent of the grantor to curtail, limit, or qualify the estate conveyed, the effect thereof will be accorded such portion" (citation omitted)); Brown, 924 P.2d at 914 ("Unlike [prior cases], where 'right of way' was used in the granting or habendum clauses to qualify or limit the interest granted, 'right of way' in the deeds at issue here appears in either the legal description of the property conveyed or in the portion of the deeds describing Milwaukee's obligations with respect to the property."). However, D.C. Transit is the

only case (in addition to the one now before it) that this court is aware of that actually interprets a deed containing the term "right of way" in only the habendum clause. In D.C. Transit, the Court of Appeals of Maryland found the conveyance to be an easement. D.C. Transit, 270 A.2d at 800. Furthermore, deeds limiting the use of the conveyance to railroad purposes have generally been held to convey easements. See supra Part II.B.4.

## III. Conclusion

The Hash III court and defendant emphasize the precedence of the granting clause over the habendum clause. Hash III, 454 F. Supp. 2d at 1075; J.A. Ex. B, titled "Defendant's Motion for Partial Summary Judgement Regarding the Property Interest Originally Acquired By the Railroad for Categories 5, 6, 8, 14 and 15," at 21. Given that the distinction between the granting clause and the habendum clause was never made by the Supreme Court of Idaho in Neider, see 65 P.3d at 530-31, the court believes that the Idaho Supreme Court cases find determinative the presence of the term "right of way" in any substantive part of the deed. As plaintiffs point out, the use of the phrase "in either the granting or habendum clause," C & G, 25 P.3d at 81 (emphasis added), indicates that "the Idaho Supreme Court attributed equal weight to the significance of the term ["right of way"] appearing either in the habendum clause or the granting clause," Pls.' Supp. Reply 4. Furthermore, "the Neider court repeatedly used the more general phrase 'substantive portions' in lieu of the restrictions argued for by the Government." J.A. Ex. D at 4. This concept is supported by the numerous cases from other states expressing the view that conveyances can be limited by language in either the granting or habendum clauses. See supra Part II.B.5.

The Category 6 deeds contained the term "right of way" in the habendum clause, thus unambiguously reflecting an intention to convey an easement and overcoming Idaho's statutory presumption in favor of a fee simple interest. Additionally, as further evidence of the conveyance of an easement, the Category 6 deeds contained a designation for use of the right of way for the Railroad's "railway line." Therefore, the court respectfully disagrees with the United States District Court for the District of Idaho in Hash III and finds that the Category 6 deeds conveyed easements, rather than interests in fee simple, to the Railroad.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge